# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RECYCLE TRACK SYSTEMS, INC., RECYCLESMART SOLUTIONS, INC.,
PELLO, and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROADRUNNER RECYCLING, INC.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|

San Francisco County Superior Court
400 McAllister Street
San Francisco, CA  94102

## CGC-23-608135

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stanley M. Gibson (SBN 162329)/ James M. Neudecker (SBN 221657) Joseph J. Mellema (SBN 248118)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor, Los Angeles, CA  90067-4308 Tel. (310) 203-8080

| DATE: **08/04/2023** | Clerk, by **AUSTIN LAM** | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify): Pello*
   under:  ☒ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)·
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

1    JEFFER MANGELS BUTLER & MITCHELL LLP
     STANLEY M. GIBSON (Bar No. 162329)
2    *sgibson@jmbm.com*
     1900 Avenue of the Stars, 7th Floor
3    Los Angeles, California 90067-4308
     Telephone:    (310) 203-8080
4    Facsimile:     (310) 203-0567

5    JAMES M. NEUDECKER (Bar No. 221657)
     *jneudecker@jmbm.com*
6    2 Embarcadero Center, Fifth Floor
     San Francisco, CA 94111
7    Telephone:    (415) 398-8080
     Facsimile:     (415) 398-5584
8
     JOSEPH J. MELLEMA (Bar No. 248118)
9    *jmellema@jmbm.com*
     3 Park Plaza, Suite 1100
10   Irvine, California 92614-2592
     Telephone:    (949) 623-7200
11   Facsimile:     (949) 623-7202

12   Attorneys for Plaintiff ROADRUNNER
     RECYLING, INC.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/04/2023**
**Clerk of the Court**
BY: AUSTIN LAM
Deputy Clerk

**CGC-23-608135**

13
           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
14
               **COUNTY OF SAN FRANCISCO**
15

16

17   ROADRUNNER RECYCLING, INC.,          Case No.

18            Plaintiff,              **COMPLAINT FOR (1) TRADE SECRET**
                                  **MISAPPROPRIATION UNDER**
19          v.                    **CALIFORNIA UNIFORM TRADE**
                                  **SECRETS ACT; AND (2) BREACH OF**
20   RECYCLE TRACK SYSTEMS, INC.,      **CONTRACT**
     RECYCLESMART SOLUTIONS, INC.,
     PELLO, and DOES 1-25, inclusive,
21

22            Defendants.

23

24

25

26

27

28

71462949v5

1    Plaintiff RoadRunner Recycling, Inc. ("RoadRunner") alleges as follows:

2                                **INTRODUCTION**

3         1.      This case arises from Defendants Recycle Track Systems, Inc.'s ("RTS"),

4    RecycleSmart Solutions, Inc.'s ("RecycleSmart") and Pello's (collectively "Defendants") theft of

5    RoadRunner's waste and recycling metering technology and breach of contract.

6         2.      RoadRunner's predecessor-in-interest, Compology, Inc. ("Compology") developed

7    highly valuable and proprietary trade secrets in its waste and recycling metering technology over

8    the course of many years, expending millions of dollars and tens of thousands of person-hours in

9    the process.

10        3.      RTS's wholly-owned subsidiary and predecessor-in-interest, RecycleSmart,

11   contracted with RoadRunner's predecessor-in-interest, Compology. Pursuant to that contract,

12   Compology delivered confidential and proprietary information to RecycleSmart, including its

13   proprietary waste and recycling metering technology, with expressly narrow limitations on

14   disclosure and use of Compology's confidential and proprietary information. RoadRunner

15   assumed all rights under the contract and all intellectual property, including trade secrets, when it

16   acquired Compology in 2022.

17        4.      RTS, through RecycleSmart, and RecycleSmart's wholly-owned subsidiary Pello,

18   misappropriated RoadRunner's trade secrets embodied in its confidential information and waste

19   and recycling management technology it obtained under these contractual limitations and used that

20   information to develop RTS's competing product, Pello, to the detriment of RoadRunner.

21   Defendants continue to misappropriate RoadRunner's trade secrets and breach the contractual

22   obligations under the contract.

23        5.      Without intervention, Defendants will continue to misappropriate RoadRunner's

24   trade secrets and continue to breach contractual covenants to RoadRunner. RoadRunner seeks

25   actual and exemplary/punitive damages for Defendants' wrongful acts, as well as pre-judgment

26   and post-judgment interest. RoadRunner also seeks an order requiring Defendants to return

27   RoadRunner's confidential and propriety information and enjoining RTS from further wrongful

28   acts.

71462949v5

2

COMPLAINT

**PARTIES**

6.      RoadRunner is a Delaware corporation, with a principal place of business in Pittsburgh, Pennsylvania.

7.      RTS is a New York corporation, with a principal place of business in New York, New York. In March 2023, RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia-based company, including RecycleSmart's subsidiary, Pello.

8.      On information and belief, RecycleSmart is a British Columbia corporation, with a principal place of business in Richmond, British Columbia.

9.      On information and belief, Pello is a British Columbia corporation wholly owned by RecycleSmart, with a principal place of business in Richmond, British Columbia.

10.      RoadRunner is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1 through 25, inclusive. RoadRunner therefore sues said defendants by such fictitious names. RoadRunner will amend this Complaint to show their true names or capacities when the same have been ascertained.

11.      RTS, RecycleSmart, Pello, and DOES 1 through 25, inclusive, are collectively referred to as "Defendants."

**JURISDICTION AND VENUE**

12.      RoadRunner acquired Compology, a San Francisco, California-based company in October 2022, assuming and assigning all intellectual property and assuming all of Compology's rights under an agreement with RecycleSmart titled "Compology Terms and Conditions," under which the parties agreed to submit to the non-exclusive jurisdiction of the state and federal courts in the Northern District of California.

13.      RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia company, in March 2023. On information and belief, when RTS acquired RecycleSmart, RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligation and liability under the Terms, and the obligations and liabilities of RecycleSmart's wholly-owned subsidiary, Pello, including the aforementioned prohibitions against disclosure and improper use of RoadRunner's Confidential Information. In addition, there exists a unity of interest among

1   RTS, RecycleSmart and Pello such that the three companies are in practice a "single

2   enterprise." Among other things, RecycleSmart and Pello share a common address, and RTS

3   exercises and directs control over RecycleSmart and Pello. Indeed, all three companies reference

4   on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus,

5   it would be unjust for any of the companies to be shielded from liability for the theft of

6   RoadRunner's technology. The Terms therefore are binding on each of the Defendants.

7        14.     This Court has jurisdiction over the subject matter of this action because it concerns

8   a contract entered into and/or performed in San Francisco County, because it concerns injuries that

9   occurred in San Francisco County, and because the amount in dispute exceeds the jurisdictional

10  minimum of this Court.

