# EXHIBIT B

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON (Bar No. 162329)
*sgibson@jmbm.com*
JAMES M. NEUDECKER (Bar No. 221657)
*jneudecker@jmbm.com*
2 Embarcadero Center, Fifth Floor
San Francisco, CA 94111
Telephone:      (415) 398-8080
Facsimile:      (415) 398-5584

SHAVON HENRY (Bar No. 326855)
*shenry@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:(310) 203-8080
Facsimile: (310) 230-0567

JOSEPH J. MELLEMA (Bar No. 248118)
*jmellema@jmbm.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:      (949) 623-7200
Facsimile:      (949) 623-7202

Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER RECYCLING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS, INC.,<br><br>Defendants. | Case No. 3:23-cv-04804-~~JCS~~WHA<br><br>~~FIRST~~SECOND  AMENDED COMPLAINT FOR (1) TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT; (2) TRADE SECRET MISAPPROPRIATION UNDER DEFEND TRADE SECRETS ACT; AND (3) BREACH OF CONTRACT<br><br>Complaint Filed:     August 4, 2023<br>Trial Date:          Not Yet Set |

Plaintiff RoadRunner Recycling, Inc. ("RoadRunner") alleges as follows:

**INTRODUCTION**

1. This case arises from Defendants Recycle Track Systems, Inc.'s ("RTS") and RecycleSmart Solutions, Inc.'s ("RecycleSmart") (collectively "Defendants") theft of RoadRunner's waste and recycling metering technology and breach of contract.

2. RoadRunner's predecessor-in-interest, Compology, Inc. ("Compology") developed highly valuable and proprietary trade secrets in its waste and recycling metering technology over the course of many years, expending millions of dollars and tens of thousands of person-hours in the process.

3. RTS's wholly-owned subsidiary and predecessor-in-interest, RecycleSmart, contracted with RoadRunner's predecessor-in-interest, Compology. Pursuant to that contract, Compology ~~delivered~~provided confidential and proprietary information to RecycleSmart, including its trade secrets as embodied in its confidential and proprietary ~~waste and recycling metering technology~~information, with expressly narrow limitations on disclosure and use of Compology's confidential and proprietary information. Specifically, under these non-use and non-disclosure provisions, Compology delivered its smart cameras and installed them inside of RecycleSmart's waste containers. It also disclosed details and features of its confidential and proprietary machine learning models and related algorithms and processes through delivery of Compology's web application and through customer service communications. RecycleSmart further obtained Compology's training data through access to millions of labeled and tagged images taken by Compology's smart cameras of RecycleSmart's waste containers. RoadRunner assumed all rights under the contract and all intellectual property, including trade secrets, when it acquired Compology in 2022.

4. RecycleSmart (and RTS, ~~through~~when it acquired RecycleSmart~~,~~) misappropriated ~~RoadRunner's~~Compology's trade secrets ~~embodied in its confidential information and waste and recycling management technology~~ it obtained under these contractual limitations ~~and used that~~by wrongfully using the trade secret information to develop ~~RTS's~~Defendants' competing product,

Pello, to the detriment of ~~RoadRunner.~~ Compology and for RecycleSmart's benefit. Specifically, RecycleSmart obtained access to Compology's smart camera apparatus and, on information and belief, wrongfully disassembled and used the camera apparatus to develop the Pello product in violation of its agreement with Compology, thereby misappropriating Compology's smart camera apparatus and optical assembly and design.

5.     In addition, RecycleSmart obtained access to details and features of Compology's machine-learning models, image preprocessing techniques, and related algorithms and processes through delivery of Compology's web application and through customer service communications. On information and belief, RecycleSmart wrongfully used this information to misappropriate Compology's trade secrets in its imaging preprocessing techniques and algorithms and processes.

6.     RecycleSmart also obtained Compology's training data through access to millions of labeled and tagged images of its waste containers taken by Compology's smart cameras of RecycleSmart's waste containers. On information and belief, RecycleSmart used those images to derive its own training data set and develop machine-learning models in violation of contractual use restrictions, thereby misappropriating Compology's training data. RecycleSmart also, on information and belief, combined these images with other images from its Pello cameras that it placed in substantially the same areas as Compology's smart cameras to validate the training data, also in violation of non-use agreement with Compology. Defendants continue to misappropriate RoadRunner's trade secrets and breach the contractual obligations under the contract.

7.     ~~5.~~ Without intervention, Defendants will continue to misappropriate RoadRunner's trade secrets and continue to breach contractual covenants to RoadRunner. RoadRunner seeks actual and exemplary/punitive damages for Defendants' wrongful acts, as well as pre-judgment and post-judgment interest. RoadRunner also seeks an order requiring Defendants to return RoadRunner's confidential and propriety information and enjoining RTS from further wrongful acts.

## PARTIES

8. ~~6.~~ RoadRunner is a Delaware corporation, with a principal place of business in Pittsburgh, Pennsylvania.

9. ~~7.~~ RTS is a New York corporation, with a principal place of business in New York, New York. In March 2023, RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia-based company.

10. ~~8.~~ On information and belief, RecycleSmart is a British Columbia corporation, with a principal place of business in Richmond, British Columbia.

## JURISDICTION AND VENUE

11. ~~9.~~ This Court has diversity jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a)(3) because the matter in controversy exceeds $75,000 and Plaintiff is a citizen of a state (Delaware and Pennsylvania) that is different from the state of citizenship of the Defendants (New York; British Columbia).

12. ~~10.~~ This Court has original jurisdiction over the Defend Trade Secrets Act claim in this action pursuant to 18 U.S.C. § 1836.

13. ~~11.~~ RoadRunner acquired Compology, a San Francisco, California-based company in October 2022, assuming and assigning all intellectual property and assuming all of Compology's rights under an agreement with RecycleSmart titled "Compology Terms and Conditions," under which the parties agreed to submit to the non-exclusive jurisdiction of the state and federal courts in the Northern District of California.

14. ~~12.~~ RTS announced its acquisition of RecycleSmart, a Richmond, British Columbia company, in March 2023. On information and belief, when RTS acquired RecycleSmart, RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligation and liability under the Terms, including the aforementioned prohibitions against disclosure and improper use of RoadRunner's Confidential Information. In addition, there exists a unity of interest among RTS and RecycleSmart such that these companies are in practice a "single enterprise." Among other things, RTS exercises and directs control over RecycleSmart. Indeed,

these companies reference on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus, it would be unjust for any of the companies to be shielded from liability for the theft of RoadRunner's technology. The Terms therefore are binding on each of the Defendants.

