# EXHIBIT B

1  Arameh Zargham O'Boyle (SBN: 239495)
   azoboyle@mintz.com
2  MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
   POPEO, P.C.
3  2049 Century Park East, Suite 300
   Los Angeles, CA 90067
4  Telephone:  310-586-3200
   Facsimile:  310-586-3202
5
   James M. Wodarski (*Admitted Pro Hac Vice*)
6  JWodarski@mintz.com
   Daniel B. Weinger (*Admitted Pro Hac Vice*)
7  DBWeinger@mintz.com
   Andrew H. DeVoogd (*Admitted Pro Hac Vice*)
8  AHDeVoogd@mintz.com
   Nicholas W. Armington (*Admitted Pro Hac Vice*)
9  NWArmington@mintz.com
   Tianyi Tan (*Admitted Pro Hac Vice*)
10 TTan@mintz.com
   MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
11 POPEO, P.C.
   One Financial Center
12 Boston, MA 02111
   Telephone:    (617) 542-6000
13 Facsimile:    (617) 542-2241

14 Attorneys for Defendants
   RECYCLE TRACK SYSTEMS, INC., and
15 RECYCLESMART SOLUTIONS INC.

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 18 ROADRUNNER RECYCLING, INC., | Case No. 3:23-cv-04804-WHA |
| 19                      Plaintiff,<br>        v. | **DEFENDANTS RECYCLE TRACK SYSTEMS, INC. AND RECYCLESMART SOLUTIONS INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT** |
| 20 RECYCLE TRACK SYSTEMS, INC.,<br>21 RECYCLESMART SOLUTIONS INC., | |
| 22                      Defendants. | **FILED UNDER SEAL** |
| 23 | Case Assigned to Honorable William H. Alsup<br>Courtroom 12 |
| 24 | |
| 25 | Hearing:<br>Date:          February 29, 2024<br>Time:          8:00 a.m. |
| 26 | Location:    450 Golden Gate Avenue<br>                  Courtroom 12 – 19th Floor |
| 27 | San Francisco, CA 94102 |
| 28 | Complaint Filed:      August 4, 2023<br>Trial Date:              December 9, 2024 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

III.  ARGUMENT ................................................................................................... 3

      A.    Legal Standards ................................................................................... 3

      B.    Each of RoadRunner's New Trade Secret Allegations Fail to Satisfy the Pleading
            Standard Requiring that They Be Dismissed ............................................. 5

            1.    RoadRunner's Attempt to Cover Its Entire "Waste Metering System,"
                  Alleged Trade Secret A, Is Too Broad on Its Face ........................... 5

            2.    Alleged Trade Secret B Is Publicly Available, or Defendants Did not Have
                  Access .................................................................................... 8

            3.    RoadRunner's Proposed SAC Does Not Allege Plausible Facts Establishing
                  that Defendants Had Access to an Alleged "Image Preprocessing
                  Techniques" Trade Secret C ......................................................... 12

            4.    RoadRunner's Proposed SAC and ITS Misrepresents "Training Data" and
                  Grossly Distorts Its Relationship to Alleged Trade Secret D ................ 16

            5.    RoadRunner's Alleged Trade Secret E Is Insufficiently Described, and Lacks
                  Any Plausible Allegation of Access ............................................... 19

      C.    Amendment Is Futile ............................................................................. 23

IV.   CONCLUSION ................................................................................................ 24

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT - MAY CONTAIN CONFIDENTIAL INFORMATION – FILED UNDER SEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) ................................................................3, 4

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    No. 18-cv-00404, 2019 WL 176261 (N.D. Cal. Jan. 10, 2019)...........................19, 21

*Arista Records LLC v. Doe*,
    604 F.3d 110 (2d Cir. 2010)................................................................................12

*Bateman v. Mnemonics, Inc.*,
    79 F.3d 1532 (11th Cir. 1996) ............................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................3

*Brookhaven Typesetting Servs. V. Adobe Sys.*,
    No. 01-cv-20813, 2007 WL 2429653 (N.D. Cal. Aug. 24, 2007) (Whyte, J.) .......13

*Carl Zeiss Meditec v. Topcon Med. Sys.*,
    Case No. 19-4162 SBA 2019 WL 11499334 (N.D. Cal. Nov. 13, 2019).......................3, 7, 22

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ..............................................................................4

*Chicago Lock Co. v. Fanberg*,
    676 F.2d 400 (9th Cir. 1982) .................................................................................8

*Chodos v. W. Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002) .................................................................................4

*CleanFish, LLC v. Sims*,
    Case No. 19-cv-03663, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ..................4

*Gentil v. Wingfield GmbH*,
    No. 20-cv-05358, 2021 WL 4979427 (N.D. Cal. Mar. 2, 2021) ...........................15

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) .........................................................................3, 21

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................15

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ....................................................................3, 21, 22

ii

*Intellectual Ventures I, LLC v. Canon Inc.*,
   143 F.Supp. 3d 143 (D. Del. 2015)................................................................14

*Jobscience, Inc. v. CVPartners, Inc.*,
   No. 13-cv-04519, 2014 WL 1724763 (N.D. Cal. May 1, 2014)..........................7

*Kelsey K. v. NFL Enterprises, LLC*,
   No. 17-cv-00496, 2017 WL 3115169 (N.D. Cal. July 21, 2017) (Alsup, J.)......................5, 23

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974)..........................................................................................8

*Keywords, LLC v. Internet Shopping Enters.*,
   No. 05-cv-2488, 2005 WL 8156440 (C.D. Cal. June 29, 2005)........................13

*Liberty Mut. Ins. Co. v. Gallagher & Co.*,
   No. 94-cv-3384, 1994 WL 715613 (N.D. Cal. Dec. 19, 1994)..........................8

*Mednet Soutions, Inc. v. Jacobson*,
   No. 20-cv-2502, 2021 WL 6931589 (D. Minn. Sept. 16, 2021)....................19, 21

*Menzel v. Scholastic, Inc.*,
   No. 17-cv-05499, 2018 WL 1400386 (N.D. Cal. March 19, 2018)....................11

*Moreland Apts. Assocs. v. LP Equity LLC*,
   No. 19-CV-00744, 2019 WL 6771792 (N.D. Cal. Dec. 12, 2019)......................8

*NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*,
   No. 17-cv-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020)..........................15

*Oracle Am., Inc. v. Google*,
   No. 10-cv-3561, 2011 WL 1565988 (N.D. Cal. April 27, 2011)........................13

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984)........................................................................................15

*Surf City Steel, Inc. v. Int'l Longshore and Warehouse Union*,
   780 Fed. App'x 467 (9th Cir. 2019) ..................................................................4

*T2 Modus, LLC v. Wliiams-Arowolo*,
   No. 22-cv-00263, 2023 WL 6221429 (E.D. Tex. Sept. 25, 2023)....................20, 21

*Vendavo, Inc. v. Price f(x) AG*,
   No. 17-cv-06930, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......................7

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
   147 F. Supp. 3d 1147 (D. Or. 2015) ..............................................................19, 21

*VIA Techs., Inc. (a California Corp.) v. Asus Computer Int'l.*,
   No. 14-cv-03586, 2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) ......................6

iii

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..............................................................4, 5

**Statutes**

18 U.S.C. § 1839.................................................................................17

Cal. Civ. Code § 3426.1.......................................................................17

Cal. Civ. P § 2019.210...........................................................1, 3, 5, 20

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03 (1995)........................14

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT - MAY CONTAIN CONFIDENTIAL INFORMATION – FILED UNDER SEAL

## I.    INTRODUCTION

Defendants Recycle Track Systems, Inc. and RecycleSmart Solutions Inc. (collectively, "RecycleSmart" or "Defendants") hereby oppose Plaintiff RoadRunner Recycling, Inc.'s ("RoadRunner" or "Plaintiff") Motion for Leave to Amend First Amended Complaint. Dkt. 45.

The Court should deny RoadRunner's Motion to Amend because the trade secret allegations in the proposed second amended complaint and submission under CCP § 2019.210 still suffer fatal defects. RoadRunner's submission exposes the Catch-22 they are in: the allegations that show similarities between RoadRunner's and Defendants' products are too high-level and broad to be trade secrets. This includes, for example, trade secret allegations A, titled "overall waste metering system," which, if protectable by trade secret law, would swallow the field. This is exactly the type of overbroad, ill-defined trade secret allegations courts routinely reject, just as this Court should.

On the flip side, where RoadRunner provided details that may arguably allow trade secret protection to apply, Defendants could not have been exposed to them. Indeed, the proposed amendments fail to plead how Defendants ever had access to the alleged trade secrets. This includes allegations such as "image processing techniques" that reside only in the compiled firmware on the sensor devices (which is not understandable to humans even if it were accessible solely by virtue of possessing the device), and algorithms for Compology's backend system that Defendants did not and could not have access to. These allegations, and the inferences necessary to credit them, are implausible. They must be dismissed.

The proposed second amended complaint merely alleges in conclusory fashion that Defendants had access to these alleged "trade secrets." RoadRunner flatly states that Defendants must have reverse engineered the allegedly secret camera sensors, or were provided the information in undescribed customer service "communications" provided by unnamed individuals on unidentified dates. Nowhere in the proposed second amended complaint does RoadRunner allege who was involved in such communications, when they took place, or what was discussed. Certainly if RoadRunner believed that such conversations served as the factual basis for a claim, it could have provided those details. Simply alleging that customer service conversations occurred at some point is

1   not enough, especially after the Court admonished RoadRunner to "plead its best case" with this

2   attempt to amend. Dkt. No. 43 at 6.

3         RoadRunner also continues improperly to assert trade secret protection over things that are

4   unquestionably in the public domain. RoadRunner rehashes its allegations about "components" and

5   other physical features of the sensors. Yet the sensors are public: Compology sensors are for public

6   sale at least on eBay, as shown in Defendants' accompanying Request for Judicial Notice. This

7   destroys any claims that the sensors are secret. The public availability of the sensors means that there

8   cannot be trade secret protection tied to the physical arrangement of components and circuitry because

9   anyone could simply take them apart and see those features with their own eyes—as RoadRunner

10  itself already did in its public FCC filings. The Court already admonished RoadRunner regarding

11  these claims: "to the extent RoadRunner alleges that the arrangement and configuration of its smart

12  cameras is a trade secret (*see* FAC ¶ 16), that cannot be." Yet RoadRunner persists now in claiming

13  exactly that as protectable trade secrets. It is not.

14        RoadRunner has failed in its second attempt to produce a legally sufficient claim concerning

15  its trade secret claims. This should be the end of the road for the trade secret aspect of this litigation.

16  Defendants should not be subjected to the great cost and disruption of a trade secrets lawsuit where

17  Plaintiff cannot marshal factual allegations to state a claim. Allowing RoadRunner's trade secret

18  claims to persist would be fundamentally unfair. The reason the law requires trade secret plaintiffs to

19  satisfy these basic hurdles at the pleading stage is to avoid exactly that problem: allowing a plaintiff

20  to rifle through defendants' discovery in the hope of being able to craft some kind of viable claim at

21  a later date. RoadRunner has not met its burden, and is not entitled to have the trade secret claims

22  move forward as a fishing expedition.  In any event, it has become apparent that no facts support the

23  trade secret allegations. Dispensing with these claims at the pleading stage is appropriate. The Court

24  should deny the Motion to Amend.

25  **II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

26        On October 4, 2023, RoadRunner filed its First Amended Complaint ("FAC"). Dkt. No. 15.

27  Defendants moved to dismiss the trade secret allegations, and on December 26, 2023, the Court issued

28

its order dismissing Counts I and II (the trade secret counts) of RoadRunner's FAC, with leave to move to amend by January 16, 2024. Dkt. No. 43. On January 16, 2024, RoadRunner moved to amend the FAC, and submitted a proposed Second Amended Complaint ("Proposed SAC"). Dkt. No. 45 (motion to amend); Dkt. No. 45-2 (Proposed SAC). On the same day, RoadRunner filed under seal its Identification of Trade Secrets ("ITS") as required by CCP § 2019.210. *See* Dkt. No. 46.

