# EXHIBIT A

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually [1] (1 to 4)
Conducted on August 15, 2024

**Page 1**

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3             -----------------
 4
 5   ROADRUNNER RECYCLING, INC.,  )
                                  )
 6            Plaintiff,          )
     vs.                          ) Case No.
 7                                ) 3:23-cv-04804-WHA
     RECYCLE TRACK SYSTEMS, INC., )
 8   and RECYCLESMART SOLUTIONS   )
     INC.,                        )
 9                                )
              Defendants.         )
10   ---------------------------- )
11
12             ATTORNEYS' EYES ONLY
13
     VIDEOTAPED DEPOSITION OF ROADRUNNER RECYCLING, INC.,
14       By and through its Designated Representative,
                    TIMOTHY JAY LONGSON,
15              and in his Individual Capacity
                  Thursday, August 15, 2024
16                San Francisco, California
17
18             9:32 a.m. PDT
19                   to
20             6:01 p.m. PDT
21
22
23   Stenographically Reported by:
     Burgundy B. Ryan, RPR,
24   CSR No. 11373
     Job No. 549087
25   Pages 1-232
```

**Page 2**

```
 1                  A P P E A R A N C E S
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4       JEFFER MANGELS BUTLER & MITCHELL LLP
         By:   JOSEPH J. MELLEMA, Esquire
 5       3 Park Plaza
         Suite 1100
 6       Irvine, California 92614
         949.623.7200
 7       jmellema@jmbm.com
 8   ON BEHALF OF THE DEFENDANT:
 9       MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, and
         POPEO, P.C.
10       By:  MATHEW S. GALICA, Esquire
         One Financial Center
11       Boston, Massachusetts 02111
         617.542.6000
12       msgalica@mintz.com
13   ALSO PRESENT:
14       KEN LAUGUICO, Videographer
         Planet Depos
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1              DEPOSITION SUPPORT INDEX
 2
 3   QUESTIONS INSTRUCTED NOT TO ANSWER:
 4   PAGE      LINE
 5   (None)
 6
 7
 8   REQUEST FOR PRODUCTION OF DOCUMENTS
 9   PAGE     LINE
10   (None)
11
12
13   STIPULATIONS
14   PAGE     LINE
15   (None)
16
17
18   QUESTIONS MARKED
19   PAGE     LINE
20   (None)
21
22
23            REPORTER'S NOTE:
24   QUOTATION MARKS ARE USED FOR CLARITY AND DO NOT
25   NECESSARILY REFLECT A DIRECT QUOTE.
```

**Page 4**

```
 1                    I N D E X
 2                                              PAGE
 3   EXAMINATION BY MR. GALICA.................    8
 4
 5                    --o0o--
 6
 7                  E X H I B I T S
 8   EXHIBIT         DESCRIPTION             PAGE
 9    323      30(b)(1) Deposition Notice     13
10    324      30(b)(6) Deposition Notice     14
11    325         Early Block Diagram         47
12    326      Identification of Trade Secret  79
13    327      Identification of Trade Secret 156
14    328         Unidentified Document       187
15    329         Security Measurements       188
16    330      Compology System Architecture  196
                     and Security
17
       331         Diagram of SC01            198
18                Bluetooth Communication
19    332         Compliance Document         202
20    333            FCC Submission           205
21    334            CeteCom Report           206
22    335      Compology Camera Installation  209
                         Guide
23
      336            FCC Submission           212
24
25
```

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 3 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually 2 (5 to 8)
Conducted on August 15, 2024

Page 5

E X H I B I T S

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 337 | FCC Submission | 214 |
| 338 | FCC Submission | 215 |
| 339 | FCC Submission | 215 |
| 340 | FCC Submission | 216 |
| 341 | FCC Submission | 216 |
| 342 | FCC Submission | 219 |
| 343 | Block Diagram and Schematics | 220 |
| 344 | Schematic | 228 |

--o0o--

Page 6

BE IT REMEMBERED that, pursuant to Notice of Taking Deposition, and on Thursday, August 15, 2024, commencing at 9:32 a.m. PDT thereof, at Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, 44 Montgomery Street, San Francisco, California, before me, Burgundy B. Ryan, a Certified Shorthand Reporter in and for the State of California, personally appeared

TIMOTHY JAY LONGSON,

a witness called on behalf of DEFENDANT, pursuant to all applicable sections of the Federal Rules of Civil Procedure, and who, having been first duly sworn by me to testify to the truth, was examined and testified as follows:

THE VIDEOGRAPHER: Here begins Media No. 1 in the videotaped deposition of Timothy Longson in the matter of RoadRunner Recycling Inc. vs. Recycle Track Systems Inc., et al, in the United States District Court, Northern District of California, Case No. 3:23-cv-04804-WHA.

