Arameh Zargham O'Boyle (SBN: 239495)
AZOboyle@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone:    (310) 586-3200
Facsimile:    (310) 586-3202

James M. Wodarski *(Admitted Pro Hac Vice)*
JWodarski@mintz.com
Michael C. Newman *(Admitted Pro Hac Vice)*
MCNewman@mintz.com
Matthew S. Galica *(Admitted Pro Hac Vice)*
MSGalica@mintz.com
James J. Thomson *(Admitted Pro Hac Vice)*
JJThomson@mintz.com
Sean M. Casey *(Admitted Pro Hac Vice)*
SMCasey@mintz.com
Tianyi Tan *(Admitted Pro Hac Vice)*
TTan@mintz.com
Stephen Chen *(Admitted Pro Hac Vice)*
SChen@mintz.com
Amy LoBue *(Admitted Pro Hac Vice)*
ALoBue@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:    (617) 542-6000
Facsimile:    (617) 542-2241

Attorneys for Defendants
RECYCLE TRACK SYSTEMS, INC., and
RECYCLESMART SOLUTIONS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC.,<br><br>          Plaintiff,<br>    v.<br><br>RECYCLE TRACK SYSTEMS, INC., and<br>RECYCLESMART SOLUTIONS INC.,<br><br>          Defendants. | Case No. 3:23-cv-04804-WHA<br><br>**DEFENDANTS RECYCLE TRACK SYSTEMS, INC. AND RECYCLESMART SOLUTIONS INC.'S OPPOSITION TO PLAINTIFF'S OMNIBUS ADMINISTRATIVE MOTION TO SEAL (DKT. NO. 114)**<br><br>*Assigned for All Purposes to:*<br>The Hon. William H. Alsup, Courtroom 12<br><br>Complaint Filed:    August 4, 2023<br>Trial Date:        December 9, 2024 |

1

**TABLE OF CONTENTS**

2

Page

3

I.   LEGAL STANDARD ................................................................................................. 1

4

II.   ARGUMENT ............................................................................................................ 2

        A.   RoadRunner's ITS (Dkt. No. 46) ............................................................... 2

5

6

7

8

9

10

11

12

13

14

15

              1.   Page 3, Lines 21 to 27 .................................................................. 4
              2.   Page 6, Lines 4 to 6 ...................................................................... 5
              3.   Page 6, Lines 21 to 27 .................................................................. 5
              4.   Page 7, Line 13 ............................................................................. 6
              5.   Page 8, Line 8 ............................................................................... 7
              6.   Page 8, Lines 12 to 20 .................................................................. 7
              7.   Page 8, Line 28 to Page 9, Line 3 ................................................ 8
              8.   Page 9, Lines 10 to 17 .................................................................. 9
              9.   Page 9, Lines 20 to 23 .................................................................. 9
              10.  Page 10, Lines 10 to 26 .............................................................. 10
              11.  Page 11, Lines 7 to 10 ................................................................ 11
              12.  Page 11, Lines 15 to 24 .............................................................. 12
              13.  Page 12, Lines 14 to 19 .............................................................. 12
              14.  Page 15, Lines 16 to 28 .............................................................. 13
              15.  Page 16, Line 5 to Page 17, Line 17 .......................................... 13
              16.  Page 17, Line 28 to Page 18, Line 1 .......................................... 15
              17.  Page 18, Lines 2 to 7 .................................................................. 15
              18.  Page 18, Line 14 to Page 19, Line 6 .......................................... 16
              19.  Page 19, Lines 7 to 12 ................................................................ 17
              20.  Page 19, Line 18 to Page 20, Line 5 .......................................... 17
              21.  Page 20, Lines 10 to 20 .............................................................. 18
              22.  Page 20, Line 27 to Page 21, Line 17 ........................................ 18

        B.   Exhibits to RoadRunner's ITS (Dkt. No. 47) ......................................... 19
              1.   Exhibits 1-3, 5-6, and 8-13 (Schematics and Block Diagrams) .... 19
              2.   Exhibits 4, 7, and 14-16 (Technical Specifications and Datasheets) ... 21
              3.   Exhibits 18-19 (Images) .............................................................. 22

        C.   Defendants' Opposition (Dkt. Nos. 52, 53) ............................................. 23
              1.   Page 22, Lines 3 to 5 .................................................................. 23
              2.   Page 22, Lines 8 to 10 ................................................................ 23
              3.   Page 23, Line 5 ........................................................................... 23

        D.   RoadRunner's Reply (Dkt. Nos. 57, 61) ................................................. 23
              1.   Page 10, Line 6 ........................................................................... 23
              2.   Page 12, Line 28 to Page 13, Line 1 .......................................... 23
              3.   Page 16, Line 27 to Page 17, Line 1 .......................................... 24

III.  CONCLUSION ....................................................................................................... 24

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Trump*,
   No. 13-cv-2519-GPC-WVG, 2016 WL 3036302 (S.D. Cal. May 27, 2016) ...........................2

*Ctr. For Auto Safety v. Chrysler Grp., LLC*,
   809 F.3d 1092 (9th Cir.) ................................................................................................ 1-2

*Garedakis v. Brentwood Union School District*,
   No. 14-cv-04799-PJH, 2015 WL 1906138 (N.D. Cal. Apr. 27, 2015).......................................2

*In re Midland Nat'l Life Ins. Co.*,
   686 F.3d 1115 (9th Cir. 2012) .............................................................................................2

*In re Twitter, Inc. Securities Litig.*,
   No. 16-cv-05314-JST, 2020 WL 2519888 (N.D. Cal. May 18, 2020) ...................................2

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ...................................................................................2, 8, 21

**Statutes**

Civil L.R. 79–5 ..............................................................................................................2, 19

Fed. R. Civ. P. 26(c) ..............................................................................................................2

Pursuant to the Court's Order (Dkt. No. 93), Defendants Recycle Track Systems, Inc., and RecycleSmart Solutions Inc. ("Defendants") hereby respectfully submits this Opposition to Plaintiff's Omnibus Administrative Motion to Seal ("Motion") (Dkt. No. 114). This Opposition is accompanied by (1) the Declaration of Matthew S. Galica; and (2) a Proposed Order.

While Plaintiff's third iteration of proposed redactions is narrower than its first two attempts, Plaintiff's proposed redactions remain overbroad and cover public information, include marketing generalizations, and rely on boilerplate assertions of alleged harm that the Court has expressly warned to exclude. Indeed, Plaintiff has been aware of the public nature of the information it now seeks to redact as early as Defendants' prior opposition to Plaintiff's prior requests to seal (*see* Dkt. No. 64-1) and as recent as Defendants' rebuttal expert reports detailing the various instances of public disclosure of Plaintiff's alleged trade secrets, which were served before Plaintiff's Motion. Further, despite the Court's guidance that Plaintiff provide, "[o]n a *passage-by-passage* basis for each filing," specific justification for its proposed redactions, Plaintiff's Motion repeats the same boilerplate assertions of purported interest and potential injury for each passage. *See* Dkt. No. 93 at 6; *but see generally* Motion at 4-25. These conclusory and hollow statements fail to offer any meaningful justification for Plaintiff's overbroad requests to seal.

Ultimately, Plaintiff's facially inadequate attempts to identify material worthy of confidential protection amplifies Plaintiff's continuing inability to identify, with any particularity, its alleged trade secrets in this case. The reality is, when public information and marketing generalizations are properly excluded from Plaintiff's proposed redactions, there are no "trade secrets" in Plaintiff's Identification of Trade Secret ("ITS") (Dkt. No. 46). This Court and Defendants should not continue to be burdened with guessing what in Plaintiff's proposed redactions actually constitutes a trade secret. All of Plaintiff's proposed redactions should be rejected.

