# EXHIBIT A



**Planet Depos®**

We Make It *Happen*™

<span style="color:darkred">**ATTORNEYS' EYES ONLY**</span>

# Transcript of Timothy Jay Longson, Corporate Designee & Individually

**Date:** August 15, 2024
**Case:** Roadrunner Recycling, Inc. -v- Recycle Track Systems, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767 **| Email:** transcripts@planetdepos.com
**www.planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY



**145**

1  they facing, how close are they to the metal wall,
2  et cetera.
3     Q.  But it's the same antenna; correct?
4     **A.  Yes.  R13, R13L and R13S all have the same**
5  **main printed circuit board that contains the**
6  **antennas and all of the matching networks and**
7  **adjacent supporting circuitry.**
8     Q.  Okay.  I'm going to -- excuse me -- jump to
9  line 13 on page 11.  Just let me know when you get
10 there.
11    **A.  Yes.**
12    Q.  And you can actually review lines 14
13 through 22.  Just let me know when you've done that.
14    **A.  I've finished reading it.**
15    Q.  So how do -- how does the R11 perform the
16 image pre-processing techniques described in lines
17 14 through 22 on page 11?
18    **A.  So for conditions where we -- you know,**
19 **it's not low light, we don't need to use the flash.**
20
21
22
23
24
25

**146**

1     **and then we --**
2
3
4
5
6
7     **And then once we do all of that,**
8
9
10
11    Q.  I'll ask a general and then some specific
12 follow-ups.
13    Are all of those steps performed by a
14 single component in the R11 device?
15    **A.  No.  There's multiple components that are**
16 **used to facilitate this whole process.  So, first,**
17
18
19
20
21
22
23
24
25    **Then the**

**147**

1
2
3
4
5     Q.  And are the instructions for executing
6  these steps resonant in firmware?
7     **A.  That's correct.**
8     Q.  Are -- all of the instructions for every
9  step is resonant in firmware?
10    **A.  That's correct.**
11    Q.  Okay.  Is the use of
12 a -- a secret?
13    MR. MELLEMA:  Objection.  Form.
14    THE WITNESS:  I don't know if it's a
15 secret.  I don't know what the marketing material
16 has said about this.
17 By MR. GALICA:
18    Q.  Well, just generally using      in a
19 camera, would you say that's a secret thing to do?
20    MR. MELLEMA:  Objection.  Form.
21    THE WITNESS:  I think when people use it,
22 they typically advertise it.
23 By MR. GALICA:
24    Q.  What about      ?  Is that a
25 secret thing to do with a camera?

**148**

1     MR. MELLEMA:  Objection.  Form.
2     THE WITNESS:  Again, I don't know whether
3  our marketing material talks about
4  By MR. GALICA:
5     Q.  Did you develop a unique type of
6
7     **A.  Yes.**
8     Q.  How is it a unique type of      ?
9     **A.  It's unique in the fact that I wrote it and**
10 **tuned it to perform well on our cameras.**
11    Q.  So when you say      here,
12 you're referring to the specific
13 that you wrote in tunes to perform on your cameras;
14 correct?
15    **A.  That's correct.**
16    Q.  Okay.  What about      Is
17 that a standard thing that is done in image
18 processing?
19    MR. MELLEMA:  Objection.  Form.
20    THE WITNESS:
21
22
23
24
25

Case 3:23-cv-04804-WHA   Document 128-3   Filed 10/02/24   Page 4 of 5

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually  38 (149 to 152)
Conducted on August 15, 2024



149

1

2

3

4

5

6 By MR. GALICA:

7  Q.  Did you write specific firmware code to

8 perform the steps that you just described?

9     MR. MELLEMA:  Objection.  Form.

10    THE WITNESS:  We wrote specific firmware to

11 be able to

12

13

14 By MR. GALICA:

15   Q.  Did you write specific firmware to perform

16 the additional                        described on

17 lines 19 and 20?

18   A.  Yes.

19   Q.  Is                    a common image

20 processing technique?

21   A.  It is fairly common.

22   Q.  Is                      a common image

23 processing technique?

24   A.  It's less common but still fairly common.

25   Q.  And is

150

1          a common image processing technique?

2   A.  I don't believe that's very common.

3   Q.  Did you develop for the first time

4                              in the

5 context of image processing?

6   A.  I did not come up with

7

8   Q.  Okay.  So it may not be common, but that is

9 a known technique in image processing?

10   A.  Yes.          of these are known

11 techniques; however, we do string them together in a

12 way that is unique.

13   Q.  And you do that in the specific firmware

14 code that you developed; correct?

15   A.  That's correct.

16   Q.  Okay.  Turning to line 25 on page 11.

17     Do you see that?

18   A.  Yep.

19   Q.  Were you involved in the training data

20 trade secret at all?

21   A.  Let me just read this real quick here.

22     Can you repeat your question?

23   Q.  Sure.  Do you have knowledge related to the

24 training data trade secret identified here?

