# EXHIBIT 1

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   STANLEY M. GIBSON (Bar No. 162329)
2  *sgibson@jmbm.com*
   JAMES NEUDECKER (Bar No. 221657)
3  *jneudecker@jmbm.com*
   2 Embarcadero Center, 5th Floor
4  San Francisco, CA 94111
   Telephone:    (415) 398-8080
5  Facsimile:    (415) 398-5584

6  LENA STREISAND (Bar No. 339021)
   *Lstreisand@jmbm.com*
7  1900 Avenue of the Stars, 7th Floor
   Los Angeles, CA 90067-4308
8  Telephone: (310) 203-8080
   Facsimile: (310) 203-0567
9
   JOSEPH J. MELLEMA (Bar No. 248118)
10 *jmellema@jmbm.com*
   3 Park Plaza, Suite 1100
11 Irvine, California 92614-2592
   Telephone:    (949) 623-7200
12 Facsimile:    (949) 623-7202

13 Attorneys for Plaintiff
   ROADRUNNER RECYCLING, INC.
14

15              **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17

18 ROADRUNNER RECYCLING, INC.,          Case No. 3:23-cv-04804-WHA

19              Plaintiff,              *Assigned for All Purposes to:*
                                        Hon. William H. Alsup, Courtroom 12
20       v.

21 RECYCLE TRACK SYSTEMS, INC.,          **PLAINTIFF ROADRUNNER**
   RECYCLESMART SOLUTIONS, INC.'S,       **RECYCLING, INC.'S SUPPLEMENTAL**
22                                       **RESPONSE TO FIRST SET OF**
              Defendants.               **INTERROGATORIES PROPOUNDED BY**
23                                       **DEFENDANTS RECYCLE TRACK**
                                         **SYSTEMS, INC. AND RECYCLESMART**
24                                       **SOLUTIONS, INC.**

25                                       Complaint Filed:    August 4, 2023
                                         Trial Date:         December 9, 2024
26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    PROPOUNDING PARTY:      Defendants RECYCLE TRACK SYSTEMS, INC. AND

2                                     RECYCLESMART SOLUTIONS, INC.

3    RESPONDING PARTY:        Plaintiff ROADRUNNER RECYCLING, INC.

4    SET NO.:                       Supplemental (Set One)

5         Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff ROADRUNNER

6 RECYCLING, INC. ("Responding Party") hereby submits these supplemental responses to the

7 First Set of Interrogatories propounded by Defendants RECYCLE TRACK SYSTEMS, INC.

8 AND RECYCLESMART SOLUTIONS, INC. ("Propounding Parties").

9                              **PRELIMINARY STATEMENT**

10         Responding Party has not completed its investigation of the facts relating to this case, its

11 discovery or its preparation for trial. All responses and objections contained herein are based only

12 upon information that is presently available to and specifically known by Responding Party. It is

13 anticipated that further discovery, independent investigation, legal research and analysis will

14 supply additional facts and add meaning to known facts, as well as establish entirely new factual

15 conclusions and legal contentions, all of which may lead to substantial additions to, changes in and

16 variations from the responses set forth herein.

17         These responses, while based on diligent inquiry and investigation by Responding Party,

18 reflect only the current state of Responding Party's knowledge, understanding, and belief, based

19 upon the information reasonably available to it at this time. As this action proceeds, and further

20 investigation and discovery are conducted, additional or different facts and information could be

21 revealed to Responding Party. Moreover, Responding Party anticipates that Propounding Parties

22 may make legal or factual contentions presently unknown to and unforeseen by Responding Party

23 which may require Responding Party to adduce further facts in rebuttal to such contentions.

24 Consequently, Responding Party may not yet have knowledge and may not fully understand the

25 significance of information potentially pertinent to these responses. Accordingly, these responses

26 are provided without prejudice to Responding Party's right to rely upon and use any information

27 that it subsequently discovers, or that was omitted from these responses as a result of mistake,

28 inadvertence, surprise, or excusable neglect. Without in any way obligating itself to do so,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Responding Party reserves the right to modify, supplement, revise, or amend these responses, and to correct any inadvertent errors or omissions which may be contained herein, in light of the information that Responding Party may subsequently obtain or discover.

Nothing in this response should be construed as an admission by Responding Party with respect to the admissibility or relevance of any fact or document, or of the truth or accuracy of any characterization or statement of any kind contained in Propounding Parties' interrogatories.

Each of the following responses is made solely for the purpose of this action.  Each response is subject to all objections as to relevance, materiality, and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court.  All objections and grounds are expressly reserved and may be interposed at the time of trial, hearing, or otherwise.  Furthermore, each of the objections contained herein is incorporated by reference as though fully set forth in each response.

The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information.  Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

Nothing contained herein is to be construed as a waiver of any attorney-client privilege, work product doctrine, or any other applicable privilege or doctrine.  To the extent any interrogatory may be construed as calling for disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine, or any other privilege or protection, a continuing objection to each and every such interrogatory is hereby interposed.

Without waiver of the foregoing, Responding Party further responds as follows:

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify and describe in detail all Confidential Information You allege Defendants misappropriated to the extent different from the Trade Secret(s) identified in Your submission required by CCP 2019.210, if any, and state whether you allege any such Confidential Information is a Trade Secret.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  **RESPONSE TO INTERROGATORY NO. 1:**

2        Responding Party objects to this interrogatory on the grounds that it is compound and

3  contains impermissible subparts which bring the total number of interrogatories beyond the 25-

4  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

5  interrogatory to the extent that the term "misappropriated" is intended to solicit a legal conclusion.

6  Responding Party further objects to the use of the term "different" as vague and ambiguous

7  because CCP 2019.210 does not require disclosure of all information relating to a trade secret, and

8  it is unclear whether "different" information must not have been disclosed in Responding Party's

9  Identification of Trade Secrets document. Responding Party further objects to this interrogatory to

10  the extent that it seeks information protected from discovery by a claim of privilege, including the

11  attorney-client privilege, the common interest privilege, the work product doctrine, and/or any

12  other applicable privilege or immunity. Responding Party further objects to this interrogatory on

13  the ground that, pursuant to the Court's December 19, 2023 order, Defendants are precluded from

14  taking discovery because Defendants are challenging the sufficiency of Responding Party's

15  description of trade secrets in its Identification of Trade Secrets document.

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

17        Responding Party objects to this interrogatory on the grounds that it is compound and

18  contains impermissible subparts which bring the total number of interrogatories beyond the 25-

19  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

20  interrogatory to the extent that the term "misappropriated" is intended to solicit a legal conclusion.

21  Responding Party further objects to the use of the term "different" as vague and ambiguous

22  because CCP 2019.210 does not require disclosure of all information relating to a trade secret, and

23  it is unclear whether "different" information must not have been disclosed in Responding Party's

24  Identification of Trade Secrets document. Responding Party further objects to this interrogatory to

25  the extent that it seeks information protected from discovery by a claim of privilege, including the

26  attorney-client privilege, the common interest privilege, the work product doctrine, and/or any

27  other applicable privilege or immunity.

28        Subject to and without waiving the foregoing objections, Responding Party responds as

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  follows: Section 2019.210 of the California Code of Civil Procedure does not require a party to

2  disclose all information regarding a trade secret, but rather, to "identify the trade secret with

3  reasonable particularity." This is because, in part, that it is impracticable and burdensome to

4  disclose all information regarding a trade secret. For example, Plaintiff's disclosure pursuant to

5  CCP 2019.210 includes the overall know-how and design of its waste metering system including

6  physical hardware components such as the smart camera apparatus, optical assembly and design,

7  firmware such as its image preprocessing techniques implemented in the camera apparatus,

8  training data, machine learning models, an AI system implementing the machine learning models,

9  and algorithms and processes to generate data, analysis, and recommendations to customers,

10  including fullness, emptiness, contamination, schedules, data ingestion efficiencies, and location

11  analysis of waste containers. As more fully described below, Compology developed a

12  convolutional neural network ("CNN") as its AI system to implement the machine learning

13  models for accurate machine labeling and tagging of images from Compology's smart cameras.

14  The combination of these hardware, firmware, and software elements as implemented in an waste

15  metering system is itself a trade secret. Defendants have propounded RFP 1 on Responding Party

16  requesting that Responding Party produce "Documents, Communications, and Things sufficient to

17  show, define, Identify, and fully describe all Alleged Trade Secrets that You assert Defendants

18  have misappropriated, including any and all hardware, software, product design specifications and

19  schematics, source code, object code, database information, and other similar sources relating to or

20  reflecting such Alleged Trade Secrets." Responding Party has conducted a reasonably diligent

21  search for this information and has produced all relevant, responsive, non-privileged documents

22  and communications in its possession, custody, or control, in response to Defendants' RFP 1.

23      Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Responding Party states

24  that the answer to this interrogatory may be determined by examining, auditing, compiling,

25  abstracting, or summarizing a party's business records (including electronically stored

26  information), and the burden of deriving or ascertaining the answer will be substantially the same

27  for either party. Responding Party identifies the following documents:

28  ROADRUNNER000000191-23809.

1    Responding Party's investigation is ongoing. Responding Party accordingly reserves the

2  right to further supplement and/or amend this response as Responding Party continues to review

3  and receive documents and other relevant information, as Responding Party's understanding of the

4  issues in this case progresses, as Defendants articulate their substantive contentions, and in

5  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

6  schedule applicable to this case.

7  **INTERROGATORY NO. 2:**

8    For each alleged Trade Secret Identified in Your submission required by CCP 2019.210,

9  and for all Confidential Information identified in Your response to Interrogatory No. 1 that You

10  now allege also constitutes a Trade Secret, describe in detail whether and how each alleged Trade

11  Secret or Confidential Information derives any independent economic value, actual or potential,

12  from not being generally known to the public or readily ascertainable through proper means.

13  **RESPONSE TO INTERROGATORY NO. 2:**

14    Responding Party objects to this interrogatory on the grounds that it, in combination with

15  the other interrogatories served therewith, brings the total number of interrogatories beyond the

16  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

17  interrogatory to the extent that Defendants are soliciting a legal conclusion, as this interrogatory .

