JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON (Bar No. 162329)
*sgibson@jmbm.com*
JAMES NEUDECKER (Bar No. 221657)
*JNeudecker@jmbm.com*
2 Embarcadero Center, 5th Floor
San Francisco, CA 94111
Telephone:     (415) 398-8080
Facsimile:     (415) 398-5584

JOSEPH J. MELLEMA (Bar No. 248118)
*jmellema@jmbm.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:     (949) 623-7200
Facsimile:     (949) 623-7202

LENA STREISAND (Bar No. 339021)
*lstreisand@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:     (310) 203-8080
Facsimile:     (310) 203-0567

Attorneys for Plaintiff ROADRUNNER
RECYCLING, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., | Case No. 3:23-cv-04804-WHA |
| Plaintiff, | **PLAINTIFF ROADRUNNER RECYCLING, INC.'S OPPOSITION TO DEFENDANTS RECYCLE TRACK SYSTEMS, INC. AND RECYCLESMART SOLUTIONS, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A. VICKERY** |
| v. | |
| RECYCLE TRACK SYSTEMS, INC., RECYCLESMART SOLUTIONS, INC., | |
| Defendants. | *Filed Concurrently with Declaration of Stanley M. Gibson* |
| | Date:        November 14, 2024 |
| | Time:        8:00 a.m. |
| | Crtrm.:      450 Golden Gate Avenue |
| | Courtroom 12, 19th Floor |
| | San Francisco, CA 94102 |
| | Complaint Filed:     August 4, 2023 |
| | Trial Date:          December 9, 2024 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    MR. VICKERY IS A QUALIFIED DAMAGES EXPERT ..................................2

III.   SUMMARY OF MR. VICKERY'S OPINIONS ..................................................2

      A.     Cost Avoidance Damages ........................................................................3

      B.     Breach of Contract Damages (Lost Profits) ............................................4

      C.     Disgorgement Damages ..........................................................................4

IV.   THE RELEVANT LAW ......................................................................................4

V.    THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE MR. VICKERY'S ANALYSES MEET THE REQUIREMENTS OF FED. R. EVID. 702 .......................................................................................................................5

      A.     Mr. Vickery's Avoided Costs Analysis Meets the Criteria of Fed. R. Evid. 702 ..................................................................................................6

      B.     Mr. Vickery's Cost Avoidance Analysis is Based on Sufficient Facts and Data ..................................................................................................11

      C.     Mr. Vickery's Lost Profits Analysis Meets the Criteria of Fed. R. Evid. 702 .........13

      D.     Mr. Vickery's Disgorgement Analysis Meets the Criteria of Fed. R. Evid. 702 ..................................................................................................14

VI.   CONCLUSION ..................................................................................................15

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A. VICKERY

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    399 F. Supp. 2d 1064 (N.D. Cal. 2005) ................................................................. 11

*Alkayali v. Hoed*,
    No. 3:18-CV-777-H-JMA, 2018 WL 3425980 (S.D. Cal. July 16, 2018) ............................ 15

*Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*,
    171 Cal. Rptr. 3d 714 (Cal. Ct. App. 2014) ......................................................... 9

*ATS Prod. Inc. v. Ghiorso*,
    No. C10-4880 BZ, 2012 WL 253315 (N.D. Cal. Jan. 26, 2012) ...................................... 11

*Bourns, Inc. v. Raychem Corp.*,
    331 F.3d 704 (9th Cir. 2003) .................................................................... 6, 7

*Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*,
    No. Civ.A 01-669-KAJ, 2004 WL 1534786 (D. Del. May 21, 2004) ................................. 10

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    No. SACV1602277CJCDFMX, 2019 WL 7166056 (C.D. Cal. Oct. 9, 2019) ........................... 7, 8

*Copart, Inc. v. Sparta Consulting, Inc.*,
    277 F. Supp. 3d 1127 (E.D. Cal. 2017) .............................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ......................................................................... 5, 7, 12

*Elosu v. Middlefork Ranch Inc.*,
    26 F.4th 1017 (9th Cir. 2022) ..................................................................... 5

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
    980 F.3d 1117 (7th Cir. 2020) ..................................................................... 6

*GlobeRanger Corp. v. Software AG United States of Am., Inc.*,
    836 F.3d 477 (5th Cir. 2016) ...................................................................... 6

*HP Tuners, LLC v. Cannata*,
    No. 3:18-cv-00527-LRH-CSD, 2023 BL 27394 (D. Nev. Jan. 27, 2023) ............................... 6

*InfoDeli, LLC v. Western Robidoux, Inc.*,
    No. 4:15-CV-00364-BCW, 2020 WL 1855298 (W.D. Miss. Mar. 16, 2020) ........................... 7

*Jarose v. Cnty. of Humboldt*,
    No. 18-CV-07383-RS, 2023 WL 2333880 (N.D. Cal. Mar. 1, 2023) ................................... 5

Jeffer Mangels
Butler & Mitchell LLP

JMBM

ii

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ............................................................................................. 5

*Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*,
    No. C-89-3832 VRW, 1993 WL 317266 (N.D. Cal. Aug. 19, 1993) .................................... 15

*Mason v. Sybron Corp.*,
    955 F.2d 48 (9th Cir. 1992) .................................................................................... 15

*MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
    No. 19CV1865-GPC(DEB), 2022 WL 5460971 (S.D. Cal. Oct. 7, 2022) ............................. 7

*MSC.Software Corp. v. Heroux-Devtek Inc.*,
    No. 819CV01987SBDFMX, 2021 WL 9696752 (C.D. Cal. Sept. 16, 2021) ........................ 15

