# EXHIBIT D



# GUIDE TO
# INTANGIBLE
# ASSET
# VALUATION

15863-344



Robert F. Reilly, CPA
Robert P. Schweihs, ASA

## Notice to Readers

*Guide to Intangible Asset Valuation* does not represent an official position of the American Institute of Certified Public Accountants, and it is distributed with the understanding that the author and publisher are not rendering legal, accounting, or other professional services in the publication. This book is intended to be an overview of the topics discussed within, and the author has made every attempt to verify the completeness and accuracy of the information herein. However, neither the author nor publisher can guarantee the applicability of the information found herein. If legal advice or other expert assistance is required, the services of a competent professional should be sought.

Copyright © 2014 by
American Institute of Certified Public Accountants, Inc.
New York, NY 10036-8775

All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please email copyright@aicpa.org with your request. Otherwise, requests should be written and mailed to the Permissions Department, AICPA, 220 Leigh Farm Road, Durham, NC 27707-8110.

2 3 4 5 6 7 8 9 0 PIP 1 9 8 7 6 5 4

ISBN: 978-1-93735-225-7

Publisher: Linda Prentice Cohen
Acquisitions Editor: Robert Fox
Developmental Editor: Katie Hurst
Project Manager: Charlotte Ingles

In addition to defending the report and analysis, the defendant's analyst may be asked to rebut the positions and conclusions of the plaintiff's analyst. The defendant's analyst may challenge the facts relied on, methods selected, procedures performed, and conclusions reached by the plaintiff's analyst.

## Damages Analyst as—or for—the Finder of Fact

The experienced analyst may be retained by both parties as a neutral damages analyst or as a mediator. When retained by either party to the conflict, the analyst will be objective and unbiased. When retained by both parties to the conflict, the analyst also tries to help the principal parties (and their legal counsel) to reach an out-of-court settlement position.

The experienced analyst may also be retained as an adviser to, or a special master for, the judicial finder of fact in the litigation. In this role, the finder of fact may ask the damages analyst to reach an independent conclusion of the economic damages, or the finder of fact may ask the analyst to evaluate the pros and cons of both expert reports and to help the judge reach a judicial determination of damages based on the evidence presented in the case.

Finally, the experienced analyst may be retained by both parties to act as an arbitrator. In this role, the analyst accepts and reviews the evidence presented by both parties in the dispute. Much like a judge, the arbitrator will act as a finder of fact and reach a final conclusion as to the intangible asset damages (if any).

## Damages Analyses Related to Insurance Claims

Some intangible asset damages events are covered by property and casualty insurance (including business interruption insurance). The owner/operator may particularly need the assistance of the damages analyst with regard to a damages claim. The analyst may not need to prepare a written report, but he or she will need to quantify the amount of the damages.

With respect to large and complex damages claims, the insurance company may retain its own independent damages analyst. This is likely to be the case if the owner/operator's insurance company is going to pursue its legal claim against the third party that actually caused the damages event.

# Other Intangible Asset Damages Issues

There are fundamental differences in the purpose and objective of a damages analysis as compared to the purpose and objective of a valuation analysis. In the valuation, the analyst is estimating the intangible asset value based on a specified standard of value. That value is concluded based on a specified premise of value (or set of assumptions about how the defined value transaction will take place). The selected valuation variables should be appropriate not only to the intangible asset, but also to the selected standard of value and the selected premise of value. The value is concluded as of a specific historical, current, or prospective "as of" valuation date. And the analyst considers all of (and only) the information that is reasonably known or knowable as of the "as of" date in the valuation.

In the damages analysis, the analyst is estimating the amount of monetary compensation necessary to make the owner/operator whole after the intangible asset experienced

a specific damages event. That amount of compensation should put the owner/operator back in the same economic position that he or she would have been in if the damages event had not occurred. The analyst estimates the amount of damages suffered by the owner/operator as a result of a specific damages event. The damages may be estimated either (1) as of the date of the damages event (typically the beginning of the damages period) or (2) as of the date of the damages analysis or damages report.

The first type of damages measurement (as of damages event date) is called an *ex ante damages analysis*. The second type of damages measurement (as of damages analysis date) is called an *ex post damages analysis*. In either type of damages measurement procedure, the damages analysis will often rely on subsequent information (that is, information that would not have been known or knowable as of the selected analysis date).

The analyst will also consider analytical variables that are appropriate to the specific damaged party in the damages analysis. Unlike in a valuation, the damages analyst may not be limited to considering variables that are only applicable to some hypothetical party. In addition, the damages analyst will typically consider the following factors that may not be considered in a valuation:

1. Judicial discount rate/capitalization rate
2. Convoyed/derivative revenue
3. Mitigation
4. Income tax consequences of judicial award
5. Statutory definitions of damages

Various courts have allowed different measures of discount or capitalization rates for different types of damages analyses. In the valuation, the discount rate is often a function of the ownership interest (for example, controlling interest versus noncontrolling interest) and the standard of value (for example, fair market value and investment value). In the damages analysis, the judicial finder of fact may expect the damages analysis discount rate to be a risk-free rate of return, an owner/operator weighted average cost of capital (WACC), an industry WACC, or some other rate of return measure. The damages analyst should consult with the client's legal counsel regarding what judicial discount rate measure may be appropriate for the type of intangible asset, the type of legal claim, and the particular legal venue.

