# EXHIBIT 33

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
Transcript of Cason Male, Corporate Designee & Individually
Conducted on August 13, 2024

1 (1 to 4)

---

**Page 1**

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   ROADRUNNER RECYCLING, INC.,   )
                                   )
 5                 Plaintiff,      )
                                   )
 6        vs.                      )No 3:23-cv-04804-WHA
                                   )
 7   RECYCLE TRACK SYSTEMS, INC.,  )
     AND RECYCLESMART SOLUTIONS,   )
 8   INC.,                         )
                                   )
 9                 Defendants.     )
                                   )
10
11              HIGHLY CONFIDENTIAL
12              ATTORNEY'S EYES ONLY
13
14      DEPOSITION OF ROADRUNNER RECYCLING, INC.,
15       By and through its Designated Representative,
16                    CASON MALE,
17              and in his Individual Capacity
18                TUESDAY, AUGUST 13, 2024
19                 LOS ANGELES, CALIFORNIA
20
21
22
23
24   REPORTED BY:  JEANINE CURCIONE
                   CSR NO. 10223, RPR
25   FILE NO.: 549113
```

**Page 2**

```
 1   Deposition of CASON MALE, taken on behalf of
 2   Defendants, at 9:51 A.M., Tuesday, August 13, 2024
 3   at 2049 Century Park East, Suite 300, Los Angeles,
 4   California, before Jeanine Curcione, C.S.R. No.
 5   10223, RPR, pursuant to notice.
 6
 7   APPEARANCES OF COUNSEL:
 8   FOR THE PLAINTIFF:
 9        JEFFER MANGELS BUTLER & MITCHELL LLP
          BY:   JOSEPH J. MELLEMA, ESQ.
10        3 Park Plaza
          Suite 1100
11        Irvine, California 92614
          Phone: (949)623-7200
12        e-mail: jmellema@jmbm.com
13   FOR THE DEFENDANTS:
14        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
          AND POPEO, P.C.
15        BY:   MICHAEL C. NEWMAN, ESQ.
          One Financial Center
16        Boston, Massachusetts 02111
          Phone: (617)542-6000
17        e-mail: mcnewman@mintz.com
18
19   ALSO PRESENT:
20        Stephen Chen, Esq. (Via Zoom)
21        Charlie McGrath (Videographer)
22
23
24
25
```

**Page 3**

```
 1                    I N D E X
 2
 3   WITNESS              EXAMINATION              PAGE
 4   CASON MALE           BY MR. NEWMAN             6
 5
 6
 7                    E X H I B I T S
 8   NO.       PAGE  DESCRIPTION
 9   Exhibit 300  8   Notice of Deposition of Cason
                      Male
10
     Exhibit 301  11  Notice of Deposition of Cason
11                    Male
12   Exhibit 302  16  LinkedIn Profile for Cason Male
13   Exhibit 303  37  Plaintiff's Response to First
                      Set of Requests for Production
14
     Exhibit 304  119 Document Bates Stamped
15                    RTS_00333374-78
16   Exhibit 305  122 Document Bates Stamped
                      RTS_00333382-84
17
     Exhibit 306  124 Document Bates Stamped
18                    RTS_00333385
19   Exhibit 307  125 Document Bates Stamped
                      RTS_00333386-88
20
     Exhibit 308  127 Document Bates Stamped
21                    RTS_00333389
22   Exhibit 309  129 Document Bates Stamped
                      RTS_00333393-94
23
     Exhibit 310  132 Document Bates Stamped
24                    ROADRUNNER000073255-82
25
```

**Page 4**

```
 1   EXHIBITS (CONTINUED)
 2   NO.       PAGE  DESCRIPTION
 3   Exhibit 311  139 Document Bates Stamped
                      ROADRUNNER000073345-55
 4
     Exhibit 312  143 Document Bates Stamped
 5                    RTS_00333367-69
 6   Exhibit 313  148 Document Bates Stamped
                      RTS_00331278-81
 7
     Exhibit 314  149 Document Bates Stamped
 8                    ROADRUNNER000017683-84
 9   Exhibit 315  159 Document Bates Stamped
                      ROADRUNNER000057324-25
10
     Exhibit 316  161 Document Bates Stamped
11                    ROADRUNNER000057081-83
12   Exhibit 317  167 Document Bates Stamped
                      ROADRUNNER000024805
13
     Exhibit 318  170 Document Bates Stamped
14                    ROADRUNNER000027140-41
15   Exhibit 319  176 Video RTS_0033366
16   Exhibit 320  181 RTS_0033355
17   Exhibit 321  187 Document Bates Stamped
                      ROADRUNNER000000096-118
18
     Exhibit 322  194 Document Bates Stamped
19                    ROADRUNNER000072915-19
20
21
22
23
24
25
```

Case 3:23-cv-04804-WHA  Document 145-34  Filed 10/24/24  Page 3 of 7

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
Transcript of Cason Male, Corporate Designee & Individually
Conducted on August 13, 2024

2 (5 to 8)

---

Page 5

