HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024

1 (242 to 245)

---

Page 242

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ROADRUNNER RECYCLING, INC.,  )
            Plaintiff,       )
VS                           ) Civil Action No.
                             ) 3:23-cv-04804-WHA
RECYCLE TRACK SYSTEMS,       )
INC., AND RECYCLESMART       )
SOLUTIONS, INC.,             )
            Defendants.      )

**********************************************

REMOTE VIDEOTAPED DEPOSITION OF
WILLIAM LEO HOARTY
Volume 2 - October 7, 2024
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**********************************************

Job No. 555646
Pages 242 - 493
Stenographically Reported by:
Susan S. Klinger, RMR-CRR, CSR

---

Page 243

October 7, 2024

REMOTE VIDEOTAPED DEPOSITION OF WILLIAM LEO HOARTY, produced as a witness at the instance of the Defendants, and duly sworn, was taken in the above-styled and numbered cause on the 7th of October, 2024, from 12:03 to 8:37, before Susan S. Klinger, RMR-CRR, CSR in and for the States of Texas and California, reported by stenographic method pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

---

Page 244

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:
    Joseph J. Mellema, Esquire
    JEFFER MANGELS BUTLER AND MITCHELL LLP
    3 Park Plaza, Suite 1100
    Irvine, California  92614
    949.623.7200

ON BEHALF OF THE DEFENDANTS:
    Matthew S. Galica, Esquire
    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY &
    POPEO, P.C.
    One Financial Center
    Boston, Massachusetts  02111
    617.542.6000

Also Present:
    Charlie McGrath, videographer
    Mike Martinez, remote tech

---

Page 245

I N D E X

WITNESS                                          PAGE
WILLIAM LEO HOARTY
EXAMINATION BY MR. GALICA                         246

        E X H I B I T S
No.         Description
Exhibit 422 Opposition Report                     251
Exhibit 423 Email, RTS_00339710                   320
Exhibit 424 Picture, RTS_00318118                 326
Exhibit 425 FCC Filing, RTS_00333850              365
Exhibit 426 Picture, RTS_00318119                 436
Exhibit 427 Photograph, RTS_00318120              447
Exhibit 428 R12 User Manual, RTS_00333865         449
Exhibit 429 Photograph, Hoarty Reply Report       466
Exhibit 430 RTS_00318121                          474
Exhibit 431 External Photographs                  475

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024

2 (246 to 249)

---

**246**

1         PROCEEDINGS
2         VIDEOGRAPHER:  Here begins Day Number 2 in
3   the videotaped deposition of William Leo Hoarty in
4   the matter of RoadRunner Recycling, Incorporated
5   versus Recycle Track Systems, Incorporated, et al
6   in the United States District Court, Northern
7   District of California, Case Number
8   3:23-cv-04804-WHA.
9         Today's date is October 7th, 2024.  The
10  time on the video monitor is 12:03 p.m.  The
11  remote videographer is Charlie McGrath
12  representing Planet Depos.  All parties of this
13  video deposition are attending remotely.
14        Would counsel please voice-identify
15  themselves and state whom they represent?
16        MR. GALICA:  Matthew Galica from Mintz on
17  behalf of defendants.
18        MR. MELLEMA:  Joe Mellema of Jeffer
19  Mangels Butler & Mitchell on behalf of plaintiff.
20        VIDEOGRAPHER:  The court reporter today is
21  Susan Klinger representing Planet Depos.
22        The witness will now be sworn.
23            WILLIAM L. HOARTY,
24  having been first duly sworn testified as follows:
25            EXAMINATION

**247**

1   BY MR. GALICA:
2      Q  Good morning, Mr. Hoarty.  How are you?
3      **A  I'm fine.  Good morning again.**
4      Q  It is good to see you again.
5         We have been through this once, but I want
6   to walk through a couple of ground rules before we
7   get going today.  Is that all right?
8      **A  Of course.**
9      Q  Okay.  So as you know, your testimony
10  today is under oath as if it were being taken
11  before a judge or jury, who will preside and
12  observe over this proceeding.  Do you understand
13  that?
14     **A  I do.**
15     Q  Okay.  And your testimony may, in fact, be
16  presented before a judge or jury as part of this
17  proceeding.  Do you understand that?
18     **A  I do.**
19     Q  And because of that, it is important that
20  you testify truthfully and to the best of your
21  ability.  Do you understand that?
22     **A  I do.**
23     Q  So throughout the day I'll be asking
24  questions.  If you do not understand the question,
25  can you please ask me to clarify it?

