# EXHIBIT 2



**Daniel B. Weinger**
+1.617.348.1629
DBWeinger@mintz.com

One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

March 29, 2024

**Via E-Mail**

Stanley M. Gibson
*sgibson@jmbm.com*
James Neudecker
*jneudecker@jmbm.com*
JEFFER MANGELS BUTLER & MITCHELL LLP
2 Embarcadero Center, 5th Floor
San Francisco, CA 94111

Shavon Henry
*shenry@jmbm.com*
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-4308

Joseph J. Mellema
*jmellema@jmbm.com*
JEFFER MANGELS BUTLER & MITCHELL LLP
3 Park Plaza, Suite 1100
Irvine, CA 92614-2592

Re:    RoadRunner Recycling, Inc.'s Discovery Deficiencies

Counsel,

We write with respect to RoadRunner Recycling, Inc.'s ("RoadRunner") ongoing discovery deficiencies to date, including at least (1) RoadRunner's failure to produce documents and (2) its failure to substantively respond to any interrogatories.

As you are aware, the parties met and conferred on March 6, 2024, and agreed on March 27, 2024, as a mutual deadline (1) for the parties to at least begin serving documents that are responsive to the parties' respective document requests and (2) for RoadRunner to serve supplemental (and their first substantive) responses to interrogatories. During the same meet-and-confer, RoadRunner further represented that it anticipated producing a substantial amount of documents and may even be substantially complete by March 27, 2024.

Yet, March 27, 2024, has come and gone and RoadRunner did not produce any documents in response to Defendants requests for production nor did RoadRunner supplement responses to interrogatories with substantive responses. RoadRunner has also not provided any explanation for its failure to do so. By contrast, Defendants complied with the parties' agreed-upon March 27, 2024, deadline and have begun producing documents, including "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" materials.

**MINTZ**



March 29, 2024
Page 2

     RoadRunner's current responses to interrogatories contain only objections and reservations of rights, with no substantive responses. These objections include the baseless ground that "Defendants are precluded from taking discovery because Defendants are challenging the sufficiency of Responding Party's description of trade secrets in its Identification of Trade Secrets document." RoadRunner has also not provided any explanation as to its failure to comply with the parties' agreement and to, *e.g.*, withdraw its improper objections. By contrast, Defendants have timely provided specific responses to each of RoadRunner's discovery requests, both before and after the parties' March 6, 2024, meet-and-confer.

     RoadRunner's outstanding discovery deficiencies and unilateral failure to comply with the parties' agreement are highly prejudicial to Defendants. As just one example, the parties currently have a mediation scheduled for May 8, 2024. For this mediation to be productive, RoadRunner must provide the requested discovery with sufficient lead time for the discovery to be meaningful.  Indeed, RoadRunner filed this case, and if RoadRunner does not want to prosecute the case, RoadRunner should seek a dismissal.

     Please confirm that RoadRunner will promptly cure its ongoing deficiencies by Friday, April 6, 2024.

Best regards,

Daniel B. Weinger
Member

Counsel for Defendants
Recycle Track Systems, Inc. and
RecycleSmart Solutions Inc.

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

July 10, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA  92614

Re:  Deficiencies in RoadRunner Recycling, Inc.'s Interrogatory Responses and Document
Productions

Dear Joe:

I write regarding certain of RoadRunner Recycling, Inc.'s ("RoadRunner") deficient
discovery responses and document productions.

1. **RoadRunner Has Failed to Adequately Respond to RTS' Interrogatory No. 7
Seeking Detailed Description of Each Trade Secret Allegedly Encapsulated in
RoadRunner's Devices**

RTS' Interrogatory No. 7 requested, in relevant part, the following from RoadRunner:

(i) an identification by detailed description and production Bates number of the
specific Documents and/or Things that embody that Trade Secret that were
disclosed to Defendants

Despite providing a lengthy response, RoadRunner's description of each of its alleged Trade
Secrets in response to Interrogatory No. 7 amounts to the following: (1) overall waste and
recycling metering system, (2) smart camera apparatus, (3) optical assembly and design, (4)
image preprocessing techniques, (5) training data, and (6) algorithms and processes. This fails to
identify, with any level of specificity, RoadRunner's alleged Trade Secrets. RoadRunner's
incorporation by reference of its supplemental response to RTS' Interrogatory No. 1 does
nothing to cure these deficiencies. Neither does the statement that RoadRunner made its source
code available to RTS' expert. RoadRunner must provide basic information identifying and
describing, for each of its products that it alleges contains, encapsulates, embodies, and/or is the
result of alleged Trade Secrets ("RoadRunner Devices"), *each* portion of hardware, firmware,
and software that allegedly contains, encapsulates, embodies, and/or is the result of *each* alleged
Trade Secret as below:

**MINTZ**

Joseph J. Mellema
July 10, 2024
Page 2



- For each portion of hardware that RoadRunner alleges is a Trade Secret, identify and describe, with respect to each RoadRunner Device, the specific hardware component, as well as its structure, configuration, function, and operation that RoadRunner alleges is a Trade Secret.
- For each portion of software that RoadRunner alleges is a Trade Secret, identify and describe, with respect to each RoadRunner Device, the specific source code repository, software file, range of lines of source code, and its function that RoadRunner alleges is a Trade Secret.
- For each portion of firmware that RoadRunner alleges is a Trade Secret, identify and describe, with respect to each RoadRunner Device, the specific source code repository, firmware file, range of lines of source code, and its function that RoadRunner alleges is a Trade Secret.

RoadRunner must provide this basic information.

**2. RoadRunner Has Failed to Adequately Respond to RTS' Interrogatory Nos. 7 and 5 Seeking Detailed Description of How RTS Had Access to the Alleged Trade Secrets**

RTS' Interrogatory No. 7 requested, in relevant part, the following from RoadRunner:

(ii) an identification of the specific individual(s) at Defendants to whom that Tarde Secret was disclosed, and (iii) when and how that Trade Secret was disclosed to such individual(s).

Relatedly, RTS' Interrogatory No. 5 requested, in relevant part, the following from RoadRunner:

For each alleged Trade Secret Identified in Your submission required by CCP 2019.210 and each piece of Confidential Information Identified in Your answer to Interrogatory No. 1, respectively, Identify and describe in detail Your full and complete factual, legal, and evidentiary basis for claiming that Defendants have gained access to, misappropriated, used, reverse-engineered, and/or disclosed such Confidential Information and/or Trade Secret.

RoadRunner's response to Interrogatory No. 7 fails to identify any documents in support of its allegations that RTS accessed RoadRunner's alleged Trade Secrets, and it does not identify any individuals that allegedly accessed four of six alleged Trade Secrets. Further, RoadRunner's response regarding when and how each Trade Secret was allegedly accessed amounts to the generic and conclusory assertion that (1) RTS had access to RoadRunner's alleged Trade Secrets—nothing more and (2) regurgitation of language from a Terms and Condition agreement between RoadRunner and RTS. RoadRunner's supplemental response to RTS' Interrogatory No. 5 does not cure these deficiencies as it fails to identify (1) who allegedly accessed,

**MINTZ**



Joseph J. Mellema
July 10, 2024
Page 3

misappropriated, used, reverse-engineered, and/or disclosed RoadRunner's alleged Trade Secrets, (2) how this occurred, and (3) when it occurred.

Accordingly, for each alleged Trade Secret you identify in your second supplemental response to RTS' Interrogatory No. 7, RoadRunner must provide (1) the specific individual from RTS you allege accessed, misappropriated, used, reverse-engineered, and/or disclosed each of RoadRunner's alleged Trade Secrets, (2) the specific RoadRunner Device for which you allege this occurred, (3) when you allege this occurred, and (4) how you allege this occurred.

**3. RoadRunner Has Failed to Adequately Respond to RTS' Interrogatory No. 12 Seeking Detailed Description of How RecycleSmart Solutions, Inc. Insisted That it be Informed How Compology's Back-end Systems Work**

RTS' Interrogatory No. 12 requested, in relevant part, the following from RoadRunner:

the factual basis behind Your statement that "Further confirming the suspicious activity, in October 2021, RecycleSmart insisted that it be informed how Compology's back-end systems work to monitor camera, dispatch service technicians and generally manage the network of cameras."

RoadRunner's narrative response to Interrogatory No. 12 states:

Members of RecycleSmart and Compology routinely attended conference calls relating to installation, maintenance, and operation of Compology's waste and recycling metering system and technology. In at least one such call, Colin Bell, then-CEO of RecycleSmart, Dylan Hyland, and Ben Chehebar discussed that a technical conversation take place between RecycleSmart's front end/back end software developers and Compology's API engineers, namely Shandy Brown and Mark Stefanski, regarding details about Compology's system and API.

However, RoadRunner's response to Interrogatory No. 12 does not identify the factual basis for any call that took place, who was on it, or what was discussed.

To the extent RoadRunner relies on a phone call as part of its response to RTS' Interrogatory No. 12, RoadRunner must Identify the attendees of the call, the date and time, and, by Bates number, any notes or memorialization of the call. Further, identify which alleged Trade Secret from your second supplemental response to RTS' Interrogatory No. 7 you allege was discussed on said call.

