Arameh Zargham O'Boyle (SBN: 239495)
azoboyle@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

James M. Wodarski (Admitted *Pro Hac Vice*)
JWodarski@mintz.com
Michael C. Newman (Admitted *Pro Hac Vice*)
mcnewman@mintz.com
Matthew S. Galica (Admitted *Pro Hac Vice*)
MSGalica@mintz.com
James J. Thomson (Admitted *Pro Hac Vice*)
JJThomson@mintz.com
Sean M. Casey (Admitted *Pro Hac Vice*)
smcasey@mintz.com
Tianyi Tan (Admitted *Pro Hac Vice*)
TTan@mintz.com
Stephen Chen (Admitted *Pro Hac Vice*)
SChen@mintz.com
Amy LoBue (Admitted *Pro Hac Vice*)
ALoBue@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:    (617) 542-6000
Facsimile:    (617) 542-2241

Attorneys for Defendants
RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., <br><br> Plaintiff, <br><br> v. <br><br> RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC., <br><br> Defendants. | Case No. 3:23-cv-04804-WHA <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY BY FOREST A. VICKERY** <br><br> Hon. William H. Alsup <br><br> Hearing <br> Date: November 14, 2024 <br> Time: 8:00 a.m. <br> Location: 450 Golden Gate Avenue <br> Courtroom 12, 19th Floor <br> San Francisco, CA 94102 <br> Complaint Filed: August 4, 2023 <br> Trial Date: December 9, 2024 |

**TABLE OF CONTENTS**

Page

I.   VICKERY LACKED SUFFICIENT FACTS OR DATA, UNDER 702(B) ........................... 1

II.  VICKERY'S "TOP-DOWN" COST ANALYSIS IS NOT A RELIABLE METHOD TO ASCERTAIN RELEVANT DEVELOPMENT COSTS, AND HIS AVOIDED COST OPINION SHOULD BE EXCLUDED UNDER RULE 702 .................... 2

III. VICKERY'S TRADE SECRET UNJUST ENRICHMENT OPINION FAILS TO APPORTION THE BENEFITS AMONG THE ALLEGED TRADE SECRETS .................. 5

IV.  VICKERY'S DAMAGES FOR BREACH OF CONTRACT ARE SPECULATIVE ................................................................................................................. 7

V.   CONCLUSION ............................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
　399 F. Supp. 2d 1064 (N.D. Cal. 2005), *amended sub nom. O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) ..................................................................................................5

*General Electric Company v. Joiner*,
　522 U.S. 136 (1997)..................................................................................................................5

*IceMOS Tech. Corporation v. Omron Corporation*,
　No. CV-17-02575-PHX-JAT, 2019 WL 5960069 (D. Ariz. Nov. 13, 2019) ............................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
　694 F.3d 51 (Fed. Cir. 2012).....................................................................................................3

*LivePerson, Inc. v. [24]7.AI, Inc.*,
　No. 17-CV-01268-JST, 2018 WL 6257460 (N. D. Cal., Nov. 30, 2018)..................................6

*PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
　417 F.2d 659 (9th Cir. 1969) ................................................................................................4, 7

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
　161 F.3d 77 (1st Cir. 1998) .......................................................................................................2

*Tevra Brands LLC v. Bayer HealthCare LLC*,
　No. 19-CV-04312-BLF, 2024 WL 2261946 (N.D. Cal. May 16, 2024) ..................................4

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
　249 F.3d 958 (9th Cir. 2001) ....................................................................................................7

Defendants Recycle Track Systems, Incorporated ("RTS") and RecycleSmart Solutions, Incorporated (*collectively*, "Defendants") submit this Reply to plaintiff RoadRunner Recycling, Incorporated's ("Plaintiff" or "RoadRunner") Opposition to Defendants Motion to Exclude Expert Testimony by Forrest A. Vickery ("Vickery") ("Opp."), dated October 24, 2024.