11       15.     This Court has personal jurisdiction over Defendants. Defendants have consented

12  to jurisdiction in the state and federal courts in the Northern District of California, and Defendants

13  have endeavored to unlawfully obtain RoadRunner's trade secrets that are maintained in San

14  Francisco County.

15       16.     Venue is proper in this Court, among other reasons, because Defendants have

16  consented to jurisdiction in the state and federal courts in the Northern District of California, the

17  contract at issue herein was entered into and/or performed in San Francisco County, and the action

18  concerns injuries that occurred in San Francisco County.

19                              **BACKGROUND**

20                   **Compology Develops Proprietary Technology**

21       17.     Over the course of many years, Compology developed confidential and proprietary

22  waste and recycling metering technology powered by smart cameras and artificial intelligence

23  ("AI"). Compology expended millions of dollars and tens of thousands of person-hours to develop

24  its confidential and proprietary technology.

25       18.     Compology's confidential technology includes smart cameras (and accompanying

26  physical hardware) composed of both commercially available and proprietary, non-commercially

27  available electronic components. The arrangement and configuration of these components to

28  facilitate waste and recycling metering technology is a closely held trade secret and is not made

1   available to members of the public. Compology developed an AI system configured to operate

2   with the smart cameras at specified locations in waste bins in order to monitor fill levels of the

3   waste bins, among other things, to provide an efficient, economical, and cost-saving platform for

4   waste and recycling companies. Compology developed its AI system specifically for use with its

5   confidential smart camera technology using years' worth of machine learning data to train models

6   for use in monitoring the fill level of waste and recycling bins. This AI system thus utilizes

7   physical electronic components, network technology, and software/firmware to provide its unique

8   and confidential waste recycling metering technology.

9   **Compology and RecycleSmart Enter into the Terms**

10         19.     Compology and RecycleSmart entered into a "pilot" contract for a 10-camera

11   system on June 15, 2017. Compology and RecycleSmart's business relationship expanded from

12   2017-2022, to approximately $450,000 per year in revenue in 2022.

13         20.     On November 2, 2020, Compology and RecycleSmart entered into a renewal order

14   form that was subject to the "Compology Terms and Conditions" ("Terms") in which Compology

15   was to provide, among other things, Compology's System and Subscription Services to

16   RecycleSmart. The Terms defined System to mean "the Devices, the Software and/or the

17   combination thereof on an integrated basis to enable the collection, processing and/or delivery of

18   Device Data and Derivative Data," and Subscription Services to mean "the System hosted by

19   Compology and made available to Customer, along with the provision by Compology of services

20   relating thereto, to include but not be limited to Device delivery, installation, maintenance and

21   monitoring, reporting, Software fixes and updates, hosting and service analysis and

22   benchmarking."

23         21.     Under Section 2.1.5 of the Terms, RecycleSmart agreed that it "shall not use the

24   System or any component thereof for any purposes beyond the scope of the license granted in

25   these Terms." Pursuant to that same section, RecycleSmart agreed that it "shall not at any time,

26   and shall not permit others to:"

27         (i) copy, adapt, modify, or create derivative works of the System, in whole or in part
            except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble,
28         decompile, decode, adapt, make error corrections to or otherwise attempt to derive or

gain access to the source code or any other component of the System, in whole or in part; . . . (v) use the System or any component thereof in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law; or (vi) combine or integrate the Device or Software with any software, technology, services, or materials not authorized by Compology. Additionally, Customer covenants and agrees not to, directly or indirectly, manipulate or process Device Data, through interaction with databases, algorithms, external data, calculations and/or other processes, methods or tools, for the purposes of deriving Derivative Data.

22.     The Terms define Confidential Information as

[A] Party's non-public business, financial, technical, legal and personnel information, and includes, for example, product designs and data, source code, trade secrets, pricing, customer and supplier lists, network structure and addresses, designs, technical specifications, business plans, these Terms and any other non-public data whether written, verbal or visual, connected to or related to the business and affairs of a Party or any of its affiliates.

23.     The Terms prohibited RecycleSmart from disclosure of the Confidential Information in Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use the Confidential Information of the other Party in its business or for any other purpose except as expressly permitted in these Terms."

**RecycleSmart Misappropriates RoadRunner's Trade Secrets and Breaches the Terms**

24.     As early as 2017, Compology delivered the System and Subscription Services to RecycleSmart, including Compology's devices and software configured to enable the collection, processing and/or delivery of device data and derivative data. As part of this delivery, RecycleSmart had continuing access to Compology's Confidential Information, including the System, proprietary images, data, and processes, and Compology's large database of labeled and tagged images. The Confidential Information included Compology's proprietary and confidential waste and recycling metering technology, among other things. The Confidential Information was kept confidential from all third parties and, pursuant to the Terms, could not be disclosed or used except as expressly provided in the Terms.

25.     As described herein, this Confidential Information required *years* to properly aggregate and label.  To bypass the time and effort necessary to develop the technology itself, and on information and belief, RecycleSmart wrongly used Compology's Confidential Information to train its own AI model to compete against Compology using its Pello cameras.

26.     As part of the parties' contractual relationship, Compology provided RecycleSmart with access to Compology's APIs to ingest Compology's data into RecycleSmart's software backend.

27.     In October 2021, RecycleSmart negotiated a 1-year contract renewal (rather than the previous 3-year contract).

28.     In January 2022, Compology discovered that Pello cameras were being installed in the same containers as those with Compology cameras. On information and belief, RecycleSmart began to use Compology's large database of labeled and tagged images to train its Pello cameras in violation of its express promises to Compology, including improper use of Compology's Confidential Information. On information and belief, RecycleSmart was training its Pello cameras to develop an AI system to operate independently from Compology, for RecycleSmart's own benefit and in violation of the Terms. On information and belief, RecycleSmart used Compology's data in combination with RecycleSmart's Pello cameras to develop an AI model.

29.     In October 2022, RoadRunner acquired Compology and assumed all of the rights under the Terms.

30.     In March 2023, RTS announced its acquisition of RecycleSmart, including RecycleSmart's wholly-owned subsidiary, Pello.  Previously, on October 31, 2022, RecycleSmart let its 1-year contract lapse with RoadRunner.

31.     On information and belief, RecycleSmart also reverse-engineered Compology's waste and recycling metering technology to develop RecycleSmart's Pello cameras. RoadRunner became suspicious that RecycleSmart had wrongfully disclosed and used its Confidential Information and waste and recycling metering technology. RoadRunner investigated its suspicions, in part, by reviewing a March 9, 2022 Federal Communications Commission ("FCC") report filed by RecycleSmart. RoadRunner's suspicions were confirmed.

32.     RoadRunner's investigation confirmed that RecycleSmart's Pello system was extremely similar to RoadRunner's waste and recycling metering technology. For example, RF test reports submitted with its FCC filing confirmed that the Pello system operated identically to RoadRunner's system for backhauling data, using substantially the same communication bands as

1   those used by RoadRunner's system.