15. ~~13.~~ This Court has both general and specific jurisdiction over Defendants because Defendants have consented to jurisdiction in the state and federal courts in the Northern District of California, and Defendants have endeavored to unlawfully obtain RoadRunner's trade secrets that are maintained in this District.

16. ~~14.~~ Venue is proper in this Court, among other reasons, because Defendants have consented to jurisdiction in the state and federal courts in the Northern District of California, the contract at issue herein was entered into and/or performed in this District, and the action concerns injuries that occurred in this District.

**BACKGROUND**

**Compology Develops Confidential and Proprietary ~~Technology~~Trade Secrets**

17. ~~15.~~ Over the course of many years, Compology developed confidential and proprietary waste and recycling metering technology powered by smart cameras and artificial intelligence ("AI")~~.~~ in the form of machine learning and related algorithms, as more fully described in Plaintiff's Identification of Trade Secrets.[1] Compology expended millions of dollars and tens of thousands of person-hours to develop its confidential and proprietary technology. RoadRunner's trade secrets as they relate to the instant action are (1) the overall waste and recycling metering system, (2) smart camera apparatus, (3) optical assembly and design, (4) image preprocessing in camera apparatus for use by machine-learning training and operation, (5) training data stored in a database and comprising labeled and tagged images and associated metadata, and

---

[1] RoadRunner has filed, under seal, Plaintiff's Identification of Trade Secrets pursuant to the Court's December 26, 2023 Order Granting Motion to Dismiss RoadRunner's First Amended Complaint (Dkt. No. 43) and California Code of Civil Procedure § 2019.210. RoadRunner filed the aforementioned document under seal to preserve the secrecy of its trade secrets and has requested the Court to maintain its secrecy by sealing the document and order that Defendants' counsel, nor any other third party, must not disclose them, including to Defendants themselves.

(6) algorithms and processes to generate data, analysis, and recommendations to customers, including fullness, emptiness, contamination, schedules, data ingestion efficiencies, and location analysis of waste containers.

16. Compology's confidential technology includes smart cameras (and accompanying physical hardware) composed of both commercially available and proprietary, non-commercially available electronic components. The arrangement and configuration of these components to facilitate waste and recycling metering technology is a closely held trade secret and is not made available to members of the public. Compology developed an AI system configured to operate with the smart cameras at specified locations in waste bins in order to monitor fill levels of the waste bins, among other things, to provide an efficient, economical, and cost-saving platform for waste and recycling companies. Compology developed its AI system specifically for use with its confidential smart camera technology using years' worth of machine learning data to train models for use in monitoring the fill level of waste and recycling bins. This AI system thus utilizes physical electronic components, network technology, and software/firmware to provide its unique and confidential waste recycling metering technology.

**Compology's Overall Waste and Recycling Metering System**

18. RoadRunner's trade secrets include the overall know-how and design of its waste and recycling metering system, which includes the physical hardware components such as the smart camera apparatus, the optical assembly and design, the image preprocessing in the camera apparatus, the training data stored in the database, and the algorithms and processes, as described more fully herein, and as described in Plaintiff's Identification of Trade Secrets. Although certain components of RoadRunner's smart camera design employ commercially available parts, the combination of those parts, with non-commercially available parts, and the unique configuration of the parts in a smart camera assembly, integrates significant know-how and techniques learned during its development and testing process. Integrating the aforementioned elements together into a comprehensive system for managing waste and recycling metering took a decade of innovation, troubleshooting, and iterative experimentation, as well as substantial investments from

Compology.

19.    The combination of this hardware, image preprocessing, training data, and algorithms and processes as implemented in a waste metering system is itself a trade secret. In addition, as described herein, these features are also separately trade secrets.

20.    None of this technology is publicly available and is kept strictly confidential and secret to all third parties, except by disclosure under strict and narrow non-disclosure and non-use provisions, as described more fully herein.

**Compology's Smart Camera Apparatus**

21.    Developing a battery operated, wireless camera system that must survive in the harsh environment of industrial and commercial trash containers for 5+ years is non-trivial. Over the last 10 years, Compology designed, tested, certified, and ultimately entered mass production on six different versions of waste metering camera technology. Each version refined the performance in critical areas unique to this challenging product field. These areas include environmental challenges, optical challenges, radio frequency ("RF") performance, and battery life. Compology's innovation resulted in highly customized designs, requiring the fabrication of custom components and assemblies, all of which are the sum of years of trial and error, testing, and refinement. Compology's experimentation is described in detail in Plaintiff's Identification of Trade Secrets.

22.    Compology employed various confidential and proprietary techniques to achieve an accurate, low-power, smart camera apparatus for use in waste containers. Selection of the camera elements and accompanying electronic components were all central to sufficiently capturing images within varying waste containers, in varying environments, with varying light exposure, while balancing those needs with preservation of battery life.

23.    Compology's smart camera apparatus trade secret consists of both commercially available and proprietary, non-commercially available electronic components. Compology's smart camera apparatus includes a smart camera, including a CMOS Camera Module ("CCM") with wide field-of-view camera lens, battery pack, high-durability injection-molded parts, including a

"double shot" rear housing with TPE overmolding, front housing with recessed sensors for debris shielding, and camera and flash PCBA cutouts and mounting, and optical windows with high scratch-resistance, and specialized coatings; printed circuit board assemblies ("PCBAs") containing microcontrollers, external RAM integrated circuit ("IC"), wireless communication systems, accelerometer, GPS, environmental sensors, and a camera flash LED. Compology's smart camera assembly trade secret and its components and features are more fully detailed in Plaintiff's Identification of Trade Secrets.

24. Compology's optical assembly and design, as part of the smart camera apparatus, is its own trade secret, as described herein, but also is part of a broader trade secret encompassing the aforementioned elements.

25. Compology's wireless communication module and wireless networking design and techniques are also part of Compology's smart camera apparatus. Compology smart camera assemblies are designed to function when the wireless communication system is able to communicate with the server. This is a particular challenge for a waste metering system because the vast majority of commercial and industrial waste containers are composed of steel boxes, which closely resemble Faraday Cages—a device intended to isolate and inhibit RF signal transmission. Compology selected a particular low-power wireless communication module using a carefully designed antenna to overcome this challenge, among others as described further in Plaintiff's Identification of Trade Secrets. Compology also designed techniques to accommodate loss of cellular communication. Compology's use of this technology was particularly suited to low bandwidth / low power applications to lengthen the battery life of the smart camera apparatus. Compology's smart camera apparatus includes a sensor suite for location identification, important for use in tracking waste containers and customer assets. The location identification sensors are also employed to provide accurate service events and recommendations to the customer.