## III.    ARGUMENT

### A.    Legal Standards

Rule 12(b)(6) and CCP § 2019.210 requires that a trade secret plaintiff describe their trade secrets with sufficient particularity. *See* Cal. Civ. Proc. Code § 2019.210 ("In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . ."); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 & n.1 (9th Cir. 2020) (applying CCP§ 2019.210 and holding that a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge of those persons . . . skilled in the trade" (quoting *Imax Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164 (9th Cir. 1998)); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (noting that the elements under DTSA and CUTSA are essentially the same); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (holding that plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion). A complaint cannot survive dismissal if it fails to describe the trade secrets at issue with sufficient particularity. *See, e.g.*, Dkt. No. 43 (dismissing RoadRunner's FAC for failure to "describe trade secrets with sufficient particularity to separate them from anything"); *Carl Zeiss Meditec v. Topcon Med. Sys*., Case No. 19-4162 SBA, 2019 2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) ("[T]o survive a motion to dismiss, '[t]he trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" (citations omitted)).

Rule 12(b)(6) requires plausible factual allegations that establish a defendant had access to an alleged trade secret, because one cannot misappropriate a trade secret it was not exposed to. *See Alta Devices*, 343 F. Supp. 3d at 877 ("Under both the DTSA and the CUTSA, 'misappropriation' means either (1) the *[a]cquisition* of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the *[d]isclosure* or *use* of a trade secret of another without express or implied consent." (quotations omitted; emphases added)). To state a claim for trade secrets, the plaintiff must plausibly allege misappropriation through acquisition, disclosure, or use of the trade secrets at issue—each of which necessarily requires the defendant to have access to such trade secrets to begin with. *See id.* ("To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" (citations omitted)).

Dismissal with prejudice is appropriate where amendment is futile. *See, e.g.*, *Surf City Steel, Inc. v. Int'l Longshore and Warehouse Union*, 780 Fed. App'x 467, 473 (9th Cir. 2019) ("[D]ismissal without leave to amend is proper when amendment would be futile" (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)). "When a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *Surf City Steel*, 780 Fed. App'x at 473 (quoting *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)). Courts have routinely found futility and granted dismissal with prejudice where a plaintiff has previously been given an opportunity to amend but still fail to cure its deficiencies. *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming district court's dismissal of the second amended complaint with prejudice where "it was clear that the plaintiffs had made their best case and had been found wanting"); *CleanFish, LLC v. Sims*, Case No. 19-cv-03663, 2020 WL 4732192 at *9 (N.D. Cal. Aug. 14, 2020) ("Because Plaintiff already has had an opportunity to plead sufficient facts to support its claim, and failed, any further amendment would be futile.").

Where the court has warned the plaintiff to plead its "best case" with any proposed amendment, persistent deficiencies highlight the futility of any further amendment and justify dismissal with prejudice. *Zucco Partners*, 552 F.3d at 1007; *see also* Dkt. No. 43 at 6 ("Plaintiff should plead its best case if it seeks leave to amend."); *Kelsey K. v. NFL Enterprises, LLC*, No. 17-cv-00496, 2017 WL 3115169 at *7 (N.D. Cal. July 21, 2017) (Alsup, J.), *aff'd*, 757 Fed. App'x 524 (9th Cir. 2018) (denying motion for leave to amend as futile and dismissing the action with prejudice where the court has cautioned the plaintiff to "be sure to plead her best case" and the proposed amendment "still fails to plead factual allegations supporting any plausible claim for relief.").

**B.      Each of RoadRunner's New Trade Secret Allegations Fail to Satisfy the Pleading Standard Requiring that They Be Dismissed**

Each of RoadRunner's trade secret allegations require dismissal or striking. For example, RoadRunner's Trade Secret A, which claims the "overall waste metering system" as a trade secret, usurps the field and claims as a trade secret what RoadRunner advertises for sale. It cannot be a trade secret; its breadth is offensive to the trade secret laws.

For the others, RoadRunner claims public information as a trade secret, fails to sufficiently describe the trade secrets, and/or fails entirely to allege plausible facts that show how Defendants gained access. In so doing, RoadRunner abandoned its core allegations from the FAC of an API that provided access, and a database of "preexisting" images. Neither of these concepts make an appearance in the Proposed SAC or ITS, despite the importance RoadRunner placed on them in opposing Defendants' motion to dismiss the FAC. Their absence now is both conspicuous and telling.

While RoadRunner's submissions are confusing and muddled, addressing the allegations one by one demonstrates how each is inadequate to meet the pleading threshold. They should all be dismissed and struck.

**1.      RoadRunner's Attempt to Cover Its Entire "Waste Metering System," Alleged Trade Secret A, Is Too Broad on Its Face**

RoadRunner's "Overall Waste Metering System" alleged trade secret cannot be a trade secret because it is too broad, and does not "identify the trade secret with reasonable particularity." CCP

§ 2019.210. Indeed, the breadth of RoadRunner's first trade secret allegation, the alleged "overall waste management system," attempts to cover RoadRunner's entire product offering. ████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Nothing at this level of abstraction and generality can be a trade secret.

Compounding the problem, the description provides no detail with any limiting principle because ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████ These other alleged trade secrets have their own problems, as discussed below, but the much broader "catch-all" trade secret allegation of the "Overall Waste Metering System" is inadequate. It is the exact kind of overly broad, catch-all approach to identifying trade secrets that courts routinely reject. *See, e.g.*, *VIA Techs., Inc. (a California Corp.)* v. *Asus Computer Int'l.*, No. 14-cv-03586, 2016 WL 5930280 at *3 (N.D. Cal. Oct. 12, 2016) ("To the extent that VIA suggests that all of the analog schematics and all of the functions are the combination trade secret(s), VIA is not entitled to include broad, catch-all language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement . . . ." (internal quotations omitted)).

In fact, this allegation is ***even broader*** than the unbounded "AI system" trade secret allegations RoadRunner already advanced in its FAC—and which the Court properly rejected. *See, e.g.*, FAC at ¶ 16 (claiming an "AI system" trade secret); Dkt. No. 43 at 5 ("[T]o the extent RoadRunner alleges that its 'AI system' is a trade secret (*see* FAC ¶ 16), it is merely and broadly referring to a 'system which potentially qualifies for trade secret protection' that this order has already explained is inadequate."). As with the purported "AI system," RoadRunner's newly claimed "Overall Waste Metering System" is a system which potentially qualifies for trade secret protection. But given the breadth and imprecision of its description, the allegation cannot stand.