Today's date is August 15th, 2024.

The time on the video monitor is 9:32.

The videographer today is Ken Lauguico, representing Planet Depos.

This video deposition is taking place at 44

Page 7

Montgomery Street, 36th Floor, in San Francisco, California.

Would counsel please voice-identify themselves and state whom they represent?

MR. GALICA: Matthew Galica from Mintz Levin on behalf of the Defendant.

MR. MELLEMA: Joseph Mellema, Jeffer Mangels, on behalf of plaintiff RoadRunner Recycling Inc.

THE VIDEOGRAPHER: The court reporter today is Brooke Ryan, representing Planet Depos.

The witness will now be sworn.

(Whereupon, the witness was sworn.)

COURT REPORTER: Thank you very much. Would you please state your name for the record?

THE WITNESS: My name is Timothy Jay Longson.

COURT REPORTER: Would you please spell it?

THE WITNESS: T-i-m-o-t-h-y J-a-y L-o-n-g-s-o-n.

COURT REPORTER: Thank you very much. Counsel, you may proceed.

/////
/////

Page 8

TIMOTHY JAY GALICA,
having been first duly sworn to tell the truth, testified as follows:

EXAMINATION

By MR. GALICA:

Q. Good morning.
A. Good morning.
Q. How are you?
A. Good.
Q. Do you go by Tim?
A. I go by Jay.
Q. Jay. All right, Jay. Where do you currently reside?
A. Okay. I currently reside in Sebastopol, California.
Q. Okay. Have you been deposed before?
A. No.
Q. Okay. So I'll just walk through some ground rules just so we're on the same page, if that's all right.
A. Yes.
Q. So as you know, today your testimony is being taken under oath as if it were going to be presented before a judge or jury.
Do you understand that?

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 4 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually       22 (85 to 88)
Conducted on August 15, 2024

---

85

1   Q.  And what were those elements?
2   A.  As I said, I don't know the specifics, but
3   I'm sure it has happened.
4   Q.  Can you think of one?
5   A.  For example, right now we're submitting a
6   patent application, and until that becomes accepted
7   or until it becomes public knowledge, that is a
8   trade secret.
9   Q.  And what is the content of that?
10      MR. MELLEMA:  Objection.  Form.
11      Also, objection.  Privileged.
12      To the extent you can answer without
13  revealing attorney-client privileged communications,
14  you can answer.
15      THE WITNESS:  Yeah.  That -- those
16  conversations were with our patent attorney, so I --
17  I don't want to answer those questions.
18  By MR. GALICA:
19  Q.  So you believe, just generally -- I'm not
20  asking for the substance of anything comprised in
21  the patent application or any conversation you had
22  with any counsel related to that -- but you believed
23  that the content you're putting into a patent
24  constitutes a trade secret?
25      MR. MELLEMA:  Objection.  Form.

---

86

1       THE WITNESS:  I believe that until the
2   information in that patent becomes public, that it
3   is a trade secret.
4   By MR. GALICA:
5   Q.  So it's valuable to you because it's a
6   secret, but you're putting it in a patent; correct?
7   A.  Correct.  Right now it's a secret.  As soon
8   as it becomes public, it will not become -- it will
9   no longer be a trade secret.
10  Q.  So it won't be valuable to you anymore?
11  A.  It will be valuable, but we'll be protected
12  through the patent.  That's my understanding.
13  Q.  Okay.  And do you recall any other trade
14  secrets that you believe existed during your
15  development of any Compology product that you
16  discussed with other people?
17      MR. MELLEMA:  Objection.  Form.
18      THE WITNESS:  Generally, I believe there
19  are many elements of the system that we're building
20  or we have built that are trade secrets.
21  By MR. GALICA:
22  Q.  Can you name one?
23      MR. MELLEMA:  Objection.  Form.
24      THE WITNESS:  The overall waste metering
25  system.