## I.   LEGAL STANDARD

Courts have long recognized the public's right of access to judicial proceedings. For motions and their attachments that are "more than tangentially related to the merits of a case," sealing is only proper upon a showing of "compelling reasons." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809

F.3d 1092, 1101-02 (9th Cir.), *cert denied*, 580 U.S. 815 (2016). Even when filings only tangentially relate to the merits, the party seeking to maintain the secrecy thereof must still show a ***particularized*** "good cause" to justify sealing. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *In re Midland Nat'l Life Ins. Co.*, 686 F.3d 1115, 1119 (9th Cir. 2012); Fed. R. Civ. P. 26(c).

Where the information sought to be sealed is already in the public domain, there is no good cause to redact such information. *See, e.g.*, *In re Twitter, Inc. Securities Litig.*, No. 16-cv-05314-JST, 2020 WL 2519888, at *2 (N.D. Cal. May 18, 2020) (collecting cases that find it unjustified to redact any public information); *Garedakis v. Brentwood Union School District*, No. 14-cv-04799-PJH, 2015 WL 1906138, at *3 (N.D. Cal. Apr. 27, 2015) (finding that the party that sought sealing has "not shown good cause for preventing the disclosure of information already in the public domain"); *Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302, at *4 (S.D. Cal. May 27, 2016) ("Even a single public disclosure of information may defeat trade secret protection.").

Sealing orders "may issue only upon a request that establishes that the [information] is privileged or protectable as trade secret or otherwise entitled to protection under the law." Civil L.R. 79–5(b). All requests to file under seal ***must be "narrowly tailored,"*** such that ***only sealable information*** is sought to be redacted from public access. *Id.* (emphases added). "'[V]ague boilerplate language or nebulous assertions of potential harm' will not suffice to support redaction." Dkt. No. 93 at 2 (citing *Bronson v. Samsung Elecs. Am., Inc.*, 2019 WL 7810811, at *1 (N.D. Cal. May 28, 2019)).

## II.   ARGUMENT

Despite being given a third chance to significantly narrow its requests for redaction, Plaintiff ***again*** has only provided boilerplate, perfunctory arguments in support of its request to seal certain material. As detailed below, most, if not all, of Plaintiff's remaining proposed redactions have been publicly disclosed by various sources, ranging from Plaintiff's own patents, webpages, and FCC filings to public presentations given by Plaintiff's employees at industry conferences. More importantly, Plaintiff's Motion fails to follow the Court's clear requirement that it provide particularized, "*passage-by-passage* basis" for each of its requested redactions. *See* Dkt. No. 93 at 6 (emphasis in original). While Plaintiff divides its Motion into a passage-by-passage format, its

1    arguments for each passage as to the "legitimate interest," the potential injury, and whether and why
2    a narrower redaction is possible are the same, boilerplate statements. *See generally* Motion at 4-25.
3    For each passage, Plaintiff merely includes some formulaic, semantic variance of the following
4    boilerplate assertions: (1) the proposed redaction covers Plaintiff's trade secrets; (2) if the redaction
5    is denied, Plaintiff will lose trade secret protection and thereby suffer irreparable injury; (3) Plaintiff's
6    competitors could use the information to gain competitive advantages; and (4) there is no narrower
7    redaction possible—with zero citation to any evidentiary support. *See* Dkt. No. 93 at 2 ("'[V]ague
8    boilerplate language or nebulous assertions of potential harm will not suffice to support redaction."
9    (citation omitted)). For this reason alone, all of Plaintiff's proposed redactions should be rejected.

10          Plaintiff's lack of diligence in proposing redactions is also clear given its failure to "include
11   for each listing citation to **all** docket numbers at which the same excerpt appears, whether publicly or
12   sealed" as the Court requires. *See* Dkt. No. 93 at 6 (emphasis added). For instance, the proposed
13   redaction on page 10 of Plaintiff's Reply (Dkt. No. 57-4 at 10) is part of a verbatim quotation of page
14   7 of the ITS (Dkt. No. 46 at 7), which Plaintiff also seeks to redact. *See* Motion at 6, 23. Yet neither
15   listing includes each other, even when the relevant portion of Plaintiff's Reply expressly cites "ITS
16   at 7." *See* Dkt. No. 57-4 at 10. Similarly, each of the other proposed redactions to Defendants'
17   Opposition and Plaintiff's Reply directly quotes or clearly references the ITS, but Plaintiff fails to
18   include a single citation to the ITS (Dkt. No. 46) for any of such redaction listings. *See* Motion at 21-
19   25; *see also* Dkt. No. 93 at 5 (noting that "some of the proposed redactions quote the trade secrets
20   identification").

21          Plaintiff fares no better with the declaration accompanying its Motion, which again provides
22   boilerplate assertions that the requested redactions cover trade secrets and that the disclosure thereof
23   would cause Plaintiff irreparable injury. *See* Dkt. No. 114 at ¶¶ 9, 11. Nothing in the declaration offers
24   any "evidentiary support," contrary to the Court's guidance. *See* Dkt. No. 93 at 2 ("[Sealing motions]
25   must provide evidentiary support where necessary, such as by sworn declaration."). For these reasons,
26   and the details below, all of Plaintiff's proposed redactions should be rejected.

27
28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S OMNIBUS ADMINISTRATIVE MOTION TO SEAL (DKT.
NO. 114) (CASE NO. 3:23-CV-04804-WHA)

A. **RoadRunner's ITS (Dkt. No. 46)**

1. **Page 3, Lines 21 to 27**

None of Plaintiff's proposed redaction in this passage is warranted because all of it has been publicly disclosed at least by the ITS itself, Compology patents such as U.S. Patent No. 10,943,356, and the public presentations given by Plaintiff's current or former employees.

To start, Plaintiff seeks to redact the human labeling and tagging process that it already discloses—without redaction—in the ITS. Dkt. No. 46 (page 12, lines 13-14) ("Compology then *manually* labeled and tagged these images with particular information." (emphasis added)).

In addition to the ITS itself, the use of human labelling and tagging to train machine learning models (including the specific mechanism thereof) is also disclosed in detail by the '356 Patent and the MLconf presentation by Justin Armstrong (Compology's Senior Backend Engineer). As just some examples, the '356 Patent specifically discloses: (1) "the known fill levels can be determined by providing the images to human classifiers and using their fill level determinations as the known fill level" (Ex. 1 at 4:46-49); (2) "[t]he set of scored images preferably includes only images for which the fill level was determined by one or more humans, but can additionally or alternatively include images associated with only computer-determined fill levels" (*see id.* at 10:3-21); (3) the subject images of the CNN can be labeled by human classifiers to assess fullness on a randomly selected basis "e.g. a predetermined fraction of all images assessed" (*see id.* at 13:7-25); and (4) the fill level analysis can include evaluating the average or the weighted average of the scored distribution (*see id.* at 10:3-21). *Compare id.* at 4:46-49, 10:3-21, 13:7-25 *with* Dkt. No. 46 (page 16, lines 5-13). At the MLconf presentation, Mr. Armstrong specifically disclosed Compology's use of "human-in-the-loop system" for its fullness analysis. *See* Ex. 2 at 05:15-05:36 (Compology's camera sensor "takes pictures and uploads them to our cloud where we analyze them using a couple of pretty vanilla convolutional neural network processes and human-in-the-loop data science to analyze them for fullness and contamination."). At the December 2016 Embedded Vision Alliance Member Meeting, Ben Chehebar (Compology's co-founder and CPO) also disclosed that Compology has "hundreds of people" look at and classify images. Ex. 3 at 19:45-20:52. Jason Gates (Compology's co-founder

CEO) has also stated in a public interview with CNN Business: "We use the most advanced machine learning techniques called neural networks … [and] track the fullness, the type of materials going inside it, and when that container is serviced." Ex. 4 at 00:59-01:12. For the specific information on page 3, lines 21-22, Plaintiff also fails to explain how the approximate figure given, if publicly disclosed, can result in any injury.

### 2.    Page 6, Lines 4 to 6

The proposed redaction in this passage has been publicly disclosed and should be rejected.

First, the public listing of Compology's R11 on the Verizon website discloses that the camera has "stereo vision." *See, e.g.*, Ex. 5 at RTS_00335960. Similarly, in 2016, Mr. Chehebar presented a public teardown of R11 and disclosed Compology's use of stereo cameras. Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 11:48-12:00; *id.* at 17:20-19:40.