25   A.  I do have some knowledge.

151

1   Q.  What knowledge do you have?

2   A.  I participated in labeling data, as I said

3 earlier, so that became part of the training set, or

4 training data set.  I'm familiar with the tools that

5 we developed to allow humans to label this data.  I

6 did not write any of it, but I have used those

7 tools.  And I'm familiar with the fact that we

8 outsource a lot of this data labeling now.

9     I know some other specifics around the way

10 these systems work, but that's getting in the weeds

11 a little bit.  But I did not write any of the code

12 that makes all of this work.

13   Q.  And who did?

14   A.  I think a few people were involved:  Justin

15 Armstrong was certainly involved.  I suspect Tyler

16 Benjamin was involved, possibly Shandy Brown, and

17 likely other members of the software team.

18   Q.  And when you just said you're familiar with

19 the tools that we developed without humans to label

20 the data, is that the -- what you described earlier

21 today,

22

23                                        ?

24   A.  That's correct for the fullness level

25 evaluation, but there are other machine learning

152

1 algorithms that we've developed that also need

2 training data, such as the content recognition or

3 contamination detection.  And in those cases, we're

4

5

6

7   Q.  Were you involved in the development of any

8 of those tools?

9   A.  No.

10   Q.  Did you review any images for purposes of

11 identifying content in them?

12   A.  I don't believe so.

13   Q.  Are there any other tools that you're aware

14 of?

15     MR. MELLEMA:  Objection.  Form.

16     THE WITNESS:  Can you be more specific?

17 Tools relating to --

18 By MR. GALICA:

19   Q.  Reviewing images.

20   A.  There's lots of tools that we have to

21 review images.  Images are a core part of our

22 business.

23     For example, when I'm working on the image

24 pre-processing techniques, I have created various

25 tools to be able to review images to look for how

ATTORNEYS' EYES ONLY
Transcript of Timothy Jay Longson, Corporate Designee & Individually 58 (229 to 232)
Conducted on August 15, 2024

229

1    Q.   Okay.  Can you identify any trade secret in
2  this schematic?
3    **A.   No.**
4    Q.   Okay.
5    **A.   I believe this is part of the design for**
6  **R12, which, if not, should publicly could constitute**
7  **a trade secret.**
8    Q.   Then I'm going to direct your attention to
9  page RoadRunner 000000153.
10   Do you recognize that?
11   **A.   This looks like part of the schematic for**
12 **R13.**
13   Q.   Can you point to any trade secret in that
14 schematic?
15   **A.   Again, I can't point out specific trade**
16 **secrets, but this is part of the R13 camera, which,**
17 **if kept secret, could be considered a trade secret.**
18   Q.   Can you go to the previous page, so the
19 number ending 152?
20   Do you recognize this?
21   **A.   This is the system block diagram for R13.**
22   Q.   Can you point to a trade secret here?
23   **A.   Again, this is part of R13, overall camera**
24 **system.  If kept confidential, it could be**
25 **considered a trade secret.**

230

1    Q.   What aspects of it could be considered a
2  trade secret?
3    **A.   The overall design of the electronic**
4  **system.**
5    Q.   Anything beyond that?
6    **A.   I can't think of anything at this time.**
7    MR. GALICA:  Just note a few things.  We
8  received a document production late last night, so
9  to the extent that anything in that document
10 production warrants further questioning, we're going
11 to reserve the right on that.  I think there were a
12 few topics where the deponent witness was not
13 prepared to testify, and then we'd also request the
14 document that he said he prepared related to the
15 comparison of FCC or the Pello system and Compology
16 system.
17   With that said, I don't have further
18 questions right now.
19   MR. MELLEMA:  What specific topics do you
20 contend he wasn't prepared for?
21   MR. GALICA:  Sure.  I think at a minimum,
22 in a non-exhaustive way, the time spent developing
23 each product.
24   MR. MELLEMA:  Did you ask him about that?
25   MR. GALICA:  Yeah, I did.  He said he

231

1  didn't know.  The value ascribed to each trade
2  secret, the algorithms, and those are the ones that
3  immediately come to mind.
4    MR. MELLEMA:  Okay.  No questions for me.
5    MR. GALICA:  All right.
6    THE VIDEOGRAPHER:  Okay.  This marks the
7  end of the deposition -- the deposition of Timothy
8  Longson.  We are going off the record at 18:01.
9    (Proceedings concluded.)
10   ---o0o---
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

232

1    CERTIFICATE OF STENOGRAPHIC REPORTER
2
3
4    I, BURGUNDY B. RYAN, a Certified Shorthand
5  Reporter, hereby certify that the witness in the
6  foregoing deposition,
7    TIMOTHY JAY LONGSON,
8  was by me duly sworn to tell the truth, the whole
9  truth, and nothing but the truth, in the
10 within-entitled cause; that said deposition was
11 taken at the time and place therein named; that the
12 testimony of said witness was stenographically
13 reported by me, a disinterested person, and was
14 thereafter transcribed into typewriting.
15   I further certify that I am not of counsel
16 or attorney for either or any of the parties to said
17 deposition, nor in any way interested in the outcome
18 of the cause named in said caption.
19
20   DATED:  Wednesday, August 21, 2024.
21
22
23   Burgundy B. Ryan, CSR No. 11373, RPR
24
25