18  Responding Party further objects to this interrogatory to the extent that it seeks information

19  protected from discovery by a claim of privilege, including the attorney-client privilege, the

20  common interest privilege, the work product doctrine, and/or any other applicable privilege or

21  immunity. Responding Party further objects to this interrogatory on the ground that, pursuant to

22  the Court's December 19, 2023 order, Defendants are precluded from taking discovery because

23  Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its

24  Identification of Trade Secrets document.

25  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

26    Responding Party objects to this interrogatory on the grounds that it, in combination with

27  the other interrogatories served therewith, brings the total number of interrogatories beyond the

28  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

JMBM | Jeffer Mangels
Butler & Mitchell LLP

DocuSign Envelope ID: E5742CD8-215A-454B-9ABB-9AC63E88EEF0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   interrogatory to the extent that Defendants are soliciting a legal conclusion. Responding Party

2   further objects to this interrogatory to the extent that it seeks information protected from discovery

3   by a claim of privilege, including the attorney-client privilege, the common interest privilege, the

4   work product doctrine, and/or any other applicable privilege or immunity. Responding Party

5   further objects to this interrogatory as it seeks discovery of expert witness testimony in advance of

6   expert witness disclosures, expert witness depositions, and preparation and production of expert

7   witness reports.

8        Subject to and without waiving the foregoing objections, Responding Party responds as

9   follows: Under CUTSA, a trade secret has independent economic value if it is valuable because it

10   is unknown to others. *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 226 Cal. App. 4th 26, 62

11   (2014). The focus of the inquiry regarding the independent economic value element is "on whether

12   the information is generally known to or readily ascertainable by business competitors or others to

13   whom the information would have some economic value." *Id.* The information must be

14   "sufficiently valuable ... to afford an ... economic advantage over others." *Id.* The actual or

15   potential advantage "need not be great," but it must be "more than trivial." *Id.* Value may be

16   established by direct (i.e., evidence relating to content of secret and its impact on business

17   operations) or circumstantial evidence (i.e., amount of resources invested by plaintiff in

18   production of the information, precautions taken to protect secrecy, willingness of others to pay

19   for access to information). *Id.* The same general standards apply to DTSA claims. *See, e.g.*, *Attia*

20   *v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020); *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d

21   1024, 1052 (N.D. Cal. 2020). Each of RoadRunner's trade secrets, including the overall waste

22   metering and recycling system, smart camera apparatus, optical assembly and design, image

23   preprocessing techniques, training data, and algorithms and processes, has independent economic

24   value. The overall waste metering and recycling system and technology has independent economic

25   value because (1) the system made it possible to obtain data and analytics that facilitated

26   customers' desires to reduce costs, reduce carbon emissions, and provide a more sustainable

27   system, (2) at least $40 million and 10 years were expended in developing the system, and (3)

28   Defendants took RoadRunner's system as its own to develop its competing Pello system in a

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  matter of 6-9 months. Each of the aforementioned trade secrets are part of the overall waste

2  metering and recycling system and each has independent economic value as being part of a

3  working system, as well as being separately valuable by remaining secret to third parties, in

4  addition to the aforementioned reasons above.

5       Responding Party's investigation is ongoing. Responding Party accordingly reserves the

6  right to further supplement and/or amend this response as Responding Party continues to review

7  and receive documents and other relevant information, as Responding Party's understanding of the

8  issues in this case progresses, as Defendants articulate their substantive contentions, and in

9  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

10  schedule applicable to this case.

11  **INTERROGATORY NO. 3:**

12       For each alleged Trade Secret Identified in Your submission required by CCP 2019.210

13  and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1,

14  respectively, Identify and describe in detail whether and how any service, product, device,

15  apparatus, instrumentality, method, or process used internally or otherwise commercialized by

16  You comprises, embodies, uses, is derived from, or derives any benefit from such Confidential

17  Information and/or Trade Secret.

18  **RESPONSE TO INTERROGATORY NO. 3:**

19       Responding Party objects to this interrogatory on the grounds that it, in combination with

20  the other interrogatories served therewith, brings the total number of interrogatories beyond the

21  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to the use

22  of the phrase "piece of Confidential Information" as vague and ambiguous because Defendants'

23  use of the term "piece" in connection with Confidential Information is unclear. Responding Party

24  further objects to this interrogatory to the extent that it seeks information protected from discovery

25  by a claim of privilege, including the attorney-client privilege, the common interest privilege, the

26  work product doctrine, and/or any other applicable privilege or immunity. Responding Party

27  further objects to this interrogatory on the ground that, pursuant to the Court's December 19, 2023

28  order, Defendants are precluded from taking discovery because Defendants are challenging the

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

2  document.

3  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

4      Responding Party objects to this interrogatory on the grounds that it, in combination with

5  the other interrogatories served therewith, brings the total number of interrogatories beyond the

6  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to the use

7  of the phrase "piece of Confidential Information" as vague and ambiguous because Defendants'

8  use of the term "piece" in connection with Confidential Information is unclear. Responding Party

9  further objects to this interrogatory to the extent that it seeks information protected from discovery

10 by a claim of privilege, including the attorney-client privilege, the common interest privilege, the

11 work product doctrine, and/or any other applicable privilege or immunity.

12      Subject to and without waiving the foregoing objections, Responding Party responds as

13 follows: Responding Party's trade secrets are identified, in detail, in Plaintiff's Identification of

14 Trade Secrets ("ITS"). Responding Party's trade secrets include an overall waste and recycling

15 metering system, which include the overall know-how and design of its waste metering system

16 including physical hardware components such as the smart camera apparatus, optical assembly

17 and design, firmware such as its image preprocessing techniques implemented in the camera

18 apparatus, training data, machine learning models, an AI system implementing the machine

19 learning models, and algorithms and processes to generate data, analysis, and recommendations to

20 customers, including fullness, emptiness, contamination, schedules, data ingestion efficiencies,

21 and location analysis of waste containers. As more fully described below, Compology developed a

22 convolutional neural network ("CNN") as its AI system to implement the machine learning

23 models for accurate machine labeling and tagging of images from Compology's smart cameras.

24 The combination of these hardware, firmware, and software elements as implemented in an waste

25 metering system is itself a trade secret. Thus, at least the R11, R12, R13, R13L, and R13S camera

26 systems, including the aforementioned combination of hardware, firmware, and software elements,

27 embody and use the overall waste metering and recycling system trade secret.

28      In addition, the smart camera apparatus is a trade secret that is embodied and used at least

JMBM | Jeffer Mangels
Butler & Mitchell LLP

DocuSign Envelope ID: EE742CD0-31FA-4545-9ABB-9A653E88E5E0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

by the R11, R12, R13, R13L, and R13S camera systems. Compology's smart camera apparatus trade secret includes a smart camera, including a CCM with wide field-of-view camera lens, battery pack, high-durability injection-molded parts, including a "double shot" rear housing with TPE overmolding, front housing with recessed sensors for debris shielding, and camera and flash PCBA cutouts and mounting, and optical windows with high scratch-resistance, and specialized coatings; printed circuit board assemblies ("PCBAs") containing microcontrollers, external RAM integrated circuit ("IC"), wireless communication systems, accelerometer, GPS, environmental sensors, and a camera flash LED. The smart camera apparatus includes a housing with an ultraviolet coating that improves hardness and scratch resistance. The smart camera apparatus further includes a low-power wireless communication module and location sensors including an LTE CAT-M1 wireless communication 4G module and GNSS/GPS location sensors, and a power subsystem involving an exotic battery chemistry (Lithium Thionyl Chloride—LiSoCl2).

The optical assembly and design is also a trade secret that is embodied and used at least by the R11, R12, R13, R13L, and R13S camera systems. Compology's optical assembly and design includes the CCM including components such as the CMOS sensor, camera flash PCBA, and camera flash LED. The camera lens is a fixed-focus lens with an optimal field-of-view and focal length for the harsh/constrained environment and requirements for capturing waste container images. The optical assembly and design further includes a housing with second shot rubber TPE overmolding, extra strong polycarbonate with UV stabilization, a metal shield, ███████, ███████, and recessed geometry.

The image preprocessing techniques are also a trade secret that is embodied and used at least by the R11, R12, R13, R13L, and R13S camera systems. RoadRunner created ███████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ██████████████████████████████████████████████

2  ██████████████████████████

3    The training data is also a trade secret that is embodied and used at least by the R11, R12,

4  R13, R13L, and R13S camera systems. Over the course of years, Compology manually labeled

5  and tagged images from Compology's smart camera assemblies and built up a database of millions

6  of images and related labels and tags. Specifically, the images were taken with Compology's smart

7  cameras, delivered wirelessly to Compology's server, and stored on a database. Compology then

8  manually labeled and tagged these images with particular information detailing ████████████

9  ████████████████████████, and other information used by Compology's algorithms

10  and processes. This process took over seven years. The metadata included ██████████████

11  ██████████████ as labels and tags in metadata associated with specified images. The training

12  data includes ████████████████████████████████████████████████

13  ███████████████████ among others. After a critical mass of images were stored in the

14  database as a training set, Compology was able to develop working machine learning models for

15  fullness levels of waste containers, content of the containers, and the empty/service state of

16  containers over time. The machine learning models developed through the training data are

17  implemented in an AI system in order to automate the ingestion and classification of images and

18  provide automatic labels and tags associated with the particular images.

19    Compology developed several software algorithms and processes that it uses to generate

20  data, analysis, and recommendations to customers, including fullness, emptiness, contamination,

21  scheduling, data ingestion efficiencies, and location analysis of waste containers, namely, (1)

22  Subpar Image Detection (SPID), (2) container fullness analysis, (3) contamination

23  detection/content identification (COR-classifier), (4) empty event detection, (5) rightsizing

24  recommendation generation, (6) post auto-balancing algorithm, (7) location "soft-locking"

25  technique, and (8) the overall software system including the aforementioned algorithms and

26  processes. These software algorithms and processes are also each a trade secret that is embodied

27  and used at least by the R11, R12, R13, R13L, and R13S camera systems.

28    Responding Party's investigation is ongoing. Responding Party accordingly reserves the

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  right to further supplement and/or amend this response as Responding Party continues to review

2  and receive documents and other relevant information, as Responding Party's understanding of the

3  issues in this case progresses, as Defendants articulate their substantive contentions, and in

4  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

5  schedule applicable to this case.