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    420 F. Supp. 2d 1070 (N.D. Cal. 2006), aff'd, 221 F. App'x 996 (Fed. Cir.
    2007) ................................................................................................................. 11

*Philips N. Am. LLC v. Summit Imaging Inc.*,
    No. C19-1745JLR, 2021 WL 2118400 (W.D. Wash. May 25, 2021) ......................... 6, 10

*PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*,
    47 F.4th 156 (3d Cir. 2022) ...................................................................................... 6

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ............................................................................................... 9

*Santa Fe-Pomeroy, Inc. v. P & Z Co.*,
    No. C 69 630, 1980 WL 30351 (N.D. Cal. Sept. 2, 1980) ..................................... 13

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    No. CV 18-9536-MWF (ASX), 2021 WL 4913509 (C.D. Cal. Sept. 8, 2021) ..................... 11

*Syntel Sterling Bet Shores Mauritius Limited v. TriZetto Group*,
    15 Civ. 211 (LGS), 2020 WL 5822058 (S.D.N.Y. Sept. 30, 2020) .................................. 6, 10

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017) ................................................................................... 5

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
    No. 18CV1927 JM (MSB), 2021 WL 4895977 (S.D. Cal. Oct. 20, 2021) ............................. 9

**Other Authorities**

Fed. R. Evid. 702 ..............................................................................................*passim*

Fed. R. Evid. 702(b) ........................................................................................... 11

Fed. R. Evid. 702(c) ............................................................................................. 6

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A. VICKERY

Reilly, R. and Schweihs, R., *Guide to Intangible Asset Valuation* (AICPA 2014) ........................ 8

JMBM | Jeffer Mangels
Butler & Mitchell LLP

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY

# I.    **INTRODUCTION**

Forrest A. Vickery, Plaintiff RoadRunner Recycling, Inc.'s ("RoadRunner") damages expert, is an experienced and qualified damages expert who has testified in over 70 cases.  The Court should deny Defendants Recycle Track Systems, Inc. ("RTS") and RecycleSmart Solutions, Inc.'s (collectively, "Defendants") motion to exclude Mr. Vickery because Mr. Vickery meets the requirements for admissible expert testimony set forth in Fed. R. Evid. 702.  Mr. Vickery provided three well-known theories of damages in this case: (1) unjust enrichment damages based on Defendants' avoided development costs; (2) lost profits damages for Defendants' breaches of the parties' contracts; and (3) unjust enrichment damages in the form of disgorgement of Defendants' profits.  Each of Mr. Vickery's opinions is based on reliable and well-accepted methodologies and rooted in sufficient facts and data.

First, Mr. Vickery calculated RoadRunner's cost avoidance damages using as a proxy the costs that Compology (RoadRunner's predecessor) incurred to develop its smart camera apparatus and AI/machine learning services.  Using a plaintiff's development costs to estimate a defendant's avoided costs is a well-recognized and accepted method for calculating damages for trade secret misappropriation.  Courts around the country, including the Ninth, Seventh, Fifth, and Third Circuits, among other courts, recognize this methodology.  Defendants' argument, based on a single case from the District Court for the Central District of California, is not only not binding but also inapposite and unpersuasive.  Defendants' other arguments, which are based on a valuation analysis, as opposed to a damages analysis, are equally unpersuasive.

Second, Mr. Vickery's lost profits analysis is based on sufficient facts and data, including cost comparisons that Defendants prepared to project their own cost savings upon terminating their contract with RoadRunner.  Defendants' argument that Mr. Vickery has no basis for his assumption that Defendants would continue to contract with RoadRunner at a specified price is contradicted by Defendants' own evidence, which Mr. Vickery reviewed.

Finally, Mr. Vickery's disgorgement analysis is similarly based on Defendants' own projections of its cost savings, and therefore its added profit, that would result from Defendants' misappropriation of RoadRunner's trade secrets.

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY

1    Accordingly, as explained in further detail below, the Court should deny Defendants'

2   motion to exclude Mr. Vickery's testimony should be denied in its entirety.

3

4   **II.    MR. VICKERY IS A QUALIFIED DAMAGES EXPERT**

5    Mr. Vickery is a qualified and experienced damages expert.  Mr. Vickery graduated *cum*

6   *laude* from University of California at Irvine with a bachelors degree in honors economics.  *See*

7   Vickery Report ("Rep.") at 5.  Mr. Vickery has worked as a damages expert since 1995, when he

8   joined Sanli Pastore & Hill, Inc.  *Id.*  He is now a shareholder and the managing director of

9   Northern California operations for Sanli Pastore & Hill.  *See id.*  Mr. Vickery regularly performs

10   expert witness services involving forensic financial analysis, lost profits, unjust enrichment,

11   disgorgement, and economic damages.  *See id.*  Mr. Vickery has testified in over 70 cases,

12   including at nearly 20 trials on a variety of matters including damages for trade secrets

13   misappropriation.  He is a member of multiple professional associations and holds roles such as

14   Accredited Senior Appraiser (ASA), Business Valuation Discipline, of the American Society of

15   Appraisers.  *See id.*  Mr. Vickery has issued numerous publications and participated in a number

16   of speaking engagements on damages and valuation.  *See id.* at 6.

17

18   **III.    SUMMARY OF MR. VICKERY'S OPINIONS**

19    In his Report, Mr. Vickery provides an overview of RoadRunner and Compology's

20   financials, including the companies' capital raises and historical revenue.  *See* Rep. at 16–17.  Mr.