In the valuation, the analyst typically considers only the revenue from the products or services that are directly related to the intangible asset. In the damages analysis, various courts have allowed the inclusion of lost revenue from (1) convoyed products and services and (2) derivative products and services. The analyst typically considers the lost revenue from products or services that may be only indirectly related to the intangible asset in the damage analysis. Convoyed products or services do not use the intangible asset, but they are typically sold with products or services that do use the intangible asset. Derivative products or services do not use the intangible asset, but they are typically sold as a follow-on to the products or services that use the intangible asset.

Let's assume that the patent or the trademark on a laptop computer is infringed. The computer is typically sold with a fitted carrying case (which enjoys no patent or trademark protection). The carrying case is a convoyed product. The lost revenue for the convoyed product would typically be included in the damages analysis. This

procedure is appropriate even though that convoyed product does not use the damaged intellectual property.

Injured owners/operators are legally required to mitigate the amount of the damages they suffer. That is, the injured owner/operator is required to make reasonable efforts to correct the damages event and to minimize the amount of intangible asset damages suffered. An owner/operator who experiences a breach of contract is required to make reasonable efforts to find another party to provide the contractual goods or services or to replace the contractual sales. The damages analyst will typically consider and (directly or indirectly) quantify the injured party's mitigation efforts as part of the damages analysis. By contrast, mitigation is a concept that typically would not affect a valuation.

In many instances, the judicial award of actual (or compensatory) damages is a taxable event to the owner/operator. When the plaintiff receives the judicial damages award, that amount is considered to be taxable income for federal income tax purposes. The damages analyst may have to consider that fact if the objective of the damages analysis (and of the judicial award) is to make the injured plaintiff whole.

Let's assume that the analyst concludes that an owner/operator suffered $1,000 of damages (calculated in an after-tax analysis) due to the defendant's wrongful actions. The finder of fact agrees with the damages analyst and awards $1,000 as compensatory damages. However, that $1,000 damages award is taxable income to the intangible asset owner/operator. Assuming a 35 percent income tax rate, the owner/operator will pay $350 in income taxes and is left with only $650 as compensation for the $1,000 of damages. In this example, the damaged plaintiff was not made whole. The damages analyst may have to calculate both the amount of damages suffered by the injured party and the amount of the judicial award that is necessary to make the injured party whole.

In this example, the amount of the judicial award needed to make the damaged plaintiff whole is estimated by the following formula: damages amount ÷ (1 – income tax rate). The calculation of the judicial award in this example would be $1,000 ÷ (1 – 35%), or $1,538.46. That is, the analyst would conclude intangible asset damages of $1,000 and a recommended judicial award of $1,538.46 to make the plaintiff whole. If the finder of fact awarded the injured plaintiff $1,538.46, that judicial award would be taxable income. The plaintiff would pay income taxes of $538.46 (that is, $1,538.46 × 35%). After this income tax payment, the owner/operator would then have $1,000, and the plaintiff would be in the same economic position that the plaintiff would have been in if the damages event had not occurred.

In a valuation, the analyst typically does not have to consider the income tax consequences of the value conclusion. A $1,000 value conclusion is what the willing buyer (or a specific buyer, the current owner, or other similar party) would pay for the intangible asset. The analyst does not have to consider the after-tax sale proceeds to either the buyer or the seller.

The damages analyst may also be asked to consider damages measurements based on statutory authority or judicial precedent. For example, by statute, a trademark or copyright owner/operator may be entitled to receive damages in the form of the profits actually earned by the intellectual property infringer. These profits actually earned by the infringer are sometimes referred to as *unjust enrichment*. However, in a patent infringement case, the patent owner/operator is typically not entitled to receive economic damages in the form of the profits actually earned by the intellectual property infringer. The damaged patent owner can receive damages in the form of its lost profits or a reasonable royalty rate. Unlike the damaged trademark or copyright

owner, the damaged patent owner usually cannot receive the profits actually earned by the patent infringer.

The analyst should consult with counsel with regard to damages measurements that are either allowed or not allowed by the relevant law. This point illustrates another important difference between a valuation and a damages analysis. An intangible asset valuation is supposed to emulate the expected transactional behavior of identified market participants. A damages analysis is supposed to provide an economic answer to a legal question. The question of whether the owner/operator was damaged is a question of law. The question of whether the defendant is responsible for causing the damages event is a question of law. The question of the appropriate judicial award to the injured owner/operator is a question of law. The damages analyst can only recommend to the judicial finder of fact (1) the amount of damages that the owner/operator suffered and (2) the amount of the compensatory damages award that would make the owner/operator whole.

## Summary

This discussion summarized the types of wrongful actions that could result in damages to an owner/operator, described the typical purpose and objective of the damages analysis, introduced the common measurement methods used by the analyst to quantify economic damages, and explained the typical reasons why litigants (and other parties) may retain the analyst to perform damages analyses.

Although some of the approaches and methods are conceptually similar, there are numerous differences between a valuation and a damages analysis. The less subtle differences between these two types of engagements result from the differences in the purpose and objective of the two types of analyses. The valuation analysis and the value conclusion are principally influenced by market considerations. The damages analysis and the damages conclusion are principally influenced by legal considerations.

The analyst should be aware of any statutory and judicial acceptance or rejection of damages analysis approaches, methods, and procedures. The client's counsel should provide this awareness for the analyst, explaining whatever legal instructions are needed to ensure that the analyst complies with the appropriate statutory authority, judicial precedent, and administrative rulings. It is the analyst's responsibility to gather and analyze relevant data and to conclude damages estimates. It is counsel's responsibility to instruct the analyst on the relevant law.