```
1              LOS ANGELES, CALIFORNIA;
2        TUESDAY, AUGUST 13, 2024, 9:51 A.M.
3
4        THE VIDEO OPERATOR:  Here begins media
5   number 1 in the videotaped deposition of Cason Male
6   in the matter of RoadRunner Recycling, Incorporated
7   versus Recycle Track Systems, Incorporated, et al.
8   in the United States District Court, Northern
9   District of California.  Case number
10  3:23-CV-04804-WHA.  Today's date is August 13, 2024.
11  The time on the video monitor is 9:53 A.M.  The
12  videographer today is Charlie McGrath representing
13  Planet Depos.  This video deposition is taking place
14  at Mintz, Levin, Cohn, Ferris, Glovsky and Popeo,
15  PC, Century Plaza Towers, 2049 Century Park East,
16  Suite 300, Los Angeles, California 90067.  Would
17  counsel please voice identify themselves and state
18  whom they represent.
19       MR. NEWMAN:  Michael Newman from the
20  Boston office of Mintz on behalf of defendants
21  Recycle Track Systems, Inc. and RecycleSmart
22  Solutions, Inc. and with me remotely is Stephen
23  Chen also from Mintz.
24       MR. MELLEMA:  Joseph Mellema from Jeffer
25  Mangels Butler and Mitchell representing RoadRunner,
```

Page 6

```
1   Incorporated and defending Mr. Male today.
2        THE VIDEO OPERATOR:  The court reporter
3   today is Jeanine Curcione representing Planet Depos.
4   The witness will now be sworn.
5
6              CASON MALE,
7        having been duly affirmed, was
8        examined and testified as follows:
9
10  BY MR. NEWMAN:
11      Q.  Good morning.  Is it Dr. Male or Mr. Male?
12      A.  Mr. Male.
13      Q.  Good morning, Mr. Male.
14      A.  Good morning.
15      Q.  Have you ever been deposed before?
16      A.  No.
17      Q.  So do you understand that a deposition is
18  a question and answer format where I'll ask you
19  questions and you give me truthful answers?  Do you
20  understand that?
21      A.  Yes.
22      Q.  And you understand that you're under oath
23  in the same way as if you were in a courthouse?
24      A.  Yes.
25      Q.  And if you don't understand one of my
```

Page 7

```
1   questions please let me know, I want to make sure we
2   have a clean record.  So if you don't understand
3   something I'm asking just ask me to clarify because
4   if you answer my question I'll assume that you
5   understood the question.  Does that make sense?
6       A.  Yes.
7       Q.  And your counsel may object to my
8   questions from time to time but you're still to
9   answer the questions unless he specifically
10  instructs you not to answer.  Do you understand
11  that?
12      A.  Yes.
13      Q.  And because your testimony is being
14  recorded by a court reporter today it's important
15  that you answer verbally as opposed to giving me a
16  thumbs up or nodding your head.  Do you understand?
17      A.  Yes.
18      Q.  And also if we can speak slowly, clearly
19  and not over each other it will certainly help the
20  court reporter.  Do you understand?
21      A.  Yes.
22      Q.  Is there any reason why you cannot
23  truthfully testify today?
24      A.  No.
25      Q.  So if you need to take a break at any time
```

Page 8