**248**

1      **A  I will do that.**
2      Q  Okay.  If you do answer the question, I
3   will assume that you understood my question; is
4   that fair?
5      **A  Yes, it is.**
6      Q  Okay.  If you need to take a break at any
7   time, just let me know, but if I have a question
8   pending, I'd ask that we wrap that up before we
9   take the break.  Is that okay?
10     **A  Yes, it is.**
11     Q  Okay.  And you are doing a great job so
12  far, but in the world of Zoom depositions, it gets
13  tough when people start talking over each other or
14  don't answer verbally, so I would first ask that
15  all your answers are provided verbally.  Is that
16  okay?
17     **A  Yes.**
18     Q  So no hand gestures or head nods, okay?
19     **A  Understood.**
20     Q  And then so we avoid talking over each
21  other, I would just ask that you please let me
22  finish my entire question before you begin
23  answering.  Is that okay?
24     **A  Yes, it is.**
25     Q  And then I'll do my best to let you answer

**249**

1   fully before I ask my next question.  Is that
2   okay?
3      **A  Yes.**
4      Q  Okay.  Also your attorney may object from
5   time to time today, but you're still obligated to
6   answer the question unless you are specifically
7   instructed by counsel not to answer.  Do you
8   understand that?
9      **A  Yes, I do.**
10     Q  Okay.  Is there any reason you can't
11  testify fully and truthfully today?
12     **A  No reason.**
13     Q  Okay.  Did you do anything to prepare for
14  today's deposition?
15     **A  Yes, I did.  I reviewed my opposition**
16  **report and my rebuttal -- and my reply report.**
17     Q  Okay.  Did you read any other documents?
18     **A  Not -- no, not for -- not in preparation**
19  **for this.**
20     Q  Okay.  How else did you prepare for this
21  beyond reading your opposition and reply reports?
22     **A  I had a discussion with counsel just to --**
23  **in general on what I -- what I am to expect, and**
24  **it was -- I think we had two calls last week, both**
25  **fairly brief.**

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024                                    56 (462 to 465)

### 462

1      A  Actually --
2          MR. MELLEMA:  Objection, form.
3          THE WITNESS:  I'm sorry, Joe.
4      A  You misunderstood me.  What I said was
5   that when you -- that when you start -- when you
6   have an existing circuit, you've already built and
7   debugged it.  You have -- you have a tremendous
8   amount of knowledge about what works and -- and
9   how to make -- how to make things work.  To change
10  it is far less work than starting from scratch,
11  which I think should be obvious.  If you've never
12  built a camera sensor for a dumpster before, the
13  things you have to learn are manyfold as we saw
14  from Compology's years of research and
15  development.
16         And so RTS had the advantage of at least
17  understanding the parts that come together, as
18  opposed to from -- starting from whole cloth.  And
19  that is all I'm trying to point out, is that it's
20  easier, once you've done it before and you have
21  something working, to make changes than it is to
22  start from scratch and learn -- learn the lessons.
23     Q  So would you say that the engineering work
24  that Compology did to go from the R11 to the R12
25  constitutes a new trade secret?

### 463

1          MR. MELLEMA:  Objection, form.
2      A  I didn't -- I didn't render an opinion on
3   that.
4      Q  Is the trade secret of the R11 different
5   than the R12?
6          MR. MELLEMA:  Objection, form, beyond the
7   scope.
8      A  Since I -- I don't have an opinion for
9   that for -- I don't have an opinion on that.  I'm
10  sorry.  I didn't -- I wasn't asked to even
11  consider that, so...
12     Q  Are you suggesting that a specific kind of
13  machine learning is a Compology trade secret?
14         MR. MELLEMA:  Objection, form, beyond the
15  scope.
16     A  Yeah, it's -- I did address that in the --
17  in my opposition report.  If you'd like, I will
18  find what I said about that.
19         Sorry, just broke this.  Okay.  Move
20  things out of the way.
21         I think I best summarize the answer to
22  your question in paragraph 83 on page 35 where I
23  state:  Dr. Greenspun ignores the ample evidence
24  from SDTN, the Canadian agency, and IRAP reports,
25  also RTS emails, reporting documents, and

### 464

1   deposition testimony, that established that
2   RecycleSmart trained their machine learning models
3   on contamination, dirty lens detection, and fill
4   level using Compology image data, as set forth in
5   my opening report.
6          My analysis is not dependent on particular
7   models, architecture, or libraries used to develop
8   the AI system; rather, it's the use of Compology
9   image data to train ML models that I find
10  important, and that is confirmed by ample
11  evidence.
12     Q  You say:  It's the use of Compology image
13  data to train ML models that I find important.
14  What do you mean by "important"?
15     A  I'm going to -- it is the use of Compology
16  image -- labeled images that is the only factor
17  that matters in machine learning.  The AI systems,
18  whether it's TensorFlow or it's PyTorch or it's
19  your own architecture, does not matter as much as
20  the data used to train the -- to train your model.
21         And to have -- and it requires accurately
22  labeled images, and a lot of them, and accurately
23  labeled images, as we discussed earlier in the
24  day, can take, you know, even if you're lucky, 30
25  seconds an image to evaluate and type in what you