**MINTZ**

Joseph J. Mellema
July 10, 2024
Page 4



4. **RoadRunner Has Failed to Adequately Respond to RTS' Interrogatory No. 2 Seeking a Detailed Description of how Each Alleged Trade Secret or Confidential Information Derives Any Independent Economic Value**

RTS' Interrogatory No. 2 requested, in relevant part, the following from RoadRunner:

describe in detail whether and how each alleged Trade Secret or Confidential Information derives any independent economic value, actual or potential, from not being generally known to the public or readily ascertainable through proper means.

In lieu of providing a substantive response to this Interrogatory, RoadRunner stated that "at least $40 million and 10 years were expended in developing the system" and that "[e]ach aforementioned trade secrets are part of the overall waste metering and recycling system and each has independent economic value as being part of a working system." RoadRunner's response fails to identify the economic value of the waste metering and recycling system itself and the independent value of each alleged trade secret.

Accordingly, for each alleged Trade Secret you identify in your second supplemental response to RTS' Interrogatory No. 7, RoadRunner must provide (1) any independent actual economic value each alleged Trade Secret has from not being generally known to the public or readily ascertainable through proper means and (2) any independent potential economic value the alleged Trade Secret has from not being generally known to the public or readily ascertainable through proper means.

5. **RoadRunner Has Failed to Adequately Respond to RTS' Interrogatory No. 10 Seeking a Detailed Description of How RoadRunner Alleges RTS Breached Any Contract**

RTS' Interrogatory No. 10 requested, in relevant part, the following from RoadRunner:

A complete legal and factual basis for the contention that Defendants breached a contract with RoadRunner, including in Your response the identification of the specific contract, contractual term(s), date(s), individuals, and acts supporting such contention.

RoadRunner's response, at best, discusses when RTS allegedly renewed a contract with RoadRunner and recites some passages from associated terms. However, it fails to provide an identification of the specific contract that RoadRunner alleges RTS breached, the specific contractual terms that RoadRunner alleges RTS breached, when RoadRunner alleges the breach occurred, which individuals RoadRunner alleges were involved in the alleged breach, and any

**MINTZ**

Joseph J. Mellema
July 10, 2024
Page 5



other information supporting RoadRunner's allegations. RoadRunner must provide this basic information.

**6. RoadRunner Has Failed to Produce Relevant Responsive Documents and Things in Response to RTS' Requests for Production Nos. 5, 15, 18, 20**

RTS' Request for Production No. 5 requested, in relevant part, the following from RoadRunner:

> For each Alleged Trade Secret, all Documents and Communications relating to whether and how each Alleged Trade Secret derives independent economic value, actual or potential from not being generally known to the public or readily ascertainable through proper means.

RoadRunner has failed to produce documents sufficient to determine, for example, any developmental costs in connection with each alleged Trade Secret. RoadRunner's response to RTS' Interrogatory No. 2 suggests the existence of such documents. Accordingly, RoadRunner must provide documents describing any developmental costs in connection with each of the alleged Trade Secrets.

RTS' Request for Production No. 15 requested in relevant part, the following from RoadRunner:

> All Documents relating to any agreement between You and any Third Party relating to the Alleged Trade Secrets.

RoadRunner has failed to produce such agreements or contracts with its customers. Accordingly, RoadRunner must provide all documents relating to any agreement with customers relating to each of its alleged Trade Secrets.

RTS' Request for Production No. 18 requested in relevant part, the following from RoadRunner:

> All Documents relating to any valuation conducted by You or a Third Party, whether completed or not, of any aspect of Your business relating to any Alleged Trade Secret.

RoadRunner has failed to produce any such documents. Accordingly, RoadRunner must provide all documents relating to any valuation conducted by RoadRunner or a Third Party, whether completed or not, of any aspect of RoadRunner's business relating to any alleged Trade Secret.

**MINTZ**



Joseph J. Mellema
July 10, 2024
Page 6

Finally, RTS' Request for Production No. 20 requested in relevant part, the following from RoadRunner:

> Documents sufficient to show all revenues, profits, losses, costs, projections, or other financial data in Your possession, custody, or control relating to any RoadRunner and/or Compology waste sensor device, any related services, and/or any Alleged Trade Secret.

RoadRunner has failed to produce actual financials for the years 2022-2024. For example, the documents produced baring Bates Nos. ROADRUNNER000021514 and ROADRUNNER000021500 only contain estimated, or projected, financials for the years 2022, 2023, and 2024. Additionally, RoadRunner has not provided sales and cost information on a customer-by-customer basis. Accordingly, RoadRunner must provide these documents describing this information for the years 2022-2024.

RoadRunner must promptly supplement its responses and productions to cure the deficiencies listed above by Wednesday July 17, 2024. In the event you would like to discuss any item above, I am generally available for a meet and confer between now and July 17, 2024.

Best regards,

Matthew S. Galica

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



MINTZ

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

July 19, 2024

*VIA E-MAIL*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA 92614

Re:  Deficiencies in RoadRunner Recycling, Inc.'s Interrogatory Responses and Document Productions

Dear Joe:

We write in response to your letter dated July 17, 2024 and RoadRunner's ongoing deficiencies in its interrogatory responses and document productions.

## I.      RoadRunner's Ongoing Discovery Deficiencies

### A.      RoadRunner's Deficient Interrogatory Responses

First, as a threshold issue, your unilateral assertion of sufficiency of RoadRunner's current interrogatory responses is unavailing. Each interrogatory must "be answered separately and *fully*," and RoadRunner has failed to do so, as further explained below. Fed. R. Civ. P. 34(b)(3). As your letter acknowledged, RoadRunner has to date failed to provide complete responses to RTS's interrogatories served six months ago.

Second, your allegation that RTS has exceeded the default 25-interrogatory limit is unfounded. Each of RTS's 20 outstanding interrogatories covers a single, distinct issue. Despite your assertion that RTS's interrogatories cover multiple subparts, you have failed to identify, for any of the 20 interrogatories, what the alleged subparts are—as there are none. As an attempt to assist RoadRunner in curing its own deficiencies, our July 10, 2024 letter points out some of the specific omissions we have observed based on RoadRunner's interrogatory responses. All such specific identification of deficiencies, however, falls squarely within the scope of RTS's interrogatories as written and does not constitute any overreach. Indeed, given RoadRunner's deficiencies, our July 10, 2024 letter largely requests that RoadRunner at least provide the "who," "what," "when," "where," and/or "how" where RTS's interrogatories properly ask for RoadRunner's factual basis for its various contentions.

**MINTZ**

MINTZ

July 19, 2024
Page 2

RTS's interrogatories, including Nos. 2, 5, 7, 10, and 12, seek basic and relevant information regarding RoadRunner's allegations of (1) trade secret misappropriation and (2) breach of contract—many of which are quoted verbatim from what RoadRunner asserted in its complaint, which RoadRunner should have ready support for when bringing the complaint (*e.g.,* an identification, with specificity, of its own alleged Trade Secrets). Similarly, the factual information requested should also reside in RoadRunner's ready and sole possession, such as RoadRunner's financial data. Your assertion that fulsome responses require "expert analysis" is thus unavailing and plainly incorrect. Moreover, your letter also fails to specify what, if any, "input that is continuing to be developed over the course of the next months" can reasonably be necessary for RoadRunner to provide fulsome interrogatory responses regarding, *e.g.*, its allegedly existing Trade Secrets and the financials related thereto.

Moreover, RoadRunner does not have "months" to "continu[e] to develop[]" these inputs. As you are aware, the non-expert discovery cut-off is rapidly approaching, *i.e.*, Aug. 30, 2024. RoadRunner's ongoing deficiencies, including its failure to provide basic information regarding the asserted Trade Secrets and RTS's access thereto (if any), severely prejudice RTS. Absent confirmation by RoadRunner that it will immediately cure such deficiencies by a date certain, RTS will have no choice but to seek the assistance of Judge Alsup.

To the extent RoadRunner intends to further supplement its interrogatory responses, we thus request that RoadRunner provides a date certain—no later than July 26, 2024—by which it will do so and cure its outstanding deficiencies.

1.    **RTS Interrogatory No. 7**

RoadRunner's responses to RTS Interrogatory No. 7, and its other interrogatory responses referenced therein, amount to generic statements and glossing references to voluminous (and oftentimes irrelevant) data and documents produced. As explained, these responses are deficient.