## I.  VICKERY LACKED SUFFICIENT FACTS OR DATA, UNDER 702(B)

Vickery acknowledges that he "*estimated* the actual development costs incurred by Compology to develop" the alleged trade secrets.  Ex. 1, Initial Vickery Report at 18 (emphasis added).  Vickery was required to estimate actual costs because Compology had no financial accounting information or data from which he could identify and quantify what incurred costs were relevant development costs.  Vickery testified that "I don't believe the record had the granular data for every single hours, costs, et cetera, on different things…[.]."  Ex. 3, Vickery Tr. at 136:16-137:4.  That is an understatement; no itemized development cost data existed.  There was also "no clear evidence to determine the percentage of time" that Compology engineers spent on relevant development, as opposed to other things. Ex. 2, Rebuttal Vickery Report at 9.  Moreover, Vickery testified that, "[n]othing was provided to me or that was available that would give an exact date of when the first dollar was dedicated towards that in the context of the research and development.  I don't know based upon the records that are available." Ex. 3, Vickery Tr. at 78:8-79:4.

In the absence of sufficient facts and data, Vickery improperly relied on summary information from unreliable and unaudited income statements and balance sheets.  None of these financial statements identify incurred costs, let alone provide any detail about how any such cost might be relevant to the development of an alleged trade secret.  RoadRunner's own CEO, Mr. Rihn, and CFO, Mr. Krebs, both testified, under oath, that Compology's unaudited financial statements were questionable and potentially inaccurate.

Mr. Krebs, as RoadRunner's corporate designee, testified that Compology's financial statements were unaudited, "unkempt", and that he "would not be able to tell" if they were accurate.  Ex. 10, Krebs Tr. at 97:7-9; 134:5-15; 140:19-143:12.  Mr. Rihn also questioned the reliability of the

unaudited financial information.

> Q. And you said one of your concerns while you were diligencing Compology was your lack of audited financials; is that correct?
> A. Yeah.
>
> Q. And you said that that didn't allow you to validate their financial data. What did you mean by that?
> ***
> A. **Compology didn't have audited financials, which leave room for unknowns financially**. Room for unknowns financially can cause detriment to RoadRunner.
>
> Q. And how would audited financials solve those unknowns?
> A. **It's a reliabilities factor** is the way we think about it. **Can you fully believe the numbers you're seeing on paper, the balances, balance sheet things like that.**
>
> Q. Got it. Because the numbers in an audited financial statement are reliable?
> A. They're tested at different levels. They're tested to be accurate.

Ex. 11, September 5, 2024, Deposition Transcript of Graham Rihn at 58:22-59:19 (emphasis added). As a further illustration of the "unkempt" condition of the financial statements, Vickery explained that the income statements for the years 2018 through 2020 lacked payroll and benefits detail by cost category, whereas the 2017 and 2021 income statements purported to provide that detail. Ex. 1, Initial Vickery Report, at 19. Vickery's avoided cost analysis is substantially based on this payroll and benefit information, and he was forced to estimate payroll and benefits for 2018 through 2020 based on data from 2017 and 2021. *Id.*

Plaintiff was unable to develop a factual record to support its damages expert's head start damages theory. Vickery did not, therefore, have command of sufficient facts and data upon which to base his opinion testimony, and his testimony should be excluded. Fed. R. Evid. 702(b), *see also Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir. 1998) (stating that "while methodology remains the central focus of a *Daubert* inquiry," a court may evaluate data offered to support bottom-line opinion to see if it provides adequate support for a reliable opinion).

II. **VICKERY'S "TOP-DOWN" COST ANALYSIS IS NOT A RELIABLE METHOD TO ASCERTAIN RELEVANT DEVELOPMENT COSTS, AND HIS AVOIDED COST OPINION SHOULD BE EXCLUDED UNDER RULE 702**

Defendants' request to exclude Vickery's opinion testimony is not based on the argument that