2        33.    In addition, the Pello camera printed circuit board assembly ("PCBA") utilizes

3   virtually the same electronic components, including substantially the same microcontroller,

4   external RAM integrated circuit ("IC"), wide field-of-view camera lens, camera flash PCBA,

5   camera injection molded parts, "double-shot" rear housing with TPE overmolding, battery pack,

6   shape, color, and materials of the camera housing, recessed sensors for debris shedding, and

7   identical camera flash PCBA cutouts and mounting.

8        34.    The Pello system also utilized a three-point mounting system that is virtually

9   identical to RoadRunner's waste and recycling metering technology. Beyond the substantially

10   similar physical and electronic design, this three-point mounting system combined with a trained

11   AI model using, on information and belief, RoadRunner's database of labeled and tagged images,

12   confirms that RecycleSmart misappropriated RoadRunner's Confidential Information and waste

13   and recycling metering technology.

14        35.    On information and belief, RecycleSmart disclosed RoadRunner's Confidential

15   Information and waste and recycling metering technology to third parties to develop its competing

16   Pello system. This is apparent, among other reasons, because RecycleSmart's FCC filing indicates

17   different sources of custom and commercially available parts used in RecycleSmart's Pello

18   system.

19        **Defendants are Bound by the Terms and Liable for Each Other's Wrongful Acts**

20        36.    As described herein, RTS announced its acquisition of RecycleSmart, and its

21   subsidiary, Pello, in March 2023. On information and belief, when RTS acquired RecycleSmart,

22   RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligations

23   and liability under the Terms, and the obligations and liabilities of RecycleSmart's wholly-owned

24   subsidiary, Pello, including the aforementioned prohibitions against disclosure and improper use

25   of RoadRunner's Confidential Information. In addition, there exists a unity of interest among

26   RTS, RecycleSmart and Pello such that the three companies are in practice a "single

27   enterprise." Among other things, RecycleSmart and Pello share a common address, and RTS

28   exercises and directs control over RecycleSmart and Pello. Indeed, all three companies reference

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus,

2    it would be unjust for any of the companies to be shielded from liability for the theft of

3    RoadRunner's technology.

4         37.    Under the Terms and California law, privities-in-interest are bound to the Terms,

5    and liable for the wrongful acts of their predecessors-in-interest, even after termination or

6    expiration of the Terms, pursuant to Section 9.5: "The provisions of these Terms relating to (i)

7    restrictions on license or use of the System; . . . (vi) ownership of intellectual property, (vii)

8    confidentiality, . . . along with any other provisions that by their nature are intended to survive,

9    will survive the termination or expiration of these Terms."

10        38.    Each Defendant therefore stepped into the shoes of the other Defendants and are

11   bound by the Terms and liable for each other's wrongful acts, in addition to Defendants'

12   continuing wrongful acts as described herein.

### FIRST CAUSE OF ACTION

**[Trade Secret Misappropriation Under California Uniform Trade Secrets Act, Cal. Civ.**

**Code § 3426, *et seq.*]**

16        39.    RoadRunner hereby repeats, realleges and incorporates by reference the allegations

17   which are contained in paragraphs 1 through 38.

18        40.    This is a cause of action for misappropriation of trade secrets under the California

19   Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*, based on the wrongful

20   misappropriation, use, and/or disclosure of RoadRunner's confidential information, including but

21   not limited to Confidential Information as defined in the Terms, relating to RoadRunner's waste

22   and recycling metering technology ("Waste and Recycling Metering Confidential Information").

23        41.    RoadRunner's Waste and Recycling Metering Confidential Information includes

24   trade secrets because it derives independent economic value from not being generally known to

25   the public or to others who can obtain economic value from its disclosure or use.

26        42.    RecycleSmart, RTS's predecessor-in-interest, gained access to RoadRunner's

27   Waste and Recycling Metering Confidential Information in the course of a contractual relationship

28   with Compology, RoadRunner's predecessor-in-interest, and was under an obligation to maintain

1  the secrecy of RoadRunner's trade secret information obtained during its contractual relationship

2  with RoadRunner and thereafter.

3      43.     In violation of RecycleSmart's obligations to maintain the secrecy of

4  RoadRunner's Waste and Recycling Metering Confidential Information, on information and

5  belief, RecycleSmart used RoadRunner's Waste and Recycling Metering Confidential Information

6  to develop a competing Pello product, and disclosed RoadRunner's Waste and Recycling Metering

7  Confidential Information to members of the general public to develop the competing Pello

8  product.

9      44.     RecycleSmart was also under an obligation not to use RoadRunner's Waste and

10  Recycling Metering Confidential Information for any purposes beyond the limitations of use

11  according to Section 2.1.5 of the Terms, including but not limited to copying, adapting,

12  modifying, or creating derivative works of RoadRunner's waste and recycling metering

13  technology, reverse engineering and attempting to derive the source code and other components of

14  the waste and recycling metering technology, using the waste and recycling metering technology

15  in a manner that infringes, misappropriates, and violates intellectual property rights in

16  RoadRunner's Waste and Recycling Metering Confidential Information, and combining and

17  integrating RoadRunner's waste and recycling metering technology with software, technology,

18  services, and/or materials not authorized by RoadRunner.

19      45.     Defendants have used and disclosed and continue to use and disclose

20  RoadRunner's Waste and Recycling Metering Confidential Information without RoadRunner's

21  consent or permission, in an attempt to benefit Defendants, and beyond the limitations of use

22  according to Section 2.1.5 of the Terms.

23      46.     Defendants have used or disclosed RoadRunner's Waste and Recycling Metering

24  Confidential Information maliciously and in willful and conscious disregard of the rights of

25  RoadRunner.

26      47.     Defendants are each liable for the wrongful acts of the other Defendants, and

27  Defendants have continued to perpetrate the aforementioned wrongful acts by wrongfully using

28  and disclosing RoadRunner's Waste and Recycling Metering Confidential Information, including

1  continuing malicious use and disclosure and in willful and conscious disregard of the rights of

2  RoadRunner.

3      48.    As a direct and proximate result of Defendants' willful, improper, and unlawful use

4  and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information,

5  RoadRunner has suffered and continues to be damaged. RoadRunner will continue to be

6  irreparably damaged unless Defendants are enjoined from further use and disclosure of

7  RoadRunner's Waste and Recycling Metering Confidential Information.

8      49.    The aforementioned acts of Defendants in wrongfully misappropriating

9  RoadRunner's Waste and Recycling Metering Confidential Information were and continue to be

10  willful and malicious, warranting an award of exemplary damages, as provided by Civ. Code §

11  3426.3(c), and an award of attorneys' fees, as provided by Civ. Code. § 3426.4.

## SECOND CAUSE OF ACTION

### [Breach of Contract against All Defendants]

14      50.    RoadRunner hereby repeats, realleges and incorporates by reference the allegations

15  which are contained in paragraphs 39 through 49.

16      51.    The Terms are a valid and enforceable contract between RoadRunner and RTS.

17  RoadRunner assumed the rights under the Terms by acquiring Compology, an original party to the

18  Terms. RTS assumed the obligations and liabilities under the terms by acquiring RecycleSmart, an

19  original party to the Terms.