26. Compology's smart camera apparatus also includes a specific and unique battery technology chosen in combination with the other elements of the smart camera apparatus to lengthen the time in the waste container to five years or more without replacement. Battery life is

paramount to the success of Compology's hardware products, impacting overall smart camera assembly lifespan and hence cost and profitability. Among the factors Compology needed to balance are low-power consumption, battery capacity, size, weight, and temperature performance. An exotic battery chemistry was selected for the Compology's cameras to meet these strict requirements.

27.     Each of these elements is described in further detail in Plaintiff's Identification of Trade Secrets.

28.     Compology's smart camera assembly is not publicly available. Neither Compology nor RoadRunner disclosed its smart camera apparatus trade secret through publicly available submissions to the Federal Communications Commission ("FCC") or through online marketing materials. A third party could not inspect and utilize Compology's confidential and proprietary smart camera apparatus without improperly obtaining and disassembling it.

**Compology's Optical Assembly and Design**

29.     As part of its smart camera apparatus, Compology iteratively developed its optics assembly and design. Compology selected the components of its optical assembly and design for use with harsh weather conditions, durability to withstand physical damage, and to facilitate debris shedding. The camera optics, camera flash, sensor, and housing, including physical cutouts and mounting, were iteratively developed over the course of many years to optimize the captured images for use with Compology's machine learning algorithms to determine fullness levels, emptying events, and contamination events and types.

30.     Compology selected the camera lens and optical assembly materials to overcome extreme environmental conditions in a variety of types of waste containers. It also selected and iteratively determined durable materials and techniques applied to the housing materials to prevent physical damage, decrease vibrations, and seal the optical design elements to prevent ingress and light penetration for sensitive optical and electronic components. Compology further selected and designed the arrangement of the camera lens and camera flash to ensure sufficient accurate image capture of the interior of a variety of waste containers by evenly delivering light to the widest area

J M B M | Jeffer Mangels Butler & Mitchell LLP

inside the waste containers. Compology also experimented with different lighting characteristics, colors, and intensities to balance sufficient image capture against longevity of battery life in the low-power smart camera apparatus to arrive at its optical assembly and design.

31.     Compology's optical assembly and design trade secret includes the camera lens, camera flash, sensor, and housing, including the housing's physical cutouts and mounting. Compology's optical assembly and design is not publicly available. Neither Compology nor RoadRunner disclosed its confidential and proprietary technology through publicly available submissions to the FCC or through online marketing materials. A third party could not inspect and utilize Compology's confidential and proprietary optical assembly and design without improperly obtaining and disassembling it.

**Compology's Image Preprocessing Techniques**

32.     Compology experimented with different image preprocessing techniques before employing an image enhancement design. These techniques overcame lighting issues within waste containers and prepared the images to be suitable for ingestion into Compology's training data for training its machine-learning models and for its models to accurately determine fullness level, emptying events, and contamination of the waste containers. Compology's techniques are implemented in the smart camera apparatus before transmission of the images to Compology's database. The specific trade secret techniques Compology employed are described in Plaintiff's Identification of Trade Secrets.

33.     Compology kept its image processing techniques secret from third parties except by disclosure under strict and narrow non-disclosure and non-use provisions, as described more fully herein.

**Compology's Training Data**

34.     As described herein, Compology employs machine learning to analyze images of waste containers. To manually review and identify metrics of waste containers using installes only is cumbersome and inefficient. Thus, Compology developed a machine learning system to automatically analyze and label and tag images for use by Compology's algorithms and processes

that it uses to provide data, analysis, and recommendations to its customers, among other things. To automate Compology's process of analyzing images of waste containers, Compology used training data to train its machine learning models such that, when sufficiently trained, the machine learning models could label and tag images of waste containers without significant human involvement.

35. Compology's training data is a trade secret and is central to Compology's training of its machine learning models and operation of its services. Indeed, in machine learning, the size and quality of the training data are the most determinative factors for creating effective machine learning systems. At or around 2015, Compology started the process of training machine learning models for fullness levels of waste containers. Over the course of years, Compology manually labeled and tagged images from Compology's smart camera assemblies and built up a database of millions of images and related labels and tags. Specifically, the images were taken with Compology's smart cameras, delivered wirelessly to Compology's server, and stored on a database. Compology then manually labeled and tagged these images with particular information detailing fullness levels, emptying events, contamination types, and other information used by Compology's algorithms and processes. This process took over seven years. The metadata included opinion data (e.g., fullness level data) as labels and tags in metadata associated with specified images.

36. The training data includes the processed images themselves as well as manually created labels of container fullness, content, empty events, among others. After a critical mass of images were stored in the database as a training set, Compology was able to develop working machine learning models for fullness levels of waste containers, content of the containers, and the empty/service state of containers over time. The machine learning models developed through the training data are implemented in an AI system in order to automate the ingestion and classification of images and provide automatic labels and tags associated with the particular images. It is also possible to train successful machine learning models from the output of other models.

37. Compology's training data, its use in training its machine learning models, and its

use in Compology's algorithms and processes are detailed in Plaintiff's Identification of Trade Secrets.

38.     Compology kept its training data secret from third parties except by disclosure and use under strict and narrow non-disclosure and non-use provisions, as described more fully herein.

**Compology's Algorithms and Processes**

39.     Compology developed algorithms and processes configured to generate data, analysis, and recommendations to customers, including fullness, emptiness, contamination, scheduling, data ingestion efficiencies, and location analysis of waste containers. Compology's algorithms and processes are closely held trade secrets and are embodied in source and object code. As described herein, these algorithms and processes were described to RecycleSmart or made available to them in a series of customer service communications and through access to Compology's web application.

40.     As described herein, Compology uses its machine learning models, as implemented in its AI system, to analyze images and label and tag those images with fullness, emptiness, and contamination labels and tags. Rather than having to rely on humans manually labeling and tagging images, Compology's machine learning models automate the processes for ease of use among hundreds and thousands of waste containers of its customers. Compology's algorithms and processes utilize the labeled and tagged images to perform services for its customers, including generation of data for its customers to monitor for its own business uses and recommendations of scheduling changes for use with collection schedules by waste generators and waste haulers (e.g., rightsizing), analysis, and recommendations, among other things. Compology's algorithms and processes are unique and custom-fit for use in the waste and recycling metering space. Compology's algorithms and processes are detailed in Plaintiff's Identification of Trade Secrets.

41.     Compology's algorithms and processes independently, and as an overall software system, are each trade secrets.

42.     Compology kept its algorithms and processes secret from third parties except by disclosure and use under strict and narrow non-disclosure and non-use provisions, as described

**Compology and RecycleSmart Enter into the Terms**

43. ~~17.~~ Compology and RecycleSmart entered into a "pilot" contract for a 10-camera system on June 15, 2017. Compology and RecycleSmart's business relationship expanded from 2017-2022, to approximately $450,000 per year in revenue in 2022.