Now, after being admonished to "plead its best case" (Dkt. No. 43 at 6) in attempting to amend its claims, RoadRunner explains that its "Overall Waste Metering System," even broader than the rejected AI system, ███████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████ Each of the above is a non-specific description of a general category of information that tells Defendants nothing about the actual "tangible trade-secret material" that they are accused of misappropriating. Dkt. No. 43 at 4.

As such, RoadRunner's description of its "Overall Waste Metering System" does not pass muster and must be dismissed and struck. *See Carl Zeiss Meditec*, 2019 WL 11499334 at *3 (dismissing trade secret claim where plaintiff "ha[d] not adequately discharged its obligation at the pleading stage to describe the trade secret information at issue," and where plaintiff did "little more than set forth the purported trade secrets in broad, categorical terms that are more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets." (internal quotations and citations omitted)); *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697 at *4-5 (N.D. Cal. Mar. 23, 2018) (plaintiff "has set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [plaintiff] has a basis to believe actually were misappropriated here. . . . Here, the complaint's conclusory and generalized allegations are insufficient."); *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-cv-04519, 2014 WL 1724763 at *4 (N.D. Cal. May 1, 2014) (granting motion to strike trade secret claims after plaintiff repeatedly inadequately described allegedly misappropriated trade secrets).

### 2. Alleged Trade Secret B Is Publicly Available, or Defendants Did not Have Access

RoadRunner's initial allegations from the FAC regarding its purportedly secret "smart camera apparatus" were rife with deficiencies. These persist for much the same reason in the Proposed SAC. Even while admitting, as it must, that many of the components used in the purportedly secret cameras are, in fact, known to the public, RoadRunner nonetheless claims trade secret protection over such components because they are allegedly combined with other vaguely described elements. And with these conclusory allegations, RoadRunner speculates, without any factual support other than a bare claim of "information and belief," that Defendants improperly reverse-engineered the camera assemblies. These conclusory and speculative assertions are implausible and untrue for a number of reasons, starting with the fact that the supposedly secret cameras are readily and publicly for sale by third parties on the internet, and RoadRunner itself disclosed to the FCC, and to the public, essentially all of what the Proposed SAC continues to claim as a valuable secret.

RoadRunner cannot avoid the fundamental fact that information like this "that is readily obtainable through public sources *cannot* 'derive the independent economic value necessary' to qualify as a trade secret." *Moreland Apts. Assocs. v. LP Equity LLC*, No. 19-CV-00744, 2019 WL 6771792 at *4 (N.D. Cal. Dec. 12, 2019) (emphasis added) (quoting *Liberty Mut. Ins. Co. v. Gallagher & Co.*, No. 94-cv-3384, 1994 WL 715613 at *4 (N.D. Cal. Dec. 19, 1994)); *see Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) ("When a trade secret is disclosed to the public, it is no longer protectable."); *Chicago Lock Co. v. Fanberg*, 676 F.2d 400, 404 (9th Cir. 1982) ("[T]rade secrets will lose their character as private property when the owner divulges them or when they are discovered through proper means," *e.g.*, from public sources).

This truism, that information that is public cannot be a trade secret, dooms the alleged "smart camera" trade secrets. Indeed, the public availability of the "camera apparatus" alone—whether through purchase on the open market for anyone and everyone to tear down, through the public teardown photos Plaintiff itself submitted to the FCC, or through the observation of installed cameras

8

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT - MAY CONTAIN CONFIDENTIAL INFORMATION – FILED UNDER SEAL

by any member of the public—demonstrates that the allegations that the camera, its componentry, or its physical attributes are protectable trade secrets are implausible and must be dismissed.

To start, a simple internet search reveals numerous Compology R13 cameras—the latest model of the purportedly secret "smart camera apparatus"—for public sale from third parties on e-commerce websites like eBay.com:



Weinger Decl., Ex. 1 (eBay Listing No. 266422745021, Compology R13 Camera). Another example of a public eBay.com sale listing for an R13 camera by a third party contains detailed photos of the allegedly secret device:



*See id.*, Ex. 2 (eBay Listing No. 165986465824, Compology R13 Camera); *see also id.*, Exs. 3-6 (additional public listings of Compology R13 Cameras). ██████████████████████

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT - MAY CONTAIN CONFIDENTIAL INFORMATION – FILED UNDER SEAL

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ These components are visible to the public on the internet, and available for purchase by anyone online. Similarly, any member of the public walking past a container with an installed Compology camera, or any worker who uses that container, can observe these physical attributes. They are not and cannot be secret.

Additionally, although now claimed as valuable secrets by RoadRunner, extensive FCC filings also disclose to the public specific internal componentry by make and model number, their configuration on printed circuit board assemblies ("PCBAs"), and their functionality. The reasons *why* RoadRunner selected these particular components ███████████████████████████ ███████████████████████████████████ is entirely beside the point. The fact remains that these specific components, their functionality, and their configuration and disposition on PCBAs inside the camera assembly are indisputably in the public domain.

These publicly disclosed and described components include, for example, the specifics of the "wireless communication module" used by the "smart camera apparatus" claimed as a trade secret: the FCC database of reports tells the world precisely which LTE, WiFi, and Bluetooth transmitters and transceivers are included in the devices, using which specific antenna, and how each of these components is arranged and configured on the PCBAs. As just one example, these public filings for the Compology R13 camera tell us that the device includes the below list of specific components— and depict their specific layout and configuration on the PCBAs—all of which RoadRunner claims here as purported trade secrets:

| Component | Functionality | Manufacturer | Model # |
|-----------|---------------|--------------|---------|
| Cellular Transmitter | LTE Radio Transmitter | U-blox | SARA-R410M-02B |
| Cellular Modem | IoT LTE Radio Modem | Qualcomm | MDM9206 |
| Bluetooth Transmitter | CAT-M1 Radio Transmitter | STMicroelectronics | BLUENRG-232 |
| GPS | Global Navigation Satellite System (GNSS)/GPS | U-blox | EVA-M8M-0 |
| Antenna | 2.4 GHz WLAN, Home RF, Bluetooth, 802.11 b/g | Johanson Technology | 2450AT43B100 |

*See* Weinger Decl., Ex. 7 (R13 ISED Report); Dkt. No. 34-1, Weinger Decl., Ex. E (R13 Tear Down Photos). The assertion that RoadRunner has maintained this information as a valuable secret is simply false. Indeed, the Court noted as much in rejecting the same assertions made in RoadRunner's FAC. *See* Dkt. No. 43 at 4-5 ("[T]he FCC webpages contain[] public images of the internal configuration of the cameras that RoadRunner submitted to the agency, which include ***readily identifiable*** chips, batteries, circuit board layout, and so forth[.]") (emphasis added).