---

87

1   By MR. GALICA:
2   Q.  Okay.  So let's turn to page 4 of Exhibit
3   326, and I'll ask you to read lines 13 through 19.
4   Let me know when you have had a chance to do that.
5       MR. MELLEMA:  What page are we on?
6       MR. GALICA:  4.
7       MR. MELLEMA:  4.
8       MR. GALICA:  Of the document.
9       THE WITNESS:  "RoadRunner's trade secret
10  information at issue in this suit relates to, 1, the
11  overall waste and recycling metering system; 2,
12  smart camera apparatus; 3, optical assembly and
13  design; 4, image preprocessing and camera apparatus
14  for use by a machine learning training and
15  operations."
16      Is that good?
17  By MR. GALICA:
18  Q.  Yes.  Sorry.  And I should clarify.  I'm
19  just asking you to read it to yourself right now.
20  A.  Oh.
21  Q.  And then I'll ask some follow-up questions.
22  I'm going to do that a lot throughout this document,
23  so that's -- that's the approach I'll take.
24      MR. MELLEMA:  I'll take the time right now
25  to also designate the entirety of the transcript AEO

---

88

1   under the protective order.
2   By MR. GALICA:
3   Q.  Have you had a chance to review that?
4   A.  I've read paragraph, line 13 through 19.
5   Q.  Okay.  And are you knowledgeable on all the
6   trade secrets in that passage?
7   A.  My focus is on the hardware system, so I
8   have more knowledge around the hardware than, say,
9   at the algorithms.
10  Q.  Okay.  Let me ask it a different way.  Were
11  you involved at all in the development of machine
12  algorithms?  Strike that.
13      What knowledge do you have of the trade
14  secrets related to algorithms?
15  A.  That's a very broad question.  I can't
16  answer that.  I think I would need more specific
17  questions.
18  Q.  Have you been involved in developing
19  algorithms?
20  A.  Yes.  I've worked on algorithms for the
21  device that are written in firmware.
22  Q.  Okay.  What about machine learning?
23  A.  No.  I have not been involved in any of the
24  machine learning algorithm development.
25  Q.  What about development of the front-end

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 5 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually   23 (89 to 92)
Conducted on August 15, 2024

---

**89**

1  software of any Compology or RoadRunner device?
2     MR. MELLEMA: Objection. Form.
3     THE WITNESS: By front-end software, are
4  you talking about the web app?
5  By MR. GALICA:
6     Q. Yes.
7     A. I have not been involved in the development
8  of the web app.
9     Q. Do you understand front-end software to
10 include anything beyond the web app?
11    A. My understanding is front-end specifically
12 relates to the web app.
13    Q. Okay. And you have not been involved in
14 the development related to that?
15    A. Correct.
16    Q. Okay. All right. I'll have you read
17 lines 23 -- starting on page 4, starting on line 23,
18 going over to line 5 on page 5. And let me know
19 when you're done.
20    A. Where did you want to stop?
21    Q. Line 5 on page 5.
22    A. Okay. I'm done.
23    Q. All right. So line 23, page 4 alludes to
24 overall know-how and design and then it lists a
25 number of aspects of Compology and RoadRunner

---

**90**

1  products.
2     Do you see that?
3     A. Yes.
4     Q. Okay. Can you describe the overall
5  know-how of Compology's waste metering system?
6     A. My interpretation is this line is all of
7  the elements that go into make our product valuable
8  to our customers.
9     Q. And what are all of those elements that
10 make the product valuable to your customers?
11    MR. MELLEMA: Objection. Form.
12    THE WITNESS: Well, this is not
13 comprehensive. I don't think I can comprehensively
14 list all of them, but it may include the physical
15 hardware components, such as the smart camera
16 apparatus, optical assembly and design, firmware,
17 such as image preprocessing techniques implemented
18 in the camera apparatus, training data, machine
19 learning models, an AI system implementing the
20 machine learning models, and algorithms and purposes
21 to generate data analysis and recommendations to
22 customers, including fullness, emptiness,
23 contamination schedules, data ingestion,
24 efficiencies, location analysis of waste
25 containers.

---

**91**

1  By MR. GALICA:
2     Q. So you're saying that's the trade secret?
3     MR. MELLEMA: Objection. Form.
4     THE WITNESS: I didn't say that.
5  By MR. GALICA:
6     Q. What is that then?
7     A. I said -- well, I don't know. Maybe
8  somebody can read off what I said.