Second, it is public knowledge that, unlike the R11, Compology's subsequent generations of camera systems only utilize a single camera instead of stereo vision. *See, e.g.*, Ex. 6 (Compology "Physical Camera Installation & Removal") at RTS_00335712 (showing that both R13S and R13 has only a single camera); Dkt. No. 34-1, Weinger Decl. Ex. C (FCC filing of Compology R12 external photographs showing only a single camera); Ex. 7 at RTS_00333867 (FCC filing titled "Compology R12 User Manual / Installation Instructions" showing an R12 photograph annotated with "Camera" and "Flash"). Moreover, the '356 Patent discloses that for image input, the model "***preferably*** accepts a single image … but can additionally or alternatively accept inputs including multiple images," such as "stereoscopic image pair." Ex. 1 ('356 Patent) at 8:51-9:14 (emphasis added).

### 3.    Page 6, Lines 21 to 27

The proposed redaction in this passage covers generalized marketing commentary and/or information that has been publicly disclosed and should be rejected.

First, it is public knowledge that Plaintiff's camera apparatus uses a flash: anyone looking at a Compology camera—placed out in the public and depicted in numerous public sources—can easily see the flash embedded therein. *See, e.g.*, Dkt. No. 34-1, Weinger Decl. Exs. C and F (FCC filings of Compology R12 and R13S external photographs showing a flash); Ex. 3 (Chehebar Embedded Vision

Alliance Presentation) at 11:53-11:55 (noting that "we have flash" in R11); Ex. 7 at RTS_00333867 (Compology's FCC filing showing an R12 photograph annotated with "Camera" and "Flash"). Similarly, anyone looking at camera can see the specific housing thereof. *See* Dkt. No. 34-1, Weinger Decl. Exs. C and F (FCC filings of Compology R12 and R13S external photographs).

Second, for the remaining portion of the proposed redaction on page 6, lines 24-27, Plaintiff seeks to redact highly generalized ***design goals***, which are either common sense or readily apparent for any embedded system with a camera, a flash, and a battery. None of these lines, however, specifies Plaintiff's purported trade secrets, *e.g.*, ***what*** the specific design choices are or ***how*** they have been implemented. Similarly, the proposed redaction on page 6, line 21 provides no specific insight to any plausible trade secret and instead again recites a fundamental photography concept. Plaintiff does not articulate any ***specific*** figure for this purported design choice. This is nothing more than marketing generalizations.

Third, as to potential harm of public disclosure, Plaintiff only offers boilerplate assertions that competitors may gain a cost- or time-saving advantage, which cannot be reconciled with the facts that (1) the pertinent hardware components are in plain view for any member of the public looking at a Compology camera; and that (2) the proposed redaction does not at all specify ***how*** Plaintiff implements its design goals and ***what*** its specific design choices are.

### 4.      Page 7, Line 13

Plaintiff alleges as a trade secret the specific "type of coating RoadRunner uses on its smart camera apparatus." However, the proposed redaction is over a highly generalized word that does not specify the particular type of coating RoadRunner uses. Moreover, Plaintiff has publicly listed "UV exposure" among one of the "dumpster conditions" that its camera apparatus needs to withstand. *See, e.g.*, Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 12:46-13:36 (disclosing "UV exposure"). The requested redaction is thus both highly generalized and also in the public domain. Beyond boilerplate assertions, Plaintiff fails to show any particularized injury it may suffer if the requested redaction is denied. Plaintiff's proposed redaction should be rejected.

**5.    Page 8, Line 8**

Plaintiff seems to suggest that the specific FOV of the lens in its R12 and R13 devices is somehow a competitive advantage deserving of confidential treatment. Plaintiff's own technical expert disagrees. Ex. 8 (Hoarty Depo. Tr.) at 117:20-118:14 (stating that there is no specific FOV defining Plaintiff's trade secret, and, instead, the camera just needs to "be able to monitor contents of the bin, of the dumpster"); 161:12-17 (confirming that the trade secret associated with Plaintiff's R12 device does not have a specific FOV). As Mr. Hoarty explains, the only thing that actually matters is that Plaintiff's devices include a wide lens capable of taking pictures of the inside of waste containers. *Id.* This is publicly disclosed, though. Ex. 9 at RTS_00335935 (disclosing that Plaintiff's products incorporate "wide-angle cameras" in order to "capture the entire interior of a large industrial (roll-off) or commercial (front-load) container with clarity"). At any rate, it is not credible for Plaintiff to suggest that it has a trade secret or competitive advantage because its cameras include a FOV that allows them to take picture of the inside of waste containers—which is what they are designed and publicly advertised to do. Lastly, as with every other passage Plaintiff attempts to redact, Plaintiff fails to identify any harm—much less irreparable harm—it will suffer from disclosure of the FOV its products use. Plaintiff's proposed redactions should be rejected.

**6.    Page 8, Lines 12 to 20**

Contrary to its representation, Plaintiff's proposed redactions to this passage are not limited to "those portions of the sentences that would reveal details of Compology's ***experimentation with different lenses***." Motion at 7 (emphasis added). For instance, the sentence on page 8, lines 13-15 is irrelevant to Compology's experimentation with different lenses and covers public information anyway. The unredacted portion of the ITS itself states that Compology's camera has been designed "for use with harsh weather conditions." Dkt. No. 46 at 7; *see also* Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 12:44-13:36 (disclosing the reliability requirements of Plaintiff's products, which include withstanding harsh weather conditions like "thermal cycle[s]" ranging from -20 degrees Celsius to 85 degrees Celsius). Moreover, as detailed in Section II.A.1 *supra* and Section II.A.14 *infra*, it is public knowledge that Plaintiff uses both human and machine-learning algorithms

1   to analyze images captured by its camera, which may or may not be suitable. Accordingly, the

2   redaction sought for similar phrases on page 8, lines 19-20 is unwarranted. Further, Plaintiff's expert

3   confirms that what Plaintiff attempts to redact on page 8, lines 12-13 is not deserving of confidential

4   protection as it is commonly known. Ex. 8 (Hoarty Depo. Tr.) at 111:3-6 (stating that it is common

5   to use a glass and plastic lens).

6          Plaintiff fails to identify any portion of this passage that is actually confidential and does not

7   attempt to explain how it would be harmed if the redactions were denied. Transparently, Plaintiff's

8   proposal is an attempt to shift its burden to the Court and Defendants to vet whether the information

9   at issue is in fact sealable. *See, e.g.*, Dkt. No. 93 at 2 ("'A party seeking to seal a judicial record

10  [ultimately] bears the burden of overcoming th[e] strong presumption" of public access.' *Kamakana*,

11  447 F.3d at 1178."); Dkt. No. 112 at 4 ("'The judge need not document compelling reasons to unseal;

12  rather the proponent of sealing bears the burden with respect to sealing.' *Kamakana*, 447 F.3d at

13  1182."). Plaintiff's overbroad redactions should be rejected, especially given the Court's express

14  warning that absent adequate narrowing, "the redactions will be rejected in full." Dkt. No. 93 at 5.

15              **7.    Page 8, Line 28 to Page 9, Line 3**

16         The proposed redaction in this passage has been disclosed by multiple public sources. As one

17  example, Mr. Chehebar has publicly discussed the following as conditions that Plaintiff's camera has

18  to withstand for reliability: "Vibration table," "Dust ingress," "Enclosure seal pressurization," "Water

19  immersion (1m)," and "UV exposure." Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at

20  12:46-13:36; *cf.* Dkt. No. 46 (page 8, line 28 to page 9, line 2). As another example, Compology's

21  public FCC filings show in plain view that its camera has a seal and that its enclosure masks its

22  internal PCB components. *See, e.g.*, Dkt. No. 34-1, Weinger Decl. Exs. B and E (FCC filings of

23  Compology R12 and R13 internal photographs showing a seal and the enclosure covering internal

24  components). In addition, both the public presentation by Mr. Chehebar and the FCC filings plainly

25  show the specific hardware parts. *Id.*; *see* Ex. 3 (Chehebar Embedded Vision Alliance Presentation)

26  at 10:56-12:03 (R11 teardown). Furthermore, it is public that Plaintiff's camera employs a "Steel +

27  Polycarbonate construction." *See, e.g.*, Ex. 10 at RTS_00337213 (Compology slides re: "13th

28

1   Generation Cameras" noting that Compology's cameras is "MIL Spec rated" as to durability, *i.e.*,

2   military standards for reliability in harsh environmental conditions).