6  **INTERROGATORY NO. 4:**

7        For each alleged Trade Secret Identified in Your submission required by CCP 2019.210

8  and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1,

9  respectively, Identify each Person with any right, title, or interest of any kind in or to such

10  Confidential Information and/or Trade Secret (including but not limited to possession thereof or

11  access thereto) and describe in detail the nature of each such Person's right, title, interest,

12  possession, and/or access as well as how and when such right, title, interest, possession, and/or

13  access to the said Confidential Information and/or Trade Secret was obtained.

14  **RESPONSE TO INTERROGATORY NO. 4:**

15        Responding Party objects to this interrogatory on the grounds that it is compound and

16  contains impermissible subparts which brings the total number of interrogatories beyond the 25-

17  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

18  interrogatory to the extent that the term "ownership" is intended to solicit a legal conclusion.

19  Responding Party further objects to the use of the term "nature of each such Person's right, title,

20  interest, possession, and/or access" as vague and ambiguous because it is unclear what the term

21  "nature" means in context of the referenced subject matter, and the use of the phrase "piece of

22  Confidential Information" as vague and ambiguous because Defendants' use of the term "piece" in

23  connection with Confidential Information is unclear. Responding Party further objects to this

24  interrogatory to the extent that it seeks information protected from discovery by a claim of

25  privilege, including the attorney-client privilege, the common interest privilege, the work product

26  doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to

27  this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order,

28  Defendants are precluded from taking discovery because Defendants are challenging the

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

2    document.

3    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

4         Responding Party objects to this interrogatory on the grounds that it is compound and

5    contains impermissible subparts which brings the total number of interrogatories beyond the 25-

6    interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

7    interrogatory to the extent that the term "ownership" is intended to solicit a legal conclusion.

8    Responding Party further objects to the use of the term "nature of each such Person's right, title,

9    interest, possession, and/or access" as vague and ambiguous because it is unclear what the term

10    "nature" means in context of the referenced subject matter, and the use of the phrase "piece of

11    Confidential Information" as vague and ambiguous because Defendants' use of the term "piece" in

12    connection with Confidential Information is unclear. Responding Party further objects to this

13    interrogatory to the extent that it seeks information protected from discovery by a claim of

14    privilege, including the attorney-client privilege, the common interest privilege, the work product

15    doctrine, and/or any other applicable privilege or immunity.

16         Subject to and without waiving the foregoing objections, Responding Party responds as

17    follows: RoadRunner owns all right, title, and interest to the trade secrets embodied or used in its

18    overall waste metering and recycling system. RoadRunner permits its customers access to certain

19    confidential information through customer service communications, access to its web application,

20    and embodied in at least by the R11, R12, R13, R13L, and R13S camera systems. Each of

21    RoadRunner's customers is permitted access pursuant to strict and limited use and disclosure

22    obligations that are substantively similar to those embodied in the Terms.

23         Compology, Inc., RoadRunner's predecessor, ███████████████████

24    ████████████████████████████████████████████████

25    ██████████████████████████████████████████

26    ███████████████████████████████. RoadRunner entered into a First

27    Amendment to Contract Manufacturing Services Agreement and ██████████████

28    ███████████████████████████████

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   Responding Party's investigation is ongoing. Responding Party accordingly reserves the

2   right to further supplement and/or amend this response as Responding Party continues to review

3   and receive documents and other relevant information, as Responding Party's understanding of the

4   issues in this case progresses, as Defendants articulate their substantive contentions, and in

5   accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

6   schedule applicable to this case.

7   **INTERROGATORY NO. 5:**

8   For each alleged Trade Secret Identified in Your submission required by CCP 2019.210

9   and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1,

10  respectively, Identify and describe in detail Your full and complete factual, legal, and evidentiary

11  basis for claiming that Defendants have gained access to, misappropriated, used, reverse-

12  engineered, and/or disclosed such Confidential Information and/or Trade Secret.

13  **RESPONSE TO INTERROGATORY NO. 5:**

14  Responding Party objects to this interrogatory on the grounds that it, in combination with

15  the other interrogatories served therewith, brings the total number of interrogatories beyond the

16  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

17  interrogatory to the extent that the terms "misappropriated," "reverse-engineered," or "disclosed"

18  are intended to solicit a legal conclusion. Responding Party further objects to the use of the phrase

19  "piece of Confidential Information" as vague and ambiguous because Defendants' use of the term

20  "piece" in connection with Confidential Information is unclear. Responding Party further objects

21  to this interrogatory on the ground that is unduly broad and burdensome to seek a "full and

22  complete factual, legal, and evidentiary basis" in connection with the requested subject matter, and

23  is tantamount to a catch-all "describe your case-in-chief in detail" which is not permissive.

24  Responding Party further objects to this interrogatory to the extent that it seeks information

25  protected from discovery by a claim of privilege, including the attorney-client privilege, the

26  common interest privilege, the work product doctrine, and/or any other applicable privilege or

27  immunity. Responding Party further objects to this interrogatory on the ground that, pursuant to

28  the Court's December 19, 2023 order, Defendants are precluded from taking discovery because

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its

2  Identification of Trade Secrets document.

3  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

4        Responding Party objects to this interrogatory on the grounds that it, in combination with

5  the other interrogatories served therewith, brings the total number of interrogatories beyond the

6  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

7  interrogatory to the extent that the terms "misappropriated," "reverse-engineered," or "disclosed"

8  are intended to solicit a legal conclusion. Responding Party further objects to the use of the phrase

9  "piece of Confidential Information" as vague and ambiguous because Defendants' use of the term

10  "piece" in connection with Confidential Information is unclear. Responding Party further objects

11  to this interrogatory on the ground that is unduly broad and burdensome to seek a "full and

12  complete factual, legal, and evidentiary basis" in connection with the requested subject matter, and

13  is tantamount to a catch-all "describe your case-in-chief in detail" which is not permissive.

14  Responding Party further objects to this interrogatory to the extent that it seeks information

15  protected from discovery by a claim of privilege, including the attorney-client privilege, the

16  common interest privilege, the work product doctrine, and/or any other applicable privilege or

17  immunity.

18        Subject to and without waiving the foregoing objections, Responding Party responds as

19  follows: RecycleSmart, RTS's predecessor-in-interest, gained access to RoadRunner's trade

20  secrets in the course of a contractual relationship with Compology, RoadRunner's predecessor-in-

21  interest, and was under an obligation to maintain the secrecy of RoadRunner's trade secret

22  information obtained during its contractual relationship with RoadRunner and thereafter.

23  RecycleSmart was also under an obligation not to use RoadRunner's trade secrets for any

24  purposes beyond the limitations of use according to Section 2.1.5 of the Terms, including but not

25  limited to copying, adapting, modifying, or creating derivative works of RoadRunner's waste

26  metering system, reverse engineering or attempting to derive the source code and other

27  components of the waste metering system, using the waste metering system in a manner that

28  infringes, misappropriates, and violates intellectual property rights in RoadRunner's trade secrets,

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    or combining and integrating RoadRunner's trade secrets with software, technology, services,

2    and/or materials not authorized by RoadRunner.

3         RoadRunner understands and believes that RecycleSmart gained access to RoadRunner's

4    trade secrets by wrongfully disassembling and reverse engineering Compology's smart camera

5    assembly, through which it learned about Compology's smart camera apparatus, optical assembly

6    and design, and image preprocessing techniques. RecycleSmart learned further details concerning

7    Compology's image preprocessing techniques by examining Compology's firmware, by

8    examining firmware updates, and through customer service communications. RecycleSmart, on

9    information and belief, derived Compology's machine learning models and algorithms and

10   processes through access to Compology's application and through numerous customer service

11   communications, and by wrongfully obtaining Compology's training data through access to

12   millions of labeled and tagged images taken by Compology's cameras (and Pello cameras) for use

13   in developing the Pello camera system.

14        In addition, in violation of RecycleSmart's obligations to maintain the secrecy of

15   RoadRunner's trade secrets, RecycleSmart disclosed RoadRunner's trade secrets to members of

16   the general public to develop the competing Pello product.

17        During its business relationship with Compology, RecycleSmart gained access to

18   Compology's trade secrets. Initially, Compology installed Compology's smart cameras in

19   RecycleSmart's waste containers. However, later during the parties' business relationship,

20   RecycleSmart sought to install Compology's smart cameras itself, and Compology agreed.

21   RecycleSmart therefore had access to Compology's smart camera apparatus, optical assembly and

22   design, and image preprocessing techniques because RecycleSmart was given physical custody of

23   the smart camera apparatus with firmware already installed and functioning. While RecycleSmart

24   had access to the smart camera apparatus, it had agreed under the Terms not to disassemble or

25   reverse engineer the smart camera apparatus to gain access to the trade secrets therein.

26   RecycleSmart further gained access to these trade secrets through customer service

27   communications in which RecycleSmart sought and received details concerning Compology's

28   smart camera system function and design. RecycleSmart had access to Compology's image

---

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9AC53E88E5E0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  preprocessing techniques that were disclosed in the text of Compology's compiled firmware code,

2  as well as by Compology firmware updates of Compology's smart cameras.

3  　　　RecycleSmart also had access to Compology's training data. Compology compiled training

4  data to train its machine learning models which it then implemented into its AI system to

5  automatically ingest image data and output machine-labeled and tagged images. Compology

6  provided RecycleSmart with the ability to download millions of images taken by Compology's

7  smart cameras, provided to Compology's servers, and labeled and tagged by Compology's AI

8  system. These millions of machine- and human-labeled and tagged images comprised a training

9  data set by which a third party could derive Compology's machine learning models.

10  　　　RecycleSmart also had access to Compology's algorithms and processes. Compology

11  provided RecycleSmart with its web application and access to customer service technicians and

12  engineers, soliciting and receiving technical details concerning Compology's data and processes.

13  This information was sufficient for RecycleSmart to learn Compology's algorithms and processes.

14  For example, Compology's web application provided images, data, and step-by-step processes to

15  show its customers the value of Compology's algorithms and processes. By observing the web

16  application, therefore, RecycleSmart learned Compology's logic and steps it implemented in its

17  algorithms and processes.