21   Vickery then provides his analyses and opinions regarding three categories of damages: (1) unjust

22   enrichment in the form of development costs that Defendants avoided by misappropriating

23   RoadRunner's trade secrets; (2) breach of contract damages measured by RoadRunner's lost

24   profits as a result of lost contracts with Defendants; and (3) unjust enrichment damages in the

25   form of disgorgement of profits measured by Defendants' realized profits from deployment of the

26   Pello device.  *See id.* at 18.  Each of Mr. Vickery's damages analyses is summarized below.

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

### A.   <u>Cost Avoidance Damages</u>

Mr. Vickery calculated RoadRunner's unjust enrichment damages based on the theory of cost avoidance, *i.e.*, the amount of development costs Defendants were able to avoid by misappropriating RoadRunner's trade secrets, as opposed to developing their own technology from scratch. *See* Rep. at 18–22.  To determine Defendants' avoided development costs, Mr. Vickery analyzed the costs that Compology incurred to develop its trade secrets, based on Compology's internal income statements and balance sheets, appraisal reports, and documents from Compology's third-party financial firm, Launch Finance LLC ("Launch Finance").  *See* Rep. at 18; Supp. Sched. 1, 2, 3A, 3B.

Mr. Vickery followed four steps in calculating RoadRunner's cost avoidance damages, *see* Rep. at 19–20:

First, Mr. Vickery reviewed all the categories and expense line items on Compology's financial documents and determined that "Research Expense," "Payroll and Benefits," "Data Hosting and Classification," "Software Licenses and Expenses," and "Facility Expense" constituted costs that Compology incurred in developing its trade secrets.[1]

Second, Mr. Vickery identified which of the selected expense categories contained 100% development costs and which of the categories contained both development and operational costs.

Third, Mr. Vickery analyzed the portion of selected expenses that should be allocated to development costs.  Mr. Vickery determined that all categories except "Research Expense" required some allocation of costs.  He determined that "Research Expense" was comprised entirely of development costs.

Fourth, Mr. Vickery calculated the total cost of developing RoadRunner's camera apparatus and AI/machine learning systems.  Using Compology's development costs as a proxy for Defendants' avoided development costs, Mr. Vickery concluded that RoadRunner is entitled to

---

[1] Mr. Vickery initially included the category of expenses titled "Consulting and Outside Services," *see* Rep. at 18, but removed that category of costs after receiving and reviewing documents produced by Launch Finance, *see* Supp. Rep. at 18.

JMBM | Jeffer Mangels Butler & Mitchell LLP

recover $22,270,619 in unjust enrichment damages for development costs that Defendants avoided by misappropriating RoadRunner's trade secrets. *See* Vickery Supplemental Report ("Supp. Rep.") at 2.

### B.   Breach of Contract Damages (Lost Profits)

Mr. Vickery also conducted an analysis of RoadRunner's breach of contract damages via a lost profits analysis. To determine RoadRunner's lost profits, Mr. Vickery considered the following factors: (1) the number of units utilized by Defendants at the end of the most recent contract between RoadRunner and RTS; (2) Defendants' historically-contracted price per unit; (3) Defendants' expected future price per unit; (4) expiration dates of each of the parties' contracts; (5) the relevant time period; and (4) RoadRunner's potential incremental costs. *See* Rep. at 23–25; Supp. Rep. Sched. 4. Considering these factors, Mr. Vickery determined that RoadRunner is entitled to between $999,043 and $1,548,063 in lost profit damages for Defendants' breach of contract. *See* Supp. Rep. at 2.

### C.   Disgorgement Damages

Finally, Mr. Vickery determined RoadRunner's disgorgement damages based on the profits Defendants realized by misappropriating RoadRunner's trade secrets. Mr. Vickery based his analysis on Defendants' own cost-comparison analyses. *See* Rep. at 20; Supp. Rep. Sched. 5. Based on Defendants' cost comparisons, Mr. Vickery concluded that RoadRunner is entitled to recover $1,402,611 in disgorgement damages. *See* Supp. Rep. at 2.

## IV.   THE RELEVANT LAW

Fed. R. Evid. 702 governs the admissibility of expert testimony at trial. Fed. R. Evid. 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if his testimony will help the trier of fact, is based on sufficient facts or data, and is the product of reliable principles and methods that are reliably applied to the facts of the case. In determining the admissibility of expert testimony, the court's purpose "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of

1   intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*

2   *v. Carmichael*, 526 U.S. 137, 152 (1999).  A *Daubert* "inquiry is 'flexible,' . . . and 'Rule 702

3   should be applied with a 'liberal thrust' favoring admission.'" *Wendell v. GlaxoSmithKline LLC*,

4   858 F.3d 1227, 1232 (9th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

5   579, 588 (1993)).  As the Ninth Circuit summarized in *Elosu v. Middlefork Ranch Inc.*, 26 F.4th

6   1017, (9th Cir. 2022):

7           Ultimately, the test under Daubert is not the correctness of the
        expert's conclusions but the soundness of his methodology.
8           [Citation]. The court is a gatekeeper, not a fact finder.  [Citations].
        Accordingly, [t]he district court is not tasked with deciding whether
9           the expert is right or wrong, just whether his testimony has substance
        such that it would be helpful to a jury. [Citation]. If the proposed
10          testimony meets the thresholds of relevance and reliability, its
        proponent is entitled to have the jury decide upon [its] credibility,
11          rather than the judge. [Citation]. Challenges that go to the weight of
        the evidence are within the province of a fact finder, not a trial court
12          judge. A district court should not make credibility determinations
        that are reserved for the jury. [Citations].  This Court has previously
13          noted that [s]haky but admissible evidence is to be attacked by cross
        examination, contrary evidence, and attention to the burden of proof,
14          not exclusion. [Citation].