```
1   just let me know.  I want to make sure you're
2   comfortable.  I'll just ask that you answer a
3   question if it's pending before we take the break.
4   Does that make sense?
5       A.  Yes.
6       Q.  So just a few definitions before we get
7   started.  If I say RoadRunner understand that I mean
8   RoadRunner and its predecessor Compology.  Does that
9   make sense?
10      A.  Yes.
11      Q.  If I'm trying to distinguish between
12  RoadRunner and Compology I'll try to make the
13  questions do that, is that okay?
14      A.  Yes.
15      Q.  So the court reporter has handed you a
16  document marked as Exhibit 1.  Have you seen this
17  document before?
18       (Exhibit 300 was marked for identification
19    by the Reporter.)
20      THE WITNESS:  I believe so.  I'm not sure
21  actually.  I'm not sure it's exactly this document
22  but I have seen a document similar to this.
23  BY MR. NEWMAN:
24      Q.  Understood. What is this document to the
25  best of your knowledge?
```

Case 3:23-cv-04804-WHA   Document 145-34   Filed 10/24/24   Page 4 of 7

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
Transcript of Cason Male, Corporate Designee & Individually
Conducted on August 13, 2024

20 (77 to 80)

**77**

1  Q. Why do you qualify that with explicitly?
2  Did they implicitly identify what their trade
3  secrets were, do you think?
4     A. I could speak for myself as someone who's
5  not an attorney interpreting what a trade secret is.
6  In that acquisition there was certainly discussions
7  that were -- that would have incorporated some of
8  the trade secrets. I can't -- I can't explicitly
9  tell you if they talked about them as trade secrets
10 but due to the confidential nature. For example,
11 the audit that I had to do, there was certainly
12 trade secrets and discussions around confidential
13 information which would have included trade secrets.
14    Q. The discussions around confidential
15 information that you're recalling, during those
16 discussions was there any mention of particular
17 trade secrets that the company considered to be
18 valuable?
19    MR. MELLEMA: Objection. Form.
20    THE WITNESS: No. Nothing in particular
21 but again, it's going to be the larger umbrella of
22 what is like confidential and what Compology deemed
23 confidential in their product and their technology.
24    MR. NEWMAN: Can we go off the record for
25 a second?

**78**

1     THE VIDEO OPERATOR: We're going off the
2  record at 12:57.
3     (Recess taken.)
4     THE VIDEO OPERATOR: We are back on the
5  record at 1:08.
6  BY MR. NEWMAN:
7     Q. Discussions around confidential
8  information that you're recalling, during those
9  discussions was there any mention of particular
10 trade secrets that the company considered to be
11 valuable?
12    MR. MELLEMA: Objection. Form.
13    THE WITNESS: No. Nothing in particular
14 but again, it's going to be the larger umbrella of
15 what is like confidential and what Compology deemed
16 confidential in their product and their technology.
17 BY MR. NEWMAN:
18    Q. Once RoadRunner acquired Compology did
19 RoadRunner train its employees about Compology's
20 trade secrets?
21    MR. MELLEMA: Objection. Form.
22    THE WITNESS: Similarly the employees at
23 RoadRunner are made aware of what data, what
24 technology is confidential which would have included
25 the Compology technologies at the time of being

**79**

1  acquired.
2  BY MR. NEWMAN:
3     Q. Did RoadRunner at the time compile a list
4  of Compology trade secrets that it considered
5  valuable?
6     A. No.
7     Q. How does Compology ensure that its
8  represented, sales representatives, know what is
9  considered a trade secret and what is not?
10    MR. MELLEMA: Objection. Form.
11    THE WITNESS: Well, as a general company
12 policy RoadRunner has noted what information and
13 what data is confidential at the company and keeping
14 confidentiality of information product of value that
15 is not to be shared publicly and that's just a
16 broader policy for the entire RoadRunner company.
17 BY MR. NEWMAN:
18    Q. So there's no heightened security on the
19 trade secrets as compared to general confidential
20 information; is that right?
21    MR. MELLEMA: Objection. Form.
22    THE WITNESS: Again, the trade secrets
23 would -- are confidential and so they would fall
24 under the confidential information that is to be
25 protected.

**80**

1  BY MR. NEWMAN:
2     Q. Does RoadRunner consider all of its
3  confidential information to be trade secrets?
4     A. I can't say that. Again, not being a
5  lawyer what is being considered as a trade secret is
6  not explicitly stated, again, but falls under
7  confidential information.
8     Q. So for example, there's I think Coke Cola
9  there's like four people that might know the recipe.
10 I'm just estimating, but that's a heightened sense
11 of secrecy. Is there anything like that at
12 RoadRunner to protect the trade secrets of
13 Compology?
14    MR. MELLEMA: Objection. Form.
15    THE WITNESS: So what I think I understand
16 your question, there are heightened levels of
17 security around certain data and certain technology
18 and certain practices valuable to RoadRunner. As
19 we've discussed the source code being one of them
20 and there are certainly heightened aspects of
21 security around that. There are only certain
22 employees that are allowed to access and use that
23 information.
24 BY MR. NEWMAN:
25    Q. You mentioned source code -- no, you

Case 3:23-cv-04804-WHA   Document 145-34   Filed 10/24/24   Page 5 of 7

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
Transcript of Cason Male, Corporate Designee & Individually
Conducted on August 13, 2024

21 (81 to 84)

**Page 81**

didn't. Strike that. You mentioned data, technology and practices. What are some data that is subject to a heightened confidentiality?

A. An example of data would be the -- pertaining to this case the training data that is used to train the model to determine contamination within the dumpster and fullness within the dumpster.

Q. What does that training data consist of?

A. A training data consists of a set of images and labels.

Q. Anything else?

A. The specifics of that data I would defer to Mr. Armstrong.

Q. Do you know if the images that you're referring to are marked as trade secrets?

A. Again, it being marked as a trade secret I'm struggling to understand what that means exactly, but those images are covered under data which is confidential.

Q. Are they images themselves marked confidential?

A. Could you define "marked"?

Q. You know what a watermark is?

A. Yes.

**Page 82**

Q. Something like that that would identify when you're looking at the picture, that a human could look at it and say oh, that's confidential. That's what I mean by confidential.

A. That would not be explicitly labeled on the image, no.