### 465

1   think it is.
2          And to -- as the RTS team reported in
3   their various reports to the Canadian agencies,
4   that they were successful in using their very
5   large data link, their very large library of
6   Compology images and getting great results even
7   when using Pello cameras.  So that illustrates the
8   value of the images.
9          Everything else is relatively unimportant,
10  because it's open-source software, it is copious
11  quantities of support data and opinion and how-to
12  information.  So the hard part is the data that
13  you train on.
14     Q  Are you alleging that the act of training
15  is one of Compology's trade secrets, then?
16         MR. MELLEMA:  Objection, form, beyond the
17  scope.
18     A  The irreplaceable and valuable Compology
19  library is the issue.  Training is well-known.
20  It's -- it's -- as the models are well-known and
21  the hyperparameters that are used to build models
22  are generally well-known, it's the access to
23  carefully labeled images that matters in the
24  success of a machine learning training
25  environment.

**490**

1     A  I was referring to the ability to operate
2 a camera in a harsh environment, obtain images and
3 identify the images uses artificial intelligence.
4 The overall -- overall system, primary -- primary
5 functions to get images out of dumpsters, identify
6 various aspects of the state of the dumpster and
7 that is the -- a description of the Compology
8 system.
9     Q  Is that a description of the Compology
10 system trade secret?
11     MR. MELLEMA:  Objection, form, beyond the
12 scope.
13     A  I define that well in my initial report
14 what the trade secrets are, and including the --
15 including the artificial intelligence elements.
16 And I don't really have anything further to add to
17 my report without being able to cite specifics in
18 the report.
19     Q  So when you just provided an answer and
20 said the Compology system trade secret, you didn't
21 quite know what you were referring to, correct?
22     MR. MELLEMA:  Objection, form.
23     A  I knew what I was referring to.  I
24 probably did not state it in a proper frame, but I
25 think I described what I meant.

**491**

1     Q  Okay.
2     A  The ability to acquire images from a
3 hostile environment in difficult circumstances and
4 to identify the images and provide useful
5 information.  How they did all of those steps is
6 certainly part of their collection of trade
7 secrets.
8     Q  Okay.  Is that a proper description of the
9 Compology system trade secret?
10     MR. MELLEMA:  Objection, form, beyond the
11 scope.
12     A  In the -- as I don't have the document in
13 front of me that I wrote, I can't do anything
14 further than just make summaries of my impression
15 of their overall business, but to be succinct I
16 would ask that I could refer to my document.
17     Q  Let me just -- is it true that when you
18 just provided an answer in reference to Compology
19 system trade secret, you can't define what that
20 Compology system trade secret is, correct?
21     MR. MELLEMA:  Objection, form, beyond the
22 scope.
23     A  Sorry, that is not correct.
24     Q  So you can provide or you can define the
25 Compology system trade secret that you referred to

**492**

1 in your previous answer?
2     MR. MELLEMA:  Objection, form, beyond the
3 scope.
4     A  Beyond my generalization I don't have
5 anything further to add to that.
6     MR. GALICA:  I don't have any further
7 questions right now.
8     MR. MELLEMA:  Nothing further from --
9 nothing, no questions from me.
10     VIDEOGRAPHER:  All right.  This marks the
11 end of the deposition of William Leo Hoarty.  We
12 are going off the record at 8:36.
13     (Recess, 8:36 to 8:37 p.m.)
14     VIDEOGRAPHER:  We are back on the record
15 at 8:37.
16     MR. GALICA:  I'd like to make sure to
17 designate the entirety of the transcript Highly
18 Confidential, Attorneys' Eyes Only.
19     And with that, I have nothing further.
20     VIDEOGRAPHER:  All right.  We are going
21 off the record at 8:37.
22     (Deposition adjourned at 8:37 p.m.)

**493**

CERTIFICATE OF SHORTHAND REPORTER

    I, Susan S. Klinger, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction; that reading and signing was not discussed; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise in its outcome.

    IN WITNESS WHEREOF, I have hereunto set my hand on the 9th of October, 2024.

*[Signature: Susan S. Klinger]*

Susan S. Klinger, RMR-CRR, CSR
Texas CSR 6531, Exp: 10/23/25
California CSR 14487, Exp: 11/30/24