To begin with, RoadRunner's identification of, and reliance on, a sweeping bates range of "ROADRUNNER000000191-23809" in its responses to RTS Interrogatory No. 1, which covers 3,579 documents totaling at least 23,619 pages, is not responsive. Plaintiff RoadRunner Recycling, Inc.'s Supplemental Responses to First Set of Interrogatories Propounded by Defendants Recycle Track Systems, Inc. and RecycleSmart Solutions, Inc. ("RoadRunner Supplemental Interrogatory Responses") at 5 (May 31, 2024). Contrary to the assertion in your letter, RoadRunner did not correlate a single document within this range "in response to each of RoadRunner's Trade Secrets identified in its CCP 2019.210 response." RoadRunner also provided zero description of documents covered within this range. Moreover, a simple sampling of the first 100 documents within this range reveals that they are generic emails that do not provide any information regarding RoadRunner's alleged Trade Secrets or confidential information, *e.g.*, a third of which are uninformative meeting invites and emails on meeting scheduling. *See, e.g.*, ROADRUNNER000000194; ROADRUNNER000000195;

**MINTZ**

MINTZ

July 19, 2024
Page 3

ROADRUNNER000000196; ROADRUNNER000000338; ROADRUNNER000000586;
ROADRUNNER000000587; ROADRUNNER000000588; ROADRUNNER000000589;
ROADRUNNER000000880; ROADRUNNER000000881; ROADRUNNER000000906;
ROADRUNNER000000909; ROADRUNNER000000931; ROADRUNNER000000932;
ROADRUNNER000000943; ROADRUNNER000000944; ROADRUNNER000000971;
ROADRUNNER000000978; ROADRUNNER000000980; ROADRUNNER000001018;
ROADRUNNER000001019; ROADRUNNER000001047; ROADRUNNER000001049;
ROADRUNNER000001053; ROADRUNNER000001054; ROADRUNNER000001055;
ROADRUNNER000001056.

Given the sheer volume of irrelevant and unresponsive documents within the bates range identified—as evidenced by reviewing the first 100 that RoadRunner identifies—RoadRunner's reliance on Fed. R. Civ. P. 33(d) is misplaced, which specifically requires that RoadRunner "***specify***[] the records that ***must*** be reviewed, in ***sufficient detail*** to enable the interrogating party to locate and identify them as readily as the responding party could." RoadRunner's attempt to dump thousands of pages, instead of identifying with specificity the actually relevant ones, amounts to a transparent abuse of Fed. R. Civ. P. 33(d).

Similarly, RoadRunner's sweeping reference to its source code production fails to address or remedy RoadRunner's deficient interrogatory responses. By referencing RoadRunner's source code as a whole, RoadRunner seems to untenably represent that every single line of the source code produced constitutes its alleged Trade Secrets, regardless of whether any such source code encompasses public materials such as open-source code.

Ultimately, RoadRunner cannot evade its discovery obligations to identify with detailed description and bates of the specific Documents and/or Things that embody ***each*** alleged Trade Secret, on a trade-secret by trade-secret basis, merely because it asserts one catch-all Trade Secret to be its "overall waste and recycling metering technology."

By July 26, 2024, RoadRunner must provide a meaningful supplement to RTS Interrogatory No. 7. To date, RoadRunner has alleged that all of its Trade Secrets were misappropriated by RTS and those said Trade Secrets allegedly comprise (i) RoadRunner's entire system, which necessarily includes all its hardware, firmware, and software as well as (ii) discrete subsections of the system's hardware, software, and/or firmware. Since RoadRunner has made these allegations, RoadRunner must provide the following in response to RTS Interrogatory No. 7 as a threshold matter for each allegation:

- The portion of its hardware that RoadRunner alleges is a Trade Secret, by identifying and describing, with respect to each RoadRunner Device, the specific hardware component, as well as its structure, configuration, function, and operation that RoadRunner alleges is a Trade Secret.
- The portion of software that RoadRunner alleges is a Trade Secret, by identifying and describing, with respect to each RoadRunner Device, the specific source code

**MINTZ**



July 19, 2024
Page 4

       repository, software file, range of lines of source code, and its function that
       RoadRunner alleges is a Trade Secret.

- The portion of firmware that RoadRunner alleges is a Trade Secret, by identifying
  and describing, with respect to each RoadRunner Device, the specific source code
  repository, firmware file, range of lines of source code, and its function that
  RoadRunner alleges is a Trade Secret.

### 2.    RTS Interrogatory Nos. 5 and 7

       RoadRunner's responses to RTS Interrogatory No. 5 are plainly deficient, both on their
own and further in view of RoadRunner's deficient responses to other interrogatories, *e.g.*, RTS
Interrogatory No. 7.

       RTS Interrogatory No. 5 asks for RoadRunner's basis for claiming that RTS "ha[s]
gained access to, misappropriated, used, reverse-engineered, and/or disclosed" RoadRunner's
Trade Secrets, on a trade-secret by trade-secret basis. Relatedly, RTS Interrogatory No. 7 asks
about "the facts and circumstances under which any disclosure" of RoadRunner's Trade Secrets
was made to RTS, including an identification of "to whom" and "when and how" such disclosure
occurred. RoadRunner's responses to both interrogatories are deficient, given its foundational
failure to identify with specificity each Trade Secret in the first place, *i.e.*, the predicate of any
disclosure thereof or access thereto.

       To date, RoadRunner has identified five documents by bates in response to RTS
Interrogatory No. 7. By RoadRunner's own words, these documents merely relate to "Training
Data," specifically "labeled and tagged images." *See* RoadRunner Supplemental Interrogatory
Responses at 28. First, this handful of documents merely purport to show "RecycleSmart's" API
usage and page view but fall far short of describing or showing, in sufficient detail, how RTS
(including RecycleSmart) "ha[s] gained access to, misappropriated, used, reverse-engineered,
and/or disclosed" RoadRunner's "Training Data." Second, these documents further fail to
address, for at least five of the six alleged categories of Trade Secrets, "the facts and
circumstances under which any disclosure of such material was made to Defendants" and how
RTS (including RecycleSmart) "ha[s] gained access to, misappropriated, used, reverse-
engineered, and/or disclosed" each of these alleged Trade Secrets.

       By July 26, 2024, RoadRunner must provide a fulsome response to RTS Interrogatory
Nos. 5 and 7. RoadRunner's supplementation should include at least an identification of (i) the
specific individual from RTS RoadRunner alleges accessed, misappropriated, used, reverse-
engineered, and/or disclosed each of its alleged Trade Secrets, (ii) the specific RoadRunner
Device for which RoadRunner alleges this occurred, (iii) when RoadRunner alleges this
occurred, and (iv) how RoadRunner alleges this occurred—each of which is squarely within the
scope of RTS Interrogatory Nos. 5 and 7 as written.

**MINTZ**

### 3.     RTS Interrogatory No. 12

RoadRunner's responses to RTS Interrogatory No. 12 plainly fail to provide the pertinent "factual basis," let alone a complete one, for its assertion that "in October 2021, RecycleSmart insisted that it be informed how Compology's back-end systems work to monitor camera, dispatch service technicians and generally manage the network of cameras." At best, RoadRunner's responses consist of generic hearsay that does not identify the "who," "what," "when," and "how" of any actual discussion between Compology and RecycleSmart regarding Compology's "back-end systems." Instead, RoadRunner merely asserted, with no evidentiary support, that such a call was contemplated at an uncertain time, while failing to provide any evidence that such a call eventually took place, if at all. *See* RoadRunner Supplemental Interrogatory Responses at 40. In fact, RoadRunner's responses fail to disclose any specific details regarding the one call between Colin Bell, Dylan Hyland, and Ben Chehebar purportedly contemplating a later discussion, such as when and how this call took place.

By July 26, 2024, RoadRunner must provide a fulsome response to RTS Interrogatory No. 12. To the extent RoadRunner intends to rely on any call, RoadRunner's supplementation should identify specifically the attendees, the date and time, and the content of such calls, along with an identification by bates numbers of relevant documents, *e.g.*, meeting invites, notes, and/or memorialization of such calls.

### 4.     RTS Interrogatory No. 2

As detailed in our July 10, 2024 letter, RoadRunner's responses to Interrogatory No. 2 are deficient. First, as a foundational issue, despite the interrogatory's explicit request that RoadRunner provide responses "[f]or ***each*** alleged Trade Secret," RoadRunner merely provided generic assertions with zero efforts to distinguish between the alleged Trade Secrets. Second, RoadRunner's generic case law quotations provide no substantive insight into the specific Trade Secrets at issue here. Third, contrary to your assertion in the letter, RoadRunner did not cite a single document and thus provided zero "substantive evidence" for its conclusory statements regarding why "[t]he overall waste metering and recycling system and technology has independent economic value." *See* RoadRunner Supplemental Interrogatory Responses at 6-8.

Moreover, RoadRunner's responses fail to articulate, let alone support, what, if any, actual and/or potential independent economic value ***each*** of its alleged Trade Secrets separately derives from not being generally known to the public or readily ascertainable through proper means. Indeed, RoadRunner has even failed to articulate the actual and/or potential independent economic value of its "overall waste metering and recycling system" thus derived. *Id.*

By July 26, 2024, RoadRunner must provide a fulsome response to RTS Interrogatory No. 2. RoadRunner's supplementation should include, at least, a specific articulation, on a trade-secret by trade-secret basis, of the actual and/or potential independent economic value each

**MINTZ**

July 19, 2024
Page 6

alleged Trade Secret derives from not being generally known to the public or readily ascertainable through proper means.