unjust enrichment based on avoided costs is not, as a general matter, a viable damages theory in trade secret cases; rather, it is Vickery's specific "top-down" method for analyzing avoided costs that is *ad hoc* and *unreliable*. Once Vickery understood that Compology did not maintain sufficient financial information and data to know the nature or the dollar value of any relevant development costs, he was obliged to, but failed to, undertake a "bottom-up," or "build-up," analysis in an effort to reconstruct the necessary cost information. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (stating that any damages theory must be anchored to sound economic and factual predicates). *See generally* Fed. R. Evid. 702(c) (requiring that expert testimony "is the product of reliable principles and methods."). As Defendants' damages expert, Stephen Holzen, illustrated in his rebuttal expert report, a proper "build-up" method should have been based on interviews and information from the Compology engineers who participated in development and with plaintiff's retained technical expert, Dr. Hoarty. Dkt. No. 142-4, Ex. C to Opp., Holzen Rebuttal Report, at ¶ 114. Vickery did none of it. Instead of reconstructing the purportedly relevant costs, Vickery attempts to estimate Compology's actual historic development costs solely by analyzing the unaudited financial statements. In doing so, Vickery performs two methodological errors that render his opinion unreliable.

In Steps One and Two of his avoided cost analysis, he improperly exercises his own judgment and discretion to select which of the unaudited financial statements' cost categories purportedly capture relevant development costs, without defining the nature of any captured expense, or explaining his assumption that the category's captured costs are related to the development of any alleged trade secret. Ex. 1, Vickery Initial Report, at 18-19. In doing so, Vickery states that 100% of the costs in the "Research Expense" cost category are tied to relevant development activity. *Id*. Vickery cites no support or authority for that determination. *Id*. For the other five cost categories he selected, he performs an analysis to further estimate what portion of the captured expenses should be allocated as development costs, which leads to the second methodological misstep. *Id*.

In Step Three of his analysis, Vickery makes a series of unfounded and unsupported

assumptions to derive a percentage of the total costs, within cost categories No. 2 through 6, that should be allocated as relevant development expenses. Ex. 1, Expert Initial Report at 19. He does so even though he is aware that there is no "clear evidence to determine the percentage of time" that engineers spent on development. Ex. 2, Rebuttal Vickery Report at 9 (emphasis added). Vickery's resulting estimation to address the lack of actual data and information is based on four flawed elements. *See Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2024 WL 2261946, at *8 (N.D. Cal. May 16, 2024) (excluding expert's use of percentage where the "fanciful value" of the expert's derived percentage demonstrated a failure to apply reliable principals and methods to the facts of the case). First, Vickery surmises incorrectly, and without any support, that 100% of Compology's engineering payroll is related to the development of the alleged trade secrets. Ex. 1, Vickery Initial Report at 20. Second, from that, he determines that Compology's engineering payroll represents between 69% and 85% of Compology's total payroll, excluding operating and administrative expenses ("Operations/Admin"). *Id.* at 21. Third, he then assumes, with no support or citation, that 69% to 85% of Compology's Operations/Admin payroll represent costs incurred to develop the alleged trade secrets. Fourth, Vickery expands the assumption and simply applies that same range of percentages to the other remaining disparate cost categories that he deems to be relevant, such as "Data Hosting and Classification," "Software Licenses and Expenses," "Consulting and Outside Services," and "Facility Expenses." *Id.* at 21 and 34.

The logical and inescapable result of his use of serial unsupported assumptions is to overstate dramatically the relevant costs, and to include necessarily many costs that Defendants would not have avoided, even if they had made use of any alleged trade secret, such as, for example, sales and accounting, procurement and supply chain, legal and human resources, office support and IT labor costs. To compound the error, Vickery has no idea when any of the trade secrets were developed, yet he applies a date range based on when Compology was founded and when it's "financial performance…had gone down." Ex. 3, Vickery Tr. at 56:15-25. It is all based on unacceptable and rank guesswork and speculation. "Damages cannot be based on speculation or guesswork." *PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 663 (9th Cir. 1969). As a result, Vickery's methodology fails to offer any reasonable benchmarks that Defendants and their expert can use to test the reasonableness of Vickery's conclusions.