20      52.    The Terms are binding on each of the Defendants because when RTS acquired

21  RecycleSmart, (1) RTS assumed all of the obligations and liabilities of RecycleSmart (and its

22  subsidiary, Pello), and/or (2) there exists a unity of interest among RTS, RecycleSmart and Pello

23  such that the three companies are in practice a "single enterprise."

24      53.    Pursuant to the Terms, therefore, Defendants had obligations not to: (1) disclose

25  RoadRunner's Confidential Information to any third party; (2) copy, adapt, modify, or create

26  derivative works of RoadRunner's waste and recycling metering technology, (3) reverse engineer

27  or attempt to derive the source code and other components of the waste and recycling metering

28  technology, (4) use the waste and recycling metering technology in a manner that infringes,

JMBM | Jeffer Mangels Butler & Mitchell LLP

71462949v5

11

1   misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling

2   Metering Confidential Information, or (5) combine or integrate RoadRunner's waste and recycling

3   metering technology with software, technology, services, and/or materials not authorized by

4   RoadRunner.

5        54.    The foregoing covenants in the Terms were intended and necessary to protect

6   RoadRunner's legitimate business interest in its Confidential Information.

7        55.    Defendants breached the Terms by, *inter* alia, (1) disclosing RoadRunner's

8   Confidential Information to third parties, (2) copying, adapting, modifying, or creating derivative

9   works of RoadRunner's waste and recycling metering technology, (3) reverse engineering or

10  attempting to derive the source code and other components of the waste and recycling metering

11  technology, (4) using the waste and recycling metering technology in a manner that infringes,

12  misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling

13  Metering Confidential Information, and (5) combining or integrating RoadRunner's waste and

14  recycling metering technology with software, technology, services, and/or materials not authorized

15  by RoadRunner.

16       56.    Defendants continue to wrongfully retain and use RoadRunner's Confidential

17  Information without excuse under law or contract.

18       57.    RoadRunner has fully performed all of its material obligations and satisfied all

19  conditions for performance under the Terms except those that were waived or excused or are

20  unenforceable by Defendants.

21       58.    Defendants have willfully, and with conscious disregard for the contractual

22  obligations owed to RoadRunner, breached the Terms.

23       59.    Unless restrained and enjoined by the Court, Defendants will continue to breach the

24  Terms.

25       60.    As a foreseeable, direct and proximate result of Defendants' breach of contract,

26  RoadRunner has suffered irreparable injury to its rights and pecuniary damages. RoadRunner will

27  continue to suffer such injury, loss, and damage unless and until Defendants are required to return

28  RoadRunner's Confidential Information, and enjoined from further use and disclosure of

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1   RoadRunner's Confidential Information.

2       61.     But for Defendants' breaches of contract, RoadRunner would not have been injured

3   by Defendants unlawfully disclosing and using RoadRunner's Confidential Information or by

4   failing to return RoadRunner's Confidential Information.

5       62.     Defendants have derived and received and will continue to derive and receive from

6   the aforementioned breach of contract, gains, profits, and advantages.

7       63.     RoadRunner is entitled to injunctive relief as well as damages, the nature and

8   extent of which will be proved at trial.

9                            **PRAYER FOR RELIEF**

10      WHEREFORE, RoadRunner prays for the following relief:

11      1.      A judgment that Defendants are liable on all causes of action alleged herein;

12      2.      An order requiring Defendants to account for all gains, profits and advantage

13   derived from their misappropriation of RoadRunner's confidential, proprietary and/or trade secret

14   information;

15      3.      An order requiring Defendants to disgorge all profits earned from their unlawful

16   conduct, together with restitution to RoadRunner arising from Defendants' unlawful conduct;

17      4.      An order awarding actual damages according to proof;

18      5.      An order awarding exemplary and/or punitive damages to the extent allowed by

19   law and in an amount according to proof;

20      6.      An order awarding pre-judgment and post-judgment interest;

21      7.      An order awarding attorneys' fees, costs and expenses;

22      8.      Preliminary and permanent injunctive relief pursuant to which Defendants, and

23   their employees, officers, directors, and/or representatives, and all persons acting in concert or

24   participating with it are ordered, enjoined, or restrained, directly or indirectly, by any means

25   whatsoever, as follows:

26          (a)     From manufacturing, making, distributing, marketing, offering to sell or

27                  selling products that utilize, embody, or were developed using

28                  RoadRunner's Waste and Recycling Metering Confidential Information and

RoadRunner's Confidential Information;

(b)   From disclosing or using anywhere RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information;

(c)   From disclosing or using anywhere any RoadRunner trade secret or other proprietary or confidential information or information derived therefrom;

(d)   From offering to sell or selling to anyone, anywhere, any products that use any RoadRunner trade secret or other proprietary or confidential information, specifically including RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information;

(e)   Immediately preserving and returning to RoadRunner (i) all copies of all RoadRunner's documents and proprietary or confidential information, including without limitation RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information, and any trade secret and other confidential or proprietary information acquired directly or indirectly from RoadRunner; (ii) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from any, RoadRunner's trade secrets or other confidential or proprietary information; and (iii) all physical materials, including all prototypes, designs, modules, parts, electronics, or otherwise in Defendants' possession relating to the Pello product; and

(f)   Turning over to the Court any proceeds that Defendants have received from their misappropriation of RoadRunner's trade secrets and proprietary and confidential information and other unlawful conduct, including all proceeds received in connection with the Pello product, such proceeds to be held in constructive trust until the conclusion of this litigation; and

9.   All such other relief that the Court deems just and proper.

DATED:  August 4, 2023

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA


By:  _____
                STANLEY M. GIBSON
          Attorneys for Plaintiff ROADRUNNER
          RECYLING, INC.


## DEMAND FOR JURY TRIAL

Plaintiff RoadRunner Recycling, Inc. hereby demand a trial by jury in the above-captioned

matter on all matters so triable.


DATED:  August 4, 2023

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA


By:  _____
                STANLEY M. GIBSON
          Attorneys for Plaintiff ROADRUNNER
          RECYLING, INC.

71462949v5

15

COMPLAINT

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Stanley M. Gibson (SBN 162329)/James M. Neudecker (SBN 221657) Joseph J. Mellema (SBN 248118) JEFFER MANGELS BUTLER & MITCHELL LLP 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA   90067-4308 TELEPHONE NO.: (310) 203-8080   FAX NO. *(Optional):* (310) 203-0567 E-MAIL ADDRESS: sgibson@jmbm.com/jneudecker@jmbm.com ATTORNEY FOR *(Name):* Plaintiff ROADRUNNER RECYCLING, INC. | **ELECTRONICALLY** **F I L E D** *Superior Court of California, County of San Francisco* **08/04/2023** **Clerk of the Court** **BY: AUSTIN LAM** **Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS:   400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE:   San Francisco 94102
BRANCH NAME:

CASE NAME: RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | **CGC-23-608135** |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☒ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* Two
5. This case ☐ is   ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 4, 2023

Stanley M. Gibson ▶
*(TYPE OR PRINT NAME)*                                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 *www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

|  |  |
|---|---|
| **DATE:** | **JAN 03, 2024** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610** |
|  | **400 McAllister Street** |
|  | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

### ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



## Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

### WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.   In ADR, trained, impartial people decide disputes or help parties decide disputes themselves.  They can help parties resolve disputes without having to go to trial.

### WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

### WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

### 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

### 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

#### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

#### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

### For more information about ADR programs or dispute resolution alternatives, contact:

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:<br><br>ATTORNEY FOR *(Name):* | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) _____

☐ Other ADR process (describe) _____

2) The parties agree that the ADR Process shall be completed by (date): _____
3) Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

| | |
|---|---|
| _____ | _____ |
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RECYCLE TRACK SYSTEMS, INC., RECYCLESMART SOLUTIONS, INC., PELLO, and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROADRUNNER RECYCLING, INC.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|

San Francisco County Superior Court
400 McAllister Street
San Francisco, CA  94102

**CGC-23-608135**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stanley M. Gibson (SBN 162329)/ James M. Neudecker (SBN 221657) Joseph J. Mellema (SBN 248118)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor, Los Angeles, CA  90067-4308 Tel. (310) 203-8080

| DATE: **08/04/2023**<br>*(Fecha)* | Clerk, by **AUSTIN LAM**<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Pello
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON (Bar No. 162329)
*sgibson@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:      (310) 203-8080
Facsimile:      (310) 203-0567

JAMES M. NEUDECKER (Bar No. 221657)
*jneudecker@jmbm.com*
2 Embarcadero Center, Fifth Floor
San Francisco, CA 94111
Telephone:      (415) 398-8080
Facsimile:      (415) 398-5584

JOSEPH J. MELLEMA (Bar No. 248118)
*jmellema@jmbm.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:      (949) 623-7200
Facsimile:      (949) 623-7202

Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/04/2023**
**Clerk of the Court**
BY: AUSTIN LAM
**Deputy Clerk**

**CGC-23-608135**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR (1) TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT; AND (2) BREACH OF CONTRACT** |
| v. | |
| RECYCLE TRACK SYSTEMS, INC., RECYCLESMART SOLUTIONS, INC., PELLO, and DOES 1-25, inclusive, | |
| Defendants. | |

71462949v5

COMPLAINT

1    Plaintiff RoadRunner Recycling, Inc. ("RoadRunner") alleges as follows:

2                                    **INTRODUCTION**

3        1.      This case arises from Defendants Recycle Track Systems, Inc.'s ("RTS"),

4    RecycleSmart Solutions, Inc.'s ("RecycleSmart") and Pello's (collectively "Defendants") theft of

5    RoadRunner's waste and recycling metering technology and breach of contract.

6        2.      RoadRunner's predecessor-in-interest, Compology, Inc. ("Compology") developed

7    highly valuable and proprietary trade secrets in its waste and recycling metering technology over

8    the course of many years, expending millions of dollars and tens of thousands of person-hours in

9    the process.

10       3.      RTS's wholly-owned subsidiary and predecessor-in-interest, RecycleSmart,

11   contracted with RoadRunner's predecessor-in-interest, Compology. Pursuant to that contract,

12   Compology delivered confidential and proprietary information to RecycleSmart, including its

13   proprietary waste and recycling metering technology, with expressly narrow limitations on

14   disclosure and use of Compology's confidential and proprietary information. RoadRunner

15   assumed all rights under the contract and all intellectual property, including trade secrets, when it

16   acquired Compology in 2022.

17       4.      RTS, through RecycleSmart, and RecycleSmart's wholly-owned subsidiary Pello,

18   misappropriated RoadRunner's trade secrets embodied in its confidential information and waste

19   and recycling management technology it obtained under these contractual limitations and used that

20   information to develop RTS's competing product, Pello, to the detriment of RoadRunner.

21   Defendants continue to misappropriate RoadRunner's trade secrets and breach the contractual

22   obligations under the contract.

23       5.      Without intervention, Defendants will continue to misappropriate RoadRunner's

24   trade secrets and continue to breach contractual covenants to RoadRunner. RoadRunner seeks

25   actual and exemplary/punitive damages for Defendants' wrongful acts, as well as pre-judgment

26   and post-judgment interest. RoadRunner also seeks an order requiring Defendants to return

27   RoadRunner's confidential and propriety information and enjoining RTS from further wrongful

28   acts.

**PARTIES**

6.    RoadRunner is a Delaware corporation, with a principal place of business in Pittsburgh, Pennsylvania.

7.    RTS is a New York corporation, with a principal place of business in New York, New York. In March 2023, RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia-based company, including RecycleSmart's subsidiary, Pello.

8.    On information and belief, RecycleSmart is a British Columbia corporation, with a principal place of business in Richmond, British Columbia.

9.    On information and belief, Pello is a British Columbia corporation wholly owned by RecycleSmart, with a principal place of business in Richmond, British Columbia.

10.    RoadRunner is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1 through 25, inclusive. RoadRunner therefore sues said defendants by such fictitious names. RoadRunner will amend this Complaint to show their true names or capacities when the same have been ascertained.

11.    RTS, RecycleSmart, Pello, and DOES 1 through 25, inclusive, are collectively referred to as "Defendants."

**JURISDICTION AND VENUE**

12.    RoadRunner acquired Compology, a San Francisco, California-based company in October 2022, assuming and assigning all intellectual property and assuming all of Compology's rights under an agreement with RecycleSmart titled "Compology Terms and Conditions," under which the parties agreed to submit to the non-exclusive jurisdiction of the state and federal courts in the Northern District of California.

13.    RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia company, in March 2023. On information and belief, when RTS acquired RecycleSmart, RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligation and liability under the Terms, and the obligations and liabilities of RecycleSmart's wholly-owned subsidiary, Pello, including the aforementioned prohibitions against disclosure and improper use of RoadRunner's Confidential Information. In addition, there exists a unity of interest among

1  RTS, RecycleSmart and Pello such that the three companies are in practice a "single

2  enterprise." Among other things, RecycleSmart and Pello share a common address, and RTS

3  exercises and directs control over RecycleSmart and Pello. Indeed, all three companies reference

4  on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus,

5  it would be unjust for any of the companies to be shielded from liability for the theft of

6  RoadRunner's technology. The Terms therefore are binding on each of the Defendants.

7        14.    This Court has jurisdiction over the subject matter of this action because it concerns

8  a contract entered into and/or performed in San Francisco County, because it concerns injuries that

9  occurred in San Francisco County, and because the amount in dispute exceeds the jurisdictional

10  minimum of this Court.

11        15.    This Court has personal jurisdiction over Defendants. Defendants have consented

12  to jurisdiction in the state and federal courts in the Northern District of California, and Defendants

13  have endeavored to unlawfully obtain RoadRunner's trade secrets that are maintained in San

14  Francisco County.

15        16.    Venue is proper in this Court, among other reasons, because Defendants have

16  consented to jurisdiction in the state and federal courts in the Northern District of California, the

17  contract at issue herein was entered into and/or performed in San Francisco County, and the action

18  concerns injuries that occurred in San Francisco County.