44. ~~18.~~ On November 2, 2020, Compology and RecycleSmart entered into a renewal order form that was subject to the "Compology Terms and Conditions" ("Terms") in which Compology was to provide, among other things, Compology's System and Subscription Services to RecycleSmart. The Terms defined System to mean "the Devices, the Software and/or the combination thereof on an integrated basis to enable the collection, processing and/or delivery of Device Data and Derivative Data," and Subscription Services to mean "the System hosted by Compology and made available to Customer, along with the provision by Compology of services relating thereto, to include but not be limited to Device delivery, installation, maintenance and monitoring, reporting, Software fixes and updates, hosting and service analysis and benchmarking."

45. ~~19.~~ Under Section 2.1.5 of the Terms, RecycleSmart agreed that it "shall not use the System or any component thereof for any purposes beyond the scope of the license granted in these Terms." Pursuant to that same section, RecycleSmart agreed that it "shall not at any time, and shall not permit others to:"

(i) copy, adapt, modify, or create derivative works of the System, in whole or in part except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble, decompile, decode, adapt, make error corrections to or otherwise attempt to derive or gain access to the source code or any other component of the System, in whole or in part; . . . (v) use the System or any component thereof in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law; or (vi) combine or integrate the Device or Software with any software, technology, services, or materials not authorized by Compology. Additionally, Customer covenants and agrees not to, directly or indirectly, manipulate or process Device Data, through interaction with databases, algorithms, external data, calculations and/or other processes, methods or tools, for the purposes of deriving Derivative Data.

46. ~~20.~~ The Terms define Confidential Information as [A] Party's non-public business, financial, technical, legal and personnel

information, and includes, for example, product designs and data, source code, trade secrets, pricing, customer and supplier lists, network structure and addresses, designs, technical specifications, business plans, these Terms and any other non-public data whether written, verbal or visual, connected to or related to the business and affairs of a Party or any of its affiliates.

47. ~~21.~~ The Terms prohibited RecycleSmart from disclosure of the Confidential Information in Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use the Confidential Information of the other Party in its business or for any other purpose except as expressly permitted in these Terms."

48. Thus, the Terms prohibited Defendants from disclosing or using the System or Confidential Information to reverse engineer, derive or gain access to Compology's source code or any other component of the System. The Terms also prohibited Defendants from directly or indirectly manipulating or processing Device Data to derive Derivative Data.

**Compology Delivers its System and Services to** RecycleSmart ~~Misappropriates RoadRunner's Trade Secrets and Breaches~~ **Under** the Terms

49. ~~22.~~ As early as 2017, Compology delivered ~~the System and Subscription Services~~ its system and services to RecycleSmart, including Compology's ~~devices~~ smart camera assemblies and software ~~configured to enable the collection, processing and/or delivery of device data and derivative data. As part of this delivery, RecycleSmart had continuing access to Compology's Confidential Information, including the System, proprietary images, data, and processes, and Compology's large database of labeled and tagged images. The Confidential Information included Compology's proprietary and confidential waste and recycling metering technology, among other things. The Confidential Information was kept confidential from all third parties and, pursuant to the Terms, could not be disclosed or used except as expressly provided in the Terms.~~ Specifically, Compology installed smart camera assemblies in RecycleSmart's waste containers and provided RecycleSmart with its web application, firmware updates, and access to technical customer service support by phone, video, and text.

~~23. As described herein, this Confidential Information required *years* to properly aggregate and label. To bypass the time and effort necessary to develop the technology itself, and on~~

1  ~~information and belief, RecycleSmart wrongly used Compology's Confidential Information to~~
2  ~~train its own AI model to compete against Compology using its Pello cameras.~~

3      ~~24. As part of the parties' contractual relationship, Compology provided RecycleSmart~~
4  ~~with access to Compology's APIs to ingest Compology's data into RecycleSmart's software~~
5  ~~backend.~~

6      50.    ~~25.~~ In October 2021, RecycleSmart negotiated a 1-year contract renewal (rather
7  than the previous 3-year contract).

8      51.    ~~26.~~ In January 2022, Compology discovered that Pello cameras were being installed
9  in hundreds of the same containers as those with Compology cameras. ~~On information and~~
10 ~~belief,~~At or around the same time period, Compology discovered that RecycleSmart ~~began to use~~
11 ~~Compology's large database~~was downloading vast quantities of labeled and tagged images ~~to train~~
12 ~~its Pello cameras in violation of its express promises to Compology, including improper use of~~
13 ~~Compology's Confidential Information. On information and belief, RecycleSmart was training its~~
14 ~~Pello cameras to develop an AI system to operate independently from Compology, for~~
15 ~~RecycleSmart's own benefit and in violation of the Terms. On information and belief,~~
16 ~~RecycleSmart used Compology's data in combination with RecycleSmart's Pello cameras to~~
17 ~~develop an AI model.~~ On October 31, 2022, RecycleSmart let its 1-year contract lapse with
18 RoadRunner.

19     ~~27. In October 2022, RoadRunner acquired Compology and assumed all of the rights under~~
20 ~~the Terms.~~

21     ~~28. In March 2023, RTS announced its acquisition of RecycleSmart, including~~
22 ~~RecycleSmart's Pello cameras and system.  Previously, on October 31, 2022, RecycleSmart let its~~
23 ~~1-year contract lapse with RoadRunner.~~

24              **RecycleSmart Gains Access to RoadRunner's Trade Secrets**

25     52.    During its business relationship with Compology, RecycleSmart gained access to
26 Compology's trade secrets. Initially, Compology installed Compology's smart cameras in
27 RecycleSmart's waste containers. However, later during the parties' business relationship,

28

1  RecycleSmart sought to install Compology's smart cameras itself, and Compology agreed.

2  RecycleSmart therefore had access to Compology's smart camera apparatus, optical assembly and

3  design, and image preprocessing techniques because RecycleSmart was given physical custody of

4  the smart camera apparatus with firmware already installed and functioning. RecycleSmart further

5  gained access to these trade secrets through customer service communications in which

6  RecycleSmart sought and received details concerning Compology's smart camera system function

7  and design. RecycleSmart had access to Compology's image preprocessing techniques that were

8  disclosed in the text of Compology's compiled firmware code, as well as by Compology firmware

9  updates of Compology's smart cameras.