Additionally, to the extent that RoadRunner claims that the specific communications bands its camera assemblies utilize is somehow secret, this too is disclosed in its public FCC filings. *See* Weinger Decl., Ex. 7 (R13 ISED Report) (identifying the LTE CAT-M1 communication methods). RoadRunner claims that this is to enable "narrowband delivery of data using the least amount of data." ITS at 10. That may be so, but it is not a protectable trade secret—it is public.

The allegations that publicly available information somehow qualifies for trade secret protection are implausible and should be dismissed with prejudice ████████████ Even if it were otherwise, though, RoadRunner's Proposed SAC is also conspicuously bereft of ***any*** factual allegations that Defendants acquired such information through improper means. The best RoadRunner can muster is the conclusory statement, made on bare "information and belief," that Defendants misappropriated this information by disassembling the "smart camera apparatus." *See* Proposed SAC at ¶¶ 4, 55. It is true that Defendants had Compology cameras in their possession under the terms of the parties' business relationship. ***But RoadRunner offers zero factual allegations*** in the Proposed SAC to support the naked assertion of misappropriation—in other words, the allegation is implausible. *Menzel v. Scholastic, Inc.*, No. 17-cv-05499, 2018 WL 1400386 at *2 (N.D. Cal. March

19, 2018) ("[W]hile facts may be alleged upon information and belief, that does not mean that conclusory allegations are permitted. A conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*.") (citing *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010))). The offhand suggestion that access to the alleged trade secrets was provided through undescribed communications, had between unidentified RecycleSmart personnel and unidentified RoadRunner customer service representatives that occurred on undisclosed dates, also does not meet the pleading threshold.

The "smart camera apparatus" misappropriation allegations fail as a matter of law.

### 3. RoadRunner's Proposed SAC Does Not Allege Plausible Facts Establishing that Defendants Had Access to an Alleged "Image Preprocessing Techniques" Trade Secret C

RoadRunner labels alleged Trade Secret C as "Image Preprocessing Techniques." *See* Proposed SAC at ¶ 32-33 ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ The only location that this alleged trade secret resides, according to RoadRunner's Proposed SAC and ITS, is in the compiled firmware on the smart camera apparatus included in the Compology sensors. *See* Proposed SAC at ¶ 52 ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████

There are two main issues with RoadRunner's assertion of this alleged trade secret. First, RoadRunner does not allege any plausible facts that would or could establish that Defendants ever had access to the alleged trade secret other than merely possessing a Compology sensor with compiled firmware already installed. Second, if merely possessing a Compology sensor exposes the alleged trade secret that resides in compiled firmware, then the alleged trade secret is unquestionably public due to the public availability of the sensors. *See supra* at III.B.2.

Regarding access, the Proposed SAC's allegations that Defendants accessed RoadRunner's alleged "Image Preprocessing Techniques" trade secret are predicated on access to "compiled firmware" resident on the device:

> During its business relationship with Compology, RecycleSmart gained access to Compology's trade secrets. Initially, Compology installed Compology's smart cameras in RecycleSmart's waste containers. However, later during the parties' business relationship, RecycleSmart sought to install Compology's smart cameras itself, and Compology agreed. **RecycleSmart therefore had access to Compology's** smart camera apparatus, optical assembly and design, and **image preprocessing techniques because RecycleSmart was given physical custody of the smart camera apparatus with firmware already installed and functioning.** RecycleSmart further gained access to these trade secrets through customer service communications in which RecycleSmart sought and received details concerning Compology's smart camera system function and design. **RecycleSmart had access to Compology's image preprocessing techniques that <u>were disclosed in the text of Compology's compiled firmware code</u>, as well as by Compology firmware updates of Compology's smart cameras**.

Proposed SAC at ¶ 52 (emphases added). Not only is this allegation based on the same access the public has to the sensors, its treatment of "compiled firmware" is misleading—at best.

Like RoadRunner's previous opposition to Defendants' motion to dismiss the FAC that twisted what an API is, now RoadRunner twists what "compiled firmware" means. "Compiled firmware," ████████████████████████████████████████████ is not human-readable. As this Court and other courts have repeatedly noted, once human-readable source code is compiled into binary format, it is readable only by other machines, **not humans**. *See, e.g.*, *Oracle Am., Inc. v. Google* Inc., No. 10-cv-3561, 2011 WL 1565988 at *1 (N.D. Cal. April 27, 2011) (Alsup, J.) ("Most machine code was in a binary language, meaning it consisted entirely of 0 s and 1 s. Thus, a program had to be converted from source code into machine code before it could be run, or 'executed.' This conversion traditionally was performed by a 'compiler,' which converted an entire program in one step and produced an output file of machine code which then could be executed."); *Brookhaven Typesetting Servs. V. Adobe Sys.*, No. 01-cv-20813, 2007 WL 2429653 at *8 n.6 (N.D. Cal. Aug. 24, 2007) (Whyte, J.) ("In the context of computer programming, compilation is a method for processing human readable source code into computer readable binary code."); *Keywords, LLC v. Internet Shopping Enters.*, No. 05-cv-2488, 2005 WL 8156440 at *8 (C.D. Cal. June 29, 2005) ("A program

13

written in source code is translated into object code using a computer program called an 'assembler' or 'compiler.'"); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1539 n.17 (11th Cir. 1996) ("Computer programs are initially written in a 'source code,' which is a symbolic language, often using English words and common mathematical symbols, that humans can read. The source code is then translated, through a mechanical process known as compilation or assembly, into 'object code,' which is a concatenation of 1s and 0s readable by computer. Although a skilled programmer can read and understand small sections of object code, it is virtually impossible to develop a working understanding of a program by examining only its object code. As a result, most commercial programs are sold only in object code form, and can be run only 'as is' by the ordinary user.") (quoting *3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright* § 13.03[F] n.271 (1995))); *Intellectual Ventures I, LLC v. Canon Inc.*, 143 F.Supp. 3d 143, 174 n.40 (D. Del. 2015) ("Human-readable source code is compiled into firmware that is shipped with a scanner. The human-readable source code itself is not shipped with the scanner.").