9     Q. Are you done?
10    A. I'm done.
11    Q. Okay. So line 23, page 4, first phrase
12 says, "RoadRunner's trade secrets include the
13 overall know-how and design" and then it lists a
14 number of components; correct?
15    MR. MELLEMA: Objection. Form.
16    THE WITNESS: Are you asking me what's
17 written here?
18 By MR. GALICA:
19    Q. Do you understand what this document is
20 supposed to do?
21    MR. MELLEMA: Objection. Form.
22    THE WITNESS: Maybe you can tell me and
23 I'll tell you if that's congruent with my
24 understanding.
25 By MR. GALICA:

---

**92**

1     Q. Well, I'm asking the questions. Do you
2  understand what this document is supposed to do?
3     MR. MELLEMA: Same objection.
4     THE WITNESS: I believe so.
5  By MR. GALICA:
6     Q. What do you understand it to be?
7     A. The plaintiff's identification of trade
8  secrets.
9     Q. Okay. And then on line 23, page 4, you see
10 how it says, "RoadRunner's trade secrets include the
11 overall know-how and design of its waste metering
12 system"?
13    A. Yes.
14    Q. Okay. So what is -- can you explain what
15 the overall know-how and design is of the waste
16 metering system?
17    MR. MELLEMA: Objection. Form.
18    THE WITNESS: I don't understand what
19 you're trying to ask me.
20 By MR. GALICA:
21    Q. I'm trying to understand what your trade
22 secrets are, and in line 23 on page 4, it says they
23 include the overall know-how and design. Do you see
24 that?
25    So I'm trying to figure out what that

---

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 6 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually 24 (93 to 96)
Conducted on August 15, 2024

**Page 93**

1  overall know-how and design is.
2  **A. I think it relates to those things listed**
3  **underneath that line.**
4      Q. So that's what -- the overall know-how and
5  design is verbatim lines 23 on page 4 to lines 5 on
6  page 5?
7         MR. MELLEMA: Objection. Form.
8         THE WITNESS: I didn't write this, but I
9  believe that those are some of the included trade
10 secrets.
11 By MR. GALICA:
12     Q. What are other trade secrets?
13     **A. As I said, I don't have a comprehensive**
14 **list of all of the trade secrets, so I can't answer**
15 **that question.**
16     Q. This document is supposed to be that
17 list?
18     **A. I think this document --**
19        MR. MELLEMA: Hold on. Objection form.
20 By MR. GALICA:
21     Q. You can answer.
22     **A. My understanding is that this document**
23 **outlines trade secrets that relate to this case.**
24     Q. Right. And I'm asking you questions about
25 them.

**Page 94**

1       Do you understand that?
2     **A. Yes. I understand that.**
3     Q. Okay. So do you not know one way or
4  another what overall know-how and design, as used in
5  line 23 on page 4, means?
6        MR. MELLEMA: Objection. Form.
7        THE WITNESS: I understand my
8  interpretation of overall know-how and design.
9  By MR. GALICA:
10    Q. What's your interpretation of overall
11 know-how and design?
12       MR. MELLEMA: Objection. Form.
13       THE WITNESS: I believe it to mean all of
14 the information needed to create the system.
15 By MR. GALICA:
16    Q. And what is all of the information needed
17 to create the system?
18       MR. MELLEMA: Objection. Form.
19       THE WITNESS: I can't answer that. That's
20 literally a decade's worth of work that me and my
21 colleagues undertook.
22 By MR. GALICA:
23    Q. Can you name one thing?
24    **A. Yep. So in order to get very good GPS**
25 **reception,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Page 95**

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6                      **That's just one example.**
7     Q. Okay. Can you think of any others?
8     **A. I can think of probably hundreds.**
9     Q. Can you name another?
10    **A. Yeah. So, I mean, a big part of what**
11 **provides value to the system is that it's able to**
12 **withstand the harsh environments of a trash**
13 **container and live out in the field for multiple**
14 **years. So much of the work that we do is aimed at**
15 **making sure that the devices are rugged and that**
16 **they can withstand this environment, and we've spent**
17 **thousands of hours performing highly-accelerated**
18 **life cycle testing to ensure that our cameras can**
19 **withstand this harsh environment.**
20    Q. Okay. So are you saying that the trade
21 secret is the cameras can withstand harsh
22 environments or the design choices that you made
23 that allows them to withstand harsh environments?