3       Apart from the publicly disclosed information, Plaintiff's proposed redactions in this passage

4   amount to, at best, vague marketing commentary. For instance, Plaintiff seeks to redact the highly

5   generalized characterization of polycarbonate on page 9, line 1 (*i.e.*, "extra strong" polycarbonate),

6   which provide no definition of the said material such as its chemical composition or technical

7   specification. Similarly, Plaintiff's proposed redactions on page 9, lines 2-3 merely recites high-level

8   design goals or concepts readily apparent to anyone designing an embedded system placed in waste

9   containers that uses antenna (*i.e.*, "maximize strength" and "minimizing RF signal attenuation").

10      Plaintiff's proposed redactions should be rejected.

11              **8.    Page 9, Lines 10 to 17**

12      The proposed redaction in this passage has been disclosed by multiple public sources. First, it

13  has been publicly disclosed that Plaintiff employs nanocoating for its cameras. As RoadRunner's own

14  webpage states: "Grime-resistant lens nanocoating keeps the camera clean." Ex. 11 at

15  RTS_00347459; *cf.* Dkt. No. 46 (page 9, lines 12 and 17). Second, the specific hardware design

16  choices discussed in the proposed redaction is also apparent to anyone looking at a few generations

17  of Compology's cameras. *See, e.g.*, Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at

18  04:41-06:55 (showing Compology's R1, R3, R7, R10, and R11, with the later generations clearly

19  showing changed design in the apparatus shape); Dkt. No. 34-1, Weinger Decl. Exs. C and F (FCC

20  filings of Compology R12 and R13S external photographs showing window geometry); *cf.* Dkt.

21  No. 46 (page 9, lines 10-11). Third, it has been publicly disclosed that Plaintiff allegedly puts its

22  cameras through extensive testing for them to be able to reliably last five years, including with respect

23  to UV exposure. *See, e.g.*, Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 13:07-16:28.

24  Accordingly, Plaintiff's proposed redactions should be rejected.

25              **9.    Page 9, Lines 20 to 23**

26      The proposed redaction in this passage has been disclosed by multiple public sources and, at

27  any rate, cannot plausibly result in injury warranting redaction. It should be rejected. First, the specific

28

1   location of the "white LED lens flash" in Compology's camera is public through, *inter alia*, Mr.

2   Chehebar's public teardown of R11 and Plaintiff's public FCC filings of internal and external

3   photographs of R12, R13, and R13S. *See, e.g.*, Ex. 3 (Chehebar Embedded Vision Alliance

4   Presentation) at 10:56-12:03; Dkt. No. 34-1, Weinger Decl. Exs. B, C, E, and F (FCC filings of

5   Compology R12, R13, and R13S internal and external photographs disclosing the LED's specific

6   location relative to the camera lens). Second, in view of the publicly known use and location of the

7   LED flash in Plaintiff's camera, the remaining proposed redaction on page 9, lines 22-23 that

8   discusses generalized marketing material (*i.e.*, "ensure sufficient accurate image capture of the

9   interior of a variety of waste containers" and "evenly deliver[] light to the widest area inside the waste

10  containers) is readily apparent. Superfluous language aside, Plaintiff's remaining proposed redaction

11  states that Plaintiff's product uses a flash to take a picture in a dark space. Nothing about that is

12  proprietary, valuable, a trade secret, or deserving of confidential treatment. This is evidenced by the

13  fact that Plaintiff fails to articulate, with any specificity, how the public disclosure of page 9, lines

14  22-23 can result in any irreparable harm to it such that redaction is justified. Plaintiff's redactions

15  should be rejected.

16                  **10.      Page 10, Lines 10 to 26**

17          The proposed redaction in this passage has been disclosed by multiple public sources and thus

18  should be rejected. Based on Mr. Chehebar's teardown presentation and the various FCC filings, it is

19  public knowledge that: (1) Plaintiff's camera uses a PCB which necessarily includes traces (and

20  Plaintiff does not explain what it means by "an optimal PCB trace pattern" and (2) it uses LTE CAT-

21  M(4) and that battery consumption in relation to wireless communication is a design consideration.

22  Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 10:56-12:03 (R11 teardown); *id.* at

23  11:23-34 (for R11, "we currently use a CAT-4 LTE modem for our data"); *id.* at 17:35-17:40

24  (explaining that data communications cost battery power); *see also* Dkt. No. 53-1, Weinger Decl. Ex.

25  7 (Compology R13 & R13L FCC / ISED Test Report); *cf.* Dkt. No. 46 (page 10, lines 10-11 and 17-

26  18). Based on Mr. Chehebar's teardown presentation and Mr. Gates' interview, the frequency at

27  which Plaintiff's camera takes images and engages in wireless communication is also known. *See* Ex.

28

3 (Chehebar Embedded Vision Alliance Presentation) at 17:16-18:07; Ex. 4 (Gates CNN Business Interview) at 01:04-01:06 ("We take pictures three to five times a day."); *cf.* Dkt. No. 46 (page 10, lines 12-15). Based on Mr. Gates' interview and the unredacted portion of the ITS itself, it is publicly known that Compology uses machine learning algorithms to provide, *inter alia*, service detection and rightsizing recommendation. *See, e.g.*, Ex. 4 (Gates CNN Business Interview) at 01:07-01:12 ("We track … when that container is serviced."); Dkt. No. 46 at 19 (disclosing without any redaction that "Compology developed a rightsizing recommendation generation algorithm"); Ex. 12 (disclosing that Compology provides rightsizing recommendations and service detection); *cf. id.* (page 10, lines 20-22). Finally, given Plaintiff's public disclosure of its use of Global Navigation Satellite System ("GNSS")/GPS in the ITS itself, the specific information on page 10, lines 23-26 is readily apparent. Plaintiff's proposed redactions should be rejected.

### 11.    Page 11, Lines 7 to 10

Plaintiff's first proposed redaction on page 11, lines 7-8 contains nothing but generalized marketing commentary (*i.e.*, "low power consumption, battery capacity, size, weight, and temperature performance"). Nothing about this statement is a trade secret or confidential.

At any rate, all of the proposed redactions in this passage have been publicly disclosed and should be rejected. The ITS itself discloses without redaction that Compology has specifically chosen "Lithium Thionyl Chloride" to meet its "strict requirements." Dkt. No. 46 (page 11, lines 8-9). The public listing of Compology's R11 on the Verizon website also discloses its battery chemistry as "3.6V/57Ah Lithium Thionyl Chloride." Ex. 5 at RTS_00335961. Mr. Chehebar's public teardown presentation further discloses that "the big thing on the right is a … battery. We use a Lithium Thionyl Chloride battery, which is great for large temperature ranges and really high energy density. Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at 11:11-11:23; *cf.* Dkt. No. 46 (page 11, lines 7-10). Moreover, it is also basic public knowledge that Lithium Thionyl Chloride batteries are known for their low self-discharge rate, as shown by a simple Internet search. *See, e.g.*, Ex. 13 (Google Search results for "Lithium Thionyl Chloride"). Furthermore, it is also publicly known that a capacitor can be used to address the disadvantages associated with that Lithium Thionyl Chloride batteries. *See,*

*e.g.*, Ex. 14 at RTS_00344368 – RTS_00344369 (2005 article disclosing the use of a "hybrid layer capacitor" with Lithium Thionyl Chloride ("Li/SOCL₂") batteries); *cf.* Dkt. No. 46 (page 11, line 10).