18  　　　RecycleSmart misappropriated each of the aforementioned trade secrets to which it had

19  access. Compology and RecycleSmart entered into a "pilot" contract for a 10-camera system on

20  June 15, 2017. Compology and RecycleSmart's business relationship expanded from 2017-2022,

21  to approximately $450,000 per year in revenue in 2022. On November 2, 2020, Compology and

22  RecycleSmart entered into a renewal order form that was subject to the "Compology Terms and

23  Conditions" ("Terms") in which Compology was to provide, among other things, Compology's

24  System and Subscription Services to RecycleSmart. The Terms defined System to mean "the

25  Devices, the Software and/or the combination thereof on an integrated basis to enable the

26  collection, processing and/or delivery of Device Data and Derivative Data," and Subscription

27  Services to mean "the System hosted by Compology and made available to Customer, along with

28  the provision by Compology of services relating thereto, to include but not be limited to Device

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  delivery, installation, maintenance and monitoring, reporting, Software fixes and updates, hosting

2  and service analysis and benchmarking."

3       Under Section 2.1.5 of the Terms, RecycleSmart agreed that it "shall not use the System or

4  any component thereof for any purposes beyond the scope of the license granted in these Terms."

5  Pursuant to that same section, RecycleSmart agreed that it "shall not at any time, and shall not

6  permit others to:"

7       (i) copy, adapt, modify, or create derivative works of the System, in whole or in part
       except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble,
8       decompile, decode, adapt, make error corrections to or otherwise attempt to derive or
       gain access to the source code or any other component of the System, in whole or in
9       part; . . . (v) use the System or any component thereof in any manner or for any
       purpose that infringes, misappropriates, or otherwise violates any intellectual
10      property right or other right of any person, or that violates any applicable law; or (vi)
       combine or integrate the Device or Software with any software, technology, services,
11      or materials not authorized by Compology. Additionally, Customer covenants and
       agrees not to, directly or indirectly, manipulate or process Device Data, through
12      interaction with databases, algorithms, external data, calculations and/or other
       processes, methods or tools, for the purposes of deriving Derivative Data.
13

14      The Terms define Confidential Information as

15      [A] Party's non-public business, financial, technical, legal and personnel information,
       and includes, for example, product designs and data, source code, trade secrets,
16      pricing, customer and supplier lists, network structure and addresses, designs,
       technical specifications, business plans, these Terms and any other non-public data
17      whether written, verbal or visual, connected to or related to the business and affairs
       of a Party or any of its affiliates.
18

19      The Terms prohibited RecycleSmart from disclosure or use of the Confidential Information

20  in Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use

21  the Confidential Information of the other Party in its business or for any other purpose except as

22  expressly permitted in these Terms." Thus, the Terms prohibited Defendants from disclosing or

23  using the System or Confidential Information to reverse engineer, derive or gain access to

24  Compology's source code or any other component of the System. The Terms also prohibited

25  Defendants from directly or indirectly manipulating or processing Device Data to derive

26  Derivative Data.

27      As early as 2017, Compology delivered its system and services to RecycleSmart, including

28  Compology's smart camera assemblies and software. Specifically, Compology installed smart

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   camera assemblies in RecycleSmart's waste containers and provided RecycleSmart with its web

2   application, firmware updates, and access to technical customer service support by phone, video,

3   and text.

4          In January 2022, Compology discovered that Pello cameras were being installed in

5   hundreds of the same containers as those with Compology cameras. At or around the same time

6   period, Compology discovered that RecycleSmart was downloading vast quantities of labeled and

7   tagged images. On October 31, 2022, RecycleSmart let its 1-year contract lapse with RoadRunner.

8          None of Compology's trade secret information could be disclosed or used except as

9   expressly provided in the Terms. Critically, as shown herein, the Terms restrict RecycleSmart

10  from disassembly, reverse engineering, derivation, or gaining access to Compology's smart

11  camera assemblies, Compology's software, or any other component of Compology's system. This

12  is precisely what RecycleSmart proceeded to do.

13         RoadRunner became suspicious that RecycleSmart had wrongfully used and disclosed

14  RoadRunner's trade secrets in violation of the Terms and had therefore misappropriated

15  RoadRunner's trade secrets. RoadRunner investigated its suspicions, in part, by reviewing a

16  March 9, 2022 Federal Communications Commission ("FCC") report filed by RecycleSmart.

17  RoadRunner's suspicions were confirmed.

18         RoadRunner's investigation confirmed that the Pello system was extremely similar to

19  RoadRunner's waste and recycling metering technology. For example, RF test reports submitted

20  with its FCC filing confirmed that the Pello system operated identically to RoadRunner's system

21  for obtaining images of waste containers, using substantially the same communication bands as

22  those used by RoadRunner's system.

23         In addition, the Pello camera utilizes virtually the same physical, electronic, and

24  optoelectronic components as Compology's smart camera assembly, including substantially the

25  same printed circuit board assembly ("PCBA"), microcontroller, external RAM IC, wide field-of-

26  view camera lens, camera flash PCBA, camera injection molded parts, "double-shot" rear housing

27  with TPE overmolding, battery pack, shape, color, and materials of the camera housing, recessed

28  sensors for debris shedding, and identical camera flash PCBA cutouts and mounting. The Pello

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    system also utilized a three-point mounting system that is virtually identical to RoadRunner's

2    placement of its smart cameras in waste containers.

3            Based on the foregoing, RecycleSmart gained access to and wrongfully disassembled and

4    reverse-engineered Compology's smart camera assemblies to develop RecycleSmart's Pello

5    camera system in violation of the Terms, thereby misappropriating Compology's smart camera

6    assembly, optical assembly and design, and image preprocessing trade secrets.

7            RoadRunner also became suspicious that RecycleSmart had trained machine learning

8    models by wrongfully using the millions of machine labeled and tagged images generated by

9    Compology's machine learning models to derive its own training data set and related machine

10   learning models. As described herein, with a sufficient amount of labeled and tagged images,

11   RecycleSmart could recreate Compology's training data and train its own machine learning

12   models. RoadRunner's investigation revealed that the Pello camera system is advertised as using

13   an AI-powered system to monitor bin capacity, fullness, contamination, reduce unnecessary trips

14   and emissions, and recommend efficient scheduling, the very same services that Compology

15   offered and delivered to RecycleSmart during their business relationship. For example,

16   RecycleSmart discloses on its website that it offers rightsizing scheduling optimization, one of the

17   very same algorithms and processes that Compology developed and disclosed to RecycleSmart

18   through its web application and customer service communications. On information and belief,

19   RecycleSmart downloaded a sufficiently large corpus of training data to derive Compology's

20   training data, and proceeded to train its machine learning models in violation of the Terms,

21   thereby misappropriating Compology's training data trade secret.

22           Compology also learned that RecycleSmart had installed Pello cameras next to and in

23   hundreds of the same waste containers as Compology's smart cameras. RecycleSmart further

24   trained its machine learning models by using Compology's training data derived from

25   Compology's cameras in RecycleSmart's waste containers along with additional images obtained

26   from RecycleSmart's Pello cameras in the same waste containers. This enabled RecycleSmart to

27   get a head start on developing its overall system, evidenced by RecycleSmart going to market on

28   its Pello camera system in only months, rather than many years, as in Compology's case. Stated

JMBM | Jeffer Mangels
Butler & Mitchell LLP

DocuSign Envelope ID: EE742CD0-31FA-4549-9ABB-9AC53E88E5F0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  otherwise, RecycleSmart gained an advantage by being able to compare the quality of images

2  produced by Compology's smart cameras against its own Pello cameras, which enabled them to

3  derive Compology's machine learning models in months, rather than years. As described above,

4  RecycleSmart's use of Compology's device data in this manner is strictly prohibited by the Terms

5  and is a wrongful act that constitutes trade secret misappropriation.

6        RecycleSmart also misappropriated Compology's trade secrets embodied in its algorithms

7  and processes by recreating Compology's machine learning models (designed specifically to

8  implement those algorithms and processes) and by using information about those algorithms and

9  processes learned from Compology's web application and customer service communications. To

10  bypass the time and effort necessary to develop the technology itself, RecycleSmart wrongly used

11  Compology's training data, accessed through millions of labeled and tagged images taken by

12  Compology's smart cameras, to train its own machine learning models to compete against

13  Compology using its Pello cameras, and with additional information learned through

14  Compology's web application and customer service technical and engineering team, also

15  wrongfully derived Compology's algorithms and processes. Compology's services included data,

16  analysis, and recommendations to Defendants through access to RoadRunner's web application

17  from which Defendants could learn RoadRunner's algorithms and processes.

18        RecycleSmart's camera system is virtually the same as Compology's smart camera system.

19  Its AI-powered algorithms and processes are virtually the same, and therefore, its machine

20  learning models are virtually the same. RecycleSmart's training data is identical or virtually

21  identical to Compology's training data because it was generated and output by Compology's

22  machine learning models as implemented in its AI system. Compology required years to develop,

23  train, and implement its overall system and design. The combination of these misappropriated

24  trade secrets in a competitor's system, after having received access to them and developing a

25  competing system in record time, confirms that RecycleSmart obtained and unlawfully used

26  Compology's trade secrets to derive the Pello waste metering system.

27        RecycleSmart also disclosed RoadRunner's trade secrets to third parties to develop its

28  competing Pello system. This is apparent, among other reasons, because RecycleSmart's FCC

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  filing indicates different sources of custom and commercially available parts used in

2  RecycleSmart's Pello system, and on information and belief, had shared Compology's smart

3  camera apparatus with a third party manufacturer or developer of the Pello camera system. These

4  additional acts constitute trade secret misappropriation by wrongful disclosure, as well as breach

5  of the Terms.

6       Responding Party's investigation is ongoing. Responding Party accordingly reserves the

7  right to further supplement and/or amend this response as Responding Party continues to review

8  and receive documents and other relevant information, as Responding Party's understanding of the

9  issues in this case progresses, as Defendants articulate their substantive contentions, and in

10  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

11  schedule applicable to this case.

12  **INTERROGATORY NO. 6:**

13       For each alleged Trade Secret Identified in Your submission required by CCP 2019.210

14  and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1,

15  respectively, Identify and describe in detail the full and complete factual, legal, and evidentiary

16  basis for claiming that RoadRunner has taken reasonable steps to maintain the secrecy and/or

17  confidentiality of such Confidential Information and/or Trade Secret, including in Your response

18  any and all facts or evidence currently known to You tending to disprove, undermine, or otherwise

19  contradict such claim.