15   *Id.* at 1024 (citations omitted) (internal quotations omitted) (alterations in original).   Thus, "the

16   rejection of expert testimony is the exception rather than the rule." *Jarose v. Cnty. of Humboldt*,

17   No. 18-CV-07383-RS, 2023 WL 2333880, at *7 (N.D. Cal. Mar. 1, 2023) (quoting *Caldwell v.*

18   *City of San Francisco*, No. 12-CV-01892-DMR, 2021 WL 1391464, at *2 (N.D. Cal. Apr. 13,

19   2021)).

20

21   **V.      THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE MR.**

22           **VICKERY'S ANALYSES MEET THE REQUIREMENTS OF FED. R. EVID. 702**

23           The Court should deny Defendants' motion to exclude Mr. Vickery's testimony because

24   Mr. Vickery utilized well-accepted methodologies rooted in sufficient data to calculate

25   RoadRunner's damages.

26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

A.   **Mr. Vickery's Avoided Costs Analysis Meets the Criteria of Fed. R. Evid. 702**

1.   **Mr. Vickery Calculated RoadRunner's Cost Avoidance Damages Using a Well-Recognized and Reliable Methodology**

The Court should deny Defendants' motion to exclude Mr. Vickery because Mr. Vickery measured RoadRunner's cost avoidance damages according to well-accepted methods. Admissible expert testimony is "the product of reliable principles and methods." Fed. R. Evid. 702(c).

To calculate RoadRunner's cost avoidance damages, Mr. Vickery used Compology's development costs as a proxy for the costs Defendants avoided by misappropriating RoadRunner's trade secrets. *See* Rep. at 49–54. This methodology is well-recognized as a reliable measure of a defendant's avoided costs. *See, e.g.*, *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 709 (9th Cir. 2003) (affirming entry of judgment on $9 million jury verdict for plaintiff based on plaintiff's annual "burn rate" for developing at issue technology); *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022) (affirming district court's method of using plaintiff's research and development costs as indicative of costs defendant avoided by misappropriating plaintiff's trade secrets); *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1132 (7th Cir. 2020) (affirming entry of judgment on $140 million jury verdict for avoided costs based on cost plaintiff incurred in developing software that defendant misappropriated); *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) (holding that expert's damages model was not flawed nor unreliable because "[t]he costs a plaintiff spent in development—which is the method used by [plaintiff's] expert—can be a proxy for the costs that the defendant saved"); *HP Tuners, LLC v. Cannata*, No. 3:18-cv-00527-LRH-CSD, 2023 BL 27394, at *17 (D. Nev. Jan. 27, 2023) (same); *Philips N. Am. LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2021 WL 2118400, at *6–7 (W.D. Wash. May 25, 2021) (holding avoided cost analysis based on plaintiff's development costs was relevant and reliable); *Syntel Sterling Bet Shores Mauritius Limited v. TriZetto Group*, 15 Civ. 211 (LGS), 2020 WL 5822058 (S.D.N.Y. Sept. 30, 2020) (denying motion to exclude damages expert because use of plaintiff's costs to estimate defendant's cost avoidance was reliable even where expert relied on technical expert's

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A. VICKERY

JMBM | Jeffer Mangels Butler & Mitchell LLP

conclusions that defendant misappropriated all of plaintiff's trade secrets); *InfoDeli, LLC v. Western Robidoux, Inc.*, No. 4:15-CV-00364-BCW, 2020 WL 1855298, at *1 (W.D. Miss. Mar. 16, 2020) (denying motion to exclude damages expert because estimates of plaintiff's costs to develop software were helpful to jury).

In their Motion, Defendants misrepresent the holding in *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19CV1865-GPC(DEB), 2022 WL 5460971 (S.D. Cal. Oct. 7, 2022). Defendants state:

> As a preliminary matter, '[t]he Ninth Circuit has not yet ruled on whether avoided costs are available as damages for unjust enrichment under the DTSA[.]' *MedImpact Healthcare Sys.,* 2022 WL 5460971, at *5.

Mot. at 5.  In actuality, before denying the motion to exclude an expert before the court, the *MedImpact* court stated as follows:

> The Ninth Circuit has not yet ruled on whether avoided costs are available as damages for unjust enrichment under the DTSA but other jurisdictions have recognized that avoided costs of developing a trade secret are recoverable for unjust enrichment under the DTSA and state law counterparts. [Citations to cases from 5th Cir., S.D.N.Y., and Restatement (Third) of Unfair Competition].

*MedImpact Healthcare Sys., Inc.*, 2022 WL 5460971, at *5.  While the Ninth Circuit may not have ruled specifically on avoided costs damages in the context of a DTSA claim, *MedImpact* clearly recognizes that cost avoidance damages are well-recognized by other courts as recoverable on a DTSA claim.  Further, the Ninth Circuit *has* approved of cost avoidance damages as recoverable unjust enrichment damages on a claim for trade secret misappropriation.  *See Bourns, Inc.*, 331 F.3d at 709.