Q. What about the labels? What form do they take?

A. Well, there's different labels for different models. One of the labels would be the fullness so you can imagine you have an image of a dumpster and you can see the material in that dumpster and the label would be with a percentage of how the dumpster is full. Did I answer your question?

Q. I think so. That was an example of one of the particular labels.

A. Yes.

Q. Are there others as well?

A. Yes. I mentioned there's a contamination model. So for that you have to label the specific material of contamination you want to be able to predict.

Q. Now, a person walking by a particular dumpster that has a Compology camera in it, could

**Page 83**

they take a picture of that dumpster without being one of your trade secrets; right?

MR. MELLEMA: Objection. Form.

THE WITNESS: You're saying a random pedestrian could go by a dumpster and take a picture of the contents inside the dumpster including the camera device?

BY MR. NEWMAN:

Q. I was just referring to the contents of the dumpster. If someone was just walking by, they could take a picture of the dumpster. You wouldn't consider that would be one of your trade secrets; right, that dumpster?

MR. MELLEMA: Same objection.

THE WITNESS: You're asking a couple of different questions. Could someone walk by and take a picture of the contents of a dumpster? Yes. Would that -- would that image be a trade secret? The training -- again, Mr. Armstrong is the subject matter expert, but the training data is a compilation of images and labels.

BY MR. NEWMAN:

Q. Is it the entirety of the training data that you consider to be a trade secret or is it the individual images?

**Page 84**

A. Again, and this is -- I'm not a lawyer but what I'm considering confidential information would be the entirety of -- really anything that is used in the process of training the model, the proprietary models.

Q. When RoadRunner, including Compology, when they lay off an employee or an employee departs, do they track as to whether those employees go to work in an AI machine learning space or a smart trash collection space?

MR. MELLEMA: Objection. Form.

THE WITNESS: Could you -- I don't think I understand the question. Are you asking if they -- when they leave RoadRunner is their next job in that space or is that the job they had when they were at RoadRunner?

BY MR. NEWMAN:

Q. I'm trying to get at what policies you have in place to protect trade secrets. So when an employee leaves what's your procedure for ensuring that your trade secrets are protected when they leave?

A. Well, again, trade secrets would fall under confidential information and those would be protected under the employee agreement that the

Case 3:23-cv-04804-WHA   Document 145-34   Filed 10/24/24   Page 6 of 7

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY
Transcript of Cason Male, Corporate Designee & Individually
Conducted on August 13, 2024

22 (85 to 88)

**Page 85**

employee had signed when they started their employment at RoadRunner.

Q. Do you know if any of the employees that were laid off at Compology are presently working in the smart waste tracking space?

A. I do not.

Q. Does RoadRunner monitor that?

A. I'm not aware if they are.

Q. Does RoadRunner have any policies in place to monitor whether your trade secrets have been compromised?

MR. MELLEMA: Objection. Form.

THE WITNESS: There are policies and systems and procedures in place to protect all of RoadRunner's confidential information which would include trade secrets.

BY MR. NEWMAN:

Q. Are those procedures in writing?

A. Yes. To a degree there are written policy that we have -- that our security team and IT have created under my supervision and like I said, there's also formal training, security trainings.

Q. Besides this litigation have you ever determined that a trade secret was compromised?

MR. MELLEMA: Objection. Form.

**Page 86**

THE WITNESS: Again, the -- from a legal standpoint I can't say. I can only speak to if confidential information had ever been -- the words that you used -- I forget the word that you used.

BY MR. NEWMAN:

Q. I used compromised.

A. Compromised.

Q. So have you ever identified any confidential information that had been disclosed to the public?

A. Not to the public. There was an incident of confidential information, being customer location information that was accidentally sent to other customers, other RoadRunner customers.

Q. Why did that happen?

A. It was a mistake by an employee who had not realized that there were internal reports, many of them are private to RoadRunner. Some of them are public. And they hadn't realized they had made a change to one of the public reports.

Q. Can you describe what those reports are, the difference between the public and a private?

A. Yeah, for example, we use a business intelligence tool called Mode Analytics so it's something that will sit on top of a database so you

**Page 87**

can create charts, graphs, tables. We use I'd say -- the vast majority of these reports are internal so it's only for RoadRunner eyes. Some being external meaning they're generated on a cycle and sent out to specific customers but that information should only be the specific customer's relevant information. They shouldn't be seeing any information from any other customers.

Q. Are the Compology cameras marked "confidential" themselves?

A. Marked again as a label?

Q. Yeah. If I found one on the street -- say there had been damage to a dumpster and it knocked the camera out and I walked by and picked the camera up, is there a marking on it that would alert me to the fact that I got confidential information in my hands?

MR. MELLEMA: Objection. Form.

THE WITNESS: I can't say for sure. I know there are -- there are like brand markings and there may be something like a trademark or something of that type of nature on the camera but I can't recall specifically.

BY MR. NEWMAN:

Q. I don't mean the Compology like -- I mean

**Page 88**

something that would suggest that I have a trade secret in my hands.

MR. MELLEMA: Same objection.

THE WITNESS: Yeah, I guess in that vein I was -- there might be some type of language in there that is actually printed on the camera but not to my knowledge.

BY MR. NEWMAN:

Q. So there might be but you're not presently aware of anything?

A. Not presently aware of any.

Q. Have you ever lost a Compology camera?

MR. MELLEMA: Objection. Vague. Form.

THE WITNESS: You being RoadRunner? You're asking?

BY MR. NEWMAN:

Q. Either RoadRunner or Compology. Are you aware of a loss of a camera?

A. Yes. Cameras have been lost, yes. And I'm speaking since the acquisition. I can affirm a hundred percent confidence there have been lost cameras.

Q. What measures has RoadRunner undertaken to retrieve the lost cameras?

A. Well, they are typically -- all the