### 5.   RTS Interrogatory No. 10

As your letter concedes, RoadRunner's current responses to RTS Interrogatory No. 10 are incomplete and further omit basic information explicitly requested by the interrogatory, including at least: (i) the specific "date(s)" of RTS's alleged breach of contract; (ii) the specific "individual(s)" involved; and (iii) the specific "acts" supporting RoadRunner's breach allegations. Contrary to your assertion, RoadRunner also failed to articulate with any specificity "how" RTS breached any contract with RoadRunner. Instead, RoadRunner simply recited certain purported covenants from a Terms and Conditions (which RoadRunner has yet to produce) and asserted, with no factual support, that RTS has breached each. *See* RoadRunner Supplemental Interrogatory Responses at 37. In sum, RoadRunner's responses are missing the basic "who," "what," "when," "where," and "how." As just one example, RoadRunner asserted with zero support that RTS "disclos[ed] RoadRunner's Confidential Information to third parties," but it failed to address any of the following exemplary fundamental questions: (i) what "Confidential Information" RTS disclosed; (ii) when such disclosure occurred; and (iii) to which third parties RTS made such disclosure.

By July 26, 2024, RoadRunner must provide a fulsome response to RTS Interrogatory No. 10. RoadRunner's supplementation should at least specify, as to each of the five alleged categories of breach, basic information including the contract term RoadRunner alleges was breached as well as the "date(s), individuals, and acts" supporting its allegations of breach.

### B.   RoadRunner's Deficient Document Productions

### 1.   RTS RFP No. 5

Your letter makes it unclear whether RoadRunner possesses information regarding developmental costs in connection with each alleged Trade Secret, or whether it believes such information is responsive to RTS RFP No. 5. At any rate, such information is also responsive to at least RTS RFP Nos. 9, 14, and 20. There is no justifiable reason why RoadRunner should be withholding any existing, responsive information.

To that end, your belated objection that RTS RFP No. 5 "prematurely seeks information that is subject to an expert opinion" is unavailing: RTS properly requests documents and communications within RoadRunner's possession, custody, or control. Whether an expert may later choose to rely or opine on such documents and communications is irrelevant to RoadRunner's independent discovery obligation to produce them without delay. RoadRunner's apparent intention to withhold production of relevant factual information until expert report deadlines is particularly concerning and highly prejudicial to RTS, who is entitled to such discovery and to depose RoadRunner's witnesses regarding the same during fact discovery.

**MINTZ**



July 19, 2024
Page 7

By July 26, 2024, RoadRunner must make a fulsome production of documents responsive to RTS RFP No. 5.

### 2.    RTS RFP No. 15

Your letter concedes that RoadRunner has failed to, and in fact is affirmatively refusing to, provide "agreement between You and any Third Party relating to the Alleged Trade Secrets," as explicitly requested by RTS RFP No. 15. Despite your assertion of overbreadth and undue burden, you have not articulated any basis for your refusal to produce responsive documents in your possession. To the extent RoadRunner has such agreements in an established repository, for instance, there should be *de minimus* burden for RoadRunner to produce them. RoadRunner also did not provide any list of its customers to corroborate its allegation of undue burden.

In addition, RTS is entitled to obtain the actual agreements as requested by RTS RFP No. 15 and not the mere assertion by counsel that they are "substantially similar" to RTS_00276253. Such assertion of substantial similarity is further in and of itself vague and uninformative, and, in fact, contrary to RoadRunner's position taken in open court that its agreement with RTS is a "special contractual relationship." Dkt. No. 76, Hearing Transcript at 7:22-23.

By July 26, 2024, RoadRunner must make a fulsome production of documents responsive to RTS RFP No. 15.

### 3.    RTS RFP No. 18

RTS RFP No. 18 requested "[a]ll documents relating to any valuation by You or a Third Party …," wherein "You" includes at least RoadRunner Recycling, Inc. and Compology, Inc. RoadRunner has failed to produce any valuation of RoadRunner Recycling, Inc., or any up-to-date valuation (*e.g.*, valuation dated in 2023 or 2024). The sole valuation identified in your letter, ROADRUNNER000069527, is outdated with a valuation date of Apr. 1, 2016.

By July 26, 2024, RoadRunner must make a fulsome production of documents responsive to RTS RFP No. 18.

### 4.    RTS RFP No. 20

First, your letter concedes that ROADRUNNER000068663 is only covering financials as of Mar. 31, 2024 and is not up-to-date. Second, your letter negates neither the existence of sales and costs information on a customer-by-customer basis, nor its responsiveness to RTS RFP No. 20. To the extent it exists, RoadRunner must produce all responsive information immediately, including at least (i) up-to-date actual financials for the years 2022-2024 and (ii) sales and cost information on a customer-by-customer basis.

**MINTZ**



July 19, 2024
Page 8

By July 26, 2024, RoadRunner must make a fulsome production of documents responsive to RTS RFP No. 20.

The above summary is intended to assist RoadRunner in promptly remedying its ongoing deficiencies in its interrogatory responses and document productions. The summary is non-exhaustive and does not limit RoadRunner's discovery obligations or the discovery to which RTS is entitled. RTS reserves the right to identify additional deficiencies.

## II.     Alleged Deficiencies in RTS's Document Productions

For the first time in your July 17, 2024 letter, RoadRunner alleged certain deficiencies in RTS's extensive document productions. To date, RTS has produced 39,210 documents which total at least 311,160 pages, in addition to making its source code computer and physical samples available for inspection. By contrast, as plaintiff, RoadRunner has merely produced 11,393 documents of around 72,913 pages, replete with various deficiencies and irrelevant documents as discussed in detail above.

Regardless, we anticipate providing a separate response regarding your allegations of deficiencies in RTS's document productions by July 24, 2024.

Best regards,

Matthew S. Galica



**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com

One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

July 22, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA  92614

Re:    Deficiencies in RoadRunner Recycling, Inc.'s Interrogatory Responses and Document
          Productions

Dear Joe:

I write regarding certain of RoadRunner Recycling, Inc.'s ("RoadRunner") deficient document productions.

**1.    RoadRunner has failed to produce relevant Documents and Things in response to RTS' Requests for Production No. 1**

RTS' Request for Production No. 1 requested, in relevant part, the following from RoadRunner:

> Documents, Communications, and Things sufficient to show, define, Identify, and fully describe all Trade Secrets that You allege Defendants have misappropriated, including any and all hardware, software, product design specifications and schematics, source code, object code, database information, and other similar sources relating to or reflecting such Trade Secrets.

RoadRunner has failed to sufficiently produce documents in response to this request.

To start, RoadRunner has not produced bills of materials for all of the products it alleges contain Trade Secrets. To date, RoadRunner has produced ROADRUNNER000023702, ROADRUNNER000035582, ROADRUNNER000063606. These identify components and the component's manufactures for the R12, R13, and R13L respectively. However, RoadRunner has not produced a bill of materials for its R11 device. RoadRunner has produced ROADRUNNER000043283 which specifies the R11 but contains descriptions of unspecified components from unspecified manufacturers. RoadRunner has not produced any bill of materials for its R13S device. Separately, RoadRunner has not produced, for example, datasheets sufficient to describe the structure, function, and operation of the hardware components found within any

---

BOSTON    LOS ANGELES    MIAMI    NEW YORK    SAN DIEGO    SAN FRANCISCO    TORONTO    WASHINGTON

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

**MINTZ**

Joseph J. Mellema
July 22, 2024
Page 2



bills of materials. RoadRunner must provide BOMs—and datasheets for each hardware component listed on each BOM—for each product that RoadRunner alleges contains Trade Secrets.

Additionally, RoadRunner has not produced hardware architecture manuals. RoadRunner has produced ROADRUNNER000017678, ROADRUNNER000053915, ROADRUNNER000034884 and ROADRUNNER000034888 but has not specified which, if any, RoadRunner device uses these. RoadRunner has also failed to produce documents sufficient to show and fully describe the structure, function, configuration, and operation of all the hardware components in each of the devices it alleges includes Trade Secrets. Accordingly, RoadRunner must provide documents describing the hardware architecture for each device alleged to embody a Trade Secret.

RoadRunner has produced some block diagrams and schematics. *See e.g.,* ROADRUNNER000022541, ROADRUNNER000022566, ROADRUNNER000022614, ROADRUNNER000023409, ROADRUNNER000023422, ROADRUNNER000023436, ROADRUNNER000023453, ROADRUNNER000023466, ROADRUNNER000023480, ROADRUNNER000023500, ROADRUNNER000023515, ROADRUNNER000023533, ROADRUNNER000023559, ROADRUNNER000023573, ROADRUNNER000023594, ROADRUNNER000023605, ROADRUNNER000023621, ROADRUNNER000023631, ROADRUNNER000023665, ROADRUNNER000036167, ROADRUNNER000071274, ROADRUNNER000071301, ROADRUNNER000072231, ROADRUNNER000072241, ROADRUNNER000072266, ROADRUNNER000072882. However, RoadRunner has not produced any block diagrams or schematics for the R13S or R13L. And, aside from ROADRUNNER000021952 and ROADRUNNER000021961 which provide schematics but no block diagram, RoadRunner has not produced any block diagrams or schematics for the R11. Accordingly, RoadRunner must provide documents describing the block diagrams and schematics for each device alleged to embody a Trade Secret.

RoadRunner has produced 10 documents describing software and firmware. *See* ROADRUNNER000023885, ROADRUNNER000024629, ROADRUNNER000024769, ROADRUNNER000024776, ROADRUNNER000003299, ROADRUNNER000057168, ROADRUNNER000062191, ROADRUNNER000063968, ROADRUNNER000065908, ROADRUNNER000072550. However, these documents are insufficient to describe all software and product design specifications relating to RoadRunner's alleged Trade Secrets. Accordingly, RoadRunner must provide documents including but not limited to (1) any software and firmware architecture manuals, (2) any software and firmware development kits, (3) any software and firmware reference manuals, (4) any software and firmware datasheets, and (5) any software and firmware design manuals.