Thus, by relying on inaccurate and insufficient facts and data, and by applying an *ad* hoc and unreliable methodology, Vickery's resulting opinion does not, and cannot, reflect a reliable application of principles and methods to the actual facts of the case, as required by Rule 702(d). Vickery's self-serving estimates based on untenable assumptions leave too great of an analytical gap between the data that Vickery considered and the opinion that he proffers. *See General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997) (upholding district court's exclusion of expert's speculative opinion). His opinion is unreliable because it bears no rational relationship to any actual historic development costs that Plaintiff actually incurred. Put differently, Vickery's opines that the total avoided cost damages are $22 million simply and solely because he says so. Where, as here, an expert's opinion is connected to the facts of the case solely by the *ipse dixit* of the expert, the expert's opinion should be excluded. *Id.*

### III. VICKERY'S TRADE SECRET UNJUST ENRICHMENT OPINION FAILS TO APPORTION THE BENEFITS AMONG THE ALLEGED TRADE SECRETS

Plaintiff concedes that Vickery "could not have assigned a single monetary value to each trade secret." Opp. at 11. Yet, plaintiff argues that this is not grounds for exclusion because the present case is distinguishable from *O2 Micro*, and that Defendants' reliance on that case is misplaced. *Id.* Not so. The *O2 Micro* decision, and more recent case law that apply similar reasoning are directly on point. *See generally, 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005), *amended sub nom. O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007), *and aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) (finding expert's testimony useless to the jury for failing to apportion among trade secrets, after jury found that defendant misappropriated some, but not all, of the asserted trade secrets).

Where, as here, an expert's unjust enrichment opinion "does not apportion trade secret misappropriation damages among particular alleged trade secrets," the expert must at least offer some "methodology for the jury to calculate trade secret misappropriation on fewer than all…" of the

asserted trade secrets. *LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-CV-01268-JST, 2018 WL 6257460, at *2 (N. D. Cal., Nov. 30, 2018). Vickery's opinion does not even attempt to provide the jury with the required methodology. Here, like in *LivePerson*, it is already apparent that, at trial, Plaintiff will not present all of the alleged trade secrets that Vickery considered in forming his misappropriation damages opinion. *See LivePerson*, 2018 WL6257460, at *2 (noting that it was established before an initial trial that only 15 of the alleged 28 trade secrets would be at issue).

     Initially, Vickery based his misappropriation damages opinion on RoadRunner's trade secret identification, and then, in some fashion, on its technical expert's trade secret list. Ex. 2, Rebuttal Vickery Report at 6. Subsequent to the issuance of Vickery's report and deposition testimony, Plaintiff narrowed its trade secret claims. *See, e.g.,* Ex. 2, Rebuttal Vickery Report at 6 (describing trade secret 4 as "Training Data for an AI/ML System Analyzing Data from a Smart Waste Container Mounted Device") vs. Ex. 5, October 8 letter of counsel, at 1 (characterizing trade secret 4 as "Compology-generated labeled and tagged images"). Additionally, in its opposition to Defendants' summary judgment motion, Plaintiff has, once again, modified and winnowed its alleged trade secrets. For example, RoadRunner now limits its description of trade secrets 4 through 7 as consisting of "images plus metadata." Dkt. 146-3, MSJ Opp. at 8-9. Accordingly, there is no longer a machine-learning model component related to these alleged trade secrets. Where RoadRunner no longer contends that these trade secrets include machine-learning models, or that the models were misappropriated, any associated software engineering time and costs included in Vickery's calculations must be excluded. Similarly, if RoadRunner, as it now appears, only contends that the trade secrets cover "specific components of the camera design," then the costs associated with development of the other components should also have been excluded. Dkt. 146-3, MSJ Opp. at 6. Yet, Vickery provides the jury with no method or mechanism to apportion damages to only those trade secrets, if any, at issue during trial. That is fatal to his proffered testimony, and his opinion should be excluded.

## IV.   VICKERY'S DAMAGES FOR BREACH OF CONTRACT ARE SPECULATIVE

Plaintiff's breach of contract damages theories, lost profits and disgorgement, are exclusively based on hypothetical, contingent assumptions, which are necessarily speculative. It is well established that "[d]amages cannot be based on speculation or guesswork." *PSG Co.*, 417 F.2d at 663. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) (quoting California Civil Code § 3301). Specifically, "[p]rojections of future profits based upon assumptions that require speculation and conjecture do not establish reasonable certainty of lost profit damages." *IceMOS Tech. Corporation v. Omron Corporation*, No. CV-17-02575-PHX-JAT, 2019 WL 5960069, at *14 (D. Ariz. Nov. 13, 2019) (citing *Louis Hornick & Co. v. Darbyco, Inc.*, No. 12CV5892 (VSB) (DCF), 2015 WL 13745787, at *7–8 (S.D.N.Y. Aug. 19, 2015) (internal quotation omitted).