19                            **BACKGROUND**

20                **Compology Develops Proprietary Technology**

21        17.    Over the course of many years, Compology developed confidential and proprietary

22  waste and recycling metering technology powered by smart cameras and artificial intelligence

23  ("AI"). Compology expended millions of dollars and tens of thousands of person-hours to develop

24  its confidential and proprietary technology.

25        18.    Compology's confidential technology includes smart cameras (and accompanying

26  physical hardware) composed of both commercially available and proprietary, non-commercially

27  available electronic components. The arrangement and configuration of these components to

28  facilitate waste and recycling metering technology is a closely held trade secret and is not made

JMBM | Jeffer Mangels
Butler & Mitchell LLP

71462949v5

4

COMPLAINT

1   available to members of the public. Compology developed an AI system configured to operate

2   with the smart cameras at specified locations in waste bins in order to monitor fill levels of the

3   waste bins, among other things, to provide an efficient, economical, and cost-saving platform for

4   waste and recycling companies. Compology developed its AI system specifically for use with its

5   confidential smart camera technology using years' worth of machine learning data to train models

6   for use in monitoring the fill level of waste and recycling bins. This AI system thus utilizes

7   physical electronic components, network technology, and software/firmware to provide its unique

8   and confidential waste recycling metering technology.

9   **Compology and RecycleSmart Enter into the Terms**

10       19.     Compology and RecycleSmart entered into a "pilot" contract for a 10-camera

11   system on June 15, 2017. Compology and RecycleSmart's business relationship expanded from

12   2017-2022, to approximately $450,000 per year in revenue in 2022.

13       20.     On November 2, 2020, Compology and RecycleSmart entered into a renewal order

14   form that was subject to the "Compology Terms and Conditions" ("Terms") in which Compology

15   was to provide, among other things, Compology's System and Subscription Services to

16   RecycleSmart. The Terms defined System to mean "the Devices, the Software and/or the

17   combination thereof on an integrated basis to enable the collection, processing and/or delivery of

18   Device Data and Derivative Data," and Subscription Services to mean "the System hosted by

19   Compology and made available to Customer, along with the provision by Compology of services

20   relating thereto, to include but not be limited to Device delivery, installation, maintenance and

21   monitoring, reporting, Software fixes and updates, hosting and service analysis and

22   benchmarking."

23       21.     Under Section 2.1.5 of the Terms, RecycleSmart agreed that it "shall not use the

24   System or any component thereof for any purposes beyond the scope of the license granted in

25   these Terms." Pursuant to that same section, RecycleSmart agreed that it "shall not at any time,

26   and shall not permit others to:"

27       (i) copy, adapt, modify, or create derivative works of the System, in whole or in part
         except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble,
28       decompile, decode, adapt, make error corrections to or otherwise attempt to derive or

gain access to the source code or any other component of the System, in whole or in part; . . . (v) use the System or any component thereof in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law; or (vi) combine or integrate the Device or Software with any software, technology, services, or materials not authorized by Compology. Additionally, Customer covenants and agrees not to, directly or indirectly, manipulate or process Device Data, through interaction with databases, algorithms, external data, calculations and/or other processes, methods or tools, for the purposes of deriving Derivative Data.

22.     The Terms define Confidential Information as

[A] Party's non-public business, financial, technical, legal and personnel information, and includes, for example, product designs and data, source code, trade secrets, pricing, customer and supplier lists, network structure and addresses, designs, technical specifications, business plans, these Terms and any other non-public data whether written, verbal or visual, connected to or related to the business and affairs of a Party or any of its affiliates.

23.     The Terms prohibited RecycleSmart from disclosure of the Confidential Information in Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use the Confidential Information of the other Party in its business or for any other purpose except as expressly permitted in these Terms."

**RecycleSmart Misappropriates RoadRunner's Trade Secrets and Breaches the Terms**

24.     As early as 2017, Compology delivered the System and Subscription Services to RecycleSmart, including Compology's devices and software configured to enable the collection, processing and/or delivery of device data and derivative data. As part of this delivery, RecycleSmart had continuing access to Compology's Confidential Information, including the System, proprietary images, data, and processes, and Compology's large database of labeled and tagged images. The Confidential Information included Compology's proprietary and confidential waste and recycling metering technology, among other things. The Confidential Information was kept confidential from all third parties and, pursuant to the Terms, could not be disclosed or used except as expressly provided in the Terms.

25.     As described herein, this Confidential Information required *years* to properly aggregate and label.  To bypass the time and effort necessary to develop the technology itself, and on information and belief, RecycleSmart wrongly used Compology's Confidential Information to train its own AI model to compete against Compology using its Pello cameras.

26.     As part of the parties' contractual relationship, Compology provided RecycleSmart with access to Compology's APIs to ingest Compology's data into RecycleSmart's software backend.

27.     In October 2021, RecycleSmart negotiated a 1-year contract renewal (rather than the previous 3-year contract).

28.     In January 2022, Compology discovered that Pello cameras were being installed in the same containers as those with Compology cameras. On information and belief, RecycleSmart began to use Compology's large database of labeled and tagged images to train its Pello cameras in violation of its express promises to Compology, including improper use of Compology's Confidential Information. On information and belief, RecycleSmart was training its Pello cameras to develop an AI system to operate independently from Compology, for RecycleSmart's own benefit and in violation of the Terms. On information and belief, RecycleSmart used Compology's data in combination with RecycleSmart's Pello cameras to develop an AI model.

29.     In October 2022, RoadRunner acquired Compology and assumed all of the rights under the Terms.

30.     In March 2023, RTS announced its acquisition of RecycleSmart, including RecycleSmart's wholly-owned subsidiary, Pello.  Previously, on October 31, 2022, RecycleSmart let its 1-year contract lapse with RoadRunner.

31.     On information and belief, RecycleSmart also reverse-engineered Compology's waste and recycling metering technology to develop RecycleSmart's Pello cameras. RoadRunner became suspicious that RecycleSmart had wrongfully disclosed and used its Confidential Information and waste and recycling metering technology. RoadRunner investigated its suspicions, in part, by reviewing a March 9, 2022 Federal Communications Commission ("FCC") report filed by RecycleSmart. RoadRunner's suspicions were confirmed.

32.     RoadRunner's investigation confirmed that RecycleSmart's Pello system was extremely similar to RoadRunner's waste and recycling metering technology. For example, RF test reports submitted with its FCC filing confirmed that the Pello system operated identically to RoadRunner's system for backhauling data, using substantially the same communication bands as

7

1  those used by RoadRunner's system.

2      33.    In addition, the Pello camera printed circuit board assembly ("PCBA") utilizes

3  virtually the same electronic components, including substantially the same microcontroller,

4  external RAM integrated circuit ("IC"), wide field-of-view camera lens, camera flash PCBA,

5  camera injection molded parts, "double-shot" rear housing with TPE overmolding, battery pack,

6  shape, color, and materials of the camera housing, recessed sensors for debris shedding, and

7  identical camera flash PCBA cutouts and mounting.