10      53.     RecycleSmart also had access to Compology's training data. As described herein,

11  Compology compiled training data to train its machine learning models which it then implemented

12  into its AI system to automatically ingest image data and output machine-labeled and tagged

13  images. Compology provided RecycleSmart with the ability to download millions of images taken

14  by Compology's smart cameras, provided to Compology's servers, and labeled and tagged by

15  Compology's AI system. These millions of machine- and human-labeled and tagged images

16  comprised a training data set by which a third party could derive Compology's machine learning

17  models.

18      54.     RecycleSmart also had access to Compology's algorithms and processes.

19  Compology provided RecycleSmart with its web application and access to customer service

20  technicians and engineers, soliciting and receiving technical details concerning Compology's data

21  and processes. This information was sufficient for RecycleSmart to learn Compology's algorithms

22  and processes.

23  **RecycleSmart Misappropriates RoadRunner's Trade Secrets and Breaches the Terms**

24      55.     None of Compology's trade secret information could be disclosed or used except as

25  expressly provided in the Terms. Critically, as shown herein, the Terms restrict RecycleSmart

26  from disassembly, reverse engineering, derivation, or gaining access to Compology's smart

27  camera assemblies, Compology's software, or any other component of Compology's system. This

28

is precisely what RecycleSmart proceeded to do.

56. 29. On information and belief, RecycleSmart also reverse-engineered Compology's waste and recycling metering technology to develop RecycleSmart's Pello cameras. RoadRunner became suspicious that RecycleSmart had wrongfully disclosed and used its Confidential Information and waste and recycling metering technology used and disclosed RoadRunner's trade secrets in violation of the Terms and had therefore misappropriated RoadRunner's trade secrets. RoadRunner investigated its suspicions, in part, by reviewing a March 9, 2022 Federal Communications Commission ("FCC") report filed by RecycleSmart. RoadRunner's suspicions were confirmed.

57. 30. RoadRunner's investigation confirmed that RecycleSmart's the Pello system was extremely similar to RoadRunner's waste and recycling metering technology. For example, RF test reports submitted with its FCC filing confirmed that the Pello system operated identically to RoadRunner's system for backhauling data obtaining images of waste containers, using substantially the same communication bands as those used by RoadRunner's system.

58. 31. In addition, the Pello camera utilizes virtually the same physical, electronic, and optoelectronic components as Compology's smart camera assembly, including substantially the same printed circuit board assembly ("PCBA") utilizes virtually the same electronic components, including substantially the same, microcontroller, external RAM integrated circuit ("IC"), wide field-of-view camera lens, camera flash PCBA, camera injection molded parts, "double-shot" rear housing with TPE overmolding, battery pack, shape, color, and materials of the camera housing, recessed sensors for debris shedding, and identical camera flash PCBA cutouts and mounting.

32. The Pello system also utilized a three-point mounting system that is virtually identical to RoadRunner's waste and recycling metering technology. Beyond the substantially similar physical and electronic design, this three-point mounting system combined with a trained AI model using, on information and belief, RoadRunner's database of labeled and tagged images, confirms that RecycleSmart misappropriated RoadRunner's Confidential Information and waste and recycling metering technology. placement of its smart cameras in waste containers.

1    59.     Based on the foregoing, and on information and belief, RecycleSmart gained access

2    to and wrongfully disassembled and reverse-engineered Compology's smart camera assemblies to

3    develop RecycleSmart's Pello camera system in violation of the Terms, thereby misappropriating

4    Compology's smart camera assembly, optical assembly and design, and image preprocessing trade

5    secrets.

6    60.     RoadRunner also became suspicious that RecycleSmart had trained machine

7    learning models by wrongfully using the millions of machine labeled and tagged images generated

8    by Compology's machine learning models to derive its own training data set and related machine

9    learning models. As described herein, with a sufficient amount of labeled and tagged images,

10   RecycleSmart could recreate Compology's training data and train its own machine learning

11   models. RoadRunner's investigation revealed that the Pello camera system is advertised as using

12   an AI-powered system to monitor bin capacity, fullness, contamination, reduce unnecessary trips

13   and emissions, and recommend efficient scheduling, the very same services that Compology

14   offered and delivered to RecycleSmart during their business relationship. For example,

15   RecycleSmart discloses on its website that it offers rightsizing scheduling optimization, one of the

16   very same algorithms and processes that Compology developed and disclosed to RecycleSmart

17   through its web application and customer service communications. On information and belief,

18   RecycleSmart downloaded a sufficiently large corpus of training data to derive Compology's

19   training data, and proceeded to train its machine learning models in violation of the Terms,

20   thereby misappropriating Compology's training data trade secret.

21   61.     Compology also learned that RecycleSmart had installed Pello cameras next to and

22   in hundreds of the same waste containers as Compology's smart cameras. On information and

23   belief, RecycleSmart further trained its machine learning models by using Compology's training

24   data derived from Compology's cameras in RecycleSmart's waste containers along with additional

25   images obtained from RecycleSmart's Pello cameras in the same waste containers. This enabled

26   RecycleSmart to get a head start on developing its overall system, evidenced by RecycleSmart

27   going to market on its Pello camera system in only months, rather than many years, as in

28

Compology's case. Stated otherwise, RecycleSmart gained an advantage by being able to compare the quality of images produced by Compology's smart cameras against its own Pello cameras, which enabled them to derive Compology's machine learning models in months, rather than years.

62. RecycleSmart also, on information and belief, misappropriated Compology's trade secrets embodied in its algorithms and processes by recreating Compology's machine learning models (designed specifically to implement those algorithms and processes) and by using information about those algorithms and processes learned from Compology's web application and customer service communications. To bypass the time and effort necessary to develop the technology itself, on information and belief, RecycleSmart wrongly used Compology's training data, accessed through millions of labeled and tagged images taken by Compology's smart cameras, to train its own machine learning models to compete against Compology using its Pello cameras, and with additional information learned through Compology's web application and customer service technical and engineering team, also wrongfully derived Compology's algorithms and processes. Compology's services included data, analysis, and recommendations to Defendants through access to RoadRunner's web application from which Defendants could learn RoadRunner's algorithms and processes.

63. In sum, RecycleSmart's camera system is virtually the same as Compology's smart camera system. Its AI-powered algorithms and processes are virtually the same, and therefore, its machine learning models are virtually the same. On information and belief, RecycleSmart's training data is identical or virtually identical to Compology's training data because it was generated and output by Compology's machine learning models as implemented in its AI system. Compology required *years* to develop, train, and implement its overall system and design. The combination of these misappropriated trade secrets in a competitor's system, after having received access to them and developing a competing system in record time, confirms that RecycleSmart obtained and unlawfully used Compology's trade secrets to derive the Pello waste metering system.