Even if "compiled firmware" were human-readable (which it is not), the Proposed SAC did not allege how Defendants ever actually accessed the compiled firmware. The closest RoadRunner comes is lodging a conclusory statement that Defendants "disassembled and reverse-engineered Compology's smart camera assemblies to develop RecycleSmart's Pello camera system in violation of the Terms, thereby misappropriating Compology's smart camera assembly, optical assembly and design, and image preprocessing trade secrets." Proposed SAC at ¶ 59. This conclusory allegation of disassembly and reverse engineering is pure speculation, and in any event ***does not allege facts showing how Defendants accessed the firmware***.

The only factual assertions supporting reverse engineering are based on circumstantial evidence that is already public, such as RoadRunner's devices, FCC filings, and common knowledge about how cameras and hardware work. *See* Proposed SAC at ¶¶ 56-59; *supra* III.B.2 (establishing that the circumstantial evidence of misappropriation is all based on public information). Indeed, even if RoadRunner had pled facts that plausibly show disassembly and reverse engineering (and it has not), RoadRunner still could not claim trade secret protection on the public sensors. While at the

pleading stage a trade secret plaintiff need not prove exactly how misappropriation occurred, it must do more than lodge conclusory allegations, devoid of plausible facts and relying on unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal quotations omitted)). Here, RoadRunner only lodges conclusory assertions of reverse engineering, with no support, that require unreasonable inferences to be believed.

RoadRunner makes passing references to a "web application" and "customer service" as sources of trade secrets, including the "image preprocessing techniques." *See, e.g.*, Proposed SAC at ¶ 62. RoadRunner provides no detail about what was done and what was disclosed through the web application and customer service communications. *See, e.g., id.* at ¶ 74 (vaguely referring to training data, algorithms, processes, machine learning models). But the problem here is that these allegations are hopelessly vague and conclusory: RoadRunner does not say who provided the information, when it was provided, or what medium it was provided in—all of which RoadRunner could have done without disclosing the secret aspect of the alleged trade secrets. Nor does RoadRunner explain how the "web application" and "customer service" communications could disclose trade secrets that reside exclusively in the compiled firmware for the image processing trade secret.

A trade secret plaintiff also cannot overcome a clear demonstration that the alleged trade secret is public. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."). RoadRunner alleges that Defendants' mere possession of a Compology sensor gave access to their alleged trade secrets. But if this is true, RoadRunner cannot enjoy trade secret protection because the sensors are public. As noted above, anyone can purchase the Compology R13 sensor on the open market and disassemble or reverse engineer the device, rendering trade secret protection for components and functionality within the device a nullity. *See, e.g.*, Weinger Decl., Exs. 1-6 (listings of Compology R13 sensors for public sale); *Gentil v. Wingfield GmbH*, No. 20-cv-05358, 2021 WL 4979427 at *5 (N.D. Cal. Mar.

2, 2021) ("Selling the device is a form of public disclosure: if an alleged 'trade secret' is fully disclosed by the products produced . . . then the right to protection is lost." (internal quotation omitted)). While this fact does not destroy RoadRunner's breach of contract claim at this stage (though RoadRunner will not be able to prove a breach because Defendants never breached), it is fatal to RoadRunner's trade secret allegations at the pleading stage.

RoadRunner cannot have it both ways. Either the sensors are public based on the documented public availability of the sensors, thereby destroying any ability to claim trade secret protection, or they are not public and Defendants' possessing the physical sensor only provides the same access as members of the public have when they buy the sensor on the open market or see the sensor in a container. These are the only options.

Because RoadRunner has not alleged facts that would show Defendants were exposed to this alleged trade secret, RoadRunner's Proposed SAC fails to meet the necessary pleading standard for the alleged "Image Preprocessing Techniques" trade secret. Alternatively, if merely possessing the sensor exposes one to the alleged trade secret, the trade secret is unquestionably public and therefore not entitled to trade secret protection. Either way, RoadRunner's allegations related to alleged Trade Secret C must be dismissed.

### 4. RoadRunner's Proposed SAC and ITS Misrepresents "Training Data" and Grossly Distorts Its Relationship to Alleged Trade Secret D

RoadRunner's alleged "Training Data" trade secret and the corresponding portions of the Proposed SAC are heavy on misdirection and obfuscation. ██████████████████ ████████████████████████████████████████ ████████████████████████████████████████ RoadRunner's allegations of access hinge on Defendants' possession of the labeled and tagged images that they bought and paid for (the only item relevant to this "trade secret" to which Defendants are alleged to have had access). But these images cannot give rise to misappropriation for the simple reason that *Defendants own them*. In any event, the images do not provide any access to the machine learning model RoadRunner claims is a trade secret.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT - MAY CONTAIN CONFIDENTIAL INFORMATION – FILED UNDER SEAL

1     RoadRunner's Proposed SAC does not allege that Defendants had access to the model, which

2 presumably resides in RoadRunner's backend software system ("presumably," because RoadRunner

3 does not say, nor does RoadRunner cite any documents to support, this alleged trade secret). Instead,

4 RoadRunner implausibly claims that access to the labeled and tagged images, that Defendants bought

5 and paid for, would allow one to "derive" the model:

> RecycleSmart also had access to Compology's training data. As described herein, Compology compiled training data to train its machine learning models which it then implemented into its AI system to automatically ingest image data and output machine-labeled and tagged images. Compology provided RecycleSmart with the ability to download millions of images taken by Compology's smart cameras, provided to Compology's servers, and labeled and tagged by Compology's AI system. **These millions of machine- and human-labeled and tagged images comprised a training data set by which a third party could derive Compology's machine learning models**.