24    **A. It's the design choices are the -- the**
25 **trade secret.**

**Page 96**

1     Q. Okay. So what are the design choices that
2  you made so that your products could withstand harsh
3  environments?
4     **A. There's many, as I said, but one example**
5  **could be the choice of materials used in the**
6  **housing.**
7     Q. Any others?
8     **A. The geometry of the housing.**
9     Q. And with respect to the materials chosen,
10 do all of the Compology and RoadRunner devices use
11 the same materials?
12       MR. MELLEMA: Objection. Form.
13       THE WITNESS: I don't remember all of the
14 materials we've used throughout all of the revisions
15 or versions of the camera.
16 By MR. GALICA:
17    Q. What about as between the R11 and R12?
18    **A. I believe both of the front housings for**
19 **those parts were** ▮▮▮▮▮▮▮▮▮▮
20    Q. Okay. Do they have the same shape?
21    **A. No.**
22    Q. So are those different trade secrets, one
23 for the R11 and one for the R12?
24    **A. There are certainly different trade secrets**
25 **within each version of the camera.**

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 7 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually
Conducted on August 15, 2024
25 (97 to 100)

**Page 97**

1    Q. Okay. So focusing on the one that
2  encompasses the design choices you made that enable
3  your products to withstand harsh environments, is
4  that a different trade secret for the R11 and the
5  R12?
6    A. I believe there are overlaps between the
7  two, but there may be specific design choices that
8  are different within those two that could be
9  considered trade secrets.
10   Q. So what are -- what's the overlap?
11   A. They have many features that overlap. One
12  example is that they both use [REDACTED] as the
13  front housing.
14   Q. And what are the different trade secrets?
15   A. I would have to go and review the -- the
16  designs in order to try to come up with some list.
17   Q. So where -- yeah. Where is the information
18  defining these trade secrets located?
19       MR. MELLEMA: Objection. Form.
20       THE WITNESS: Can you give me a specific
21  trade secret that you're asking about?
22  By MR. GALICA:
23   Q. Yeah. The two we've just been talking
24  about, so the material and the shape.
25       MR. MELLEMA: Objection. Form.

**Page 98**

1       THE WITNESS: The materials and the shape
2  are defined in the technical drawings.
3  By MR. GALICA:
4    Q. Okay. Anywhere else?
5    A. That is the document of truth for the
6  material and shape.
7    Q. Okay. And so it's your position that
8  you've never disclosed the shape of your products to
9  the public?
10   A. I never said that.
11   Q. Well, you said it was a trade secret;
12  right?
13   A. I said that the shape helps with making
14  sure that it can survive harsh environments.
15   Q. And is that a trade secret?
16   A. I don't believe that the shape is a trade
17  secret. I'm sure there's elements within the
18  enclosure that are trade secret.
19   Q. And you've never shown the inside of your
20  enclosures to the public?
21       MR. MELLEMA: Objection. Form.
22       THE WITNESS: There are FCC filings that
23  include pictures of the inside of the devices.
24  By MR. GALICA:
25   Q. So you've shown them to the public then;

**Page 99**

1  correct?
2       MR. MELLEMA: Objection. Form.
3       THE WITNESS: As I said, there are some
4  images that show some portion of the inside of
5  the -- inside of the device that are public.
6  By MR. GALICA:
7    Q. So what -- what is the portion that isn't
8  shown to the public that's a trade secret?
9    A. I would have to review all of those
10  documents to be able to comment further.
11   Q. You don't know as you sit here right now?
12   A. No. I don't remember what specifically was
13  shown in the FCC filing.
14   Q. All right. If you could turn to page 5 and
15  read lines 7 through 11 and let me know when you're
16  done.
17   A. Okay. I'm done.
18   Q. Okay. So can you explain the unique
19  configuration of the parts in the smart camera
20  assembly, what that means?
21   A. I'm struggling to explain it any more
22  clearly than it's already stated here.
23       So unique, as in it doesn't exist
24  elsewhere. Configuration, like how they're
25  arranged.

**Page 100**

1       Is there something else you're looking for?
2    Q. Well, let me ask it a different way. So
3  for the -- strike that.
4       What's the overall waste metering system?
5       MR. MELLEMA: Objection. Form.
6       THE WITNESS: Yeah. That's too broad of a
7  question. I don't -- I can't -- I can't summarize
8  it in the time that we have here.