### 12. Page 11, Lines 15 to 24

Plaintiff has failed to explain why any of the common image processing techniques listed in this passage require redaction. As Plaintiff's employee explained, all of these image processing techniques are publicly known and commonly used. Ex. 15 (Longson Depo. Tr.) at 147:11-150:15. And, as with every other proposed redaction, Plaintiff has not even attempted to show—much less demonstrated—how it might be harmed by disclosure of the fact that its camera uses commonly-known image processing techniques. Accordingly, Plaintiff's proposed redactions should be rejected.

### 13. Page 12, Lines 14 to 19

The proposed redaction in this passage has been publicly disclosed by various public sources and therefore should be rejected. It is public knowledge that for training its machine learning models, Plaintiff uses both human and machine labeling and tagging for various parameters including fullness, empty events, and container content (*e.g.*, as to contamination). *See, e.g.*, Ex. 4 (Gates CNN Business Interview) at 00:59-01:12 ("We use the most advanced machine learning techniques called neural networks. We take pictures three to five times a day. We track the fullness, the type of materials going inside it, and when that container is serviced."); Ex. 2 (Armstrong MLconf presentation) at 05:15-05:36 (Compology's camera sensor "takes pictures and uploads them to our cloud where we analyze them using a couple of pretty vanilla convolutional neural network processes and human-in-the-loop data science to analyze them for fullness and contamination."); Ex. 1 ('356 Patent) at (disclosing "[a] method for fill level determination, which can include receiving a set training set, training neural network, and/or determination a container fill level" and "[a] system for fill level determination, which can include … one or more content sensors"); *see also, e.g.*, *id.* at 4:36-56 ("The training set is preferably a labeled set (e.g., wherein each image is associated with a known fill level. … However, the training set can be labeled in any other suitable manner."). For what is included in "training data," the very next (unredacted) sentence in the ITS itself also discloses as a training set "a critical mass of images" that allows Compology to develop machine learning models for "fullness levels," "content,"

and "the empty/service state." Dkt. No. 46 (page 12, lines 19-22).

### 14.     Page 15, Lines 16 to 28

Plaintiff's "sub-par image detection" process has been disclosed by at least the '356 Patent. Instead of "sub-par image detection" or "SPID," the '356 Patent discloses this process as a "diverter model" (*e.g.*, "unsuitable label determination model"), but the two operate identically. *See, e.g.*, Ex. 1 ('356 Patent) at 8:40-50 (disclosing a diverter model "which can function to train a model for determining an image depicting a suitable container interior, score images based on suitability, etc."). The '356 Patent further discloses that the diverter model preferably includes a neural network "with respect to the fullness model" and preferably provides multiple output values such as "candidate label, unsuitable label, unsuitable label reason." *Id.* at 9:16-34. "The neural network is preferably a convolutional neural network (CNN)." *Id.* at 7:23-36. The '356 Patent discloses the input into this diverter model as an image or image groups of waste containers, and any other suitable images in any suitable manner. *Id.* at 11:38-12:24. Figure 13 of the '356 Patent specifically discloses that the diverter model determines suitability for the fill level determination model. *Id.* at Fig. 13. The diverter model can determine on image suitability and on a threshold-based confidence level, based on which the image can be or not be "provided as input to the fullness model," *e.g.*, "can be discarded, can be directed for alternate analysis such as human analysis, etc." *See id.* at 11:56-67.

The detailed disclosure of a diverter model by the '356 Patent clearly covers Plaintiff's highly generalized description of its sub-par image detection process in this proposed redaction, including "how it is used, where it is integrated, and how it operates." *Compare id. with* Dkt. No. 46 at 15.

Plaintiff does not address at all what has been disclosed in detail in its own patent, let alone distinguishing between the proposed redaction and the '356 Patent to justify sealing the former. All Plaintiff has to support its request is its contention, without evidence, that sub-par image detection is a trade secret. Plaintiff also does not bother to articulate any specific injury it may suffer. Therefore, Plaintiff's proposed redaction as to page 15, lines 16-28 of the ITS should be rejected.

### 15.     Page 16, Line 5 to Page 17, Line 17

Plaintiff's proposed redaction for this passage plainly contradicts its representation that it has

1  included "only the language describing the process … to generate a container fullness analysis." *See*

2  Motion at 12. The proposed redaction is overbroad on its face when it redacts, *inter alia*, the variants

3  of the phrase "container fullness analysis" that is itself public through the unredacted section heading.

4  *See* Motion Ex. A at 16-17 (seeking redaction of such phrases on page 16, line 14 and page 17, line

5  17). Similarly, Plaintiff seeks to redact the human labeling and tagging process for when it discloses

6  without redaction, within the ITS, that "Compology then **manually** labeled and tagged these images

7  with particular information." Dkt. No. 46 (page 12, lines 13-14).

8         Moreover, the proposed redaction covers public information disclosed by multiple sources,

9  including the unredacted portions of the ITS. To start, it is public knowledge that Plaintiff uses

10  algorithms and/or machine learning models for fullness analysis. *Compare id.* at 12 (unredacted

11  statement that "Compology was able to develop working machine learning models for fullness levels

12  of waste containers") *with id.* at 16 (redaction proposed for various references to the use of machine

13  learning models for fullness analysis; *see also, e.g.*, Ex. 1 ('356 Patent) at 3:49-5:63 (disclosing a

14  "fullness model" based on labelled images). It is also public that Plaintiff's machine learning models

15  analyze fullness, emptiness, and dumpster content. *Compare, e.g.*, Dkt. No. 46 at 3 ("The machine

16  learning models include a fullness analysis, emptiness analysis, and dumpster content (e.g.,

17  contamination) analysis, among others.") *with id.* at 16 (redaction proposed for the type of analyses

18  performed by Plaintiff's machine learning models on line 16).

19         For Plaintiff's container fullness analysis, the '356 Patent discloses the use of subject and

20  reference images of the same container. *See, e.g.*, Ex. 1 ('356 Patent) at 6:29-34 ("The neural network

21  is preferably trained using a subject image … and a reference image … preferably … an image

22  sampled by the same camera as the subject image (e.g., an image of the same container from the same

23  viewpoint) …"); *id.* at 15:47-52 (disclosing receiving a subject image and a reference image of the

24  same waste container as input to the neural network). The '356 Patent also discloses that the CNN, or

25  the neural network, can determine the "fullness metric" a confidence level either low or sufficient. *Id.*

26  at 7:37-49, 12:49-13:6, 15:49-50.

27         Furthermore, as Section II.A.1 *supra* has discussed above, it is public that Plaintiff uses human

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S OMNIBUS ADMINISTRATIVE MOTION TO SEAL (DKT. NO. 114) (CASE NO. 3:23-CV-04804-WHA)

1    labelling and tagging for its analysis of container fullness (or emptiness) and contamination.

2         In addition to covering public information, Plaintiff's proposed redaction in this passage cover

3    generic marketing commentary (*e.g.*, page 16, line 11 alluding to an increase in accuracy of the overall

4    system; lines 11-13 stating that more training date "creates a situation that allows for continual

5    improvement of the machine learning models"—a concept that Plaintiff publicly recites ad nauseum;

6    lines 15-16 boasting accuracy) in direct contradiction with the Court's guidance. Dkt. No. 93 at 3.

7         Plaintiff's proposed redaction in this passage is plainly unjustifiable and should be rejected.

8              **16.    Page 17, Line 28 to Page 18, Line 1**

9         It is unclear why Plaintiff has proposed these redactions. Facially, they do not contain

10   confidential information. To the extent Plaintiff proposed these redactions because they relate to the

11   types of contaminants that Plaintiff's products search for, those have been disclosed by Compology's

12   patent applications, such as U.S. Patent Appl. No. 17/145,021, which discloses that "[t]he

13   contaminants can include specific items," including *inter alia* the seven specific kinds of potential

14   contamination disclosed in the ITS. Ex. 16 ('021 Appl.) at [0040]. The '021 Application also discloses

15   that different contaminant types can be detected depending on how common such contaminants are.