20  **RESPONSE TO INTERROGATORY NO. 6:**

21       Responding Party objects to this interrogatory on the grounds that it, in combination with

22  the other interrogatories served therewith, brings the total number of interrogatories beyond the

23  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

24  interrogatory to the extent that the phrase "taken reasonable steps to maintain the secrecy and/or

25  confidentiality" is intended to solicit a legal conclusion. Responding Party further objects to the

26  use of the phrase "piece of Confidential Information" as vague and ambiguous because

27  Defendants' use of the term "piece" in connection with Confidential Information is unclear.

28  Responding Party further objects to this interrogatory to the extent that it seeks information

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   protected from discovery by a claim of privilege, including the attorney-client privilege, the

2   common interest privilege, the work product doctrine, and/or any other applicable privilege or

3   immunity. Responding Party further objects to this interrogatory on the ground that, pursuant to

4   the Court's December 19, 2023 order, Defendants are precluded from taking discovery because

5   Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its

6   Identification of Trade Secrets document.

7   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

8       Responding Party objects to this interrogatory on the grounds that it, in combination with

9   the other interrogatories served therewith, brings the total number of interrogatories beyond the

10   25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

11   interrogatory to the extent that the phrase "taken reasonable steps to maintain the secrecy and/or

12   confidentiality" is intended to solicit a legal conclusion. Responding Party further objects to the

13   use of the phrase "piece of Confidential Information" as vague and ambiguous because

14   Defendants' use of the term "piece" in connection with Confidential Information is unclear.

15   Responding Party further objects to this interrogatory to the extent that it seeks information

16   protected from discovery by a claim of privilege, including the attorney-client privilege, the

17   common interest privilege, the work product doctrine, and/or any other applicable privilege or

18   immunity.

19       Subject to and without waiving the foregoing objections, Responding Party responds as

20   follows: The California Uniform Trade Secrets Act ("CUTSA") specifies that a "'Trade secret'

21   means information, including a formula, pattern, compilation, program, device, method, technique,

22   or process, that: . . . (2) Is the subject of efforts that are reasonable under the circumstances to

23   maintain its secrecy." Cal. Civ. Code § 3426.1(d). Comment to Cal. Civ. Code § 3426.1 describes

24   reasonable efforts: "[R]easonable efforts to maintain secrecy have been held to include advising

25   employees of the existence of a trade secret, limiting access to a trade secret on 'need to know

26   basis,' and controlling plant access." The Defend Trade Secrets Act ("DTSA") defines trade secret

27   to mean, in part, "all forms and types of financial, business, scientific, technical, economic, or

28   engineering information, including patterns, plans, compilations, program devices, formulas,

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether

2   tangible or intangible, and whether or how stored, compiled, or memorialized physically,

3   electronically, graphically, photographically, or in writing if— (A) the owner thereof has taken

4   reasonable measures to keep such information secret." 18 U.S.C. § 1839(3). Requiring employees

5   to sign confidentiality agreements respecting a company's trade secrets are reasonable efforts

6   under CUTSA. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993); *see*

7   *also Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002). In addition, "requiring

8   employees to sign non-disclosure agreements, conducting exit interviews that stress departing

9   employees' confidentiality obligations, limiting access to [company] files based on seniority and

10   access need, and establishing internal policies that prohibit using third party data storage for

11   company information and require high quality passwords" are reasonable measures under DTSA

12   and CUTSA. *Comet Techs. United States of Am. Inc. v. Beuerman*, 2018 WL 1990226, at *3 (N.D.

13   Cal. Mar. 15, 2018).

14        RoadRunner and its predecessor, Compology, entered into confidentiality agreements with

15   its customers. *See, e.g.*, Compology Terms & Conditions. Under Section 2.1.5 of the Terms,

16   RecycleSmart agreed that it "shall not use the System or any component thereof for any purposes

17   beyond the scope of the license granted in these Terms." Pursuant to that same section,

18   RecycleSmart agreed that it "shall not at any time, and shall not permit others to:"

19        (i) copy, adapt, modify, or create derivative works of the System, in whole or in part
20        except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble, decompile, decode, adapt, make error corrections to or otherwise attempt to derive or
21        gain access to the source code or any other component of the System, in whole or in part; . . . (v) use the System or any component thereof in any manner or for any
22        purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law; or (vi)
23        combine or integrate the Device or Software with any software, technology, services, or materials not authorized by Compology. Additionally, Customer covenants and
24        agrees not to, directly or indirectly, manipulate or process Device Data, through interaction with databases, algorithms, external data, calculations and/or other
25        processes, methods or tools, for the purposes of deriving Derivative Data.

26        The Terms define Confidential Information as

27        [A] Party's non-public business, financial, technical, legal and personnel information, and includes, for example, product designs and data, source code, trade secrets,
28        pricing, customer and supplier lists, network structure and addresses, designs,

Jeffer Mangels Butler & Mitchell LLP

JMBM

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    technical specifications, business plans, these Terms and any other non-public data

2    whether written, verbal or visual, connected to or related to the business and affairs
     of a Party or any of its affiliates.

3        The Terms prohibited RecycleSmart from disclosure or use of the Confidential Information

4    in Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use

5    the Confidential Information of the other Party in its business or for any other purpose except as

6    expressly permitted in these Terms." Thus, the Terms prohibited Defendants from disclosing or

7    using the System or Confidential Information to reverse engineer, derive or gain access to

8    Compology's source code or any other component of the System. The Terms also prohibited

9    Defendants from directly or indirectly manipulating or processing Device Data to derive

10   Derivative Data.

11       In addition, RoadRunner and its predecessor, Compology, entered into employment

12   agreements that include confidential information use and disclosure restrictions (*see, e.g.*,

13   ROADRUNNER000028113 (Confidential Information)), severance agreements that include

14   confidentiality provisions (*see, e.g.*, ROADRUNNER000027535 (Confidentiality)), and employee

15   handbook policies on Cybersecurity (*see, e.g.*, ROADRUNNER27449-50 (Compology's

16   Cybersecurity Policies); suppliers' code of conduct (*see, e.g.*, ROADRUNNER000027530

17   (Compology's Supplier Code of Conduct), and employee policies (*see, e.g.*,

18   ROADRUNNER000028151-28154 (RoadRunner's Employee Handbook includes sections on

19   Communication Systems, Email, Networks, and Internet Policy; Computers, Mobile Phones, and

20   Other Electronic Devices Policy; Social Media Policy; Confidential and Proprietary Information

21   Policy).

22       Responding Party's investigation is ongoing. Responding Party accordingly reserves the

23   right to further supplement and/or amend this response as Responding Party continues to review

24   and receive documents and other relevant information, as Responding Party's understanding of the

25   issues in this case progresses, as Defendants articulate their substantive contentions, and in

26   accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

27   schedule applicable to this case.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    **INTERROGATORY NO. 7:**

2        For each alleged Trade Secret Identified in Your submission required by CCP 2019.210

3    and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1,

4    respectively, specifically describe the facts and circumstances under which any disclosure of such

5    material was made to Defendants, including but not limited to Identifying any Documents or

6    Things you allege embodied such Trade Secret that were disclosed to Defendants at any time.

7    Your answer should be a Trade Secret-by-Trade Secret correlation of each specifically alleged

8    Trade Secret and the specific circumstances of disclosure, including at a minimum (i) an

9    identification by detailed description and production Bates number of the specific Documents

10   and/or Things that embody that Trade Secret that were disclosed to Defendants, (ii) an

11   identification of the specific individual(s) at Defendants to whom that Trade Secret was disclosed,

12   and (iii) when and how that Trade Secret was disclosed to such individual(s).

13   **RESPONSE TO INTERROGATORY NO. 7:**

14       Responding Party objects to this interrogatory on the grounds that it is compound and

15   contains impermissible subparts which brings the total number of interrogatories beyond the 25-

16   interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to the

17   use of the phrase "piece of Confidential Information" as vague and ambiguous because

18   Defendants' use of the term "piece" in connection with Confidential Information is unclear; "such

19   material" because in the context of "Your submission required by CCP 2019.210" and "each piece

20   of Confidential Information" the phrase is confusing and difficult to parse; and "embodied such

21   Trade Secret" is equally confusing and unclear in this context. Responding Party further objects to

22   this interrogatory to the extent that it seeks information protected from discovery by a claim of

23   privilege, including the attorney-client privilege, the common interest privilege, the work product

24   doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to

25   this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order,

26   Defendants are precluded from taking discovery because Defendants are challenging the

27   sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

28   document.

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9AC53E88E5E0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

2   Responding Party objects to this interrogatory on the grounds that it is compound and

3   contains impermissible subparts which brings the total number of interrogatories beyond the 25-

4   interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to the

5   use of the phrase "piece of Confidential Information" as vague and ambiguous because

6   Defendants' use of the term "piece" in connection with Confidential Information is unclear; "such

7   material" because in the context of "Your submission required by CCP 2019.210" and "each piece

8   of Confidential Information" the phrase is confusing and difficult to parse; and "embodied such

9   Trade Secret" is equally confusing and unclear in this context. Responding Party further objects to

10  this interrogatory to the extent that it seeks information protected from discovery by a claim of

11  privilege, including the attorney-client privilege, the common interest privilege, the work product

12  doctrine, and/or any other applicable privilege or immunity.