Despite the litany of authority supporting Mr. Vickery's cost avoidance analysis, Defendants challenge his testimony based on a single inapposite case.  *See* Mot. at 10 (citing *ChromaDex, Inc. v. Elysium Health, Inc.,* No. SACV1602277CJCDFMX, 2019 WL 7166056, at *1 (C.D. Cal. Oct. 9, 2019)).  First, the *ChromaDex* court never determined that the expert materials submitted on summary judgment were unreliable because *ChromaDex* was not a *Daubert* inquiry.  *See ChromaDex, Inc.*, 2019 WL 7166056, at *4.  Rather, the court in

1  *ChromaDex* determined that it was unable to make a ruling on summary judgment (a different

2  standard than the standard here) without supplemental briefing on questions unresolved from

3  review of the moving party's materials, which excluded any evidence of financial support for the

4  moving party's avoided cost analysis.  *See id.*  For example, the moving party in *ChromaDex*

5  failed to support its assertion that its trade secrets had any impact on the moving party's avoided

6  cost analysis.  *See id.* at *3.  Unlike the moving party in *ChromaDex*, RoadRunner here has at

7  least established that RoadRunner's acquisition of Compology was motivated by the value of then-

8  Compology's trade secrets.  *See, e.g.*, Ex. I (Rihn Dep.) 46:10–47:6; 55:11–14.

9      Defendants' other arguments regarding Mr. Vickery's avoided cost analysis are equally

10  unpersuasive.  First, in reliance on their rebuttal expert Stephen Holzen, Defendants incorrectly

11  base their argument against Mr. Vickery's testimony on valuation principles.  *See* Mot. at 6–9.

12  But conducting a valuation analysis is different from conducting a damages analysis.  The source

13  Mr. Holzen relies on throughout his report to rebut Mr. Vickery's opinions (*see* Holzen Rep.

14  ¶¶ 88, 94, 97, 99, 101, 111–12) recognizes that a valuation analysis differs from a damages

15  analysis: "There are fundamental differences in the purpose and objective of a damages analysis as

16  compared to the purpose and objective of a valuation analysis."  Ex. D at 66 (excerpt from Reilly,

17  R. and Schweihs, R., *Guide to Intangible Asset Valuation* (AICPA 2014)); Ex. E (Vickery Reply

18  Report ("Reply Rep.")) at 4.  Further, Mr. Vickery explained during his deposition that the top-

19  down approach "is a common approach in allocating expenses using metrics to remove expenses

20  or to analyze profitability or, … other financial performance."  Vickery Dep. 156:5–10.  Mr.

21  Vickery further explained that it is "[v]ery common" to "look at how the expenses might relate to

22  one division or another or product or another and use that sort of top-down allocation

23  methodology in order to ascribe" profitability.  *Id.* at 10–15. Defendants' argument that Mr.

24  Vickery should have evaluated the individual value of each of RoadRunner's trade secrets

25  therefore fails.

26      Second, Defendants' argument that Mr. Vickery was required to assign monetary value to

27  each of RoadRunner's trade secrets fails because a plaintiff is not required to provide expert

28  opinion on the quantifiable value of its trade secrets to prove independent economic value of those

JMBM | Jeffer Mangels
Butler & Mitchell LLP

trade secrets.  *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, No. 18CV1927 JM (MSB), 2021 WL 4895977, at *23 (S.D. Cal. Oct. 20, 2021) (rejecting defendant's argument that plaintiff's trade secrets did not have independent economic value because witnesses could not identify exact monetary value of each trade secret).  "The value of information claimed as a trade secret may be established by direct or circumstantial evidence."  *Altavion, Inc. v. Konica Minolta Sys. Lab'y, Inc.*, 171 Cal. Rptr. 3d 714, 743 (Cal. Ct. App. 2014) (holding examples of evidence of economic value include "[d]irect evidence relating to the content of the secret and its impact on business operations . . . [and] [c]ircumstantial evidence . . . including the amount of resources invested by the plaintiff in the production of the information, the precautions taken by the plaintiff to protect the secrecy of the information ..., and the willingness of others to pay for access to the information"); *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1154 (E.D. Cal. 2017) ("Although the record does not show precisely how much of this work went towards developing the relevant SAP Code, a reasonable juror could infer it was a non-trivial amount.") (citing *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 964 (C.D. Cal. 2011) (finding genuine issue of material fact existed as to independent economic value based on declaration submitted with MSJ opposition stating that "a toy manufacturer's unreleased toy concepts ... are among its most valuable trade secrets")).  The economic value of a trade secret "lies in the competitive advantage over others that [the owner] enjoys by virtue of its exclusive access to the data."  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984).

Mr. Vickery considered sufficient evidence of the value of RoadRunner's trade secrets in his analysis of RoadRunner's cost avoidance damages.  For example, Mr. Vickery explains that RoadRunner's financial projections regarding the prospective value of Compology's technology and the testimony of Mr. Rihn and Mr. Krebs regarding RoadRunner's motivation in acquiring Compology evidences the value of RoadRunner's trade secrets.  *See* Rep. at 23 ("The analysis performed by Roadrunner illustrates that between 2024 and 2026, Roadrunner expects to experience significant economic benefits from the Compology trade secrets and technology"); Reply Rep. at 7 (citing Rihn Dep. at 81); *see also, e.g.*, Ex. I 46:10–47:6; 55:11–14; 81:1–4, 10– 14, 22–24; Ex. J (Krebs Dep.) 270:10–271:20.  Mr. Vickery confirms that RoadRunner's $27

million acquisition of Compology reflects the value of RoadRunner's (then Compology's) trade

secrets.  *See* Rep. at 23.  Defendants' arguments regarding valuation are yet another pre-trial

attempt to argue the merits of RoadRunner's trade secrets claims.  *See* Mot. at 6–9.