```
                                              201
 1   time.  I know it's a long day.
 2        MR. MELLEMA:  Thank you.
 3        THE VIDEO OPERATOR:  This marks the end of
 4   day 1 of the deposition of Cason Male.  We're going
 5   off the record at 5:20.
 6        (Ending 5:20 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                              202
 1   STATE OF CALIFORNIA      )
                              )
 2   COUNTY OF LOS ANGELES    )
 3
 4        I, CASON MALE, hereby certify under
 5   penalty of perjury under the laws of the State of
 6   California that the foregoing is true and correct.
 7        Executed this _____ day of
 8   _____, 2024 at
 9   _____, California.
10
11
12        _____
13        CASON MALE
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                              203
 1                REPORTER'S CERTIFICATE
 2
 3        I, JEANINE CURCIONE, C.S.R. NO. 10223,
 4   RPR, in and for the State of California, do hereby
 5   certify:
 6        That prior to being examined, the witness
 7   named in the foregoing deposition was by me duly
 8   sworn to testify the truth, the whole truth and
 9   nothing but the truth and that the witness reserved
10   the right of signature;
11        That said deposition was taken down by me
12   in shorthand at the time and place therein named,
13   and thereafter reduced to typewriting under my
14   direction, and the same is a true, correct and
15   complete transcript of said proceedings.
16        I further certify that I am not interested
17   in the event of the action.
18        Witness my hand this 17th day of August,
19   2024.
20
21        _____
          Certified Shorthand
22        Reporter for the
          State of California
23
24
25
```