**MINTZ**



Joseph J. Mellema
July 22, 2024
Page 3

RoadRunner has produced some documents related to the design and testing of its products. *See* ROADRUNNER000003263, ROADRUNNER000017075, ROADRUNNER000035145, ROADRUNNER000035156, ROADRUNNER000035506, ROADRUNNER000061006, ROADRUNNER000063605. However, these documents are insufficient to show the design and testing of each alleged Trade Secret. Accordingly, RoadRunner must provide documents, including but not limited to ones, that describe the design and testing of any component, configuration, implementation, source code and/or feature alleged to be a Trade Secret.

RoadRunner has also failed to provide any documents describing any of its products' image preprocessing technologies including, but not limited to, "the camera first modif[ying] an image into red, green, and blue colors, then 'tone map[ing]' these colors, and then compress[ing] the image so that it can wirelessly transmit the image to a server." Accordingly, RoadRunner must provide documents, including but not limited to ones, that describe the design and testing of the image preprocessing technologies.

**2. RoadRunner has failed to produce sufficient documents relating to the alleged economic value of the asserted Trade Secrets, agreements related to the alleged Trade Secrets, and financial data related to the alleged trade secrets, including documents related to the acquisition of Compology by RoadRunner in response to RFP Nos. 5, 15, 18, and 20 at least**

RFP No. 5 requested, in relevant part, documents related to the independent economic value of the Alleged Trade Secrets from RoadRunner.

RFP No. 15 requested, in relevant part: "[a]ll Documents relating to any agreement between You and any Third Party relating to the Alleged Trade Secrets."

RFP No. 18 requested, in relevant part: "[a]ll Document relating to any valuation conducted by You or a Third Party whether completed or not, of any aspect of Your business relating to any Alleged Trade Secret."

RFP No. 20 requested, in relevant part: "[d]ocuments sufficient to show all revenues, profits, losses, costs, projections, or other financial data in Your possession, custody, or control relating to any RoadRunner and/or Compology waste sensor device, any related services, and/or any Alleged Trade Secret."

To date, however, RoadRunner has not produced the following exemplary documents that would be expected to exist in the normal court of its business and/or acquisition of Compology: (1) agreements, summaries of terms, and calculations regarding the acquisition of Compology, including but not limited to, the purchase agreement, purchase price, purchase price



allocations, or any impairment testing involving the Alleged Trade Secrets;[1] (2) company-level financial statements and other records containing information related to revenues, costs, profits of the products that utilize the Alleged Trade Secrets, and funding sources for Compology and RoadRunner, such as equity raises or loans;[2] (3) documents detailing the historical costs incurred in connection with the development of the alleged trade secrets;[3] (4) research and development documents related to the alleged trade secrets, including project plans, timelines, budgets, or meeting minutes, for example;[4] (5) documents detailing competitive companies and/or competitive technologies, including but not limited to, any research or tracking that RoadRunner performed on competitive companies and/or competitive technologies, clearance searches, patent searches, and published articles on the topic of waste monitoring and communicating the fill rate of waste containers; or (6) business valuations for all relevant years and document supporting the related calculations.[5]

We note that RoadRunner has produced some valuation reports for the years 2014-2015 and 2018-2022, however, it has not produced similar documents for the years 2016-2017 nor 2023 to present.  We also note that, ROADRUNNER000069596 references "estimates provided by management," yet that underlying documentation and/or correspondence has not been produced. Accordingly, to the extent they exist, RoadRunner must promptly produce documents responsive to RFP Nos. 5, 15, 18, and 20.

RoadRunner must promptly supplement its responses and productions to cure the deficiencies listed above by Monday July 29, 2024. In the event you would like to discuss any item above, I am generally available for a meet and confer between now and July 29, 2024.

Best regards,

Matthew S. Galica

---

[1] These types of documents are responsive to RFP 15, at least.
[2] These types of documents are responsive to RFP 20, at least.
[3] These types of documents are responsive to RFP 5, at least.
[4] These types of documents are responsive to RFP 5, at least.
[5] These types of documents are responsive to RFP 18, at least.

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

August 19, 2024

*VIA E-MAIL*

Lena Streisand
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     Defendants' Document Productions and RoadRunner's Discovery Deficiencies

Dear Lena:

We write in response to your letter dated August 14, 2024, specifically the alleged deficiencies in Defendants' document productions with respect to RoadRunner's RFP Nos. 81, 82-84, 92, 95, 99, and 102.

We further write regarding RoadRunner's ongoing discovery deficiencies.

## I.      Defendants' Document Productions

Your letter—and allegations that Defendants have not produced any documents and/or communications related to certain requests—shows a clear lack of diligence in reviewing Defendants' document productions to date. As discussed below, Defendants have already produced all relevant and non-privileged documents responsive to RoadRunner's RFP Nos. 81, 82-84, 92, 95, 99, and 102, following a reasonable search proportional to the needs of this case. Your further request that we identify document responsive to RFP No. 102 by Bates number is a transparent and improper attempt to shift RoadRunner's discovery obligations to Defendants.

In order to obviate this dispute, however, we provide below an exemplary, non-exhaustive list of documents produced in response to each of the RFPs identified in your letter. We provide this list as a one-time courtesy, in the interest of avoiding burdening the Court with discovery disputes if possible, which should not be construed as an admission of any deficiencies in Defendants' document productions or the acceptance of any obligations different from and/or beyond those contemplated by Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Northern District of California, and/or any other rule or order applicable to this case.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 81: RTS_00000594; RTS_00000632; RTS_00000647; RTS_00000655;

**MINTZ**



August 19, 2024
Page 2

RTS_00000658; RTS_00000666; RTS_00000740; RTS_00000749;
RTS_00000768; RTS_00000790; RTS_00000842; RTS_00000908;
RTS_00000982; RTS_00000987; RTS_00001003; RTS_00001015;
RTS_00001026; RTS_00001033; RTS_00001064; RTS_00001100;
RTS_00016925; RTS_00017478; RTS_00017482; RTS_00019912;
RTS_00019920; RTS_00064266; RTS_00064586; RTS_00065487;
RTS_00065835; RTS_00106632; RTS_00176209; RTS_00176574 -
RTS_00176620; RTS_00190853; RTS_00193211; RTS_00256975;
RTS_00259235; RTS_00259266; RTS_00259310; RTS_00259317;
RTS_00259362; RTS_00259499; RTS_00263020; RTS_00263857;
RTS_00263863; RTS_00263883; RTS_00263886; RTS_00263889;
RTS_00274476; RTS_00000783.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 82: RTS_00327902; RTS_00328070.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 83: RTS_00317671.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 84: RTS_00113669; RTS_00180689; RTS_00185629; RTS_00192822; RTS_00193130; RTS_00195019; RTS_00195049; RTS_00317671.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 92: RTS_00001296; RTS_00183967; RTS_00184602; RTS_00189245; RTS_00190631; RTS_00191472.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 95: RTS_00017047 – RTS_00017050; RTS_00019910 – RTS_00019911; RTS_00019912 – RTS_00019919; RTS_00064586 – RTS_00064649; RTS_00064654 – RTS_0006466; RTS_00065832 – RTS_00065833; RTS_00065835 – RTS_00065840; RTS_00113636 – RTS_00113659; RTS_00183180 – RTS_00183196; RTS_00263947 – RTS_00263992; RTS_00264042 – RTS_00264060; RTS_00264340; RTS_00274476 – RTS_00274531.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 99: RTS_00193211; RTS_00310496.

- At least the following produced documents may be responsive to RoadRunner's RFP No. 102: RTS_00000709; RTS_00001296; RTS_00157162; RTS_00157162; RTS_00157163; RTS_00183931; RTS_00184602; RTS_00184602; RTS_00189245; RTS_00189247; RTS_00192439; RTS_00192997;

**MINTZ**



August 19, 2024
Page 3

RTS_00193698; RTS_00193698; RTS_00194497; RTS_00194511;
RTS_00196020; RTS_00196020; RTS_00240109; RTS_00240109;
RTS_00246749; RTS_00249440; RTS_00249440; RTS_00250171;
RTS_00250171; RTS_00250626; RTS_00250626; RTS_00280101.

Moreover, your alleged prejudice in relation to the deposition of Carl Anderson is unfounded. First, contrary to your assertion, Defendants have timely produced documents responsive to RoadRunner's RFPs at issue, with the majority of such documents produced weeks ago before Mr. Anderson's deposition on August 9, 2024. Second, your alleged prejudice is belied by your deposition of Mr. Anderson, where Mr. Anderson discussed various relevant financial documents in depth. As one specific example, Mr. Anderson was questioned about Exhibit 104, which "tracks the costs of Pello" and he explained the document in detail. *See* Rough Deposition Transcript of Carl Anderson at 199:16-205:18; *cf.* RoadRunner's RFP No. 81.