While Plaintiff's opposition states that its "lost profits are reasonably certain," it cites no relevant factual evidence of record or case law to support that statement. Opp. at 13-14. Plaintiff does note that RTS was *considering* a $25 per unit price for its Pello sensor product. *Id.* at 13. Plaintiff also notes that at the time RTS was *considering* whether to terminate the Compology contract, RTS was analyzing potential cost savings if it replaced the Compology sensors. *Id*. at 14. Plaintiff fails to explain how these facts have anything to do with whether non-speculative breach of contract damages would have run through 2024 when no credible evidence exists to establish there would have been a contract in place to allegedly breach. The simple answer is that these facts have nothing to do with it.

The plain reality is that both of Vickery's breach of contract damages calculations are based on the *prospective* amount of money Defendants *may* have paid *if potential* contracts, between the parties, would have been agreed to *through* trial. That is hypothetical, contingent, and, therefore, necessarily speculative. *IceMOS Tech. Corp*., 2019 WL 5960069, at *14 (finding that lost profits

7

damages were too speculative where "the principal support for Plaintiff's lost profits damages is projections, and Plaintiff itself recognizes the numerous factors that are beyond its control that could affect the accuracy of these projections.").

In fact, the available factual record directly contradicts plaintiff's assertion of reasonable certainty. RTS launched an independent effort to develop a sensor because it was not happy with the performance of the Compology device. Ex. 12, July 25, 2024, Deposition Transcript of Robert Fynn at 24:16-22 (testifying that, "the Pello sensor was supposed to help fix problems that we identified in -- with other IoT sensors, including Compology."). Plaintiff claims that Vickery reviewed "testimony of numerous witnesses who confirmed that Compology's camera apparatus was…the only camera apparatus of its kind." Opp. at 14. RoadRunner's own "battle card" documents refute that argument, and detail other available sensors, including sensors with cameras. Ex. 13, ROADRUNNER000032453, at 1. Moreover, Vickery's analysis ignores RTS founder Colin Bell's testimony that RTS, for reasons of security of supply did not want to source sensors from its competitors in the waste brokerage market, based on a bad past experience with Enevo. Ex. 14, August 14, 2024 Deposition Transcript of Colin Bell, at 39:18 - 40:15 and 73:16 - 74:25. Mr. Bell testified that it "definitely gives you pause if you think that your suppliers might become a competitor." *Id*. at 74:18-25. When RoadRunner acquired Compology, that is precisely what happened. Of course, beyond concerns about security of supply, if RTS had continued to use Compology sensors, RTS would have also been required to share sensitive business information with a now competitor, such as its customers and bin locations. All of the available evidence, and reasonable inferences from those facts, thus, establishes that it was far from certain that RTS would have continued a contractual relationship with Compology, for a number of reasons. Vickery's necessarily speculative breach of contract theories should be excluded.

## V. CONCLUSION

Defendants respectfully request that the Court grant its motion to preclude plaintiff from

presenting expert testimony from Vickery.

Dated: October 31, 2024

*/s/ Matthew S. Galica*
Arameh Zargham O'Boyle (SBN: 239495)
azoboyle@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY, AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

James M. Wodarski (Admitted *Pro Hac Vice*)
JWodarski@mintz.com
Michael C. Newman (Admitted *Pro Hac Vice*)
mcnewman@mintz.com
Matthew S. Galica (Admitted *Pro Hac Vice*)
MSGalica@mintz.com
James J. Thomson (Admitted *Pro Hac Vice*)
JJThomson@mintz.com
Sean M. Casey (Admitted *Pro Hac Vice*)
smcasey@mintz.com
Tianyi Tan (Admitted *Pro Hac Vice*)
TTan@mintz.com
Stephen Chen (Admitted *Pro Hac Vice*)
SChen@mintz.com
Amy LoBue (Admitted *Pro Hac Vice*)
ALoBue@mintz.com
One Financial Center
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:   (617) 542-6000
Facsimile:   (617) 542-2241

Attorneys for Defendants
**RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.**