8      34.    The Pello system also utilized a three-point mounting system that is virtually

9  identical to RoadRunner's waste and recycling metering technology. Beyond the substantially

10  similar physical and electronic design, this three-point mounting system combined with a trained

11  AI model using, on information and belief, RoadRunner's database of labeled and tagged images,

12  confirms that RecycleSmart misappropriated RoadRunner's Confidential Information and waste

13  and recycling metering technology.

14      35.    On information and belief, RecycleSmart disclosed RoadRunner's Confidential

15  Information and waste and recycling metering technology to third parties to develop its competing

16  Pello system. This is apparent, among other reasons, because RecycleSmart's FCC filing indicates

17  different sources of custom and commercially available parts used in RecycleSmart's Pello

18  system.

19      **Defendants are Bound by the Terms and Liable for Each Other's Wrongful Acts**

20      36.    As described herein, RTS announced its acquisition of RecycleSmart, and its

21  subsidiary, Pello, in March 2023. On information and belief, when RTS acquired RecycleSmart,

22  RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligations

23  and liability under the Terms, and the obligations and liabilities of RecycleSmart's wholly-owned

24  subsidiary, Pello, including the aforementioned prohibitions against disclosure and improper use

25  of RoadRunner's Confidential Information. In addition, there exists a unity of interest among

26  RTS, RecycleSmart and Pello such that the three companies are in practice a "single

27  enterprise." Among other things, RecycleSmart and Pello share a common address, and RTS

28  exercises and directs control over RecycleSmart and Pello. Indeed, all three companies reference

JMBM  Jeffer Mangels
      Butler & Mitchell LLP

on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus, it would be unjust for any of the companies to be shielded from liability for the theft of RoadRunner's technology.

37.     Under the Terms and California law, privities-in-interest are bound to the Terms, and liable for the wrongful acts of their predecessors-in-interest, even after termination or expiration of the Terms, pursuant to Section 9.5: "The provisions of these Terms relating to (i) restrictions on license or use of the System; . . . (vi) ownership of intellectual property, (vii) confidentiality, . . . along with any other provisions that by their nature are intended to survive, will survive the termination or expiration of these Terms."

38.     Each Defendant therefore stepped into the shoes of the other Defendants and are bound by the Terms and liable for each other's wrongful acts, in addition to Defendants' continuing wrongful acts as described herein.

## **FIRST CAUSE OF ACTION**

**[Trade Secret Misappropriation Under California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*]**

39.     RoadRunner hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 38.

40.     This is a cause of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*, based on the wrongful misappropriation, use, and/or disclosure of RoadRunner's confidential information, including but not limited to Confidential Information as defined in the Terms, relating to RoadRunner's waste and recycling metering technology ("Waste and Recycling Metering Confidential Information").

41.     RoadRunner's Waste and Recycling Metering Confidential Information includes trade secrets because it derives independent economic value from not being generally known to the public or to others who can obtain economic value from its disclosure or use.

42.     RecycleSmart, RTS's predecessor-in-interest, gained access to RoadRunner's Waste and Recycling Metering Confidential Information in the course of a contractual relationship with Compology, RoadRunner's predecessor-in-interest, and was under an obligation to maintain

1  the secrecy of RoadRunner's trade secret information obtained during its contractual relationship
2  with RoadRunner and thereafter.

3      43.    In violation of RecycleSmart's obligations to maintain the secrecy of
4  RoadRunner's Waste and Recycling Metering Confidential Information, on information and
5  belief, RecycleSmart used RoadRunner's Waste and Recycling Metering Confidential Information
6  to develop a competing Pello product, and disclosed RoadRunner's Waste and Recycling Metering
7  Confidential Information to members of the general public to develop the competing Pello
8  product.

9      44.    RecycleSmart was also under an obligation not to use RoadRunner's Waste and
10  Recycling Metering Confidential Information for any purposes beyond the limitations of use
11  according to Section 2.1.5 of the Terms, including but not limited to copying, adapting,
12  modifying, or creating derivative works of RoadRunner's waste and recycling metering
13  technology, reverse engineering and attempting to derive the source code and other components of
14  the waste and recycling metering technology, using the waste and recycling metering technology
15  in a manner that infringes, misappropriates, and violates intellectual property rights in
16  RoadRunner's Waste and Recycling Metering Confidential Information, and combining and
17  integrating RoadRunner's waste and recycling metering technology with software, technology,
18  services, and/or materials not authorized by RoadRunner.

19      45.    Defendants have used and disclosed and continue to use and disclose
20  RoadRunner's Waste and Recycling Metering Confidential Information without RoadRunner's
21  consent or permission, in an attempt to benefit Defendants, and beyond the limitations of use
22  according to Section 2.1.5 of the Terms.

23      46.    Defendants have used or disclosed RoadRunner's Waste and Recycling Metering
24  Confidential Information maliciously and in willful and conscious disregard of the rights of
25  RoadRunner.

26      47.    Defendants are each liable for the wrongful acts of the other Defendants, and
27  Defendants have continued to perpetrate the aforementioned wrongful acts by wrongfully using
28  and disclosing RoadRunner's Waste and Recycling Metering Confidential Information, including

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  continuing malicious use and disclosure and in willful and conscious disregard of the rights of

2  RoadRunner.

3      48.    As a direct and proximate result of Defendants' willful, improper, and unlawful use

4  and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information,

5  RoadRunner has suffered and continues to be damaged. RoadRunner will continue to be

6  irreparably damaged unless Defendants are enjoined from further use and disclosure of

7  RoadRunner's Waste and Recycling Metering Confidential Information.

8      49.    The aforementioned acts of Defendants in wrongfully misappropriating

9  RoadRunner's Waste and Recycling Metering Confidential Information were and continue to be

10  willful and malicious, warranting an award of exemplary damages, as provided by Civ. Code §

11  3426.3(c), and an award of attorneys' fees, as provided by Civ. Code. § 3426.4.

**SECOND CAUSE OF ACTION**

**[Breach of Contract against All Defendants]**

14      50.    RoadRunner hereby repeats, realleges and incorporates by reference the allegations

15  which are contained in paragraphs 39 through 49.

16      51.    The Terms are a valid and enforceable contract between RoadRunner and RTS.

17  RoadRunner assumed the rights under the Terms by acquiring Compology, an original party to the

18  Terms. RTS assumed the obligations and liabilities under the terms by acquiring RecycleSmart, an

19  original party to the Terms.

20      52.    The Terms are binding on each of the Defendants because when RTS acquired

21  RecycleSmart, (1) RTS assumed all of the obligations and liabilities of RecycleSmart (and its

22  subsidiary, Pello), and/or (2) there exists a unity of interest among RTS, RecycleSmart and Pello

23  such that the three companies are in practice a "single enterprise."