64. 33. On information and belief, RecycleSmart also disclosed RoadRunner's

Confidential Information and waste and recycling metering technology trade secrets to third parties to develop its competing Pello system. This is apparent, among other reasons, because RecycleSmart's FCC filing indicates different sources of custom and commercially available parts used in RecycleSmart's Pello system., and on information and belief, had shared Compology's smart camera apparatus with a third party manufacturer or developer of the Pello camera system. These additional acts constitute trade secret misappropriation by wrongful disclosure, as well as breach of the Terms.

**Defendants are Bound by the Terms and Liable for Each Other's Wrongful Acts**

65.     In October 2022, RoadRunner acquired Compology and assumed all of the rights under the Terms. In March 2023, RTS announced its acquisition of RecycleSmart, including RecycleSmart's Pello cameras and system.

66.     34. As described herein, RTS announced its acquisition of RecycleSmart in March 2023. On information and belief, when RTS acquired RecycleSmart, RTS assumed RecycleSmart's obligations and liabilities, including RecycleSmart's obligations and liability under the Terms, including the aforementioned prohibitions against disclosure and improper use of RoadRunner's Confidential Information. In addition, there exists a unity of interest among RTS and RecycleSmart such that these companies are in practice a "single enterprise." Among other things, RTS exercises and directs control over RecycleSmart. Indeed, these companies reference on their webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus, it would be unjust for any of the companies to be shielded from liability for the theft of RoadRunner's technology.

67.     35. Under the Terms and California law, privities-in-interest are bound to the Terms, and liable for the wrongful acts of their predecessors-in-interest, even after termination or expiration of the Terms, pursuant to Section 9.5: "The provisions of these Terms relating to (i) restrictions on license or use of the System; . . . (vi) ownership of intellectual property, (vii) confidentiality, . . . along with any other provisions that by their nature are intended to survive, will survive the termination or expiration of these Terms."

68. ~~36.~~ Each Defendant therefore stepped into the shoes of the other Defendants and are bound by the Terms and liable for each other's wrongful acts, in addition to Defendants' continuing wrongful acts as described herein.

## **FIRST CAUSE OF ACTION**

**[Trade Secret Misappropriation Under California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*]**

69. ~~37.~~ RoadRunner hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 38.

70. ~~38.~~ This is a cause of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*, based on the wrongful misappropriation, use, and/or disclosure of RoadRunner's trade secrets as embodied in confidential information, including but not limited to Confidential Information as defined in the Terms, ~~relating to RoadRunner's waste and recycling metering technology ("Waste and Recycling Metering Confidential Information")~~ that RoadRunner provided under strict use and disclosure restrictions.

71. RoadRunner's trade secrets at issue in this action are (1) the overall waste and recycling metering system, (2) smart camera apparatus, (3) optical assembly and design, (4) image preprocessing in camera apparatus for use by machine-learning training and operation, (5) training data stored in a database and comprising labeled and tagged images and associated metadata, and (6) algorithms and processes to generate data, analysis, and recommendations to customers, including fullness, emptiness, contamination, schedules, data ingestion efficiencies, and location analysis of waste containers. These trade secrets are more fully detailed herein and in Plaintiff's Identification of Trade Secrets.

72. ~~39.~~ RoadRunner's ~~Waste and Recycling Metering Confidential Information includes~~ confidential information embodied in these six trade secrets operate as trade secrets because ~~it derives~~ they derive independent economic value from not being generally known to the public or to others who can obtain economic value from ~~its~~ their disclosure or use.

73. 40. RecycleSmart, RTS's predecessor-in-interest, gained access to RoadRunner's Waste and Recycling Metering Confidential Information trade secrets in the course of a contractual relationship with Compology, RoadRunner's predecessor-in-interest, and was under an obligation to maintain the secrecy of RoadRunner's trade secret information obtained during its contractual relationship with RoadRunner and thereafter.

41. In violation of RecycleSmart's obligations to maintain the secrecy of RoadRunner's Waste and Recycling Metering Confidential Information, on information and belief, RecycleSmart used RoadRunner's Waste and Recycling Metering Confidential Information to develop a competing Pello product, and disclosed RoadRunner's Waste and Recycling Metering Confidential Information to members of the general public to develop the competing Pello product.

42. RecycleSmart was also under an obligation not to use RoadRunner's Waste and Recycling Metering Confidential Information trade secrets for any purposes beyond the limitations of use according to Section 2.1.5 of the Terms, including but not limited to copying, adapting, modifying, or creating derivative works of RoadRunner's waste and recycling metering technology system, reverse engineering and or attempting to derive the source code and other components of the waste and recycling metering technology system, using the waste and recycling metering technology system in a manner that infringes, misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling Metering Confidential Information, and trade secrets, or combining and integrating RoadRunner's waste and recycling metering technology trade secrets with software, technology, services, and/or materials not authorized by RoadRunner.

74. As detailed herein, on information and belief, RecycleSmart gained access to RoadRunner's trade secrets by wrongfully disassembling and reverse engineering Compology's smart camera assembly, through which it learned about Compology's smart camera apparatus, optical assembly and design, and image preprocessing techniques. On information and belief, RecycleSmart learned further details concerning Compology's image preprocessing techniques by

examining Compology's firmware, by examining firmware updates, and through customer service communications. RecycleSmart, on information and belief, derived Compology's machine learning models and algorithms and processes through access to Compology's application and through numerous customer service communications, and by wrongfully obtaining Compology's training data through access to millions of labeled and tagged images taken by Compology's cameras (and Pello cameras) for use in developing the Pello camera system.

75. In addition, in violation of RecycleSmart's obligations to maintain the secrecy of RoadRunner's trade secrets, RecycleSmart disclosed RoadRunner's trade secrets to members of the general public to develop the competing Pello product.

76. 43. Defendants have used and disclosed and continue to use and disclose RoadRunner's Waste and Recycling Metering Confidential Information trade secrets without RoadRunner's consent or permission, in an attempt to benefit Defendants, and beyond the limitations of use according to Section 2.1.5 of the Terms.

77. 44. Defendants have used or disclosed RoadRunner's Waste and Recycling Metering Confidential Information trade secrets maliciously and in willful and conscious disregard of the rights of RoadRunner.

78. 45. Defendants are each liable for the wrongful acts of the other Defendants, and Defendants have continued to perpetrate the aforementioned wrongful acts by wrongfully using and disclosing RoadRunner's Waste and Recycling Metering Confidential Information trade secrets, including continuing malicious use and disclosure and in willful and conscious disregard of the rights of RoadRunner.