11 Proposed SAC at ¶ 53. RoadRunner's core assertion, that Defendants' labeled and tagged images

12 could provide access to the model, is categorically untrue with no plausible non-conclusory facts

13 alleged to support it. Beyond this, though, the **labeled and tagged images are unequivocally owned**

14 **by Defendants**, per the Terms. Dkt. No. 29-1, Weinger Decl., Ex. B at § 5.2 ("Customer owns all

15 rights and title to any Device Data and Derivative Data."). The Proposed SAC does not allege that

16 Defendants downloaded any images that Defendants did not own.[1] As a matter of law, to say nothing

17 of common sense, Defendants' images cannot be RoadRunner's trade secrets because you cannot

18 misappropriate that which you already own. 18 U.S.C. § 1839(5) (defining misappropriation as

19 "acquisition of a trade secret **of another** . . . ." (emphasis added)); Cal. Civ. Code § 3426.1(b)(1)

20 (defining misappropriation as "[a]cquisition of a trade secret **of another** . . . ." (emphasis added)).

21     So what is actually going on here? RoadRunner is conflating its alleged "training data" trade

22 secret with the Device Data and Derivative Data (i.e., labeled and tagged images) captured by sensors

23

24

---

[1] Interestingly, after making a big deal of a "preexisting" database of labeled and tagged images, RoadRunner is now strangely silent on such a preexisting database— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Dkt. No. 32 at 17 ("RoadRunner did not claim that the database of labeled and tagged images were Device Data, but rather, that Defendants misappropriated the preexisting database to create Defendants' own machine-language-trained model. This data is also not the result of "any 'tagging' or 'labelling' of images and data captured by the Compology sensors installed in RecycleSmart receptacles constitut[ing] 'Derivative Data'" as suggested by Defendants.").

installed in their containers that Defendants bought, paid for, and own outright. RoadRunner makes this conflation explicit in the Proposed SAC:

> On information and belief, RecycleSmart **downloaded a sufficiently large corpus of training data to derive Compology's training data**, and proceeded to train its machine learning models in violation of the Terms, thereby misappropriating Compology's training data trade secret.

Proposed SAC at ¶ 60 (emphasis added). Note that the Proposed SAC avoids explicitly discussing specifically what was downloaded by Defendants, leaving the factual allegations intentionally vague. This is because the labeled and tagged images that originated from sensors provided to Defendants per the Terms are owned solely, exclusively, and entirely by Defendants. Dkt. No. 29-1, Weinger Decl., Ex. B at § 5.2 ("Customer owns all rights and title to any Device Data and Derivative Data."). RoadRunner's factual allegations in the Proposed SAC require the Court to equate RoadRunner's training data used to train the alleged model with the **output** of that model—the output that Defendants bought and paid for. The Court should decline to adopt this obvious logical fallacy.

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ the Proposed SAC explicitly differentiates the images from the model when it states that "Compology compiled training data to train its machine learning models." Proposed SAC at ¶ 53. Per RoadRunner's Proposed SAC, a model **uses** training data; the training data is **not** the model. More to the point, RoadRunner does not explain how access to just the images Defendants purchased and own would allow one to "derive Compology's machine learning models." Proposed SAC at ¶ 53. That Defendants are in possession of the labeled and tagged images they bought per the Terms does not show, suggest, or imply anything about access to the alleged underlying machine learning model in the Compology backend.

To the extent RoadRunner suggests that there is misappropriation because Defendants agreed per the Terms to not use images that Defendants own outright to train Defendants' own model, that

is a question of contract, not trade secret. *See* Proposed SAC at ¶ 48 ("The Terms also prohibited Defendants from directly or indirectly manipulating or processing Device Data to derive Derivative Data."). To the extent RoadRunner pursues this theory, it will fail because it is based on a misreading of the Terms which only restricts Defendants' usage of the Derived Data and Derivative Data in conjunction with the Compology system. But that is an issue for another day.

In sum, Defendants own the images that are output from the Compology system, per the Terms. But those images do not give access to the alleged model, and there are no plausible factual allegations in the Proposed SAC that, if true, would establish otherwise. Nor does RoadRunner allege that Defendants had access to something other than Defendants' own property. RoadRunner's alleged trade secret of "training data" and the underlying model must be dismissed and struck.

### 5. RoadRunner's Alleged Trade Secret E Is Insufficiently Described, and Lacks Any Plausible Allegation of Access

For the last trade secret allegation, ███████████████████████████████

████████████ Proposed SAC at ¶¶ 39-42. With that, there are two fundamental problems with RoadRunner's allegation E: Software Algorithms and Processes.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ This is insufficient to describe a trade secret with reasonable particularity. *See, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404, 2019 WL 176261 at *4 (N.D. Cal. Jan. 10, 2019) ("[I]f Alta Devices contends that the trade secret instead comprises some feature or features of its technology that permits it to achieve these benchmarks, then Alta Devices must disclose what that feature or features of the underlying technology is, and not just the benchmarks that it can achieve."); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1156 (D. Or. 2015) (holding that plaintiff failed to satisfy the reasonable particularity standard where "Plaintiff's disclosures do not specify any trade secrets, 'but rather reveal[ ] the end results of, or functions performed by, the claimed trade secrets.'" (citation omitted)); *Mednet Soutions, Inc. v. Jacobson*, No. 20-cv-2502, 2021 WL 6931589 at *2-3 (D. Minn. Sept. 16, 2021) ("Mednet must describe what the trade secrets *are* and *how* the

trade secret makes the iMednet software do what it does, not just what they *do*." (citing *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17-cv-8829, 2020 WL 2836778, at *14–15 (N.D. Ill. May 31, 2020))) (emphases in original); *T2 Modus, LLC v. Wlliams-Arowolo*, No. 22-cv-00263, 2023 WL 6221429 at *5 (E.D. Tex. Sept. 25, 2023) (compelling plaintiff to supplement its identification of trade secrets and warning that "[t]he supplemental response will not be sufficient if it merely describes the end results of or functions performed by the claimed trade secrets"); CCP § 2019.210 (". . . the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . .").