9  By MR. GALICA:
10   Q. What -- what are the high level components
11  of it?
12   A. I think at a high level, we're providing
13  insights to our customers from how their containers
14  fill up and what are the contents of those
15  containers.
16   Q. So using the phrase "overall waste metering
17  system", is that too broad of a phrase?
18       MR. MELLEMA: Objection. Form.
19       THE WITNESS: Too broad of a phrase for
20  what?
21  By MR. GALICA:
22   Q. For you to understand what the trade secret
23  is associated to that?
24   A. As I said before, I think there are many
25  trade secrets that are encompassed within that broad

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 8 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually
Conducted on August 15, 2024
26 (101 to 104)

**Page 101**

1  statement.
2  Q. So the overall waste metering system, that
3  itself is not a trade secret?
4  **A. I think we have it listed as a trade secret**
5  **right there on line 22 of page 4.**
6  Q. Okay. That's what I'm trying to
7  understand.
8     What is the overall waste metering system?
9     MR. MELLEMA: Objection. Form.
10    THE WITNESS: I think the overall waste
11 metering system encompasses many parts. This
12 includes the hardware, the software, the algorithms,
13 the labeled and trained data. There is many
14 elements.
15 By MR. GALICA:
16 Q. But it's that unique configuration of those
17 specific elements and how they're connected that
18 constitutes the trade secret; is that correct?
19    MR. MELLEMA: Objection. Form.
20    THE WITNESS: Can you rephrase the
21 question?
22 By MR. GALICA:
23 Q. What was unclear about it?
24 **A. To be honest, I'm going around in circles.**
25 **I don't know what you're asking me.**

**Page 102**

1  Q. We share the same frustration.
2     Can you define, as you sit here right now,
3  what the trade secret is for your overall waste
4  metering system?
5  **A. As I said, I think it encompasses multiple**
6  **trade secrets. I don't think it's one single trade**
7  **secret.**
8  Q. So there is not one single trade secret for
9  your overall waste metering system; correct?
10 **A. As far as I understand it, correct.**
11 Q. Okay. If you could turn to page 7 and read
12 through lines 6 through 14. Let me know when you've
13 had a chance to review that.
14 **A. I've read that paragraph.**
15 Q. Okay. So do you understand that to mean
16 that there is a single trade secret for the smart
17 camera apparatus?
18 **A. I believe this to be a -- a trade secret**
19 **that describes the overall apparatus but that does**
20 **not exclude the possibility that there are**
21 **additional trade secrets that are basically sub**
22 **elements of that.**
23 Q. Okay. And just for the record, you're
24 reading line 6, "Compology's smart camera apparatus
25 trade secret includes", you -- you see the phrase

**Page 103**

1  "trade secret" is in the singular form there?
2  **A. Yes. But we also talk about the optical**
3  **assembly and design as a separate trade secret, but**
4  **that is part of the smart camera apparatus. That's**
5  **why I was saying there may be, basically, like, sub**
6  **trade secrets included within that overarching trade**
7  **secret.**
8  Q. Well, just focusing on line 6 through 14 on
9  page 7, you would agree that that -- what's
10 described there is intended to be a single trade
11 secret; correct?
12 **A. Yeah. By the use of singular versus**
13 **plural, that's what I'm lead to believe.**
14 Q. Okay. And that trade secret includes
15 everything that's listed in lines 6 through 14;
16 correct?
17 **A. Correct.**
18 Q. What's the difference between the optical
19 assembly and the smart camera?
20 **A. So as we've defined it, the optical**
21 **assembly includes** [redacted]
22 [redacted]
23 Q. I'm sorry. What was the last --
24 **A. And a -- and a --** [redacted]
25 [redacted]

**Page 104**

1  Q. Okay. And -- and going back to lines 6
2  through 14 on page 7, is the smart camera apparatus
3  the same in the R11 and R12 device?
4  **A. No.**
5  Q. Is it the same -- let me ask it a different
6  way.
7     Is the smart camera apparatus different for
8  the R11, R12 and R13?
9  **A. Yes. I would call each of those a separate**
10 **smart camera.**
11 Q. So would you also call each of those a
12 separate trade secret?
13 **A. I believe so.**
14 Q. And is the trade secret in line 6 through
15 14 just the fact that it includes these components,
16 or is it the specific components in the smart camera
17 of each device?