16   *Id.* at [0042]. Therefore, the proposed redaction should be rejected as having been publicly disclosed.

17             **17.    Page 18, Lines 2 to 7**

18        The proposed redaction in this passage is fully disclosed by Compology's patent applications,

19   such as U.S. Patent Appl. No. 17/145,021, and thus should be rejected. The '021 Application disclose:

20   (1) a system for classifying contaminants, which receives a set of photographs associated with the

21   content of a container (*id.* at [0027]); (2) a neural network. *i.e.*, a regional proposal classification

22   network (RPCN) wherein a first variation of "the RPCN determines a set of regions of interests (e.g.

23   bounding boxes) within an image, and then performs object classification of the content of each region

24   of the set" (*id.* at [0036]); (3) "a binary confidence level where "[i]mages can be classified as

25   'unknown' when: the classification confidence level fails below a predetermined threshold" (*id.* at

26   [0045]); and (4) that plastic bags and uncollapsed cardboard boxes may be detected specifically,

27   whereas the five other contaminant types may be grouped together into an "anomalous object" class

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S OMNIBUS ADMINISTRATIVE MOTION TO SEAL (DKT. NO. 114) (CASE NO. 3:23-CV-04804-WHA)

1   (*id.* at [0042]). *Cf.* Dkt. No. 46 (page 18, lines 2-7). Plaintiff's proposed redaction should be rejected.

2         **18.**     **Page 18, Line 14 to Page 19, Line 6**

3           To start, as Defendants' Opposition has already made clear, the specific type of "metadata"

4   and "know-how" related to Plaintiff's empty event detection have been publicly disclosed by the

5   online article titled "From the Stone Age to the Future: Indisputable Service Verification for Waste

6   Has Arrived." *See* Dkt. No. 53-1, Weinger Decl. Ex. 8 at 3-4 (disclosing a "multi-point service

7   verification system for both front-load and roll-off containers" utilizing "[a]n accelerometer … in the

8   sensor," a comparison of "pre-service" and "post-service" photos, "change in fullness percentage,"

9   and GPS location change tracking); *cf.* Dkt. No. 46 at 18-19. It is therefore not confidential that

10  Plaintiff uses multiple types of data for empty event detection, among which are accelerometer

11  signals, the different states of the containers based on images, fullness level change, GPS location

12  change, and the types of containers.

13          Moreover, multiple other sources have publicly disclosed the information Plaintiff attempts

14  to seal in this passage. For instance, Compology's own publicly accessible webpage states that "[o]ur

15  empty event detection is based on ***a combination*** [*sic*] accelerometer trigger* and the fullness of the

16  before and after pictures." *See* Ex. 17 at RTS_00335765 (emphasis added). The same webpage also

17  discloses several possible scenarios related to empty event detection (or failure thereof), such as when

18  "there was no accelerometer between [two images]." *Id.* Similarly, the '356 Patent also discloses the

19  optional use of "one or more auxiliary sensors" for a content sensor, which includes, *e.g.*,

20  "accelerometer" and "geopositioning elements (e.g. GPS receiver)." Ex. 1 ('356 Patent) at 3:40-44.

21  The '356 Patent further discloses "determinations [of fill levels] made using sensor fusion." *Id.* at

22  10:13-21. The different types of containers and the resulting differences in empty event detection are

23  also disclosed by, *inter alia*, the '356 Patent and Compology's own "Physical Camera Installation &

24  Removal." *See, e.g.*, *id.* at 3:49-59 (identifying "containers of different types (e.g., roll-off container,

25  front load container, etc." as preferable for training a fill level determination model, *i.e.*, a fullness

26  model); Ex. 6 at RTS_00335713 – RTS_00335714 (disclosing different types of cameras used for,

27  *e.g.*, roll-off containers, front-load containers, and textile containers). Plaintiff's generic description

28

1    of the differences in relation to empty event detection resulting from the type of containers appears

2    to be nothing more than common sense or knowledge and readily apparent to anyone with some basic

3    knowledge about waste containers. *See* Dkt. No. 46 (page 18, line 28 to page 19, line 4).

4         Plaintiff has provided no evidence to support that the already publicly disclosed information

5    warrants sealing from the public or that any injury may result from public disclosure of the (already

6    public) information.

7                        **19.     Page 19, Lines 7 to 12**

8         As detailed in Section II.A.18 *supra*, the type of inputs received and used by Plaintiff's empty

9    event detection algorithm has been disclosed by multiple public sources. *Compare id.* (page 19, lines

10   7-9) *with e.g.*, Dkt. No. 53-1, Weinger Decl. Ex. 8 at 3-4; Ex. 17 at RTS_00335765; Ex. 1 ('356

11   Patent); Ex. 6 at RTS_00335713 – RTS_00335714. The same sources also render public that such

12   inputs are used to determine the specific outputs as set forth on page 9, lines 10-12 of the ITS. *Id.*

13   Therefore, Plaintiff's proposed redaction for this passage should be rejected.

14                  **20.     Page 19, Line 18 to Page 20, Line 5**

15        Plaintiff's proposed redaction in this passage, with respect to its "rightsizing recommendation

16   generation algorithm" is plainly unwarranted and should be rejected in view of Compology's own

17   public webpages. As just one example, the webpage titled "Rightsizing" discloses in detail how

18   Plaintiff's rightsizing algorithm "identifies the ideal service schedule" and makes recommendation

19   by analyzing, *inter alia*, "filling patterns" and current schedules. *See* Ex. 12 at RTS_00335896.

20   Specifically, this webpage discloses that Plaintiff's rightsizing algorithm "reviews 5-10 weeks of

21   data," "analyze[s] fill rate ranges on each day of the week" to have "an understanding of filling

22   patterns and overflow risk," and "update our recommendations every 4 weeks, or more frequently if

23   the location changes or the service schedule changes." *Id.* at RTS_00335896 – RTS_00335897. When

24   the public information disclosed by this webpage is excluded, Plaintiff's requested redaction has no

25   substantive trade secret description to justify the sealing thereof. Indeed, Plaintiff's requested

26   redaction covers generic words including "recommendation" on page 20, line 5, when the very trade

27   secret alleged in this passage is titled "rightsizing recommendation generation algorithm." Dkt.

28

1  No. 46 at 19-20.

2     **21.**  **Page 20, Lines 10 to 20**

3     Despite the verbose passage, Plaintiff's redaction attempts to keep confidential the fact that

4  its "post auto-balancing algorithm" provides a "post" to an organization's "fleet," which includes the

5  size of the fleet and posting schedule of its cameras. All of this is publicly disclosed. To start,

6  Compology's own website discloses that it provides "Fleet Performance Metrics Report" which

7  provides "an overview of the current fleeting **posting rate** so that your Camera Fleet Manager and

8  your team can maintain a high level of awareness of how your fleet is performing." Ex. 18 at

9  RTS_00335636 (emphasis added). Moreover, Compology's CEO, Jason Gates, confirmed in a CNN

10  interview that Plaintiff's products post images "three to five times a day." Ex. 4 (Gates CNN Business

11  Interview) at 01:04-01:06; *see also* Ex. 18 at RTS_00335642 (stating that "[c]ameras will post 3x/day

12  on a schedule and will also be triggered to post during a service event"). The information Plaintiff

13  seeks to redact is public, and Plaintiff has not attempted—much less demonstrated—any harm it

14  would suffer if this (already-public) information is not redacted. Accordingly, Plaintiff's proposed

15  redactions should be rejected.

16     **22.**  **Page 20, Line 27 to Page 21, Line 17**

17     Plaintiff's proposed redaction in this passage, regarding its "location soft-locking technique,"

18  has been disclosed by public sources including Compology's webpages and patents, such as U.S.