13  Subject to and without waiving the foregoing objections, Responding Party responds as

14  follows:

15  1. Overall waste and recycling metering system. (i) *See* Supplemental Response to ROG 1,

16  as well as physical smart cameras. (ii) Colin Bell, Robert Fynn, Andy Yaworski, other

17  RecycleSmart employees, RecycleSmart's contract manufacturer. (iii) during the parties' business

18  relationship, and after, RecycleSmart had access to the components of the overall waste and

19  recycling metering system through, at least, (1) disassembling and reverse engineering the

20  Compology smart camera apparatus, (2) the smart camera firmware object code, the text of which

21  was sufficient to identify Compology's image preprocessing techniques, (3) downloads of a large

22  corpus of labeled and tagged images of Compology's smart cameras in RecycleSmart's waste

23  containers, (4) customer service communications in which RecycleSmart solicited and received

24  confidential information concerning the components and operation of Compology's system, and

25  (5) Compology's web application, the interface capable of identifying what data and processes

26  Compology employed to provide data and analytics to Compology's customers, including

27  RecycleSmart.

28  2. Smart camera apparatus. (i) *See* Supplemental Response to ROG 1, specifications and

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   technical documents concerning the smart camera apparatus. (ii) multiple RecycleSmart

2   employees and RecycleSmart's contract manufacturer. (iii) during the parties' business

3   relationship, and after, RecycleSmart had access to the smart camera apparatus through, at least,

4   disassembling and reverse engineering the Compology smart camera apparatus, and through

5   physical delivery of smart camera apparatus.

6          3. Optical assembly and design. (i) *See* Supplemental Response to ROG 1, specifications

7   and technical documents concerning the optical assembly and design. (ii) multiple RecycleSmart

8   employees and RecycleSmart's contract manufacturer. (iii) during the parties' business

9   relationship, and after, RecycleSmart had access to the smart camera apparatus through, at least,

10  disassembling and reverse engineering the Compology smart camera apparatus, physical delivery

11  of smart camera apparatus.

12         4. Image preprocessing techniques. (i) RoadRunner has made its source code, including

13  firmware, available for inspection by Defendants' expert. (ii) multiple RecycleSmart employees

14  and RecycleSmart's contract manufacturer. (iii) during the parties' business relationship, and after,

15  RecycleSmart had access to the smart camera apparatus through, at least, disassembling and

16  reverse engineering the Compology smart camera apparatus, physical delivery of smart camera

17  apparatus, the smart camera firmware object code, the text of which was sufficient to identify

18  Compology's image preprocessing techniques, and customer service communications in which

19  RecycleSmart solicited and received confidential information concerning the components and

20  operation of Compology's system.

21         5. Training data. (i) RecycleSmart ingested a large corpus of labeled and tagged images

22  from Compology. *See, e.g.,* ROADRUNNER000028673; ROADRUNNER000028683;

23  ROADRUNNER000028688-89; ROADRUNNER000028691; *see* Supplemental Response to

24  ROG 5 (listing the manner in which RecycleSmart wrongly used Compology's labeled and tagged

25  images). (ii) multiple RecycleSmart employees and RecycleSmart's contract manufacturer. (iii)

26  RecycleSmart had access to the training data through, at least, downloads of a large corpus of

27  labeled and tagged images of Compology's smart cameras in RecycleSmart's waste containers.

28         6. Algorithms and processes. (i) *See* Supplemental Response to ROG 5; access to web

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    application in which data and analytics were specified; multiple customer service calls between, at

2    least, July 15, 2020 and April 12, 2021, in which RecycleSmart solicited, and Compology

3    provided, confidential information concerning the nature and function of its algorithms and

4    processes, including ████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████████

6    ██████████████████████, soft-locking, contamination model functionality and value, including

7    █████████████, rightsizing and rightsizing recommendations, nanocoating of lens, structural

8    assembly components of the smart camera apparatus, including mount, and providing training on

9    Compology system from Compology engineers. (ii) multiple RecycleSmart employees, including

10   Robert Fynn and Andy Yaworski, and RecycleSmart's contract manufacturer. (iii) during the

11   parties' business relationship RecycleSmart had access to and obtained the algorithms and

12   processes described in Supplemental Response to ROG 5.

13          Responding Party's investigation is ongoing. Responding Party accordingly reserves the

14   right to further supplement and/or amend this response as Responding Party continues to review

15   and receive documents and other relevant information, as Responding Party's understanding of the

16   issues in this case progresses, as Defendants articulate their substantive contentions, and in

17   accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

18   schedule applicable to this case.

19   **INTERROGATORY NO. 8:**

20          State the basis for Your contention that You will suffer irreparable harm in the absence of

21   an injunction. In Your Response, identify and describe in detail what RoadRunner's present

22   business operations comprise and how and why, specifically, for each such operation, if any, will

23   be irreparably damaged in the absence of an injunction.

24   **RESPONSE TO INTERROGATORY NO. 8:**

25          Responding Party objects to this interrogatory on the grounds that it is compound and

26   contains impermissible subparts which brings the total number of interrogatories beyond the 25-

27   interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

28   interrogatory to the extent that the term "irreparably harmed" is intended to solicit a legal

JMBM | Jeffer Mangels Butler & Mitchell LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   conclusion. Responding Party further objects to the use of the phrase "business operations" in

2   conjunction with "for each such operation" as vague and ambiguous because it is unclear how

3   Defendants have intended to tie together the concept of irreparable harm and business operations,

4   including for each such operation. (It appears that Defendants have combined two disparate

5   interrogatories into a single interrogatory to circumvent the FRCP's 25-interrogatory limit.)

6   Responding Party further objects to this interrogatory to the extent that it seeks information

7   protected from discovery by a claim of privilege, including the attorney-client privilege, the

8   common interest privilege, the work product doctrine, and/or any other applicable privilege or

9   immunity. Responding Party further objects to this interrogatory on the ground that, pursuant to

10  the Court's December 19, 2023 order, Defendants are precluded from taking discovery because

11  Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its

12  Identification of Trade Secrets document.

13  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

14          Responding Party objects to this interrogatory on the grounds that it is compound and

15  contains impermissible subparts which brings the total number of interrogatories beyond the 25-

16  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

17  interrogatory to the extent that the term "irreparably harmed" is intended to solicit a legal

18  conclusion. Responding Party further objects to the use of the phrase "business operations" in

19  conjunction with "for each such operation" as vague and ambiguous because it is unclear how

20  Defendants have intended to tie together the concept of irreparable harm and business operations,

21  including for each such operation. (It appears that Defendants have combined two disparate

22  interrogatories into a single interrogatory to circumvent the FRCP's 25-interrogatory limit.)

23  Responding Party further objects to this interrogatory to the extent that it seeks information

24  protected from discovery by a claim of privilege, including the attorney-client privilege, the

25  common interest privilege, the work product doctrine, and/or any other applicable privilege or

26  immunity.

27          Subject to and without waiving the foregoing objections, Responding Party responds as

28  follows: "Genentech faces the risk of further disclosure of Genentech's trade secrets to third

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  parties. This harm would be irreparable. . . . the loss of trade secrets cannot be measured in money

2  damages where that secret, once lost, is lost forever, and thus irreparable harm is likely shown

3  where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate

4  those secrets to a wider audience." *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at

5  *19 (N.D. Cal. Mar. 5, 2019) (Alsup, J.) (holding the Court did not need to address whether DTSA

6  violation meant presumption of irreparable harm because plaintiff presented evidence of

7  irreparable harm). RoadRunner will experience irreparable harm at least because unless enjoined,

8  Defendants will disclose the trade secrets embodied by the Pello device/sensor and web

9  application to third parties, both through sales of the device and related services, and by disclosure

10  to third party manufacturers for current and future development of Pello products. These trade

11  secrets thus will be disseminated to a wider audience unless Defendants are enjoined.

12        Responding Party's investigation is ongoing. Responding Party accordingly reserves the

13  right to further supplement and/or amend this response as Responding Party continues to review

14  and receive documents and other relevant information, as Responding Party's understanding of the

15  issues in this case progresses, as Defendants articulate their substantive contentions, and in

16  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

17  schedule applicable to this case.

18  **INTERROGATORY NO. 9:**

19        Identify each and every of RoadRunner's waste metering sensors and related services and,

20  for each such waste metering sensor and related services, Identify any and all market forecasts,

21  sales, licenses, conditions for sale, or offers for sale or license concerning or relating in any way to

22  such waste metering sensor and related services.

23  **RESPONSE TO INTERROGATORY NO. 9:**

24        Responding Party objects to this interrogatory on the grounds that it is compound and

25  contains impermissible subparts which brings the total number of interrogatories beyond the 25-

26  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

27  interrogatory on the ground that "concerning or relating in any way to such waste metering sensor

28  and related services" is unduly broad and burdensome and goes well beyond the scope of

JMBM | Jeffer Mangels Butler & Mitchell LLP

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9AC53E88F5F0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   permissible discovery or the subject matter of this dispute. Responding Party further objects to this

2   interrogatory to the extent that it seeks information protected from discovery by a claim of

3   privilege, including the attorney-client privilege, the common interest privilege, the work product

4   doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to

5   this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order,

6   Defendants are precluded from taking discovery because Defendants are challenging the

7   sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

8   document.

9   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

10          Responding Party objects to this interrogatory on the grounds that it is compound and

11   contains impermissible subparts which brings the total number of interrogatories beyond the 25-

12   interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

13   interrogatory on the ground that "concerning or relating in any way to such waste metering sensor

14   and related services" is unduly broad and burdensome and goes well beyond the scope of

15   permissible discovery or the subject matter of this dispute. Responding Party further objects to this

16   interrogatory to the extent that it seeks information protected from discovery by a claim of

17   privilege, including the attorney-client privilege, the common interest privilege, the work product

18   doctrine, and/or any other applicable privilege or immunity.

19          Subject to and without waiving the foregoing objections, Responding Party responds as

20   follows: RoadRunner provides a holistic customer experience including image capture, data, and

21   analysis, to provide customers with recommendations and services relating to their waste and

22   recycling metering needs. *See* ROADRUNNER000016197, ROADRUNNER000016280,

23   ROADRUNNER000017540, ROADRUNNER000017854, ROADRUNNER000018426, and

24   ROADRUNNER000059043.

25          Responding Party's investigation is ongoing. Responding Party accordingly reserves the

26   right to further supplement and/or amend this response as Responding Party continues to review

27   and receive documents and other relevant information, as Responding Party's understanding of the

28   issues in this case progresses, as Defendants articulate their substantive contentions, and in

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9AC53E88E5E0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

2    schedule applicable to this case.

3    **INTERROGATORY NO. 10:**

4        State Your complete legal and factual basis for the contention that Defendants breached a

5    contract with RoadRunner, including in Your response the identification of the specific contract,

6    contractual term(s), date(s), individuals, and acts supporting such contention.