Third, Defendants incorrectly assert that "[t]here is [n]o [n]exus [b]etween" Mr. Vickery's

avoided costs analysis and RoadRunner's trade secrets because "Vickery does not tie any of

Plaintiff's expenditures to Defendants' allegedly avoided costs."  *Id.* at 9.  But "arguments about

the extent to which the defendant actually used or benefitted from proprietary information are

'matters for cross examination.'"  *Philips N. Am. LLC v. Summit Imaging Inc.*, No. C19-1745JLR,

2021 WL 2118400, at *6 (W.D. Wash. May 25, 2021); *see also, e.g.*, *Callaway Golf Co. v.*

*Dunlop Slazenger Grp. Americas, Inc.*, No. Civ.A 01-669-KAJ, 2004 WL 1534786, at *3 (D. Del.

May 21, 2004).  Mr. Vickery's reliance on Mr. Hoarty's conclusion that Defendants'

misappropriated RoadRunner's trade secrets, *see, e.g.*, Reply Rep. at 6, is sufficient.  *See, e.g.*,

*Syntel Sterling Bet Shores Mauritius Limited*, 2020 WL 5822058 (holding cost avoidance analysis

was reliable where damages expert relied on technical expert's conclusion that defendant

misappropriated all of plaintiff's trade secrets).[2]  Mr. Vickery went further.  He reviewed each line

of expenditures and allocated specific percentages to each expense category based on an analysis

tailored to the facts of this case.  *See* Rep. at 19–23.  For example, Mr. Vickery considered size

and utilization of labor force, entity resources, and other items to allocate development costs

accurately.  *See id.* at 21.

Fourth, contrary to Defendants' argument that Mr. Vickery's analysis has "no temporal

basis," Mot. at 11, Mr. Vickery sets forth the time frame for his analysis in his report, *see* Rep. at

---

[2] Defendants' attempt to characterize Mr. Vickery's identification of the trade secrets at issue in
this case as shifting, *see* Mot. at 3–4, is unpersuasive.  Mr. Vickery used the identification of trade
secrets and the list of trade secrets provided by Mr. Hoarty. The trade secrets remain substantively
the same from Mr. Vickery's Initial to Reply Reports. For example, Defendants claim Trade
Secret No. 7 is not included in Mr. Vickery's Initial Report. *See id.* at 4. Defendants ignore that
container fullness analysis is implemented by a machine-learning model and outputs Compology-
generated labeled and tagged images including fill level metadata, as described in the contents of
Trade Secret Nos. 5 and 6 in Mr. Vickery's Initial Report. *See* Rep. at 15 (No. 5 identifies
Compology-generated labeled and tagged images that are the output of the container fullness
analysis of No. 6). This trade secret was refined and now is included in Trade Secret No. 7.

Case No. 3:23-cv-04804-WHA

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY

16, 18–19, and further explained the relevant time period during his deposition, *see* Vickery Dep.

55:1–7.  Mr. Vickery states that his analysis starts in 2012, when Compology began developing its

camera apparatus and AI/machine learning systems.  *See id.* at 16.  Mr. Vickery further explains

that a 2015 appraisal of Compology shows that, as of August 1, 2015, Compology had incurred

"development costs totaling $2.1 million since inception."  *Id.* at 18.  Mr. Vickery also explains

that his cost avoidance analysis is measured through December 31, 2021 because Jason Gates,

Compology's Chief Executive Officer, testified that Compology stopped developing the system by

February 2022.  *Id.* at 18–19.

Finally, contrary to Defendants' contention that Mr. Vickery improperly calculates

damages as a "lump sum," Mot. at 13–14, "California law does not require apportionment of

damages on a trade-secret-by-trade-secret basis."  *SPS Techs., LLC v. Briles Aerospace, Inc.*, No.

CV 18-9536-MWF (ASX), 2021 WL 4913509, at *3 (C.D. Cal. Sept. 8, 2021).  Mr. Vickery's

analysis is neither speculative, "useless to the jury," nor "untethered from the facts," as

Defendants contend.  *See* Mot. As a threshold matter, "[i]n trade secrets claims, . . . damages need

not be calculated with absolute precision."  *ATS Prod. Inc. v. Ghiorso*, No. C10-4880 BZ, 2012

WL 253315, at *1 (N.D. Cal. Jan. 26, 2012).  Mr. Vickery testified that he could not have assigned

a single monetary value to each trade secret because the trade secrets are intertwined and

dependent on each other.  *See, e.g.*, Vickery Dep. 91:19–94:24, 186:21–187:4.  Mr. Vickery

calculated RoadRunner's damages by reasonably relying on Mr. Hoarty's technical analysis of the

trade secrets.  *See, e.g.*, Reply Rep. at 5.  Defendants' cited authority, *02 Micro Int'l Ltd. v.*

*Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005), amended sub nom. *O2 Micro*

*Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), aff'd, 221 F.

App'x 996 (Fed. Cir. 2007), and aff'd, 221 F. App'x 996 (Fed. Cir. 2007), is inapposite because

the trade secrets in *02 Micro* were discreet and not interrelated, *see id.* at 1075, and the plaintiff in

*02 Micro* sought to recover as damages the value of the trade secrets themselves, *see id.* at 1077.

### B.   Mr. Vickery's Cost Avoidance Analysis is Based on Sufficient Facts and Data

An expert's testimony must be based on "sufficient facts or data."  Fed. R. Evid. 702(b).