## II.     RoadRunner's Ongoing Discovery Deficiencies

Defendants continue to suffer severe prejudice in view of RoadRunner's untimely document productions and late supplemental interrogatory responses (if any). On the eve of the deposition of Jay Longson—RoadRunner's 30(b)(6) witness designated to testify on Topic Nos. 1-2, 4-6, 8-11, 23-25, 27, 30-32, 36-37, 39-40, 45—RoadRunner for the first time produced almost 400 documents including key technical documents such as CAD files for Compology R13S. Such documents are responsive to Defendants' first set of RFPs served seven months ago, on January 19, 2024, and RoadRunner has no justifiable reason to withhold such documents until August 14, 2024. *See, e.g.*, Defendants' RFP Nos. 1, 2, 4, 6, 13, 17-20.

Similarly, despite your promise to supplement your deficient responses to Defendants' Interrogatory Nos. 2, 5, 7, 10, and 12 by August 9, 2024 and our multiple follow-ups, you did not provide any supplemental responses to Interrogatory No. 5, 7, and 10 until August 14, 2024. To date, however, you have not provided any supplemental response to Interrogatory Nos. 2 and 12.

RoadRunner's August 14, 2024 document production and supplemental interrogatory responses—as well as its yet-to-be-supplemented responses to Defendants' Interrogatory Nos. 2 and 12—are also relevant to most, if not all, of the 30(b)(6) topics for which Mr. Longson was designated. Pursuant to paragraph 30 of Judge Alsup's supplemental order, Defendants reserve the right to continue their deposition of Mr. Longson on the late-produced documents.

With less than two weeks left in fact discovery, RoadRunner's continuous failure to timely produce responsive documents and supplement deficient interrogatory responses imposes severe prejudice to Defendants. RoadRunner must, at the very least, immediately cure its outstanding failure to supplement its deficient responses to Interrogatory Nos. 2 and 12.

**MINTZ**



August 19, 2024
Page 4


     We reserve all rights, including the right to raise additional deficiencies in RoadRunner's discovery responses, and nothing in this letter shall be construed as a waiver of such rights.


Best regards,

Matthew S. Galica

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



**MINTZ**

One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

August 20, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA  92614

Re:     RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc. and RecycleSmart Solutions,
Inc.; Case No.:  3:23-cv-04804-WHA

Dear Joe:

        We write in response to issues that arose during the deposition of Mr. Cason Male on
August 13, 2024.

        First, please stipulate that the exhibits Mr. Male testified that he had not previously seen
are authentic or provide a witness to authenticate these documents. The exhibits to be
authenticated include Exhibits 303-322.

        Second, Mr. Male deferred to other individuals throughout his deposition even with
respect to topics that only he (Mr. Male) was designated on. Please ensure that the following
individuals identified by Mr. Male are designated on the relevant topics below and confirm that
these individuals will be prepared to answer questions on the topics below. All citations listed
below correspond to the rough draft transcript for Cason Male's deposition.

- Mr. Justin Armstrong should be further designated on 30(b)(6) Topics 1, 2, 3 and 7
  and be prepared to discuss the following:

  - Pre-acquisition Compology documents, including Compology sales group
    documents and handbook, and pre-acquisition Compology policies including
    document retention (39:23-41:14, 138:16-141:5);
  - Compology machine learning repositories that were located and produced,
    including if there were repositories not produced (50:14-20);
  - Software code and list of RoadRunner employees with access to that and any
    related code, and any methods taken to protect the alleged trade secrets
    contained within that code (65:14-67:6); and
  - Compology camera training data, including images and labels, used to
    determine contamination and fullness that is subject to "heightened

**MINTZ**

Joseph J. Mellema
August 20, 2024
Page 2



confidentiality" and methods taken to maintain that confidentiality (72:25-73:9).

- Mr. Steve Krebs should be further designated on 30(b)(6) Topic 7 and prepared to discuss the following:

  o Call scripts used by inside sales when calling prospective customers, including if those scripts include references to Compology's devices and/or its alleged trade secrets (99:3-11);
  o Compology terms and conditions and contracts related to eBay, including methods that Compology and/or RoadRunner took to protect and maintain its alleged trade secrets contained in the products appearing on eBay (129:1-17:); and
  o Methods taken by Compology, including using terms and conditions as part of its contracts, to protect its alleged trade secrets when selling or licensing its products and services to customers (130:3-19).

- Mr. Male was unable to answer questions relating to 30(b)(6) Topic 44. Please confirm that Mr. Krebs can testify to the following:

  o Actual dollar values assigned to each six separate alleged trade secret when RoadRunner purchased Compology (175:20-176:6);
  o Dollar amounts for the alleged value provided by individual alleged trade secrets that were determined as part of the auditing and valuation process (179:17-180:5);
  o Dollar amount at which RoadRunner purchased Compology (180:20-23); and
  o Term sheet created for or during RoadRunner's acquisition of Compology (181:1-13).

Please provide your stipulation to authenticate the documents above (or identify a witness who can authenticate the documents in the alternative) and confirm that Mr. Armstrong and Mr. Krebs will be prepared on their respective topics before Mr. Armstrong's deposition begins on August 22, 2024.

Best regards,

Matthew S. Galica

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

August 20, 2024

**Via E-Mail**

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA  92614

Re:     Deficiencies in RoadRunner Recycling, Inc.'s Document Productions

Dear Joe:

I write regarding certain of RoadRunner Recycling, Inc.'s ("RoadRunner") deficient document productions. These document productions are relevant to upcoming depositions of RoadRunner witness, Steve Krebs scheduled for August 23, 2024, and RTS requires such documents to adequately prepare.

RTS sent three deficiency letters, on July 22, 2024, July 19, 2024, and July 10, 2024, each requesting documents responsive to RTS's RFPs No. 20, and which have not been sufficiently produced to date. Nor has RoadRunner confirmed that these types of documents do not exist.

RFP No. 20 requested, in relevant part: "[d]ocuments sufficient to show all revenues, profits, losses, costs, projections, or other financial data in Your possession, custody, or control relating to any RoadRunner and/or Compology waste sensor device, any related services, and/or any Alleged Trade Secret."

RoadRunner has not sufficiently shown Compology-specific top-level financials, Compology unit sales or customer-level sales, or Compology revenue by product/service/subscription number (SKU) across the entire relevant time period, 2017-present. RTS requests that the following types of documents be produced immediately, or that RoadRunner confirm that these documents do not exist:

1.   *Actual and comprehensive monthly data for contracted, installed, and revenue-generating cameras; equipment, services, and subscription revenue; cost of goods sold; gross profit; operating expenses; EBITDA; and all other cost and profit categories and other performance metrics listed in Column A of Tab "Historicals & Financials" in ROADRUNNER000021514 in for the entire relevant period, 2017-present (or through latest complete reporting period).* RoadRunner has



Joseph J. Mellema
August 20, 2024
Page 2

produced the actual Compology top-level, monthly financials from 2019 through 2021 (ROADRUNNER000021514), but similar, actual financials from 2022 through the present have not been produced. These financials are responsive under RFP No. 20.

2. *Actual and comprehensive customer-level data for monthly camera count (i.e., contracted, billable, installed, and revenue-generating), contract term, contract start and end dates, contract ARR, and average subscription revenue per camera per month) for all customer contracts for the entire relevant period, 2017- present (or through latest complete reporting period).* RoadRunner has produced the Compology's waste and recycling "Current Customer Database" "as of April 18, 2022" (ROADRUNNER000021514), but similar, actual financials have not been produced after this date. These financials are responsive under RFP No. 20.

3. *Comprehensive summary of individual transaction-level detail of sales, by customer, by product/SKU, for the entire relevant period, 2017- present (or through latest complete reporting period), including: quantity, description, monthly and/or unit price, monthly and/or unit cost, total sales, total cost for each sales category (i.e., cameras, subscription, and services).* RoadRunner has produced individual quote forms to date (*e.g.,* ROADRUNNER000074074-77, ROADRUNNER000073892- ROADRUNNER000073914, ROADRUNNER000073921-27), but no comprehensive data has been produced. Additionally, all order forms have customer names redacted. These financials are responsive under RFP No. 20, and should be produced unredacted as no proper claim of privilege entitles RoadRunner to guard its customer names from RTS counsel.

By August 21, 2024, RoadRunner must provide a fulsome production to RFP No. 20 so that RTS may properly prepare for Mr. Krebs deposition on August 23, 2024.

Best regards,

Matthew S. Galica

cc: All Counsel of Record

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



**MINTZ**

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

August 22, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA 92614

Re:     Issues Arising from Deposition of Timothy (Jay) Longson

Dear Joe:

        We write regarding the issues that have arisen from the deposition of Timothy (Jay)
Longson on August 15, 2024.

        First, please produce the "document [Mr. Longson] put together related to [his]
investigation of Pello's FCC reports" without further delay, as we have already requested a week
ago at Mr. Longson's deposition. 152:11-15, 153:7-21, 223:13-16.[1] As Mr. Longson testified, the
said document "contains images from the FCC filing -- Pello's filing, along with a comparison of
known features on the Compology cameras." 153:11-14. This document is clearly relevant to
Defendants' 30(b)(6) Topic No. 24, on which Mr. Longson has been designated, as well as Topic
Nos. 4, 5, 10, 45. In addition, this document is also responsive to at least Defendants' RFP Nos.
1, 2, 6, 8, and 9, and thus should be produced without delay in this regard as well. Pursuant to
paragraph 30 of Judge Alsup's Supplemental Order on Order Setting Case Management
Conference, we reserve the right to continue our deposition of Mr. Longson on this document.