24      53.    Pursuant to the Terms, therefore, Defendants had obligations not to: (1) disclose

25  RoadRunner's Confidential Information to any third party; (2) copy, adapt, modify, or create

26  derivative works of RoadRunner's waste and recycling metering technology, (3) reverse engineer

27  or attempt to derive the source code and other components of the waste and recycling metering

28  technology, (4) use the waste and recycling metering technology in a manner that infringes,

JMBM | Jeffer Mangels Butler & Mitchell LLP

71462949v5

11

COMPLAINT

misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling Metering Confidential Information, or (5) combine or integrate RoadRunner's waste and recycling metering technology with software, technology, services, and/or materials not authorized by RoadRunner.

54. The foregoing covenants in the Terms were intended and necessary to protect RoadRunner's legitimate business interest in its Confidential Information.

55. Defendants breached the Terms by, *inter* alia, (1) disclosing RoadRunner's Confidential Information to third parties, (2) copying, adapting, modifying, or creating derivative works of RoadRunner's waste and recycling metering technology, (3) reverse engineering or attempting to derive the source code and other components of the waste and recycling metering technology, (4) using the waste and recycling metering technology in a manner that infringes, misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling Metering Confidential Information, and (5) combining or integrating RoadRunner's waste and recycling metering technology with software, technology, services, and/or materials not authorized by RoadRunner.

56. Defendants continue to wrongfully retain and use RoadRunner's Confidential Information without excuse under law or contract.

57. RoadRunner has fully performed all of its material obligations and satisfied all conditions for performance under the Terms except those that were waived or excused or are unenforceable by Defendants.

58. Defendants have willfully, and with conscious disregard for the contractual obligations owed to RoadRunner, breached the Terms.

59. Unless restrained and enjoined by the Court, Defendants will continue to breach the Terms.

60. As a foreseeable, direct and proximate result of Defendants' breach of contract, RoadRunner has suffered irreparable injury to its rights and pecuniary damages. RoadRunner will continue to suffer such injury, loss, and damage unless and until Defendants are required to return RoadRunner's Confidential Information, and enjoined from further use and disclosure of

RoadRunner's Confidential Information.

61.   But for Defendants' breaches of contract, RoadRunner would not have been injured by Defendants unlawfully disclosing and using RoadRunner's Confidential Information or by failing to return RoadRunner's Confidential Information.

62.   Defendants have derived and received and will continue to derive and receive from the aforementioned breach of contract, gains, profits, and advantages.

63.   RoadRunner is entitled to injunctive relief as well as damages, the nature and extent of which will be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, RoadRunner prays for the following relief:

1.   A judgment that Defendants are liable on all causes of action alleged herein;

2.   An order requiring Defendants to account for all gains, profits and advantage derived from their misappropriation of RoadRunner's confidential, proprietary and/or trade secret information;

3.   An order requiring Defendants to disgorge all profits earned from their unlawful conduct, together with restitution to RoadRunner arising from Defendants' unlawful conduct;

4.   An order awarding actual damages according to proof;

5.   An order awarding exemplary and/or punitive damages to the extent allowed by law and in an amount according to proof;

6.   An order awarding pre-judgment and post-judgment interest;

7.   An order awarding attorneys' fees, costs and expenses;

8.   Preliminary and permanent injunctive relief pursuant to which Defendants, and their employees, officers, directors, and/or representatives, and all persons acting in concert or participating with it are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

      (a)   From manufacturing, making, distributing, marketing, offering to sell or selling products that utilize, embody, or were developed using RoadRunner's Waste and Recycling Metering Confidential Information and

RoadRunner's Confidential Information;

(b) From disclosing or using anywhere RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information;

(c) From disclosing or using anywhere any RoadRunner trade secret or other proprietary or confidential information or information derived therefrom;

(d) From offering to sell or selling to anyone, anywhere, any products that use any RoadRunner trade secret or other proprietary or confidential information, specifically including RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information;

(e) Immediately preserving and returning to RoadRunner (i) all copies of all RoadRunner's documents and proprietary or confidential information, including without limitation RoadRunner's Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information, and any trade secret and other confidential or proprietary information acquired directly or indirectly from RoadRunner; (ii) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from any, RoadRunner's trade secrets or other confidential or proprietary information; and (iii) all physical materials, including all prototypes, designs, modules, parts, electronics, or otherwise in Defendants' possession relating to the Pello product; and

(f) Turning over to the Court any proceeds that Defendants have received from their misappropriation of RoadRunner's trade secrets and proprietary and confidential information and other unlawful conduct, including all proceeds received in connection with the Pello product, such proceeds to be held in constructive trust until the conclusion of this litigation; and

9. All such other relief that the Court deems just and proper.

DATED:  August 4, 2023

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA


By:  _____
STANLEY M. GIBSON
Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.


## DEMAND FOR JURY TRIAL

Plaintiff RoadRunner Recycling, Inc. hereby demand a trial by jury in the above-captioned matter on all matters so triable.


DATED:  August 4, 2023

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA


By:  _____
STANLEY M. GIBSON
Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.

71462949v5

15

COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Stanley M. Gibson (SBN 162329)/James M. Neudecker (SBN 221657)<br>Joseph J. Mellema (SBN 248118)<br>JEFFER MANGELS BUTLER & MITCHELL LLP<br>1900 Avenue of the Stars, 7th Floor, Los Angeles, CA   90067-4308<br>TELEPHONE NO.: (310) 203-8080   FAX NO. *(Optional):* (310) 203-0567<br>E-MAIL ADDRESS: sgibson@jmbm.com/jneudecker@jmbm.com<br>ATTORNEY FOR *(Name):* Plaintiff ROADRUNNER RECYCLING, INC. | **ELECTRONICALLY**<br>**F I L E D**<br>**Superior Court of California,**<br>**County of San Francisco**<br>**08/04/2023**<br>**Clerk of the Court**<br>**BY: AUSTIN LAM**<br>**Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME:

CASE NAME: RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **CGC-23-608135** |
| | | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☒ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel       e. ☐ Coordination with related actions pending in one or more
       issues that will be time-consuming to resolve                      courts in other counties, states, or countries, or in a federal
   c. ☐ Substantial amount of documentary evidence                      court
                                                                        f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* Two
5. This case ☐ is   ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 4, 2023

Stanley M. Gibson
(TYPE OR PRINT NAME)                              ►                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                                                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

> **DATE:** **JAN 03, 2024**
>
> **TIME:** **10:30 am**
>
> **PLACE:** **Department 610**
> **400 McAllister Street**
> **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

> CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
>
> (SEE LOCAL RULE 4)

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



## Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**
It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

**WHAT ARE THE ADR OPTIONS?**
The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**
Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

(A) **MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

(B) **JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

(C) **PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

(D) **COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*)

*FOR COURT USE ONLY*

TELEPHONE NO.:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
| --- | --- |
| | **DEPARTMENT 610** |

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ **Other ADR process** (describe) _____

2) The parties agree that the ADR Process shall be completed by (date): _____
3) Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

| | |
| --- | --- |
| _____ | _____ |
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  10/18

**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**