79. 46. As a direct and proximate result of Defendants' willful, improper, and unlawful use and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information trade secrets, RoadRunner has suffered and continues to be damaged. RoadRunner will continue to be irreparably damaged unless Defendants are enjoined from further use and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information trade secrets.

80. 47. The aforementioned acts of Defendants in wrongfully misappropriating

JMBM | Jeffer Mangels Butler & Mitchell LLP

RoadRunner's ~~Waste and Recycling Metering Confidential Information~~<u>trade secrets</u> were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by Civ. Code § 3426.3(c), and an award of attorneys' fees, as provided by Civ. Code. § 3426.4.

## <u>SECOND CAUSE OF ACTION</u>

### [Trade Secret Misappropriation Under Defend Trade Secrets Act, 18 U.S.C. § 1836]

<u>81.</u> ~~48.~~ RoadRunner hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 39 through 49.

<u>82.</u> ~~49.~~ This is a cause of action for misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, based on the wrongful misappropriation, use, and/or disclosure of RoadRunner's <u>trade secrets as embodied in</u> confidential information, including but not limited to Confidential Information as defined in the Terms, ~~relating to RoadRunner's Waste and Recycling Metering Confidential Information~~<u>that RoadRunner provided under strict use and disclosure restrictions</u>, which is used in or intended for use in both interstate and foreign commerce.

<u>83. RoadRunner's trade secrets at issue in this action are (1) the overall waste and recycling metering system, (2) smart camera apparatus, (3) optical assembly and design, (4) image preprocessing in camera apparatus for use by machine-learning training and operation, (5) training data stored in a database and comprising labeled and tagged images and associated metadata, and (6) algorithms and processes to generate data, analysis, and recommendations to customers, including fullness, emptiness, contamination, schedules, data ingestion efficiencies, and location analysis of waste containers. These trade secrets are more fully detailed herein and in Plaintiff's Identification of Trade Secrets.</u>

<u>84.</u> ~~50.~~ RoadRunner's ~~Waste and Recycling Metering Confidential Information includes~~<u>confidential information embodied in these six trade secrets operate as</u> trade secrets because ~~it derives~~<u>they derive</u> independent economic value from not being generally known to the public or to others who can obtain economic value from ~~its~~<u>their</u> disclosure or use.

<u>85.</u> ~~51.~~ RecycleSmart, RTS's predecessor-in-interest, gained access to RoadRunner's

JMBM | Jeffer Mangels Butler & Mitchell LLP

Waste and Recycling Metering Confidential Information trade secrets in the course of a contractual relationship with Compology, RTS's RoadRunner's predecessor-in-interest, and was under an obligation to maintain the secrecy of RoadRunner's trade secret information obtained during its contractual relationship with RoadRunner and thereafter.

52. In violation of RecycleSmart's obligations to maintain the secrecy of RoadRunner's Waste and Recycling Metering Confidential Information, on information and belief, RecycleSmart used RoadRunner's Waste and Recycling Metering Confidential Information to develop a competing Pello product, and disclosed RoadRunner's Waste and Recycling Metering Confidential Information to members of the general public to develop the competing Pello product. On information and belief, the Pello product is used in or intended for use in both interstate and foreign commerce.

53. RecycleSmart was also under an obligation not to use RoadRunner's Waste and Recycling Metering Confidential Information trade secrets for any purposes beyond the limitations of use according to Section 2.1.5 of the Terms, including but not limited to copying, adapting, modifying, or creating derivative works of RoadRunner's waste and recycling metering technology system, reverse engineering and attempting to derive the source code and other components of the waste and recycling metering technology system, using the waste and recycling metering technology system in a manner that infringes, misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling Metering Confidential Information trade secrets, and combining and integrating RoadRunner's waste and recycling metering technology trade secrets with software, technology, services, and/or materials not authorized by RoadRunner.

86. As detailed herein, on information and belief, RecycleSmart gained access to RoadRunner's trade secrets by wrongfully disassembling and reverse engineering Compology's smart camera assembly, through which it learned about Compology's smart camera apparatus, optical assembly and design, and image preprocessing techniques. On information and belief, RecycleSmart learned further details concerning Compology's image preprocessing techniques by

examining Compology's firmware, by examining firmware updates, and through customer service communications. RecycleSmart, on information and belief, derived Compology's machine learning models and algorithms and processes through access to Compology's application and through numerous customer service communications, and by wrongfully obtaining Compology's training data through access to millions of labeled and tagged images taken by Compology's cameras (and Pello cameras) for use in developing the Pello camera system.

87. In addition, in violation of RecycleSmart's obligations to maintain the secrecy of RoadRunner's trade secrets, RecycleSmart disclosed RoadRunner's trade secrets to members of the general public to develop the competing Pello product.

88. 54. Defendants have used and disclosed and continue to use and disclose RoadRunner's Waste and Recycling Metering Confidential Information trade secrets without RoadRunner's consent or permission, in an attempt to benefit itself Defendants, and beyond the limitations of use according to Section 2.1.5 of the Terms.

89. 55. Defendants have used or disclosed RoadRunner's Waste and Recycling Metering Confidential Information trade secrets maliciously and in willful and conscious disregard of the rights of RoadRunner.

90. 56. Defendants are each liable for the wrongful acts of the other Defendants, and Defendants have continued to perpetrate the aforementioned wrongful acts by wrongfully using and disclosing RoadRunner's Waste and Recycling Metering Confidential Information trade secrets, including continuing malicious use and disclosure and in willful and conscious disregard of the rights of RoadRunner.

91. 57. As a direct and proximate result of Defendants' willful, improper, and unlawful use and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information trade secrets, RoadRunner has suffered and continues to be damaged. RoadRunner will continue to be irreparably damaged unless Defendants are enjoined from further use and disclosure of RoadRunner's Waste and Recycling Metering Confidential Information trade secrets.

92. 58. The aforementioned acts of Defendants in wrongfully misappropriating

RoadRunner's ~~Waste and Recycling Metering Confidential Information~~trade secrets were and continue to be willful and malicious, warranting an award of exemplary damages, as provided by 18 U.S.C. § 1836(b)(3)(C), and an award of attorneys' fees, as provided by 18 U.S.C. § 1836(b)(3)(D).

## THIRD CAUSE OF ACTION

### [Breach of Contract against All Defendants]

93. ~~59.~~ RoadRunner hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 50 through 60.

94. ~~60.~~ The Terms are a valid and enforceable contract between RoadRunner and RTS. RoadRunner assumed the rights under the Terms by acquiring Compology, an original party to the Terms. RTS assumed the obligations and liabilities under the terms by acquiring RecycleSmart, an original party to the Terms.