On the other hand, even if the trade secrets were well defined, the Proposed SAC does not provide well-pled factual allegations that Defendants ever had access to the alleged secrets.

RoadRunner describes Defendants' alleged access as follows:

> RecycleSmart also had access to Compology's algorithms and processes. Compology provided RecycleSmart with its web application and access to customer service technicians and engineers, soliciting and receiving technical details concerning Compology's data and processes. This information was sufficient for RecycleSmart to learn Compology's algorithms and processes.

Proposed SAC at ¶ 54. While RoadRunner repeats these vague allegations a few times in the Proposed SAC, nowhere does it put any meat on the bone. RoadRunner does not provide the date the web application was accessed, the date customer service communications were solicited, what was disclosed, by whom to whom, or over what medium. Nor does the Proposed SAC explicitly say that these mechanisms disclosed the alleged trade secrets. Instead, the Proposed SAC says "This information was sufficient for RecycleSmart to learn Compology's algorithms and processes." What information? The Proposed SAC and ITS do not say.

In other words, the allegations of access are entirely conclusory and vague, leaving Defendants and the Court unable to assess their plausibility. This is odd, because RoadRunner should be in possession of every disclosure made from RoadRunner to Defendants ████████████████ ████████████████████████████████████████ ████████████████████████████████████████

███████ This glaring shortcoming is all that is required to dismiss and strike alleged trade secret E.

Regarding sufficient disclosure, this Court recognized that, while "the definition of what may be considered a trade secret is famously broad under both [the California state and federal trade secret] statutes[,] a plaintiff must 'clearly refer to tangible trade secret material' and not a 'system which *potentially* qualifies for trade secret protection.'" Dkt. No. 43 at 3 (quoting *InteliClear*, 978 F.3d at 658) (emphasis original). The Ninth Circuit has also explained that "defendants need 'concrete identification' to prepare a rebuttal." *InteliClear*, 978 F.3d at 658 (quoting *Imax Corp. v. Cinema. Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998)).

That is precisely the opposite of what RoadRunner does with respect to its alleged "Software Algorithms and Processes" trade secrets. RoadRunner does not concretely identify any tangible trade secret, instead providing a high-level and abstract description for the aspirational functionality and performance of the alleged trade secret systems. *See, e.g.*, *Alta Devices, Inc.*, 2019 WL 176261 at *4 ("Alta Devices must disclose what that feature or features of the underlying technology is, and not just the benchmarks that it can achieve."); *Vesta Corp.*, 147 F. Supp. 3d at 1156 (holding that plaintiff failed to satisfy the reasonable particularity standard where "Plaintiff's disclosures do not specify any trade secrets, 'but rather reveal[ ] the end results of, or functions performed by, the claimed trade secrets.'" (citation omitted)); *Mednet*, 2021 WL 6931589 at *2-3 ("Mednet must describe what the trade secrets *are* and *how* the trade secret makes the iMednet software do what it does, not just what they *do*." (emphases in original); *T2 Modus*, 2023 WL 6221429 at *5 (compelling plaintiff to supplement its identification of trade secrets and warning that "[t]he supplemental response will not be sufficient if it merely describes the end results of or functions performed by the claimed trade secrets"). At a minimum, this approach leaves RecycleSmart unable to prepare a rebuttal based on RoadRunner's deficient "algorithms and processes" disclosures. Moreover, when RoadRunner does approach a description of tangible trade secret material for certain of these categories, such material has already been publicly disclosed.

A ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See InteliClear*, 978 F.3d at 658.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *See, e.g.*, *Carl Zeiss Meditec*, 2019 WL 11499334 at *3 (dismissing trade secret claim where plaintiff did "little more than set forth the purported trade secrets in 'broad, categorical terms' . . ."). There is simply no real guidance for Defendants or this Court to understand what exactly RoadRunner claims as its valuable trade secret.

In the other categories, on top of being abstractly described, the alleged trade secret has been publicly disclosed. ████████████████████████████████████████████

████████████████████████████████████ in an article published in July 2017, Compology's Vice President of Operations explained that "Compology's sensors provide a multi-point service verification system for both front-load and roll-off containers[,]" that includes a combination of the

following data types: "Fullness level change," "Container tilt," "Images," and "GPS tracking." *See* Weinger Decl., Ex. 8 (online article titled "From The Stone Age To The Future: Indisputable Service Verification For Waste Has Arrived"). ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████

### C.    Amendment Is Futile

None of RoadRunner's allegations of trade secret misappropriation should survive the pleading stage. This motion to amend was, per the Court's instructions, RoadRunner's opportunity to put forward its best case. Dkt. No. 43 at 6 (The Court admonishing RoadRunner that it "should plead its best case if it seeks leave to amend."). Since this is the best RoadRunner could muster, per the Court's instructions, leave to amend is futile and dismissal of Counts I and II without leave to amend is appropriate. *Id.*; *Kelsey K.*, 2017 WL 3115169 at *7 (denying plaintiff's motion for leave to amend after being "cautioned that she 'should be sure to plead her best case'" in previous amendment).

///

///

///

///

///

///

///

///

///

///

///

███████████████████████████

██████████████████████

## IV.    CONCLUSION

Even if there were a nugget of well-pled trade secrets contained in the ITS, RoadRunner's pleading strategy has forced Defendants, and the Court, to wade through a sea of insufficient allegations. It is not Defendants' burden (or the Court's) to identify sound pleadings from the unsound—the Court directed RoadRunner to plead its best case, now. Instead, RoadRunner came with vague allegations of trade secrets, with no plausible tie to access.

The Court should deny RoadRunner's motion to amend.


Dated: January 30, 2024                    Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.


*/s/ Daniel B. Weinger*
Arameh Zargham O'Boyle
James M. Wodarski (*Admitted Pro Hac Vice*)
Daniel B. Weinger (*Admitted Pro Hac Vice*)
Andrew H. DeVoogd (*Admitted Pro Hac Vice*)
Nicholas W. Armington (*Admitted Pro Hac Vice*)
Tianyi Tan (*Admitted Pro Hac Vice*)

Attorneys for Defendants
RECYCLE TRACK SYSTEMS, INC., and
RECYCLESMART SOLUTIONS INC.