18    MR. MELLEMA: Objection. Form.
19    THE WITNESS: I believe this paragraph just
20 is -- is just listing some of the components but
21 that those do not constitute the trade secret.
22 By MR. GALICA:
23 Q. So this isn't the trade secret?
24    MR. MELLEMA: Objection. Form.
25    THE WITNESS: I think this describes at a

Case 3:23-cv-04804-WHA   Document 115-3   Filed 09/17/24   Page 9 of 9

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually
Conducted on August 15, 2024
27 (105 to 108)

**Page 105**

1  high level the trade secret, but I would not call
2  this the trade secret.
3  By MR. GALICA:
4     Q.  What would you call the trade secret?
5     A.  All of those design files that we've
6  provided in discovery.
7     Q.  All of what design files?
8     A.  All of the design and know-how needed to
9  build these smart camera apparatuses.
10    Q.  So you would need to have all of the design
11 files for every single component listed here in each
12 specific component, including all data sheets, to
13 know what the trade secret is?
14       MR. MELLEMA:  Objection.  Form.
15       THE WITNESS:  No.
16 By MR. GALICA:
17    Q.  How is that incorrect?
18    A.  There are -- we have -- we're describing
19 the camera apparatus as a trade secret, and that
20 includes many design choices within that camera
21 apparatus that are all -- that are all trade
22 secrets, as in they're not public knowledge.  So if
23 someone were to reverse engineer our product and
24 pick out any of those design choices that were not
25 public knowledge, then they would be infringing upon

**Page 106**

1  our trade secret.
2     Q.  You said it would be all of the information
3  in the design files that you provided; correct?
4        MR. MELLEMA:  Objection.  Form.
5        THE WITNESS:  No, I did not say that.
6  By MR. GALICA:
7     Q.  So then what -- what's the boundary?
8  What's the scope of the trade secret?
9     A.  I think any of the privately-held design
10 choices that we used in these cameras are within the
11 overarching trade secret.
12    Q.  But we already established those 6 -- lines
13 6 through 14, that's one trade secret; right?
14       MR. MELLEMA:  Objection.  Form.
15 By MR. GALICA:
16    Q.  So -- and you can't -- beyond what you've
17 testified to today, you can't define the scope or
18 boundary of the trade secret identified in lines 6
19 through 14?
20       MR. MELLEMA:  Objection.  Form.
21       THE WITNESS:  I'm not sure if I can answer
22 that question.
23 By MR. GALICA:
24    Q.  Why can't you answer that question?
25    A.  Because I feel like this is an issue of

**Page 107**

1  semantics, and I'm not trained as a lawyer to be
2  able to differentiate the semantic differences
3  between what you're trying to get at.
4     Q.  You understand that RoadRunner's alleging
5  that RecycleSmart has misappropriated trade secrets;
6  right?
7     A.  I do.
8     Q.  Okay.  That's not a matter of semantics;
9  correct?  That's what is going on; correct?
10    A.  Right.
11    Q.  Okay.  And you, in line 6 through 14, on
12 page 7 of your trade secret identification, you say
13 that your trade secret includes, and then you list
14 eight lines of technical description.
15      Do you see that?
16    A.  Yeah.
17    Q.  I'm trying to figure out what is the scope
18 of that technical description defining your trade
19 secret.
20      Do you understand that?
21    A.  How do you define scope in this context?
22    Q.  What does this mean?  What is the scope and
23 boundary of the trade secret information, line 6
24 through 14?
25    A.  So the physical camera, the smart camera

**Page 108**

1  apparatus that we designed and built, any aspect of
2  that that's not public knowledge, that is the trade
3  secret.
4     Q.  Is the battery pack public knowledge?
5     A.  No.
6     Q.  So you've never disclosed to the public
7  what type of batteries you use?
8     A.  That's not what I said.
9     Q.  Have you disclosed to the public what type
10 of batteries you used?
11    A.  I believe marketing has, yes.
12    Q.  Okay.  So that's not a trade secret, then.
13    A.  The battery chemistry isn't, but the
14 battery pack is.
15    Q.  Okay.  And what is secret about the battery
16 pack?
17    A.  There's a number of elements that we've
18 included in that battery pack that make it into a
19 pack, as opposed to just a single battery.
20    Q.  And what are those elements that you've
21 included?
22    A.  We've included a [REDACTED]
23 [REDACTED]
24 [REDACTED]
25    Q.  And you've never disclosed a picture of