19  Patent No. 10,798,522. For example, Compology's webpage titled "Locking a Container to a Service

20  Location" discloses that the "Soft-Lock" feature allows the customer to "'lock' a container to the

21  appropriate location" and would "stay in place until Compology detects that the container has moved

22  to a position that rationally could not be associated to the previously 'locked' location." Ex. 19 at

23  RTS_00335589; *cf.* Dkt. No. 46 (page 21, lines 14-17). This webpage further specifies that "[o]nce

24  locked to a location, the container will continue to be matched to that location for all following posts

25  until the geo-coordinates of the container changes to be 1000 meters from the perimeter of the location

26  it was locked to." Ex. 19 at RTS_00335591; *cf.* Dkt. No. 46 (page 21, lines 14-17). The '522 Patent

27  discloses the location soft-locking technique in detail, by disclosing, *inter alia*: (1) "[a] method for

28

1    container location analysis, preferably including one or more of: determining a candidate geofence,

2    determining a set of geofences, and/or adjusting geofence positions" (Ex. 20 ('522 Patent) at

3    Abstract); (2) a method for determining a candidate geofence that includes "selecting an initial

4    location S110; iteratively adding points to a point cluster S120; and/or determining a region based on

5    the point cluster S130" (*id.* at 4:44-49); (3) a method for determining container-specific geofences

6    that includes "adjusting candidate geofence sizes" (*see id.* at 7:35-49); and (4) a method for

7    "[a]djusting geofence positions" that "can function to improve positioning of user-specified

8    geofences, to adapt to location measurement artifacts (and/or changes thereto), and/or improve

9    geofence positioning in any other suitable manner (*see id.* at 10:59-11:11). *Cf.* Dkt. No. 46 (page 20,

10   line 28 to page 21, line 13). Therefore, Plaintiff's location soft-locking technique is publicly known.

11       Moreover, Plaintiff's proposed redaction covers the same phrases disclosed in the unredacted

12   portion of the ITS itself, such as the term "soft-locking technique." *Compare, e.g.*, Dkt. No. 46 (page

13   20, lines 23-24 and 27) *with id.* (page 20, line 28). Plaintiff's conclusory representation that it has

14   "proposed the most narrow [*sic*] redactions possible" is belied by its failure to redact the same

15   information elsewhere in the same filing. Motion at 15.

16       Accordingly, Plaintiff's proposed redactions should be rejected.

17       **B.      Exhibits to RoadRunner's ITS (Dkt. No. 47)**

18       Plaintiff also seeks to redact, each in their entirety, the nineteen exhibits to the ITS. *See* Motion

19   at 15-21. The Court expressly directs Plaintiff to specify "why a still-narrower portion of the passage,

20   paragraph, or sentence cannot be redacted to achieve the result." Dkt. No. 93 at 6. Yet Plaintiff's only

21   response to this requirement is its identical, boilerplate assertion for each of the exhibits that "there is

22   no narrower option for protecting [this exhibit/these exhibits]." *See* Motion at 16-21. Plaintiff makes

23   no showing of any "extraordinary circumstances" to justify its sweeping requests to seal. *See* Civil

24   L.R. 79–5(d) ("Motions to seal entire pleadings or briefs are strongly disfavored and will be granted

25   ***only in extraordinary circumstances***." (emphasis added)). Plaintiff's requests should be denied.

26       **1.      Exhibits 1-3, 5-6, and 8-13 (Schematics and Block Diagrams)**

27       ITS Exhibits 1-3, 5-6, and 8-13 are assembly drawings, schematics, and block diagrams

28

allegedly showing the components and layout of Plaintiff's camera systems, which Plaintiff contends, in conclusory fashion, are trade secrets. *See* Motion at 16-21. Plaintiff makes no effort to articulate if it claims the entire schematics and block diagrams—as well as each component depicted thereon— are trade secrets. The fact of the matter is that these exhibits do not contain any valuable, proprietary, confidential, or trade secret information worthy of redaction.

By way of example, Plaintiff's expert was asked what in Exhibit 1 depicts trade secret information. His response? "I can't answer." Ex. 8 (Hoarty Depo. Tr.) at 71:12-72:19.

By way of further example, Plaintiff's expert was asked to identify what on the first page of ITS Exhibit 2 depicts trade secret information. As with ITS Exhibit 1, he was unable to say what was (or was not) trade secret information. When pressed, his answers were unclear and inconsistent. Unlike Plaintiff's attempt to redact the entirety of the first page of ITS Exhibit 2, Plaintiff's expert said that "perhaps" ***only*** the light for the flash would be a trade secret—but the specific model of the LED labeled as "D1" is "not material." He then went on to state that the D1 LED—which was "not material" a moment ago—would somehow teach a person how to build a flash in a low power environment. Ex. 8 (Hoarty Depo. Tr.) at 72:20-73:20. The only discernible takeaway is that, despite Plaintiff's attempt to redact the entirety of the first page of ITS Exhibit 2, the only thing that could "perhaps" be considered a trade secret is the "D1" LED, which Plaintiff's expert also said was "not material." Ultimately, the use of a flash is "perhaps" the only trade secret information Plaintiff's expert could identify, but Plaintiff has inarguably disclosed its use of flash LED to the public. *See* Section II.A.3 *supra*.

Turning to the second page of ITS Exhibit 2, Plaintiff's expert said he has no opinion as to what constitutes a trade secret. Ex. 8 (Hoarty Depo. Tr.) at 79:12-23. And, turning to the third page of ITS Exhibit 3, Plaintiff's expert could not identify what defined any trade secret either. *Id.* at 79:24-81:24. Instead, in a circular manner, Plaintiff's expert first stated that the page depicted the unique architecture and design of Compology's products, but, when asked if the unique architecture and design defined trade secret information, Plaintiff's expert retreated to disclosures of his report and discarded any significance of the block diagram or the specific components identified on the third

page of Exhibit 3. Finally, turning to the fourth page of ITS Exhibit 3, Plaintiff's expert, again, could not identify anything that constituted confidential or trade secret information. In reality, all that is depicted is a microcontroller, and Plaintiff's expert ultimately admitted that Plaintiff's choice of microcontroller is not a trade secret. *Id.* at 81:25-83:21.

It is clear that Plaintiff cannot identify, with any level of specificity, what in ITS Exhibits 1-3, 5-6, and 8-13 constitutes trade secret or confidential information. Indeed, as this Court has previously noticed and as Defendants' Opposition has already made clear, Plaintiff's hardware components and layout thereof for its camera systems are public at least because of Plaintiff's own disclosure through its FCC filings. *See, e.g.*, Dkt. No. 52-2 at 8-11; Dkt. No. 53-1, Weinger Decl. Ex. 7; *see also* Dkt. No. 43 (Court order noting that "the FCC webpages contain[] public images of the internal configuration of the cameras that RoadRunner submitted to the agency, which include ***readily identifiable*** chips, batteries, circuit board layout, and so forth[.]" (emphasis added)). Plaintiff makes no efforts to carve out the confidential portions of such exhibits (if any exists at all), and the Court and Defendants should not carry Plaintiff's burden instead. *See, e.g.*, Dkt. No. 93 at 2 ("'A party seeking to seal a judicial record [ultimately] bears the burden of overcoming th[e] strong presumption" of public access.' *Kamakana*, 447 F.3d at 1178."); Dkt. No. 112 at 4 ("'The judge need not document compelling reasons to unseal; rather the proponent of sealing bears the burden with respect to sealing.' *Kamakana*, 447 F.3d at 1182.").

Similarly, Plaintiff's only explanation for the potential harm of public disclosure is nothing more than a variant of its boilerplate assertion that the exhibit at issue would allow its competitors to copy or recreate Plaintiff's camera systems. *See* Motion at 16-21. This is the epitome of perfunctory, "nebulous assertions of potential harm" that fall far short of supporting redaction. *See* Dkt. No. 93 at 2 (citing *Bronson v. Samsung Elecs. Am., Inc.*, 2019 WL 7810811, at *1 (N.D. Cal. May 28, 2019)). Nothing in ITS Exhibits 1-3, 5-6, and 8-13 should be redacted.

## 2. Exhibits 4, 7, and 14-16 (Technical Specifications and Datasheets)

ITS Exhibits 4, 7, and 14-16 are technical specifications of components in Plaintiff's camera systems, namely the camera module and batteries used therein. *See* Motion at 17, 19.