7    **RESPONSE TO INTERROGATORY NO. 10:**

8        Responding Party objects to this interrogatory on the grounds that it, in combination with

9    the other interrogatories served therewith, brings the total number of interrogatories beyond the

10   25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

11   interrogatory because it seeks Responding Party's complete legal basis, which impermissibly

12   seeks a legal conclusion. Responding Party further objects to this interrogatory because

13   Responding Party's "complete legal and factual basis" in context of the subject matter sought by

14   the interrogatory is unduly broad and burdensome. Responding Party further objects to this

15   interrogatory to the extent that it seeks information protected from discovery by a claim of

16   privilege, including the attorney-client privilege, the common interest privilege, the work product

17   doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to

18   this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order,

19   Defendants are precluded from taking discovery because Defendants are challenging the

20   sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

21   document.

22   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

23       Responding Party objects to this interrogatory on the grounds that it, in combination with

24   the other interrogatories served therewith, brings the total number of interrogatories beyond the

25   25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

26   interrogatory because it seeks Responding Party's complete legal basis, which impermissibly

27   seeks a legal conclusion. Responding Party further objects to this interrogatory because

28   Responding Party's "complete legal and factual basis" in context of the subject matter sought by

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  the interrogatory is unduly broad and burdensome. Responding Party further objects to this

2  interrogatory to the extent that it seeks information protected from discovery by a claim of

3  privilege, including the attorney-client privilege, the common interest privilege, the work product

4  doctrine, and/or any other applicable privilege or immunity.

5      Subject to and without waiving the foregoing objections, Responding Party responds as

6  follows: To prevail on a claim of breach of contract, the plaintiff must prove: (1) a valid contract;

7  (2) the plaintiff performed or was excused from performance; (3) the defendant breached the

8  contract; and (4) resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal.App.4th 1182,

9  1186 (2014).

10      Compology and RecycleSmart entered into a "pilot" contract for a 10-camera system on

11  June 15, 2017. Compology and RecycleSmart's business relationship expanded from 2017-2022,

12  to approximately $450,000 per year in revenue in 2022. On November 2, 2020, Compology and

13  RecycleSmart entered into a renewal order form that was subject to the "Compology Terms and

14  Conditions" ("Terms") in which Compology was to provide, among other things, Compology's

15  System and Subscription Services to RecycleSmart. The Terms defined System to mean "the

16  Devices, the Software and/or the combination thereof on an integrated basis to enable the

17  collection, processing and/or delivery of Device Data and Derivative Data," and Subscription

18  Services to mean "the System hosted by Compology and made available to Customer, along with

19  the provision by Compology of services relating thereto, to include but not be limited to Device

20  delivery, installation, maintenance and monitoring, reporting, Software fixes and updates, hosting

21  and service analysis and benchmarking."

22      Under Section 2.1.5 of the Terms, RecycleSmart agreed that it "shall not use the System or

23  any component thereof for any purposes beyond the scope of the license granted in these Terms."

24  Pursuant to that same section, RecycleSmart agreed that it "shall not at any time, and shall not

25  permit others to: (i) copy, adapt, modify, or create derivative works of the System, in whole or in

26  part except as otherwise expressly set forth herein; . . . (iii) reverse engineer, disassemble,

27  decompile, decode, adapt, make error corrections to or otherwise attempt to derive or gain access

28  to the source code or any other component of the System, in whole or in part; . . . (v) use the

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   System or any component thereof in any manner or for any purpose that infringes,

2   misappropriates, or otherwise violates any intellectual property right or other right of any person,

3   or that violates any applicable law; or (vi) combine or integrate the Device or Software with any

4   software, technology, services, or materials not authorized by Compology. Additionally, Customer

5   covenants and agrees not to, directly or indirectly, manipulate or process Device Data, through

6   interaction with databases, algorithms, external data, calculations and/or other processes, methods

7   or tools, for the purposes of deriving Derivative Data."

8        The Terms define Confidential Information as "a Party's non-public business, financial,

9   technical, legal and personnel information, and includes, for example, product designs and data,

10  source code, trade secrets, pricing, customer and supplier lists, network structure and addresses,

11  designs, technical specifications, business plans, these Terms and any other non-public data

12  whether written, verbal or visual, connected to or related to the business and affairs of a Party or

13  any of its affiliates."

14       The Terms prohibited RecycleSmart from disclosure of the Confidential Information in

15  Section 10.2, as follows: "[RecycleSmart will not] publish, disclose, copy, disseminate or use the

16  Confidential Information of the other Party in its business or for any other purpose except as

17  expressly permitted in these Terms." Thus, the Terms prohibited Defendants from disclosing or

18  using the System or Confidential Information to reverse engineer, derive or gain access to

19  Compology's source code or any other component of the System. The Terms also prohibited

20  Defendants from directly or indirectly manipulating or processing Device Data to derive

21  Derivative Data.

22       As early as 2017, Compology delivered its system and services to RecycleSmart, including

23  Compology's smart camera assemblies and software. Specifically, Compology installed smart

24  camera assemblies in RecycleSmart's waste containers and provided RecycleSmart with its web

25  application, firmware updates, and access to technical customer service support by phone, video,

26  and text. In January 2022, Compology discovered that Pello cameras were being installed in the

27  same containers as those with Compology cameras. At or around the same time period,

28  Compology discovered that RecycleSmart was downloading vast quantities of labeled and tagged

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   images. In October 2022, RoadRunner acquired Compology and assumed all of the rights under

2   the Terms. On October 31, 2022, RecycleSmart let its 1-year contract lapse with RoadRunner.

3        In March 2023, RTS announced its acquisition of RecycleSmart, including RecycleSmart's

4   Pello cameras and system. When RTS acquired RecycleSmart, RTS assumed RecycleSmart's

5   obligations and liabilities, including RecycleSmart's obligations and liability under the Terms,

6   including the aforementioned prohibitions against disclosure and improper use of RoadRunner's

7   Confidential Information. In addition, there exists a unity of interest among RTS and

8   RecycleSmart such that these companies are in practice a "single enterprise." Among other things,

9   RTS exercises and directs control over RecycleSmart. Indeed, these companies reference on their

10  webpages, and imply ownership of, the Pello system that is at issue in this lawsuit. Thus, it would

11  be unjust for any of the companies to be shielded from liability for the theft of RoadRunner's

12  technology. Under the Terms and California law, privities-in-interest are bound to the Terms, and

13  liable for the wrongful acts of their predecessors-in-interest, even after termination or expiration of

14  the Terms, pursuant to Section 9.5: "The provisions of these Terms relating to (i) restrictions on

15  license or use of the System; . . . (vi) ownership of intellectual property, (vii) confidentiality, . . .

16  along with any other provisions that by their nature are intended to survive, will survive the

17  termination or expiration of these Terms." Each Defendant therefore stepped into the shoes of the

18  other Defendants and are bound by the Terms and liable for each other's wrongful acts, in addition

19  to Defendants' continuing wrongful acts as described herein.

20       The Terms are a valid and enforceable contract between RoadRunner and RTS.

21  RoadRunner assumed the rights under the Terms by acquiring Compology, an original party to the

22  Terms. RTS assumed the obligations and liabilities under the terms by acquiring RecycleSmart, an

23  original party to the Terms. The Terms are binding on each of the Defendants because when RTS

24  acquired RecycleSmart, (1) RTS assumed all of the obligations and liabilities of RecycleSmart,

25  and/or (2) there exists a unity of interest among RTS and RecycleSmart such that these companies

26  are in practice a "single enterprise." Pursuant to the Terms, therefore, Defendants had obligations

27  not to: (1) disclose RoadRunner's Confidential Information to any third party; (2) copy, adapt,

28  modify, or create derivative works of RoadRunner's waste and recycling metering technology, (3)

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   reverse engineer or attempt to derive the source code and other components of the waste and

2   recycling metering technology, (4) use the waste and recycling metering technology in a manner

3   that infringes, misappropriates, and violates intellectual property rights in RoadRunner's trade

4   secrets as embodied in its Confidential Information, or (5) combine or integrate RoadRunner's

5   waste and recycling metering technology with software, technology, services, and/or materials not

6   authorized by RoadRunner.  The foregoing covenants in the Terms were intended and necessary to

7   protect RoadRunner's legitimate business interest in its Confidential Information.

8          Defendants breached the Terms by, *inter alia*, (1) disclosing RoadRunner's Confidential

9   Information to third parties, (2) copying, adapting, modifying, or creating derivative works of

10  RoadRunner's waste and recycling metering technology, (3) reverse engineering or attempting to

11  derive the source code and other components of the waste and recycling metering technology, (4)

12  using the waste and recycling metering technology in a manner that infringes, misappropriates,

13  and violates intellectual property rights in RoadRunner's trade secrets as embodied in its

14  Confidential Information, and (5) combining or integrating RoadRunner's waste and recycling

15  metering technology with software, technology, services, and/or materials not authorized by

16  RoadRunner.

17         Defendants continue to wrongfully retain and use RoadRunner's Confidential Information

18  without excuse under law or contract. RoadRunner has fully performed all of its material

19  obligations and satisfied all conditions for performance under the Terms except those that were

20  waived or excused or are unenforceable by Defendants. Defendants have willfully, and with

21  conscious disregard for the contractual obligations owed to RoadRunner, breached the Terms.

22         Responding Party's investigation is ongoing. Responding Party accordingly reserves the

23  right to further supplement and/or amend this response as Responding Party continues to review

24  and receive documents and other relevant information, as Responding Party's understanding of the

25  issues in this case progresses, as Defendants articulate their substantive contentions, and in

26  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

27  schedule applicable to this case.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**INTERROGATORY NO. 11:**

Identify and describe in detail the factual basis supporting Your statement that "Compology audited RecycleSmart's use of Compology's technology and tools and observed that beginning in early July 2021 (notably the month in which RecycleSmart announced the Pello Technology) and for the following six month period, RecycleSmart's use and downloads spiked significantly – nearly 600% – relative to its use over the preceding years, and pulling atypical and aged tagged and labeled images, again inconsistent with RecycleSmart's prior use, which began in 2017." Your response should include an explanation of the specific steps RoadRunner undertook to conduct this audit, including the specific individuals involved in such audit, and all information used to calculate the "600%" increase in "use and downloads" as well as the methodology for such calculation.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this interrogatory on the grounds that it is compound and contains impermissible subparts which brings the total number of interrogatories beyond the 25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this interrogatory to the extent that it seeks information protected from discovery by a claim of privilege, including the attorney-client privilege, the common interest privilege, the work product doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order, Defendants are precluded from taking discovery because Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets document.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this interrogatory on the grounds that it is compound and contains impermissible subparts which brings the total number of interrogatories beyond the 25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this interrogatory to the extent that it seeks information protected from discovery by a claim of privilege, including the attorney-client privilege, the common interest privilege, the work product

JMBM | Jeffer Mangels Butler & Mitchell LLP

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9AC53E88E5F0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  doctrine, and/or any other applicable privilege or immunity.