Fed. R. Evid. 702(b) is not a stringent standard because "[v]igorous cross-examination,

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

2    and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596

3    (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

4        Mr. Vickery relies on sufficient data in forming his opinions.  To form his opinions, Mr.

5    Vickery reviewed Compology financial documents, RoadRunner financial documents, and

6    financial documents prepared by Compology's third-party financial firm, Launch Finance LLC

7    ("Launch Finance").  *See* Rep. at 3–4; Reply Rep. at 1–2; Supp. Rep. at 6–9.  Mr. Vickery also

8    spoke with RoadRunner's Chief Financial Officer, Steve Krebs, and Graham Rihn, RoadRunner's

9    Chief Executive Officer.  *See* Vickery Dep. 23:15–24:6.  Further, Mr. Vickery reviewed the

10   testimony of nearly every witness deposed in this case.  *See* Rep. at 4; Reply Rep. at 3; Supp. Rep.

11   at 5.

12       Defendants' argument that Mr. Vickery's analysis is based on unreliable data, *see* Mot. at

13   14–16, is wrong.  First, Defendants claim that Mr. Vickery failed to allocate the time that

14   Compology engineers spent on engineering from time engineers spent on other matters.  *See id.* at

15   16.  But Defendants admit that Mr. Vickery allocated Compology's engineers' time by applying a

16   range of 70% to 100% to account for any time that the engineers spent on matters other than

17   engineering.  *See id.*  Mr. Vickery explains in his Reply Report that he estimated the time that

18   engineers spent on engineering tasks as between 70% and 100% based on Mr. Gates' testimony

19   "that every employee personally contributed to product development in some way" and "that the

20   hardware, software, engineering teams, the product team, and the supply chain team would work

21   full time on product development."  Reply Rep. at 7.  Further, Mr. Vickery testified that after

22   reviewing the testimony of Compology engineers, he adjusted his calculations to account for time

23   spent on matters other than engineering, if applicable.  *See* Vickery Dep. 139:7–12.

24       Defendants' other arguments on the sufficiency of data on which Mr. Vickery based his

25   analysis are similarly unavailing.  For example, Defendants do not cite to a single authority to

26   support their argument that unaudited financials are unreliable.  *See* Mot. at 14–15.  Further,

27

28

Case No. 3:23-cv-04804-WHA

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1   contrary to Defendants' argument, *see id.* at 15,[3] Compology's financial distress at the time of its

2   acquisition does not affect the reliability of its financials because Mr. Vickery's cost avoidance

3   analysis ends on December 31, 2021, prior to the year of Compology's acquisition, *see* Rep. at

4   18–19.  Regardless, these are matter for cross-examination, not exclusion.

5        Further, contrary to Defendants' argument that Mr. Vickery could not "verify the accuracy

6   of [a Compology 409A valuation] or articulate what was included in that figure," Mot. at 9, Mr.

7   Vickery testified that the figures he relied upon from the 409A valuation to calculate Compology's

8   pre-August 1, 2015 expenses "represent[] the total reproduction cost based / on estimates provided

9   by management."  Vickery Dep. 167:7–14.

10       **C.    Mr. Vickery's Lost Profits Analysis Meets the Criteria of Fed. R. Evid. 702**

11       Mr. Vickery's lost profits analysis is based on a reliable methodology because lost profits

12   may be calculated using the contract price for goods sold.  *See, e.g.*, *Santa Fe-Pomeroy, Inc. v. P*

13   *& Z Co.*, No. C 69 630, 1980 WL 30351, at *2 (N.D. Cal. Sept. 2, 1980).  Mr. Vickery based his

14   lost profits analysis on the contract price for the technology at issue, on a per-unit basis, as of the

15   parties' latest contract, less any incremental costs.  *See* Rep. at 23.  Mr. Vickery used the latest

16   per-unit contract price to determine anticipated profits and the parties' historical contracts to

17   determine RoadRunner's incremental costs.  *See id.* at 24.  Mr. Vickery calculated lost profits

18   through the end of this lawsuit (December 2024) because Defendants continue to misappropriate

19   RoadRunner's trade secrets in violation of the parties' contracts.  *See id.*

20       Contrary to Defendants' contention, *see* Mot. at 17, RoadRunner's lost profits are

21   reasonably certain.  Defendants' own documents show that Defendants were anticipating their

22   own profit by comparing their costs to deploy Pello devices versus the costs they would have

23   incurred had Defendants continued contracting with Compology.  As Mr. Vickery explains in his

24   Reply Report:

25            Although RecycleSmart previously resisted Compology's price
             increases, RecycleSmart considered utilizing a $25 per month
26            price for its own PELLO cameras.  Further, in cost savings analysis
             done by PELLO and RS, the amount of money saved per unit per

27

28   _____
     [3] Defendants improperly characterize Compology as under "financial duress."  Mot. at 15.

JMBM | Jeffer Mangels Butler & Mitchell LLP

> month by not having a contract with Compology is $25.41 In summary, RS was utilizing a $25 per unit monthly price as a consideration in their cost savings for internal analysis purposes.

Reply Rep. at 11.