        Second, on the eve of Mr. Longson's deposition, on August 14, 2024, RoadRunner
produced over almost 400 documents including key technical documents such as CAD files for
Compology R13S. As noted in our prior letter dated August 16, 2024, such technical documents
are responsive to Defendants' first set of RFPs served seven months ago, on January 19, 2024,
and RoadRunner has no justifiable reason to withhold such documents until August 14, 2024.
*See, e.g.*, Defendants' RFP Nos. 1, 2, 4, 6, 13, and 17-20. Moreover, such technical documents
are also clearly relevant to Mr. Longson's designated topics, including at least Topic Nos. 4-6,
27, 30-32, and 39-40. RoadRunner's last-minute production is deeply prejudicial to Defendants,
especially in view of RoadRunner's earlier representation, no later than our August 6, 2024 meet
and confer, that all its technical documents had been produced by then. Given the prejudicial

---

[1] All citations hereinafter correspond to the rough draft transcript of Jay Longson's deposition
unless otherwise noted.

**MINTZ**



August 22, 2024
Page 2

delay in RoadRunner's document productions and pursuant to paragraph 30 of Judge Alsup's Supplemental Order on Order Setting Case Management Conference, we further request that Mr. Longson be made available to testify as to this late-produced batch of documents.

Third, Mr. Longson was not prepared or able to sufficiently testify regarding multiple topics on which he was designated as RoadRunner's 30(b)(6) witness, including at least Defendants' 30(b)(6) Topic Nos. 4-6, 11, and 32. To the extent you contend that Justin Armstrong is also designated on these topics and that Steve Krebs is also designated on Topic No. 11, we reserve the right to seek continued deposition of any one or more of these three witnesses should Mr. Armstrong and Mr. Krebs fail to sufficiently testify to each of these topics.

- Mr. Longson was unable to identify any trade secret, despite being designated to testify on Topic Nos. 4-6 and 32, regarding "[t]he identification and nature of each alleged trade secret claimed by RoadRunner in this litigation," including those in RoadRunner's ITS. Even when presented with RoadRunner's ITS (Exhibit 326), Mr. Longson could not identify any specific component, feature, unique configuration, or know-how related to Compology's products including R11, R12, and R13 that, if kept secret, may provide identifiable economic value to Compology. *See, e.g.*, 85:1-24, 88:3-5 ("I don't have a comprehensive list of all of the trade secrets"), 88:18-89:11, 91:12-15, 92:4-6 (conceding that "I would have to go and review the -- the design in order to try to come up with some list" of trade secrets specific to R11 and R12, respectively), 93:20-94:1, 96:11-19. Similarly, even when presented with the schematics (Exhibits 343-344), Mr. Longson remained unable to identify a single component, feature, unique configuration, or know-how related to Compology's products that may constitute a trade secret. *See, e.g.*, 216:13-217:19, 218:1-11 (testifying that he was unable to identify within the schematic any trade secret other than "the overall system which provided value to Compology"), 222:15-19, 223:2-7.

- Mr. Longson was unable to identify "the value of each alleged trade secret claimed by RoadRunner in this litigation" or at least RoadRunner's understanding thereof, for any individual trade secret, despite being designated to testify on Topic No. 11. Instead, Mr. Longson merely provided conclusory statements such as certain aspects "derived value to the company," without any meaningful details. *See, e.g.*, 137:20-138:3, 217:8-19, 218:4-7, 221:3-9. Notably, Mr. Longson could not quantify any value that RoadRunner may ascribe to its purported trade secrets. Instead, Mr. Longson's only testimony on this point indicates a clear lack of preparation: "I don't know the exact value [of ████ ████. We would have to do a study to understand that." *See* 127:24-128:4; *see also* 127:2-4 (as to quantifying in a dollar amount the value of ████████ "I might be able to with some research but I can't off the top of my head").

**MINTZ**



August 22, 2024
Page 3

Fourth, please stipulate that the exhibits Mr. Longson testified that he had not previously seen and/or could not recognize are authentic or provide a witness to authenticate these documents, including at least Exhibits 325, 328, 335, and 342.

To resolve the aforementioned issues arising from Mr. Longson's deposition and to mitigate the severe prejudice thus imposed on Defendants:

- Produce the "document [Mr. Longson] put together related to [his] investigation of Pello's FCC reports," which "contains images from the FCC filing -- Pello's filing, along with a comparison of known features on the Compology cameras."

- By August 24, 2024:

  o Provide the availability of Mr. Longson for a continued deposition regarding at least the document above and the late-produced documents.

  o Stipulate to the authenticity of the exhibits used at Mr. Longson's deposition as discussed above, including at least Exhibits 325, 328, 335, and 342, or provide a witness who can authenticate such exhibits.

Nothing in this letter should be construed as an exhaustive list of issues arising from Mr. Longson's deposition. We reserve all right, including the right to raise additional issues arising from Mr. Longson's deposition and the right to seek the Court's assistance if necessary.

Best regards,

Matthew S. Galica



**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

August 27, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA 92614

Re:     Issues Arising from Deposition of Justin Armstrong

Dear Joe:

　　　　We write regarding the issues that have arisen from the deposition of Justin Armstrong on August 22, 2024.

　　　　First, please produce the following documents without further delay, as we have already requested at Mr. Armstrong's deposition:

- All documents showing costs or prices of third-party human review, classification, and/or labelling of images, *e.g.*, for empty event detection or optical flow analysis, including but not limited to third-party statements of work, bills, and emails containing such documents or links thereto. 28:22-29:13.[1] The relevant third parties include at least TechSpeed, Invensus, and R-Process. 29:25-30:13.

　　　　These documents are clearly relevant to at least Defendants' 30(b)(6) Topic Nos. 8, 38, and 41, on which Mr. Armstrong has been designated. Moreover, these documents are also responsive to at least Defendants' RFP Nos. 15, 16, and 20, and thus should have been produced well in advance of Mr. Armstrong's deposition. Pursuant to paragraph 30 of Judge Alsup's Supplemental Order on Order Setting Case Management Conference, we reserve the right to continue our deposition of at least Mr. Armstrong on these documents.

　　　　Second, Mr. Armstrong was not prepared or able to sufficiently testify regarding multiple topics on which he has been designated as RoadRunner's 30(b)(6) witness, including at least Defendants' 30(b)(6) Topic Nos. 4-6, 8, 11, 28, 32, 38, and 41. As noted in our letter dated

---

[1] All citations hereinafter correspond to the rough draft transcript of Justin Armstrong's deposition unless otherwise noted.

**MINTZ**



August 27, 2024
Page 2

August 22, 2024, RoadRunner's other designee Timothy (Jay) Longson was also not prepared or able to provide adequate testimony regarding Topic Nos. 4-6, 11 and 32.

- Mr. Armstrong was unable to identify any trade secret, despite being designated to testify on Topic Nos. 4-6 and 32, regarding "[t]he identification and nature of each alleged trade secret claimed by RoadRunner in this litigation," including those in RoadRunner's Identification of Trade Secrets. Instead, Mr. Armstrong merely provided the conclusory statement that "I think pretty much everything I've worked on at Compology that hasn't been made public could be considered trade secrets." 74:23-25; *see also, e.g.*, 77:4-8. When presented with RoadRunner's ITS, Mr. Armstrong expressly testified that he does not have "any knowledge relating to No. 4, image preprocessing camera apparatus by machine learning training in operation," which "is not part of [his] wheelhouse." 83:11-17. Similarly, Mr. Armstrong could not "claim to know much about 2 or 3 or 4," and his knowledge regarding No. 1, "the overall waste and recycling meter system" is nothing beyond what he knows about Nos. 5 and 6. 84:16-85:23.

- Mr. Armstrong was unable to testify as to the time it took to develop Compology's machine learning algorithms, despite being designated to testify on Topic Nos. 8, 28, 38, and 41. In particular, Topic No. 8 asks that RoadRunner's designee be prepared to testify regarding "[t]he time and resources expended to develop each of the alleged trade secrets, on a trade secret by trade secret basis." As just one example, Mr. Armstrong testified that for the subpar image detection model, he could neither recall when he created the original model nor remember or even specifically estimate how long it took to develop the original model. 106:15-107:11. Mr. Armstrong also could not recall, even roughly, when the post auto balancing algorithm, the location soft locking algorithm, or the post location decider model was developed and/or how long the development thereof took. *See, e.g.*, 151:8-152:4, 153:15-154:3, 156:10-24.