95. ~~61.~~ The Terms are binding on each of the Defendants because when RTS acquired RecycleSmart, (1) RTS assumed all of the obligations and liabilities of RecycleSmart, and/or (2) there exists a unity of interest among RTS and RecycleSmart such that these companies are in practice a "single enterprise."

96. ~~62.~~ Pursuant to the Terms, therefore, Defendants had obligations not to: (1) disclose RoadRunner's Confidential Information to any third party; (2) copy, adapt, modify, or create derivative works of RoadRunner's waste and recycling metering technology, (3) reverse engineer or attempt to derive the source code and other components of the waste and recycling metering technology, (4) use the waste and recycling metering technology in a manner that infringes, misappropriates, and violates intellectual property rights in RoadRunner's ~~Waste and Recycling Metering~~trade secrets as embodied in its Confidential Information, or (5) combine or integrate RoadRunner's waste and recycling metering technology with software, technology, services, and/or materials not authorized by RoadRunner.

97. ~~63.~~ The foregoing covenants in the Terms were intended and necessary to protect RoadRunner's legitimate business interest in its Confidential Information.

Jeffer Mangels
Butler & Mitchell LLP

JMBM

98. 64. Defendants breached the Terms by, *inter* alia, (1) disclosing RoadRunner's Confidential Information to third parties, (2) copying, adapting, modifying, or creating derivative works of RoadRunner's waste and recycling metering technology, (3) reverse engineering or attempting to derive the source code and other components of the waste and recycling metering technology, (4) using the waste and recycling metering technology in a manner that infringes, misappropriates, and violates intellectual property rights in RoadRunner's Waste and Recycling Metering trade secrets as embodied in its Confidential Information, and (5) combining or integrating RoadRunner's waste and recycling metering technology with software, technology, services, and/or materials not authorized by RoadRunner.

99. 65. Defendants continue to wrongfully retain and use RoadRunner's Confidential Information without excuse under law or contract.

100. 66. RoadRunner has fully performed all of its material obligations and satisfied all conditions for performance under the Terms except those that were waived or excused or are unenforceable by Defendants.

101. 67. Defendants have willfully, and with conscious disregard for the contractual obligations owed to RoadRunner, breached the Terms.

102. 68. Unless restrained and enjoined by the Court, Defendants will continue to breach the Terms.

103. 69. As a foreseeable, direct and proximate result of Defendants' breach of contract, RoadRunner has suffered irreparable injury to its rights and pecuniary damages. RoadRunner will continue to suffer such injury, loss, and damage unless and until Defendants are required to return RoadRunner's Confidential Information, and enjoined from further use and disclosure of RoadRunner's Confidential Information.

104. 70. But for Defendants' breaches of contract, RoadRunner would not have been injured by Defendants unlawfully disclosing and using RoadRunner's Confidential Information or by failing to return RoadRunner's Confidential Information.

105. 71. Defendants have derived and received and will continue to derive and receive

from the aforementioned breach of contract, gains, profits, and advantages.

106. ~~72.~~ RoadRunner is entitled to injunctive relief as well as damages, the nature and extent of which will be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, RoadRunner prays for the following relief:

1. A judgment that Defendants are liable on all causes of action alleged herein;

2. An order requiring Defendants to account for all gains, profits and advantage derived from their misappropriation of RoadRunner's confidential, proprietary and/or trade secret information;

3. An order requiring Defendants to disgorge all profits earned from their unlawful conduct, together with restitution to RoadRunner arising from Defendants' unlawful conduct;

4. An order awarding actual damages according to proof;

5. An order awarding exemplary and/or punitive damages to the extent allowed by law and in an amount according to proof;

6. An order awarding pre-judgment and post-judgment interest;

7. An order awarding attorneys' fees, costs and expenses;

8. Preliminary and permanent injunctive relief pursuant to which Defendants, and their employees, officers, directors, and/or representatives, and all persons acting in concert or participating with it are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

   (a) From manufacturing, making, distributing, marketing, offering to sell or selling products that utilize, embody, or were developed using RoadRunner's ~~Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information~~trade secrets;

   (b) From disclosing or using anywhere RoadRunner's ~~Waste and Recycling Metering Confidential Information and RoadRunner's Confidential Information~~trade secrets;

JMBM | Jeffer Mangels<br/>Butler & Mitchell LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(c)    From disclosing or using anywhere any RoadRunner trade secret or other proprietary or confidential information or information derived therefrom;

(d)    From offering to sell or selling to anyone, anywhere, any products that use any RoadRunner trade secret or other proprietary or confidential information, specifically including RoadRunner's ~~Waste and Recycling Metering Confidential Information~~<u>trade secrets</u> and RoadRunner's Confidential Information;

(e)    Immediately preserving and returning to RoadRunner (i) all copies of all RoadRunner's documents and proprietary or confidential information, including without limitation RoadRunner's ~~Waste and Recycling Metering Confidential Information~~<u>trade secrets</u> and RoadRunner's Confidential Information, and any trade secret and other confidential or proprietary information acquired directly or indirectly from RoadRunner; (ii) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from any, RoadRunner's trade secrets or other confidential or proprietary information; and (iii) all physical materials, including all prototypes, designs, modules, parts, electronics, or otherwise in Defendants' possession relating to the Pello product; and

(f)    Turning over to the Court any proceeds that Defendants have received from their misappropriation of RoadRunner's trade secrets and proprietary and confidential information and other unlawful conduct, including all proceeds received in connection with the Pello product, such proceeds to be held in constructive trust until the conclusion of this litigation; and

9.    All such other relief that the Court deems just and proper.

DATED: ~~October 4~~January 16, ~~2023~~2024

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA

By: _____
STANLEY M. GIBSON
Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.

## DEMAND FOR JURY TRIAL

Plaintiff RoadRunner Recycling, Inc. hereby demands a trial by jury in the above-captioned matter on all matters so triable.

DATED: ~~October 4~~January 16, ~~2023~~2024

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON
JAMES M. NEUDECKER
JOSEPH J. MELLEMA

By: _____
STANLEY M. GIBSON
Attorneys for Plaintiff ROADRUNNER
RECYLING, INC.

| Summary report:<br>**Litera Compare for Word 11.3.1.3 Document comparison done on**<br>**1/16/2024 9:28:42 AM** | |
|---|---|
| **Style name:** JMBM Standard - No Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.jmbm.com/LA/71645987/1 | |
| **Modified filename:** RoadRunner - Second Amended<br>Complaint(71887757.2).docx | |
| **Changes:** | |
| Add | 251 |
| Delete | 166 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 417 |