1        To begin with, Plaintiff readily concedes that none of Exhibits 7 and 14-16 are confidential.

2   *Id.* at 19. Plaintiff's only argument for sealing these exhibits is that "the details … that the exhibits

3   reveal is a protectable trade secret ***as a part of RoadRunner's smart camera apparatus***." *Id.* at 19.

4   Yet Plaintiff fails to provide any explanation of how the public details of "the battery manufacturer,

5   design, and assembly" in the admittedly non-confidential specifications supplied by third parties can

6   plausibly form a part of RoadRunner's trade secrets—or, at the very least, why it would not suffice

7   to redact only such specific details. Plaintiff's citation to the Third Restatement is unavailing: as the

8   party who proposes to seal the exhibits in their entirety, Plaintiff is obligated to show that trade secrets

9   indeed exist in these non-confidential exhibits and not that trade secrets may theoretically exist in

10   some unspecified "secret combination, compilation, or integration of the individual elements." *Id.*

11        Plaintiff is silent as to whether Exhibit 4 is confidential. *See id.* at 17-18. And Plaintiff again

12   offers no particularized explanation of why Exhibit 4 must be kept secret (let alone in its entirety) or

13   why the public disclosure thereof may result in specific injury to Plaintiff. Plaintiff's third attempt at

14   proposing boilerplate redactions should be rejected. Nothing in ITS Exhibits 4, 7, and 14-16 should

15   be redacted.

16               **3.      Exhibits 18-19 (Images)**

17        ITS Exhibits 18-19 are images allegedly "taken from a Compology camera" of containers that

18   are placed out in the public, which are also reproduced on pages 16-17 of the ITS. *See* Dkt. No. 46 at

19   16-17. Plaintiff does not and cannot allege that either of these images contain any other information

20   beyond the images themselves, such as any "metadata that RoadRunner tags its images with." *See*

21   Motion at 11-12, 21. Moreover, Plaintiff itself publicly display similar container images on its own

22   website, along with metadata such as fullness percentages. *See, e.g.*, Exs. 21-22.

23        Plaintiff alleges, without any legal or evidentiary support, that these two specific images "are

24   confidential trade secrets in the context of the ITS" as "examples of images tagged with certain

25   metadata," when it does not even bother to allege that these images disclose any related metadata. In

26   addition, the pertinent "context of ITS" in which these two images appear itself does not warrant any

27   redaction. *See* Section II.A.15 *supra*. Nothing in ITS Exhibits 18-19 should be redacted.

28

1    **C.     Defendants' Opposition (Dkt. Nos. 52, 53)**

2         **1.     Page 22, Lines 3 to 5**

3         This proposed redaction is a general summary of page 15, lines 16-28 of the ITS. Therefore,

4    the same reasoning set forth in Section II.A.14 *supra* applies and supports the denial of this proposed

5    redaction, for Plaintiff's "sub-par image detection" process has been made public through its patents.

6    *See, e.g.*, Ex. 1 ('356 Patent).

7         **2.     Page 22, Lines 8 to 10**

8         This proposed redaction is a general summary of page 16, lines 5-13 of the ITS. Therefore,

9    the same reasoning set forth in Section II.A.15II.A.14 *supra* applies and supports the denial of this

10   proposed redaction, for this "process required … to generate a container fullness analysis" has been

11   disclosed both by its patents and Mr. Armstrong's public presentation. *See, e.g.*, Exs. 21-22.

12        **3.     Page 23, Line 5**

13        This proposed redaction quotes verbatim two phrases on page 18, lines 16-17 of the ITS.

14   Therefore, the same reasoning set forth in Section II.A.18 *supra* applies and supports the denial of

15   this proposed redaction, for both phrases have been publicly disclosed by multiple sources. *See, e.g.*,

16   Exs. 21-22. As Defendants' Opposition itself makes clear, the proposed redaction has also been

17   publicly disclosed by the online article titled "From the Stone Age to the Future: Indisputable Service

18   Verification for Waste Has Arrived." *See* Dkt. No. 53-1, Weinger Decl. Ex. 8 at 3-4.

19   **D.     RoadRunner's Reply (Dkt. Nos. 57, 61)**

20        **1.     Page 10, Line 6**

21        This proposed redaction quotes verbatim page 7, line 13 of the ITS. Therefore, the same

22   reasoning set forth in Section II.A.4 *supra* applies and supports that this proposed redaction is not

23   warranted in view of the public disclosure of the specific "type of coating RoadRunner uses on its

24   smart camera apparatus." *See, e.g.*, Ex. 3 (Chehebar Embedded Vision Alliance Presentation) at

25   12:46-13:36 (disclosing "UV exposure").

26        **2.     Page 12, Line 28 to Page 13, Line 1**

27        Plaintiff has failed to explain why any of the common image processing techniques listed in

28

1  this passage require redaction. As Plaintiff's employee explained, all of these image processing

2  techniques are publicly known and commonly used. Ex. 15 (Longson Depo. Tr.) at 147:11-150:15.

3  And, as with every other proposed redaction, Plaintiff has not even attempted to show—much less

4  demonstrated—how it might be harmed by disclosure of the fact that its camera uses commonly-

5  known image processing techniques. Accordingly, Plaintiff's proposed redactions should be rejected.

6           **3.**     **Page 16, Line 27 to Page 17, Line 1**

7         This proposed redaction is a general summary of page 15, lines 16-28 of the ITS. Therefore,

8  the same reasoning set forth in Section II.A.14 *supra* applies and supports the denial of this proposed

9  redaction, for Plaintiff's "sub-par image detection" process has been made public through its patents.

10  *See, e.g.*, Ex. 1 ('356 Patent).

11  **III.**     **CONCLUSION**

12         For the foregoing reasons, Plaintiff's latest attempts at proposing redactions to prior filings

13  (Dkt. Nos. 46, 47, 52, 53, 57, and 61) fail to justify its renewed requests, which remain overbroad,

14  cover public information, and include marketing generalizations. Moreover, Plaintiff has failed to

15  adhere to the Court's requirement that its proposed redactions be as narrow as possible. And, Plaintiff

16  has not even attempted to follow the Court's guidance that Plaintiff provide, "[o]n a *passage-by-*

17  *passage* basis for each filing," specific justification for its proposed redactions. Instead, Plaintiff's

18  Motion repeats the same boilerplate assertions of purported interest and potential injury for each of

19  its proposed redactions. For all of the foregoing reasons, Defendants respectfully request that the

20  Court deny Plaintiff's Omnibus Administrative Motion to Seal (Dkt. No. 114).

21

22    Dated: September 25, 2024                   Respectfully Submitted,

23                                /s/ Matthew S. Galica

24                                Arameh Zargham O'Boyle (SBN: 239495)
                              AZOboyle@mintz.com

25                                MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
                                POPEO, P.C.

26                                2049 Century Park East, Suite 300
                              Los Angeles, CA 90067

27                                Telephone:    (310) 586-3200
                              Facsimile:    (310) 586-3202

28

1                    James M. Wodarski (Admitted Pro Hac Vice)

James M. Wodarski (Admitted Pro Hac Vice)
JWodarski@mintz.com
Michael C. Newman (Admitted Pro Hac Vice)
MCNewman@mintz.com
Matthew S. Galica (Admitted Pro Hac Vice)
MSGalica@mintz.com
James J. Thomson (Admitted Pro Hac Vice)
JJThomson@mintz.com
Sean M. Casey (Admitted Pro Hac Vice)
SMCasey@mintz.com
Tianyi Tan (Admitted Pro Hac Vice)
TTan@mintz.com
Stephen Chen (Admitted Pro Hac Vice)
SChen@mintz.com
Amy LoBue (Admitted Pro Hac Vice)
ALoBue@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
    POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:    (617) 542-6000
Facsimile:     (617) 542-2241

Attorneys for Defendants
RECYCLE TRACK SYSTEMS, INC., and
RECYCLESMART SOLUTIONS INC.