2       Subject to and without waiving the foregoing objections, Responding Party responds as

3  follows: Compology reviewed RecycleSmart's API usage in or around January 2023. Compology

4  learned that historically RecycleSmart had not substantially downloaded Compology's data, and in

5  January 2020, had downloaded Compology data in the amount of 3,398 events. However, in June

6  2021, Compology learned that RecycleSmart had downloaded huge amounts of Compology data,

7  reaching a height of 542,096 events in November 2021. Compology learned that RecycleSmart

8  had downloaded all of the Compology data from 2020 and 2021. *See, e.g.,*

9  ROADRUNNER000028673; ROADRUNNER000028683; ROADRUNNER000028688-89;

10  ROADRUNNER000028691. Ben Chehebar of Compology performed the audit. The endpoints of

11  the events at January 2020 and November 2021 were used to estimate the percentage increase in

12  data ingestion in the six months between July-December 2021 relative to use in proceeding years.

13       Responding Party's investigation is ongoing. Responding Party accordingly reserves the

14  right to further supplement and/or amend this response as Responding Party continues to review

15  and receive documents and other relevant information, as Responding Party's understanding of the

16  issues in this case progresses, as Defendants articulate their substantive contentions, and in

17  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

18  schedule applicable to this case.

19  **INTERROGATORY NO. 12:**

20       Identify and describe the factual basis behind Your statement that "Further confirming the

21  suspicious activity, in October 2021, RecycleSmart insisted that it be informed how Compology's

22  back-end systems work to monitor cameras, dispatch service technicians and generally manage the

23  network of cameras."

24  **RESPONSE TO INTERROGATORY NO. 12:**

25       Responding Party objects to this interrogatory on the grounds that it, in combination with

26  the other interrogatories served therewith, brings the total number of interrogatories beyond the

27  25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

28  interrogatory to the extent that it seeks information protected from discovery by a claim of

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    privilege, including the attorney-client privilege, the common interest privilege, the work product

2    doctrine, and/or any other applicable privilege or immunity. Responding Party further objects to

3    this interrogatory on the ground that, pursuant to the Court's December 19, 2023 order,

4    Defendants are precluded from taking discovery because Defendants are challenging the

5    sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets

6    document.

7    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

8         Responding Party objects to this interrogatory on the grounds that it, in combination with

9    the other interrogatories served therewith, brings the total number of interrogatories beyond the

10   25-interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party objects to this

11   interrogatory to the extent that it seeks information protected from discovery by a claim of

12   privilege, including the attorney-client privilege, the common interest privilege, the work product

13   doctrine, and/or any other applicable privilege or immunity.

14        Subject to and without waiving the foregoing objections, Responding Party responds as

15   follows: Members of RecycleSmart and Compology routinely attended conference calls relating to

16   installation, maintenance, and operation of Compology's waste and recycling metering system and

17   technology. In at least one such call, Colin Bell, then-CEO of RecycleSmart, Dylan Hyland, and

18   Ben Chehebar discussed that a technical conversation take place between RecycleSmart's front

19   end/back end software developers and Compology's API engineers, namely, Shandy Brown and

20   Mark Stefanski, regarding details about Compology's system and API.

21        Responding Party's investigation is ongoing. Responding Party accordingly reserves the

22   right to further supplement and/or amend this response as Responding Party continues to review

23   and receive documents and other relevant information, as Responding Party's understanding of the

24   issues in this case progresses, as Defendants articulate their substantive contentions, and in

25   accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

26   schedule applicable to this case.

27   **INTERROGATORY NO. 13:**

28        Explain and describe the circumstances regarding whether RoadRunner, or anyone on

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

JMBM | Jeffer Mangels Butler & Mitchell LLP

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  RoadRunner's behalf, obtained a Pello sensor, how such sensor was obtained, whether such Pello

2  sensor was disassembled in anyway and, if so, for what purpose, and identify by production Bates

3  number all Documents and/or Things reflecting, memorializing, or communicating about any

4  aspect of such disassembly.

5  **RESPONSE TO INTERROGATORY NO. 13:**

6       Responding Party objects to this interrogatory on the grounds that it is compound and

7  contains impermissible subparts which brings the total number of interrogatories beyond the 25-

8  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

9  interrogatory as seeking for Responding Party to "identify by production Bates number all

10  Documents and/or Things" in context of the requested subject matter is unduly broad and

11  burdensome. Responding Party further objects to this interrogatory to the extent that it seeks

12  information protected from discovery by a claim of privilege, including the attorney-client

13  privilege, the common interest privilege, the work product doctrine, and/or any other applicable

14  privilege or immunity. Responding Party further objects to this interrogatory on the ground that,

15  pursuant to the Court's December 19, 2023 order, Defendants are precluded from taking discovery

16  because Defendants are challenging the sufficiency of Responding Party's description of trade

17  secrets in its Identification of Trade Secrets document.

18  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

19       Responding Party objects to this interrogatory on the grounds that it is compound and

20  contains impermissible subparts which brings the total number of interrogatories beyond the 25-

21  interrogatory limit of Federal Rule of Civil Procedure 33. Responding Party further objects to this

22  interrogatory as seeking for Responding Party to "identify by production Bates number all

23  Documents and/or Things" in context of the requested subject matter is unduly broad and

24  burdensome. Responding Party further objects to this interrogatory to the extent that it seeks

25  information protected from discovery by a claim of privilege, including the attorney-client

26  privilege, the common interest privilege, the work product doctrine, and/or any other applicable

27  privilege or immunity.

28       Subject to and without waiving the foregoing objections, Responding Party responds as

JMBM | Jeffer Mangels
Butler & Mitchell LLP

DocuSign Envelope ID: EE742CD0-31FA-454B-9ABB-9A653E88E5E0

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  follows: Responding Party is unaware of any instance in which it obtained a Pello sensor or

2  disassembled a Pello sensor.

3        Responding Party's investigation is ongoing. Responding Party accordingly reserves the

4  right to further supplement and/or amend this response as Responding Party continues to review

5  and receive documents and other relevant information, as Responding Party's understanding of the

6  issues in this case progresses, as Defendants articulate their substantive contentions, and in

7  accordance with Federal Rules of Civil Procedure, the Civil Local Rules, and the procedural

8  schedule applicable to this case.

9  DATED:  May 31, 2024              JEFFER MANGELS BUTLER & MITCHELL LLP
                                     STANLEY M. GIBSON
10                                   JAMES NEUDECKER
                                     SHAVON HENRY
11                                   JOSEPH J. MELLEMA

12

13

14                        By:  _____
                                    JOSEPH J. MELLEMA
15                             Attorneys for Plaintiff
                               ROADRUNNER RECYCLING, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

**VERIFICATION**

2    **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3          I have read the foregoing **PLAINTIFF ROADRUNNER RECYCLING, INC.'S
**  **SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES**
4    **PROPOUNDED BY DEFENDANTS RECYCLE TRACK SYSTEMS, INC. AND
**  **RECYCLESMART SOLUTIONS, INC.** and know its contents.

5

6          I am F. Connelly Thieman, General Counsel of RoadRunner Recycling, Inc., a party to this
     action, and am authorized to make this verification for and on its behalf, and I make this
7    verification for that reason.  I am informed and believe and on that ground allege that the matters
     stated in the foregoing document are true.

8          I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.
9

10          Executed on May 31, 2024, at Pittsburgh, Pennsylvania.

11

12    F. Connelly Thieman                              F. Connelly Thieman
                                                       D9ADAA14C8F4417...
13    F. Connelly Thieman                              Signature

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

3        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Orange, State of California.  My business address is 3 Park Plaza, Suite
4   1100, Irvine, CA 92614-2592.

5        On May 31, 2024, I served true copies of the following document(s) described as
**PLAINTIFF ROADRUNNER RECYCLING, INC.'S SUPPLEMENTAL RESPONSE TO**
6   **FIRST SET OF INTERROGATORIES PROPOUNDED BY DEFENDANTS RECYCLE**
**TRACK SYSTEMS, INC. AND RECYCLESMART SOLUTIONS, INC.** as follows:

7

8        Arameh Zargham O'Boyle            Attorneys for Defendants Recycle Track
         MINTZ, LEVIN, COHN, FERRIS,       Systems, Inc. and RecycleSmart
         GLOVSKY, AND POPEO, P.C.          Solutions, Inc.
9        2049 Century Park East, Suite 300
         Los Angeles, CA 90067
10       Email:  AZOBoyle@mintz.com

11       James M. Wodarski
         Daniel B. Weinger
12       Andrew H. Devoogd
         Nicholas W. Armington
13       Tianyi Tan
         MINTZ, LEVIN, COHN, FERRIS,
14       GLOVSKY, AND POPEO, P.C.
         One Financial Center
15       Boston, MA 02111
         Emails: JWodarski@mintz.com
16               DBWeinger@mintz.com
                 AHDeVoogd@mintz.com
17               NWArmington@mintz.com
                 TTan@mintz.com

18

19

20       **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the
document(s) to be sent from e-mail address CLopez@jmbm.com to the persons at the e-mail
21   addresses listed in the Service List.  I did not receive, within a reasonable time after the
transmission, any electronic message or other indication that the transmission was unsuccessful.

22       I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that I am employed in the office of a member of the bar of this
23   Court at whose direction the service was made.

24       Executed on May 31, 2024, at Irvine, California.

25

26       _____
         Christina Lopez
27

28

72132512                                          Case No. 3:23-cv-04804-WHA

PROOF OF SERVICE