Mr. Vickery cites to numerous RTS spreadsheets which show that, at the time RTS was considering terminating its relationship with RoadRunner, RTS was conducting cost comparisons to determine the amount of money RTS would save by replacing its Compology devices with Pello devices. *See id.* at 11 n.38–41. These cost comparisons nullify Defendants' contention that Mr. Vickery relied on insufficient data because Defendants could have contracted with alternative companies. *See* Mot. at 18. The cost comparisons also contradict Defendants' argument that Mr. Vickery had no basis for determining that Defendants would continue to use the same number of sensors. For example, Mr. Vickery reviewed an internal RTS budget showing that Defendants were budgeting for the replacement of 2,600 Compology sensors with 2,600 Pello sensors. *See* Ex. G. Further, Mr. Vickery reviewed the testimony of numerous witnesses who confirmed that Compology's camera apparatus was, at the time Pello entered the market, the only camera apparatus of its kind. *See, e.g.*, Gates Dep. 206:8–13 (attached hereto as Ex. K). Thus, Mr. Vickery's lost profits analysis is "reasonably certain."

Further, contrary to Defendants' argument that Mr. Vickery did not account for net profits, *see* Mot. at 17, Mr. Vickery used a 85% profit margin to account for net profits. *See* Supp. Rep. Sched. 4.

### D. Mr. Vickery's Disgorgement Analysis Meets the Criteria of Fed. R. Evid. 702

Mr. Vickery's disgorgement analysis is also proper under Fed. R. Evid. 702. First, Mr. Vickery's disgorgement analysis is grounded in sound evidence. Mr. Vickery bases his disgorgement analysis on Defendants' actual cost savings by using Pello instead of Compology as shown in Defendants' own financial projections. *See* Vickery Dep. 239:7–10; Supp. Rep. Sched. 5 (citing RTS_00193327 (comment dated July 5, 2022 characterizes projected costs at time of "[c]ut over from using Compology Sensors")). As shown in Mr. Vickery's Report, Defendants conducted multiple cost comparison analyses projecting the amount of money Defendants would save once their Pello device was deployable and Defendants stopped contracting with Compology.

1    *See, e.g.*, Supp. Rep. Sched. 5, fn. C–D; Reply Rep. at 11.

2         Second, contrary to Defendants' contention that RoadRunner is not entitled to

3    disgorgement damages, *see* Mot. at 18–19, the Ninth Circuit has long held that "[d]isgorgement of

4    profits is generally the appropriate remedy for misappropriation of a trade secret." *Mason v.*

5    *Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) ("Although damages may include the plaintiff's losses,

6    the plaintiff's losses are awarded in addition to, not as an alternative to the defendant's profits.").

7    In fact, courts have "broad latitude in fashioning appropriate remedies" for trade secret

8    misappropriation. *Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, No. C-89-3832 VRW, 1993

9    WL 317266, at *2 (N.D. Cal. Aug. 19, 1993). Mr. Vickery testified that his disgorgement analysis

10   is grounded in the assumption that "by misappropriating the trade secrets, / [Defendants are]

11   unjustly enriched through the cost / savings that they have." Vickery Dep. 237:23–25.

12        Further, Defendants' argument that disgorgement is an improper remedy for breach of

13   contract also fails. *See Alkayali v. Hoed*, No. 3:18-CV-777-H-JMA, 2018 WL 3425980, at *6

14   (S.D. Cal. July 16, 2018) ("California law permits plaintiffs to seek disgorgement of a defendant's

15   unjust enrichment as a restitutionary remedy for breach of contract."); *MSC.Software Corp. v.*

16   *Heroux-Devtek Inc.*, No. 819CV01987SBDFMX, 2021 WL 9696752, at *2 (C.D. Cal. Sept. 16,

17   2021) (same). Defendants' own expert, Mr. Holzen, admits disgorgement is a proper remedy for

18   breach of contract damages. *See* Holzen Rep. ¶ 66. Therefore, the Court should deny Defendants'

19   motion to exclude Mr. Vickery's disgorgement analysis.

20

21   **VI.    CONCLUSION**

22        The Court should deny Defendants' motion to exclude Mr. Vickery's testimony. Mr.

23   Vickery is an experienced and qualified expert who based his opinions on well-recognized and

24   widely accepted methodologies grounded in sufficient facts and data. Exclusion is the exception

25   to the rule that expert testimony is admissible. Defendants have not demonstrated that that they

26   are entitled to such an exception because (1) Mr. Vickery's cost avoidance analysis is based on

27   well-recognized and accepted methodology and sufficient facts and Mr. Vickery's lost profits and

28   disgorgement analyses rely on sufficient data from Defendants' own internal documents. Instead,

JMBM | Jeffer Mangels<br>Butler & Mitchell LLP

15

1   these are all matters that are best left for cross-examination and Defendants' motion should be

2   denied in its entirety.

3

4   DATED:  October 24, 2024          JEFFER MANGELS BUTLER & MITCHELL LLP
                                      STANLEY M. GIBSON
5                                     JAMES NEUDECKER
                                      JOSEPH J. MELLEMA
6                                     LENA STREISAND

7

8

9                                     By:      /s/ Stanley M. Gibson
                                               STANLEY M. GIBSON
10                                    Attorneys for Plaintiff ROADRUNNER
                                      RECYCLING, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY

1

## <u>CERTIFICATE OF SERVICE</u>

2

3       I certify that on October 24, 2024, I electronically filed the foregoing document(s) and that

4   they are available for viewing and downloading from the Court's CM/ECF system, and that all

5   participants in the case are registered CM/ECF users and that service will be accomplished by the

6   CM/ECF system.

/s/ Itzi Munoz
7                                               JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
8                                               Los Angeles, CA 90067
Phone: (310) 203-8080
9                                               Email: imunoz@jmbm.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROADRUNNER'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY BY FORREST A.
VICKERY