- Mr. Armstrong was unable to identify "the value of each alleged trade secret claimed by RoadRunner in this litigation" or at least RoadRunner's understanding thereof, for any individual trade secret, despite being designated to testify on Topic No. 11. As Mr. Armstrong testified, he cannot "quantify" the value associated with any of the machine learning algorithms or processes. 119:18-120:12. As a specific example, Mr. Armstrong unequivocally stated that the does not know "the value of [Compology's] subpar image detection feature." *Id.*

Third, please provide the availability of Mr. Armstrong for a continued deposition to testify regarding the source code and relevant files, with a source code computer made available at this continued deposition. As Mr. Armstrong testified, he would need a source code computer to identify the files that, for instance, perform the SPID method as alleged in lines 21 through 28

**MINTZ**

August 27, 2024
Page 3

on page 15 of RoadRunner's ITS. 102:23-103:14; *see also* 108:6-21. Moreover, Mr. Armstrong testified that in addition to source code, RoadRunner has at least the "read me files" and the "run book," which provides insight into how the source code works. 16:13-24. As we have requested at Mr. Armstrong's deposition, please immediately produce all such files as well as all source code if not already, or confirm that all such files and source code have been made available, including from at least the following repositories: the "S3" GitHub repository, the TensorFlow library, and the "Platform" repository. 17:2-4, 68:23-69:12, 69:24-70:4, 80:16-23.

Fourth, please stipulate that the exhibits Mr. Armstrong testified that he had not previously seen and/or could not recognize are authentic or provide a witness to authenticate these documents, including at least Exhibits 347, 348, 351-360, 367, and 368.

Fifth, we note that during Mr. Armstrong's deposition, counsel for RoadRunner interjected speaking objections expressly prohibited by paragraph 28 of Judge Alsup's Supplemental Order on Order Setting Case Management Conference. *See, e.g.*, 88:22-89:2, 194:16-17, 199:3-20. As we noted on the record, such speaking objections at the very least risk improperly coaching the witness. We therefore reserve all rights regarding such improper speaking objections.

To resolve the aforementioned issues arising from Mr. Armstrong's deposition and to mitigate the severe prejudice thus imposed on Defendants, we ask that RoadRunner complete the following actions on an expedited basis and, in any case, no later than August 28, 2024:

- Produce all documents showing costs or prices of third-party human review, classification, and/or labelling of images, as discussed above.

- Produce all source code and related files, including the "read me files" and the "run book" from at least the following repositories: the "S3" GitHub repository, the TensorFlow library, and the "Platform" repositor, or confirm that all such files and source code have been made available.

- Provide the availability of Mr. Armstrong for a continued deposition, with a source code computer made available at this continued deposition, regarding at least the following:
  o  the documents pending production, as discussed above;
  o  the source code and relevant files, as discussed above, including as to how, if at all, they define any trade secret; and
  o  Defendants' 30(b)(6) Topic Nos. 4-6, 8, 11, 28, 32, 38, and 41.

- Stipulate to the authenticity of the exhibits used at Mr. Armstrong's deposition as discussed above, including at least Exhibits 347, 348, 351-360, 367, and 368, or provide a witness who can authenticate such exhibits.

**MINTZ**



August 27, 2024
Page 4

     Regarding Defendants' 30(b)(6) Topic Nos. 4-6, 8, 11, 28, 32, 38, and 41, in the alternative, we request that by August 28, 2024, RoadRunner identify and provide the availability of other witness(es) who can sufficiently testify regarding these topics.

     Nothing in this letter should be construed as an exhaustive list of issues arising from Mr. Armstrong's deposition. We reserve all right, including the right to raise additional issues arising from Mr. Armstrong's deposition and the right to seek the Court's assistance if necessary.


Best regards,

Matthew S. Galica



**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

August 28, 2024

*Via E-Mail*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA 92614

Re:     Issues Arising from Deposition of Steven (Steve) Krebs and Jason Gates

Dear Joe:

    We write regarding issues that have arisen from the depositions of Steven (Steve) Krebs on August 23, 2024 and Jason Gates on August 26, 2024.

## I.    Launch Finance

    Both Mr. Krebs and Mr. Gates were unable to sufficiently speak to the pre-acquisition Compology financial documents, including ROADRUNNER000021514. Mr. Krebs testified that he had never reviewed in detail the pre-acquisition Compology financials such that he could only speculate to their meaning. *See* Krebs Transcript (Rough Draft) at 125:5-128:17, 128:18-129:8, 138:17-139:3, 150:22-151:13. And Mr. Gates testified that even with access to interpretive Compology documents (that remain unproduced), he would be unable to speak to how finances were calculated in the financial spreadsheets. *See* Gates Transcript (Rough Draft) at 135:14-21. As part of both Mr. Krebs and Mr. Gates testimony, it was revealed that a third party, Launch Finance, not only aided in Compology's financial reporting but Mr. Gates testified that Launch Finance, including Laina Payne, would be a better source than he for financial information relating to the pre-acquisition Compology documents. *See* Gates Transcript (Rough Draft) at 135:14-136:11; Krebs Transcript (Rough Draft) at 136:2-16.

    By the end of day August 28, 2024 please provide answers to the following questions:

1.    Have any RoadRunner experts, including but not limited to damages and economics experts, had any communications with Launch Finance about (1) any financial documents prepared by Launch Finance for, or on behalf of, Compology, or (2) methods for interpreting any documents prepared by Launch Finance for, or on behalf of, Compology?

---

**MINTZ**



August 28, 2024
Page 2

2. Has RoadRunner or its counsel sought financial information from Launch Finance in response to our discovery requests?

3. Does RoadRunner contend that financial documents created by Launch Finance for, or on behalf of, Compology are not within its possession, custody, or control?

Because RoadRunner's 30(b)(6) witness, Steve Krebs, and the former CEO of Compology, Jason Gates, have been unable to sufficiently address RTS's 30(b)(6) Topics related to finances, including Nos. 8, 12, and 13, we intend to move for leave to execute a subpoena out of time that may include the following:

    a. Taking a third party deposition out of time, such as Launch Finance employees who worked with Compology to create financial documents, including at least Laina Payne;

    b. Taking another deposition of RoadRunner's corporate designee on financial-related topics out of time in view of information obtained through the execution of Launch Finance's subpoena; and

    c. Taking an additional deposition of RoadRunner's damages expert in the event our ability to execute the Launch Finance subpoena extends beyond the period of expert discovery.

## II.    Ongoing Production Deficiencies

Mr. Krebs and Mr. Gates identified several documents during the course of their depositions that have not been produced to date. These documents are responsive to at least one of RTS's Requests for Production, including Nos. 3, 5, 6, 12, 15, 17, 18, 20, 27.

1. Comprehensive list of all SKUs (i.e., product or subscription identification numbers) offered to RoadRunner customer's that identify products or subscriptions that include the alleged trade secrets (Krebs Transcript (Rough Draft) at 189:23-190:3, 259:18-260:20);

2. Compology financial documents provided to PWC during acquisition negotiation, including PBC (Krebs Transcript (Rough Draft) at 90:13-91:11, 217:12-22);

3. Documentation of Compology's financial capital raised (Krebs Transcript (Rough Draft) at 95:19-96:6);

4. Reports and/or opinions produced by PWC in Compology acquisition negotiation, including PWC's PBC and quality in earnings report (Krebs Transcript (Rough Draft) at 90:18-25, 134:4-14);

5. RoadRunner boilerplate contracts (Krebs Transcript (Rough Draft) at 240:6-13);

**MINTZ**



August 28, 2024
Page 3

6. Compology accounting policies, including its standard accounting principles, and any other internal documents used to interpret financial documents (Gates Transcript (Rough Draft) at 129:20-130:8);

7. Compology's revenue recognition schedule (Gates Transcript (Rough Draft) at 132:25-133:2);

8. Compology's tax filings related to the R&D payroll tax credit and supporting documentation (Gates Transcript (Rough Draft) at 136:25-138:8);

9. Documents used to track spending of Compology funding (Gates Transcript (Rough Draft) at 203:22-25);

10. Office space plans or documents showing facility space allocation per department (Gates Transcript (Rough Draft) at 155:18-156:10);

11. Budgets related to engineering R&D budgets (Gates Transcript (Rough Draft) at 160:20-161:4); and

12. Comprehensive document summarizing manufacturing purchase orders (Gates Transcript (Rough Draft) at 164:9-16).

These documents are responsive to RTS's Requests for Production, including those that RTS identified in four deficiency letters served on July, 10, 19, and 22, 2024 and August 20, 2024. The documents listed above, along with any other responsive documents to RTS's Requests for Production, must be produced by the end of fact discovery August 30, 2024.

Best regards,

Matthew S. Galica

**Matthew S. Galica**
+1.617.348.4859
MSGalica@mintz.com



**MINTZ**

One Financial Center
Boston, MA 02111
617 542 6000
mintz.com

October 4, 2024

*VIA E-MAIL*

Joseph J. Mellema
Jeffer Mangels Butler & Mitchell LLP
3 Park Plaza #1100
Irvine, CA 92614

Re:     *RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc. et al.*, Case No. 3:23-cv-04804-WHA (N.D. Cal.)

Dear Joe:

Defendants intend to move for summary judgment of no trade secret misappropriation with respect to RoadRunner's first and second causes of action. Please provide your availability to meet and confer on next Tuesday, October 8, 2024 regarding this motion.

Also, prior to our meet and confer on Tuesday, please provide a reduced list of trade secrets that RoadRunner intends to move forward with pursuant to Judge Alsup's guidance. *See* Dkt. No. 71 at 2; *see also* Dkt. No. 93 at 4.

Best regards,

Matthew S. Galica

---