# EXHIBIT C-R

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ROADRUNNER RECYCLING, INC.,

       Plaintiff,

    v.

RECYCLE TRACK SYSTEMS, INC.,
RECYCLESMART SOLUTIONS, INC.,

       Defendants.

Case No. 3:23-cv-04804-WHA

## **REPLY EXPERT REPORT OF W. LEO HOARTY**

**TABLE OF CONTENTS**

                                                                            **Page**

I.      INTRODUCTION...........................................................................................................1

II.     SUMMARY OF OPINIONS......................................................................................2

III.    RTS'S REBUTTAL REPORTS DO NOT SHOW THAT MY ANALYSIS
        WAS INSUFFICIENT TO DESCRIBE COMPOLOGY'S TRADE
        SECRETS ....................................................................................................................2

        A.    The Rebuttal Reports do not Show that I did not Sufficiently Describe
              the Trade Secrets at Issue..................................................................................2

        B.    The Rebuttal Reports do not Show that Compology's Trade Secrets
              are Publicly Available........................................................................................5

              1.    Compology's YouTube Video does not Disclose Compology's
                    Trade Secrets.............................................................................................5

              2.    FCC Website Filings do not Disclose Compology's Trade
                    Secrets .......................................................................................................6

              3.    The R13 Device and the Trade Secrets Embodied Therein have
                    not been Disclosed via a Purported eBay Sale.........................................7

              4.    Verizon Wireless's Marketing Materials do not Disclose the
                    Trade Secrets Embodied in the R11 Camera System...............................8

              5.    The Compology Patents and Patent Applications do not
                    Disclose Compology's Trade Secrets........................................................8

              6.    The Combination of Any of the Foregoing Materials does not
                    Disclose Compology's Trade Secrets........................................................9

IV.     RTS's Rebuttal Reports are Wrong that My Analysis was Insufficient to
        Show Misappropriation of Compology's Trade Secrets ............................................10

        A.    Drs. Baker and Greenspun do not Show that RTS had no Access to
              Compology's Trade Secrets ..............................................................................10

        B.    Dr. Baker Points to Immaterial or Irrelevant Differences between
              Compology's Optical Assembly and Design and the Pello Camera
              System ................................................................................................................13

        C.    It is Immaterial that Dr. Greenspun Attempted to Recreate RTS's
              Purportedly Current ML Models.........................................................................15

V.      IT IS IMMATERIAL THAT I DID NOT PROVIDE DOLLAR FIGURES
        TO SHOW INDEPENDENT ECONOMIC VALUE OF THE TRADE
        SECRETS ....................................................................................................................20

VI.     CONCLUSION ...........................................................................................................22

## I.    INTRODUCTION

1.    I have been retained as an independent technical expert by counsel for Plaintiff
RoadRunner Recycling, Inc. in *RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc. et al.*,
N.D. Cal. Case No. 3:23-cv-04804-WHA. Counsel has asked me to render opinions regarding
the issues raised by RoadRunner and Recycle Track Systems ("RTS") and RecycleSmart
Solutions, inc. ("RecycleSmart", together with RTS, "Defendants") in connection with the
above-referenced lawsuit. Specifically, I have been asked to review the Rebuttal Expert Report
of R. Jacob Baker, Ph.D., P.E. ("Baker Rebuttal Report"), and the Rebuttal Expert Report of
Phillip Greenspun, Ph.D ("Greenspun Rebuttal Report"). My conclusions are based on my
review of these reports and the materials referenced therein, the materials provided to me in
connection with my engagement, and my professional experience.

2.    I do not agree with the conclusions and opinions in Drs. Baker and Greenspun's
rebuttal reports. I am limiting my reply expert report to rebut specific material in the rebuttal
reports and have not added new material that should have been placed in my opening expert
report. I disagree with every one of Drs. Baker and Greenspun's conclusions and opinions in
their reports but have identified what I view as the important points and have kept my reply
report brief.

3.    In my opening expert report, I attached my CV and described my qualifications,
which I incorporate herein. For the sake of convenience, I have attached my CV as Attachment
A. A detailed history of my expert consultant work for the past five years is attached here as
Attachment B. A list of materials I have considered in connection with my reply expert report is
attached as Attachment C. I also incorporate the legal standards for trade secrets and
misappropriation that I identified in my opening expert report.

4.      I reserve the right to supplement, change, clarify, or modify my opinions should additional information and/or documentation become available to me. I also reserve the right to submit a rebuttal declaration in response to any expert declaration(s) submitted on behalf of the owner of the Defendants.

## II.    SUMMARY OF OPINIONS

5.      Based on my review and analysis of the Baker Rebuttal Report and the Greenspun Rebuttal Report, the materials referenced in those reports, and RoadRunner and RTS documentation provided to me, I disagree with every opinion and conclusion by Drs. Baker and Greenspun. I find it highly relevant that Drs. Baker or Greenspun did not address RTS's disassembly and reverse engineering of Compology's R12 camera system or that RTS used Compology-generated labeled and tagged images to train its ML models.

## III.   RTS'S REBUTTAL REPORTS DO NOT SHOW THAT MY ANALYSIS WAS INSUFFICIENT TO DESCRIBE COMPOLOGY'S TRADE SECRETS

6.      Drs. Baker and Greenspun suggest that my analysis is not sufficient to describe Compology's trade secrets and that public documents disclose the trade secrets. I disagree and show below that I described the trade secrets with sufficient detail and that those details are not public knowledge.

### A.      The Rebuttal Reports do not Show that I did not Sufficiently Describe the Trade Secrets at Issue[1]

7.      The descriptions and details about Compology's trade secrets are well documented in my opening report. I found that Compology's smart camera apparatus (e.g., camera system) is a trade secret. I identified the details of the smart camera apparatus and

---

[1] *See* Baker Rebuttal Report at ¶¶ 17-52; Greenspun Rebuttal Report at ¶¶ 23-65.

described the components of the camera apparatus design and why they were important. *See* Expert Report of W. Leo Hoarty ("Opening Report"), ¶¶ 36-62. I documented my disassembly of the R11-R13/S/L camera systems with photographs embedded in the report and in Exhibit 20 cited throughout. I described the important parts of each of these camera systems that are the result of Compology's design and know-how. *Id.*, ¶¶ 36-62.

- Described main components of R11. *Id.*, ¶ 36.
- Described main components of R12. *Id.*, ¶ 37.
- Described main components of R13/S/L. *Id.*, ¶ 39.
- Described general list of components and features of the trade secret. *Id.*, ¶ 46.
- Described in detail the ST Micro F4 microcontroller. *Id.*, ¶ 47.
- Described ambient light sensor and use case. *Id.*, ¶ 48.
- Described accelerometer and use case. *Id.*, ¶ 49.
- Described wireless communication/connectivity devices and LTE CAT-M1 wireless communication module. *Id.*, ¶¶ 50-53.
- Described custom battery assembly. *Id.*, ¶¶ 54, 56-58.
- Described camera flash LED. *Id.*, ¶ 55.
- Described internal mount SMT antenna. *Id.*, ¶ 59.

8.      I documented the differences between R11, R12, R13, R13S, and R13L camera systems that I discovered when I disassembled and inspected the devices. I explained the importance of the components chosen and why they were chosen through experimentation and testing. I also referenced and attached exhibits to system block diagrams, schematic drawings,

and other technical documents to illustrate these components I found during my inspection. *Id.*, Exs. 1-17.[2]

9.      I have made it clear in my opening report and during my deposition that the camera system design as a whole is a trade secret. I compared what in my opinion were the important parts of the camera system, including the battery assembly, the optical design (e.g., camera subsystem), and the mainboard design, and concluded that they were identical or functionally equivalent designs. I then concluded that RTS learned the design of these important parts from its disassembly and reverse engineering of the R12 camera system and used what they had learned to develop the Pello camera system.

10.      I did the same exercise for Compology's optical assembly and design. I explained that the optical assembly and design is a subsystem of the camera system and is its own trade secret. *Id.*, ¶¶ 63-75. In paragraph 39 of my opening report, I described the main components of the optical assembly and design. I also compared the important parts of the optical design with the Pello camera system and concluded that RTS had misappropriated Compology's optical design of its R12 camera system. *See id.*, ¶ 131-139.

11.      I also explained that Compology-generated labeled and tagged images is a trade secret that RTS obtained by downloading them and storing them in a data lake. *Id.*, ¶¶ 76-92. I documented that Compology's sub-par image detection ("SPID"), contamination detection/content identification service, and container fullness analysis are trade secrets, and that RTS learned about these trade secrets through Compology's web application, the labels and tags of Compology-generated labeled and tagged images (i.e., the metadata labels and tags). *Id.*,

---

[2] Dr. Baker complains that the R12 custom battery pack specification picture in the report was blurry. Baker Rebuttal Report at ¶ 45. I provided that specific picture in my report as Exhibit 6 with bates number ROADRUNNER00000142. It is clear and readable and shows the components that I identified in my inspection of the R12 camera system.

17. The FCC filings also do not disclose the Compology-generated labeled and tagged images or Compology's SPID, contamination detection/content identification service, or fullness level analysis.

### 3. The R13 Device and the Trade Secrets Embodied Therein have not been Disclosed via a Purported eBay Sale[6]

18. Both Drs. Baker and Greenspun reference a purported eBay sale of an R13 camera system. I disagree that any Compology trade secrets have been disclosed because the components listed in Section III.B.1 (or any components) are not identifiable or disclosed in the images.

19. Drs. Baker and Greenspun have no evidence that any R13 camera system was sold to a third party or that any R13 camera system was available to be disassembled and reverse engineered. No customer or technician of Compology or RoadRunner is permitted to resell any Compology camera systems. *See* ROADRUNNER000073345; ROADRUNNER000073224. As I previously wrote in my opposition expert report, Mr. Male in his deposition described how RoadRunner took steps to stop illicit sales and recover R13 devices. I understand and agree that RoadRunner has taken reasonable steps to stop any illicit sales and recover any Compology R13 devices.

20. In addition, no sale of any device would disclose the Compology-generated labeled and tagged images or Compology's SPID, contamination detection/content identification service, or fullness level analysis.

---

[6] *See* Baker Rebuttal Report at ¶ 64; Greenspun Rebuttal Report at ¶ 82.

> ### 4. Verizon Wireless's Marketing Materials do not Disclose the Trade Secrets Embodied in the R11 Camera System[7]

21. I have reviewed Verizon marketing materials cited by Drs. Baker and Greenspun. I do not agree with Drs. Baker or Greenspun that this information is sufficient to disclose the R11 device or the trade secrets embodied in its design because the components listed in Section III.B.1 are not identifiable or disclosed in the materials. I disagree with each that the Verizon marketing materials disclose "the Lithium Thionyl Chloride battery pack," as they do not describe the internals of the battery pack, in addition to any specifics about the internal components of the R11 device.

22. The Verizon marketing materials do not disclose the Compology-generated labeled and tagged images or Compology's SPID, contamination detection/content identification service, or fullness level analysis.

> ### 5. The Compology Patents and Patent Applications do not Disclose Compology's Trade Secrets[8]

23. Dr. Greenspun performed a cursory comparison between U.S. Patent No. 10,943,356 and I have reviewed Compology's patents and patent publications, including U.S. Patent No. 10,943,356, U.S. Patent No. 11,122,388, U.S. Patent No. 11,172,325, U.S. Patent Application Publication No. 2023/0196307, U.S. Patent Application Publication No. 2014/0278630, U.S. Patent Application Publication No. 2021/0158308, U.S. Patent Application Publication No. 2020/0013024, and U.S. Patent Application Publication No. 2021/0158097. I did not find that Compology's trade secrets were disclosed in any of these documents because the

---

[7] *See* Baker Rebuttal Report at ¶¶ 65-66; Greenspun Rebuttal Report at ¶ 83.

[8] *See* Baker Rebuttal Report at ¶¶ ; Greenspun Rebuttal Report at ¶¶ 86-100, Ex. 1.

- PulsesPlus does not include the same resettable fuse as the R12 battery assembly

27. The Pello device does not include a PulsesPlus product. Rather, it uses the exact same battery assembly as in the R12 camera system.

28. I also find that Dr. Baker's speculation that the LiSOCl$_2$ battery chemistry is not unique is wrong. *See* Baker Rebuttal Report at ¶ 40. The most common rechargeable lithium battery chemistry is lithium cobalt oxide (LCO) found in mobile phones and digital cameras. The most common non-rechargeable lithium battery chemistry is lithium manganese dioxide (LiMnO2). The total unit sales of these batteries is in the billions. The lithium thionyl chloride battery (LiSOCl$_2$) is a specialty battery for a narrow sliver of the overall battery market.

29. I also find it irrelevant that Dr. Greenspun has attempted to map the steps of the Compology's SPID, contamination detection/content identification service, and fullness level analysis to U.S. Patent No. 10,943,356. This patent does not disclose Compology-generated labeled and tagged images that RTS used to train its ML models on dirty lens detection, contamination detection, and fill level.

## IV. RTS's Rebuttal Reports are Wrong that My Analysis was Insufficient to Show Misappropriation of Compology's Trade Secrets[9]

### A. Drs. Baker and Greenspun do not Show that RTS had no Access to Compology's Trade Secrets[10]

30. I find it highly relevant that neither of Drs. Baker or Greenspun mentioned that RTS had disassembled and inspected Compology's R12 camera system. Mr. Carl Anderson admitted that the photographs he asked for and received from Mr. Lex Jansen were of a disassembled R12 camera system. Opening Report at ¶¶ 119-122. Mr. Anderson asked for the

---

[9] *See* Baker Rebuttal Report at ¶¶ 67-90; Greenspun Rebuttal Report at ¶¶ 66-76, 101-112.
[10] *See* Baker Rebuttal Report at ¶¶ 53-57; Greenspun Rebuttal Report at ¶¶ 66-76.

part number and spec sheet for the D-cell battery used in Compology's R12 device. *See id.* at ¶ 121. He asked to get pictures of a Compology device that Mr. Jansen had showed him opened up. *See id.* He wanted sizing information on the device and the board inside. *See id.*

31.      I understand that Mr. Anderson had a second deposition where he was asked about if he had investigated anything further with Mr. Jansen. He never investigated what RTS had done with the disassembled R12 camera system. He spoke with Mr. Jansen the morning of his second deposition and "ask[ed] him to make sure it was sent, and he said it was sent." Deposition of Carl Anderson, Vol. II ("Anderson Second Dep. Tr.") at 12:8-9. Rather, Mr. Jansen never told him why he opened up a Compology unit (*see id.* at 16:14-17), Mr. Anderson never asked Mr. Jansen why he had opened up a Compology unit (*see id.* at 17:4-8), Mr. Anderson and Mr. Jansen never had any conversation about how the Compology unit he opened up was used (*see id.* at 17:10-14), and Mr. Anderson never asked Mr. Jansen if he remembered why Mr. Anderson wanted the pictures of the Compology unit (*see id.* at 17:15-19). *See id.* at 16:14-17, 17:4-19:

> Q **Did Mr. Jansen tell you why he opened up a Compology unit**?
> MR. GALICA:· Objection.
> A **He did not**.
> \*\*\*
> Q  I'm wanting to know in the last few days when you were preparing for your deposition, **did you ask Mr. Jansen why he had opened up a Compology unit**?
> A **No, I did not**.
> MR. GALICA: Objection.
> Q **Did you have any conversation with him regarding how the Compology unit that he opened up was used**?
> MR. GALICA: Objection.
> A **No**.
> Q **Did you ask him** when you were preparing for your deposition whether he remembered **why you had requested pictures of the Compology unit**?
> MR. GALICA:· Objection.
> A **No**.

11

In my opinion, the reason why neither addressed this issue in their reports, and that Mr.

Anderson never investigated the reasons or purpose behind disassembling the R12 camera

device, is because RTS had violated its agreement with Compology and misappropriated its trade

secrets in the R12. I have confirmed this with my own independent analysis and investigation.

*See* Opening Report.

32.    I find it just as relevant that neither of Drs. Baker or Greenspun mentioned that

RTS had access to Compology-generated labeled and tagged images and used them to train

Pello's ML models. In my opinion the reason why neither address this issue is because RTS has

no good answer for why it used Compology-generated labeled and tagged images to violate their

agreement and misappropriate their trade secrets.

33.    Dr. Greenspun suggests that I did not use the term misappropriation and that it is

somehow relevant. *See* Greenspun Rebuttal Report at ¶ 101. I disagree. *See* Deposition of W.

Leo Hoarty at 36:25-38:8:

> 25    Q.  You can't assess whether RoadRunner's trade
> 1    secrets have been misappropriated by defendants;
> 2    correct?
> 3        MR. MELLEMA:  Objection, form.
> 4    **A.  If that's a general question, yes, I can.**
> 5    Q.  What do you mean by "if that's a general
> 6    question"?
> 7    A.  You're asking about trade secrets in general,
> 8    I assume, not a specific one, such as image connection
> 9    or contamination detection, et cetera.  You're
> 10    saying -- **you're asking me, as I understand it, a**
> 11    **general question of any RoadRunner trade secrets being**
> 12    **misappropriated.  Is that correct?**
> 13    **Q.  Well, can you do that?**
> 14    **A.  Yes.  It's in my report here.**
> 15    **Q.  What about with respect to specific trade**
> 16    **secrets?  Can you assess whether any of those have**
> 17    **been misappropriated by defendants?**
> 18        MR. MELLEMA:  Objection, form.
> 19    **A.  What I wrote in my report documents what I**

12

its ML models. Mr. Laraki in his deposition admitted that he and his colleague used Compology-generated labeled and tagged images to train ML models for dirty lens detection, contamination detection, and fill level. *See* Opening Report at ¶¶ 152-211. RTS used Compology-generated labeled and tagged images to train its ML models because it needed already labeled and tagged images to train. Its Pello images were not labeled and tagged, and RTS's "plan [was] to squeeze the most from Compology images as the labelling process is easy with them," and once a " 'final version of the model [is] trained on Compology images, [RecycleSmart] will fine-tune the model on Pello images [which] will require far less data (around 400 pello images) and then test and deploy the model." *See* Exhibit 29 at RTS_00016984.

43.     As I explained in my opening report, the skilled person knows that artificial intelligence as applied to accurate image identification involves a library of carefully manually tagged images. There is no short-cut to gathering high-quality labeled and tagged images to train a commercially viable ML model that has real-world value. In my opinion, using a pre-trained ImageNet ML model and "fine tuning" with Pello images cannot short-cut the machine learning process. What Mr. Laraki is stating in the quotes above is that Compology-generated labeled and tagged images will be used to do the fundamental training of the system and then "fine tune" with Pello camera images. In this context fine tuning means additional training, but which can be done with far fewer additional images as the system already knows what contamination inside a bin or a dirty lens looks like, for example.

44.     It is not the specific model, model architecture, or model framework that RTS was using, it was the use of Compology-generated labeled and tagged images to train its ML models that is relevant. RTS has destroyed Mr. Laraki's ML models and Compology-generated labeled

16

and tagged images that were used to develop those ML models. RTS is not able to show that it developed its ML models in the basic and generic experiments conducted by Dr. Greenspun.

45.     In Dr. Greenspun's Exhibit 2-1, he uses Google Teachable Machine to supposedly prove that one can use publicly available, online resources from Google to create machine learning examples. I disagree that this has any relevance to what RTS did when it trained its ML models using Compology-generated labeled and tagged images. In his example, Dr. Greenspun used three classes of images—pictures of his dog, pictures from a trip to Joshua Tree National Park, and pictures of airplanes at an airshow. Dr. Greenspun's example is extremely generic. It only has the capability of recognizing a limited number of different things. It does not lead to any conclusion that RTS did not train its ML models using Compology-generated labeled and tagged images. I do not find this example to be of any relevance as the skilled person already knows that what Dr. Greenspun displayed in Exhibit 2-1 is possible and an ordinary outcome in machine learning.

46.     In Dr. Greenspun's Exhibit 2-2, all he demonstrates is a Google Teachable Machine example using images from RTS[13] to train a crude contamination identification model of images from dumpsters. The model is built on approximately 2800 images of non-contaminated dumpster contents and approximately the same number of images of contaminated dumpster contents. In this example in Exhibit 2-2, Greenspun tries to show that a useful image classification model for contamination detection can be built with only a few thousand images in an attempt to corroborate Laraki's testimony as quoted in the Greenspun Rebuttal Report. It is not useful and based on my investigation of both Compology and Pello source code and documentation, it is not the same as either Compology or RTS's contamination detection models.

---

[13] I note that any Pello images themselves are a result of RTS's misappropriation of Compology's camera system and optical assembly and device.

17

47.     In Dr. Greenspun's Exhibit 3, he attempts to replicate the experiment of Exhibit 2-2 using processing on Amazon Web Services. He appears to document the steps he took to duplicate Laraki's contamination and fullness level detection models. The document steps show that the RTS contamination model was built on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is a pre-trained model file that is one of the four models of ConvNeXt (tiny, small, base, and large) and the model was pre-trained on the ▮▮▮▮▮▮▮ dataset, which is ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. He then states the results of building and running the ML model show mid-nineties percentile accuracy.

48.     Dr. Greenspun's examples are irrelevant and fall short of demonstrating the feasibility of a commercially viable fullness level determination, and it is highly doubtful that any such fullness model would work for a variety of containers, such as roll-off waste containers. Dr. Greenspun's examples also are irrelevant and fall short of demonstrating the feasibility of a commercially viable contamination detection system for dumpster management. The core challenge lies in establishing a robust definition of "accurate contamination classification." Relying on a limited image set (under 3,000) for model training simply isn't sufficient. A truly effective model must identify a diverse array of contaminants across a broad spectrum of contexts, such as cardboard-only, medical waste, organic waste, and various recyclable materials. Consider the example of a greasy pizza box—perhaps acceptable when placed in a cardboard recycling dumpster requiring flattened boxes, yet entirely unsuitable for a different type of recycling bin.

49.     The sheer number of potential material and contaminant combinations necessitates a larger classifier than suggested by Dr. Greenspun, requiring a proportionally larger image library for training. For example, lighting differences, wet versus dry materials, different

18

mixes of materials, and different bin sizes all weigh heavily against Dr. Greenspun's experiment having real-world significance. Further complicating matters is the inherent similarity among the images, all depicting dumpster interiors. This poses a significantly greater challenge for a machine learning system compared to simply distinguishing between a dog, a jet, and a cactus.

50.     It is well known to the skilled person that training with an insufficient number and range of images leads to what is known as overfitting where the machine learning system can only recognize, for example, greasy pizza box contamination in an organics waste bin or a black plastic garbage bag in a bin allowing only clear plastic bag, but not a white medical waste bag in the same bin. An overfitted ML model such as that described in Dr. Greenspun's experiments would not have any real-world significance or be deployable in any meaningful service.

51.     In my opinion, all of this shows that RTS used Compology-generated labeled and tagged images to train its ML models for contamination or used results from those models to conduct transfer learning to a current ML model for contamination.

52.     Dr. Greenspun also opines in paragraph 106 of his rebuttal report that a model trained on Compology-generated labeled and tagged images would be difficult to transfer. This misses the point.[14] The extraordinary value of a pre-trained model built on labeled and tagged images from Compology camera systems would have taken significant time and effort to train and would be worth the effort to transfer.

53.     RTS had deployed over 2,600 Compology cameras that uploaded three or four images per day. During just one year, RTS would have had almost three million images in their

---

[14] Dr. Greenspun also erroneously states that "even Mr. Hoarty admitted that his one experience of using transfer learning took eighteen months." Greenspun Rebuttal Report at 106. This is inaccurate. The entire research and development experiment from conception to implementation in a smart TV environment took the eighteen months that I stated, which included building and training the ML model. The actual transfer learning process took less than one month.

19

possession. If RTS did not use transfer leaning from a different ML architecture (e.g.—ResNet), they could have built a new model in ConvNeXt using their millions of images and then used fine tuning to further train the model with images from Pello cameras which, in fact, they reported they were doing to SDTC. As I mentioned before, RTS destroyed the evidence of these undertakings, and can't show that Dr. Greenspun's experiments are what RTS in fact, did. Notably, Dr. Greenspun does not even address the fact that Mr. Laraki destroyed RTS's ML models that used Compology-generated labeled and tagged images to train those models, as well as the Compology-generated labeled and tagged images themselves that were used to conduct the training. I find Dr. Greenspun's omission to be highly relevant to show that this is, in fact, what RTS did.

## V.     IT IS IMMATERIAL THAT I DID NOT PROVIDE DOLLAR FIGURES TO SHOW INDEPENDENT ECONOMIC VALUE OF THE TRADE SECRETS[15]

54.     I disagree with Drs. Baker and Greenspun's opinions that I did not perform an analysis on independent economic value because I did not specify a dollar figure. My opening report identifies the facts that I believe are important as an engineer to show that each of the Compology trade secrets has independent economic value. I stated in my deposition that the Compology camera system "has economic value by virtue of the trade secrets embodied therein remaining secret. As but one example, it took Compology 10 years and tens of thousands of person-hours to develop the Compology camera system and software, as well as expenditures of $40 million in investment capital to develop and refine" and explained why I came to that conclusion. *See* Deposition of L. Hoarty ("Hoarty Dep. Tr.") at 53:5-54:10. I explained how it was reasonable to conclude that ten years was a credible amount of time to develop the

---

[15] *See* Baker Rebuttal Report at ¶ 91; Greenspun Rebuttal Report at ¶¶ 113-116.

hardware, image labeling and tagging, and development of the software. *See id.* at 55:13-56:7 ("I

think ten years looked very credible."). I also stated what I understood the economic value of

each of the trade secrets to be. *See id.* at 185:21-186:6 (overall waste metering trade secret);

227:12-230:25 (Compology smart camera apparatus, optical assembly and design, labeled and

tagged images, contamination detection machine learning model, SPID machine learning model,

etc.).

55.     I am also informed by RoadRunner's executives to conclude that the Compology

trade secrets have independent economic value. Mr. Graham Rihn, RoadRunner's CEO, said in

his deposition that Compology's technology was a motivating factor and had a significant impact

on RoadRunner's business (Deposition of Graham Rihn at 45:22-46:21):

> Q And what reasons justified or motivated that continued interest in the opportunity to
> acquire Compology?
> A I would say what brought -- what brought up our conviction a lot was we piloted the
> technology after -- I believe after I had met with Jason Gates at WasteExpo, we met --
> you know, we met up at WasteExpo, and the next step from that conversation -- because
> the conversation acquisition/merger was mentioned, and one of the next steps was to be
> able to pilot. And I wanted to -- we sorts of wanted to see what the technology could do.
> **We had an idea of the impact it could make to RoadRunner. But as a result of that
> pilot, that made it very real for us. And if I look back, like that's certainly actually
> becoming a user of the technology and the insights it creates is what built very high
> conviction internally at RoadRunner**.
> Q Were there **other assets or things of value that RoadRunner could acquire through
> a purchase of Compology**?
> A **We were most focused on the technology and what it could do for RoadRunner**.

56.     Mr. Rihn further stated that RoadRunner would benefit greatly from Compology's

technology, leading to their decision to acquire Compology. *See id.* at 47:22-48:5 ("Having the

ability to know how full a container is **allows RoadRunner to benefit greatly**, not only

RoadRunner but our customers. And **being able to identify and have a view of the stream**, you

know, ultimately was **another very large opportunity for RoadRunner**. We focused on

customer satisfaction and experience as a result as well as RoadRunner's business financial

impact. Q And so that business thesis – those **business thesis benefits you just described, those**

**would be if RoadRunner was to deploy the Compology technology in bins that it managed,**

**correct? A Correct**.").

    57.    In addition, Mr. Steve Krebs, RoadRunner's COO and CFO, said in his deposition

that he models the impact on RoadRunner's business that is empowered by Compology's

technology. *See* Deposition of Steve Krebs at 145:9-24:

```
 9    Q. Okay.  So if I understand you correctly --
10 I've been asking the value of Compology to
11 RoadRunner --
12    A. Mm-hmm.
13    Q. -- but it sounds like what you're saying
14 is the value is baked in in terms of where
15 RoadRunner was trying to gather, get, project data,
16 and you're saying this is how the acquisition of
17 Compology fits into that plan, that operating plan,
18 where you're trying to get to in the future?
19    A. Yeah.
20    Q. Okay.
21    A. Yeah.  I can -- I can -- I can pluck the
22 parts of the model attribution that are empowered by
23 that technology and bolstered by that technology and
24 subtotal those versus the ones that are not.
```

These are examples from Messrs. Rihn and Krebs' depositions that show RoadRunner's

executives thought that Compology's trade secrets were valuable and acquired the company to

obtain their value.

    58.    Based on my own experience as an engineer with over 40 years of experience and

my review of RoadRunner's executives' depositions, I conclude that each of Compology's trade

secrets has independent economic value. I do not agree that because I could not identify a dollar

figure for each of Compology's trade secrets that I did not opine on their value.

## VI.   <u>CONCLUSION</u>

22

59. My opinions are based on the information that has been provided to me as of the date of my report. As additional information becomes available, I reserve the right to review such information and amend my opinions, if necessary. Also, if requested, I will analyze and provide opinions about the work performed by other experts or individuals involved in this case.

60. I submit this opposition expert report in accordance with Fed. R. Civ. P. 26. My analysis of the information relevant to this case is ongoing. I expect to continue reviewing information as it is presented to me, and it is possible that this new information may affect certain conclusions in this report. I reserve the right to supplement or amend this report, such as based on additional documents, testimony, and/or other information in this case.

61. I expect to testify at trial regarding the opinions rendered in this opposition report and in any supplemental report that I may provide in this litigation. I reserve the right to provide an expert report addressing any issues or claims raised by Defendants or its experts with respect to the technology in this case.

DATED: 9/20/2024

DocuSigned by:

W. Leo Hoarty

W. Leo Hoarty

# Expert Witness Consultant—Curriculum Vitae

**W. Leo Hoarty**                                          leo@wlhconsulting.llc
**Mountain View, CA**                                          **408-500-9999**

## Professional Profile

A professional engineer with over 40 years of experience in both electronics engineering and computer science holding 48 granted US patents in many areas of technology. He is an experienced Expert Witness consultant with over 15 years of experience in multiple patent infringement matters in jury trials as well as with IPRs/PTAB. His background includes considerable experience in the development of all levels of complex software systems as well as designing and bringing to market electronic hardware products. He has authored numerous technology papers on data communications, consumer electronics, and broadcast & cable television technology and he has served on the Standards Committees of ATSC, ISO/MPEG, OpenCable, and IEEE.

## Technology Background

### Technology Expertise:
Artificial Intelligence (AI/ML), [Enterprise Neurosystem, Vizio]
Audience measurement [Vizio]
Automatic Content Recognition (ACR), audio&video [Viggle, SweetVinyl, Vizio]
Cable and satellite settop design [Motorola, ActiveVideo, MovieBeam]
Consumer electronics product design [MovieBeam, Mediatronics, SweetVinyl]
DSP, audio/video codecs [ActiveVideo, Dotcast, SweetVinyl, Vizio]
Digital watermarking, digital rights mgmt. [19 Entertainment, MovieBeam, Vizio]
Electronic circuit design [ActiveVideo, Dotcast, SweetVinyl, Enterprise Neurosystem]
Interactive television systems [ActiveVideo, Inscape]
Mobile app development, iOS & Android [Aviga, 19 Entertainment, SweetVinyl]
Speech recognition [Aviga, 19 Entertainment, Vizio]
Video-on-demand [Inscape, ActiveVideo, Google]

### Software Languages and Tools:
Languages: all C languages, F#, Java, Python, HTML/CSS/JavaScript
OS: Android, Linux, iOS, MacOS, Windows
VM & Cloud: VMware, AWS
Debug: Android Studio, adb, Eclipse, Understand, Wireshark, Xcode
ML/AI Tools: TensorFlow, PyTorch, GPT API

## Expert Witness Summary

Expert witness, PTAB declarations, source code reviews, depositions, court appearances for:
AC Nielsen, ActiveVideo Networks, Amazon, Arris Corp., DirecTV, DISH Networks, Fandango, Google, LG Electronics, Motorola, Roku, Rovi (TiVo), Samsung, Solaborate, Vizio

Total cases: 40 | PTAB: 11 | Depositions: 20 | Court appearances: 3
Detailed case history available on request.

## Expert Witness Consultant—Curriculum Vitae

### Employment History

| To | Present | **WLH Consulting, LLC** |
|----|---------|-------------------------|
| From | 2011 | Mountain View, CA |
| Position | *Principal* | |

**Expert Witness Consultant**: Expert witness consulting for patent litigation matters with significant experience in prior art analysis; expert witness/IPR report generation; software analysis of complex code bases; court room testimony experience in US federal court and the High Court of England including significant international patent litigation experience.

**IP Development Summary**: Intellectual property consulting for technology companies drafting patent applications and assisting in patent prosecution. Companies include: Vizio, Google, ActiveVideo Networks, Viggle, epoxy.ai

**Technology Consultant** in cloud-based media management, automated content recognition (ACR), voice recognition systems, video-on-demand, targeted advertising and dynamic ad insertion, Internet streaming technologies, and mobile and automotive app development.

**Technology Manufacturing:** Owner and President of SweetVinyl, Inc., a boutique manufacturer of high-end audio products. The company imports Linux-based subsystems from Asia combined with locally manufactured components. Proprietary software integrated with imported subsystem. Published iOS and Android apps for tablets/smart phones for remote control of products.

| To | 2011 | **Interactive Mobile Media Inc.** |
|----|------|-----------------------------------|
| From | 2007 | Campbell, CA |
| Position | *President* | |

**Summary**: dba Aviga, company provided development of voice-activated mobile device applications for major media companies as well as embedded systems for automotive applications. Customers included: **19 Entertainment:** (Owner of *American Idol*) developed voice-response music player; **Viggle:** TV affinity iOS & Android app—developed proprietary automated content recognition (ACR) technology for identifying TV programming via a mobile app.

| To | 2007 | **Google Inc.** |
|----|------|-----------------|
| From | 2006 | Mountain View, CA |
| Position | *Technology Consultant* | |

**Summary**: Managed special projects group in the development of a new product division for auctioning of television ad time for placement with major satellite and cable television operators. Developed architecture for ad network-connected ingest system that automated the processing of television ads for the Google service.

| To | 2006 | **Dotcast Inc.** |
|----|------|------------------|
| From | 2000 | Mountain View, CA |
| Position | *Founder, President & Chief Technology Officer* | |

**Summary**: Formed company and raised significant funds of over $250 million from a mix of strategic partners and VC's; grew company to over 170 employees; as CTO, built group to developed proprietary TV settop box using custom system-on-a-chip (SoC) for a consumer service called *MovieBeam* that won Best of Show at the Consumer Electronics Show in Las Vegas two years (2004 & 2005); the settop was distributed nationwide in top 100 DMAs thru major consumer product outlets and provided first-run (day and date) feature films from all major film studios.

## Expert Witness Consultant—Curriculum Vitae

| To | 1999 | **EnCamera Sciences Corp.** |
|----|------|------|
| From | 1997 | Scottsdale, AZ |
| Position | *Partner* | |

**Summary**: Developed novel metropolitan-area wireless data transmission technology embedding high-speed data signal in existing TV broadcast channels as well as developed a novel MPEG video compression system. Acquired by The Walt Disney Company, both technologies became foundation for its *MovieBeam* wireless set-top service.

| To | 1997 | **ICTV Inc. (renamed ActiveVideo Networks in 2006)** |
|----|------|------|
| From | 1990 | San Jose, CA |
| Position | *Founder, President & Chief Technology Officer* | |

**Summary**: Developed and deployed one of the first interactive TV and video-on-demand systems for cable TV. Designed and built custom interactive TV settop box integrated with GI/Motorola base. Worked with CableLabs on many cable TV standards including the OpenCable initiative. Partnered with IBM and deployed the first interactive TV/VOD system on Cox Cable in 1994.

| To | 1989 | **PaineWebber** |
|----|------|------|
| From | 1986 | New York, NY |
| Position | *Vice President, Capital Market Systems* | |

**Summary**: VP in charge of the development of advanced real-time equities trading and hedging advisory system. Deployed one of the first functioning artificial intelligence-based system on Wall Street providing real-time hedging advisories to the equities block desk.

| To | 1986 | **Goldman Sachs & Co.** |
|----|------|------|
| From | 1984 | New York, NY |
| Position | *Vice President, Trading Support Systems* | |

**Summary**: Developed real-time securities information systems. Designed and supervised trading systems installations in branch offices in London and Tokyo. Designed financial data analysis system working with the noted economist, Fischer Black, to develop real-time equities hedging analysis using the Black-Scholes pricing model.

| To | 1984 | **United Nations** |
|----|------|------|
| From | 1979 | New York, NY |
| Position | *Technical Advisor, United Nations Development Program (UNDP)* | |

**Summary**: served as Technical Advisor in Computer Methods in support of various projects in developing nations, based at UN headquarters in New York and Geneva. Traveled extensively to countries in Africa, South America, the Caribbean, and Asia to assist with providing computer automation for UNDP field projects including population census, agricultural surveys, and water resource development.

| To | 1979 | **ACM Technology** |
|----|------|------|
| From | 1974 | San Francisco, CA |
| Position | *Owner* | |

**Summary**: Operated a contract electronics engineering firm. Designed custom computer numerically controlled (CNC) systems using microprocessor and minicomputer-based controllers. Provided automation to medical research lab, professional photo printing, and wood products manufacturer. Contracted by the United Nations to design and build a digital voting system for the General Assembly Hall.

W. Leo Hoarty

# Expert Witness Consultant—Curriculum Vitae

**Extracurricular Activities:**

| | | |
|---|---|---|
| To | current | **Enterprise Neurosystem (sponsored by the Red-Hat division of IBM)** |
| From | 2022 | San Francisco, CA |
| Position | | *Data Acquisition, Signal Processing & ML Consultant* |

- Designed biological monitoring systems for agricultural and climate monitoring projects. Developed novel system for monitoring beehives using MEMS-based ultrasonic acoustic sensors. System design also includes atmospheric sensors to measure temperature, humidity, methane, $CO_2$, among other parameters. An on-site processor system digitizes and preprocesses the data for transmission to a machine learning system.

- Beehive clusters from all over the world will link to an IBM federated learning ML system allowing scientists to better understand stresses on honeybee colonies and help mitigate the significant decline in the honeybee population. The system will also be useful for monitoring regional climate change.

- The USDA announced collaborating with our group at the COP27 conference in Egypt (11/22). We co-sponsored in May 2023 a smart agriculture technology summit with the USDA called "AIM4C". I presented a paper on sensor systems for monitoring nature's networks. Al Gore and John Kerry both spoke at the conference along with Agriculture Secretary Vilsack.

- The group is further working with the United Nations CNTC, a peer group of the Inter-governmental Panel on Climate Change (IPCC). At COP28 in Dubai, the UN CNTC announce engaging Enterprise Neurosystem for multiple environmental monitoring projects in East Africa.

**Professional Associations, Standards Bodies Participation and Awards:**

- Delivered papers to and presented at numerous technical conferences in U.S., Asia and Europe including the National Association of Broadcasters (NAB), National Cable Television Association (NCTA), Society of Cable Telecommunication Engineers (SCTE), International Broadcast Conference (IBC) and the Montreux International Television Symposium, as well as many IEEE conferences and other industry related trade shows. (Papers available upon request.) Published two technical articles in trade magazines on graphics systems and networking.

- Member of IEEE, SMPTE, SCTE and Association of Computing Machinery (ACM).

- Served on many standards bodies over several decades including: ISO MPEG2, ATSC (HDTV standards), IEEE (802.14), CableLabs for plant and set-top standards efforts, EIA for cable TV compatibility (IR pass-through) and, in conjunction with CableLabs, cable TV interfaces such as CableCard.

- Awards: Society of Cable Television Engineers (SCTE)—Best New Technology at National Cable Television Association (NCTA) 1996 for ICTV's interactive TV and VOD service; Best of Show at CES 2004 and 2005, MovieBeam set-top and service; 2003 Emmy Award went to Vizio, Inc for their precision audience measurement service which utilizes my patented audio automated content recognition (ACR) technology.

**Education:**

| | | |
|---|---|---|
| To: | 1973 | **Ohio State University** |
| From: | 1970 | Electrical Engineering |

# Expert Witness Consultant—Case History

**W. Leo Hoarty**                                                    **leo@wlhconsulting.llc**
**Mountain View, CA**                                              **408-500-9999**

## Expert Witness Summary

Expert witness, PTAB declarations, depositions, and court appearances for:
ActiveVideo, Akami, Alphonso.tv, Amazon, Arris Corp., Charter Cable, Cox Communications,
DirecTV, DISH Networks, Fandango, Google, HSN, LG Electronics, Motorola, AC Nielsen,
NEC, Roku, Rovi (TiVo), Samsung, Solaborate, Vizio

Total cases: 40 | PTAB: 11 | Depositions: 20 | Court appearances: 3

## Litigation Support Experience: (Representing the underlined party)

### 40. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Theft of Trade Secret |
| Law Firm: | Sterne Kessler LLP |
| Case Name: | Global TellLink v. JACS Solutions |
| Services Provided: | Representing as expert witness |
| Disposition: | Trade Secret analysis and declaration drafting. Jury trial expected in 2024. |
| Date: | 2023 |

### 39. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Software Source Code Review |
| Law Firm: | Jeffer Mangels Butler & Mitchell LLP |
| Case Name: | Roadrunner Recycling v Recycle Track System |
| Services Provided: | Representing Road Runner as expert witness |
| Disposition: | Software source code analysis and declaration drafting. Jury trial expected in 2024. |
| Date: | 2023 |

### 38. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Law Firm: | Kilpatrick Townsend |
| Case Name: | Entropic Inc. v. Cox Communications, et al. |
| Services Provided: | Representing Cox Comm. as expert witness |
| Disposition: | Patent analysis and declaration drafting of infringement defense response. Jury trial expected in 2024. |
| Date: | 2023 |

### 37. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Law Firm: | Arnold & Porter Kaye Scholer LLP |
| Case Name: | Touchstream Technologies, Inc., v. Charter Cable, et al. |
| Services Provided: | Representing Charter as expert witness |
| Disposition: | Patent analysis and declaration drafting of infringement defense response. Jury trial expected in 2024. |
| Date: | 2023 |

# Expert Witness Consultant—Case History

### 36. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Inter-Partes Review |
| Law Firm: | Fish & Ricardson, P.C. |
| Case Name: | SafeCast Limited v. DISH Network |
| Services Provided: | Representing Dish Network as expert witness |
| Disposition: | Patent analysis and declaration drafting of IPR defense response. |
| Date: | 2023 |

### 35. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Inter-Partes Review |
| Law Firm: | Liston Abramson LLP |
| Case Name: | WAG Acquisitions v Walt Disney Company |
| Services Provided: | Representing WAG as expert witness |
| Disposition: | Patent analysis and declaration drafting of multiple IPR defense responses. Deposed on three declarations. |
| Date: | 2023 |

### 34. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Software Source Code Review |
| Law Firm: | Liston Abramson LLP |
| Case Name: | WAG Acquisitions v Walt Disney Company |
| Services Provided: | Representing WAG as expert witness |
| Disposition: | Completed software code review of Disney+, Hulu, MLB streaming software, prepared report |
| Date: | 2022 |

### 33. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Theft of Trade Secrets |
| Law Firm: | Goodwin Procter, LLP |
| Case Name: | Alphonso v. Tremor, Inc. |
| Services Provided: | Representing Alphonso as expert witness |
| Disposition: | Preparing expert report |
| Date: | 2022 |

### 32. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Software Source Code Review |
| Law Firm: | Fabricant LLP |
| Case Name: | Jawbone v. Samsung, Inc. et al. |
| Services Provided: | Representing Jawbone as expert witness |
| Disposition: | Complete code review of Samsung subsidiary digital signal process software system, preparing report. |
| Date: | 2022 |

### 31. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | D. Del. - No. 22-cv-00987 |
| Law Firm: | Baker Botts LLP |
| Case Name: | NEC Corporation v. Peloton Interactive, Inc. et al. |
| Services Provided: | Representing NEC as expert witness |
| Disposition: | Initial preparations delayed pending motions |
| Date: | 2022 |

### 30. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Theft of Trade Secrets |
| Court and No.: | California State Court - No. 1113 |

## Expert Witness Consultant—Case History

| | |
|---|---|
| Law Firm: | Jeffer Mangels Butler & Mitchell, LLP |
| Case Name: | Solaborate v. Avaya, Inc. |
| Services Provided: | Representing Solaborate as expert witness and providing both electronic hardware and software source code examination of their products compared to similar Avaya devices |
| Disposition: | Deposed 6/2022, defendant settled in 2023. |
| Date: | 2022 |

### 29. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | W.D. Tex. - No. 20-cv-00921 |
| Law Firm: | Fenwick & West LLP |
| Case Name: | Broadband iTV, Inc, v. Amazon.com, Inc. |
| Services Provided: | Representing Amazon as expert witness |
| Disposition: | Deposed 7/2021, matter settled |
| Date: | 2021 |

### 28. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | D.N.J. - No. 21-cv-13405 |
| Law Firm: | Irell & Manella, LLP |
| Case Name: | WinView Inc. v. DraftKings Inc. |
| Services Provided: | Representing Winview as expert witness. |
| Disposition: | Discovery phase, case on hold |
| Date: | 2021 |

### 27. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | W.D. Tex. - No. 19-cv-00044 |
| Law Firm: | Jackson Walker LLP |
| Case Name: | ESW Holdings, Inc. v. Roku, Inc. |
| Services Provided: | Representing Roku as expert witness |
| Disposition: | Deposed by ESW counsel. Case decided in favor of defendant in a summary judgement based on my expert report. |
| Date: | 2021 |

### 26. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | E.D. Tex. - No. 19-cv-00089 |
| Law Firm: | Choate Hall |
| Case Name: | Personalized Media Communications v Akamai |
| Services Provided: | Representing Akamai as technical expert; |
| Disposition: | Matter settled |
| Date: | 2020 |

### 25. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | D.N.J. - No. 18-cv-10238 |
| Law Firm: | Morgan, Lewis & Bockius LLP |
| Case Name: | TVnGO v LG Electronics |
| Services Provided: | Representing LG Electronics as expert witness; appeared in Federal court to testify as an expert at Markman hearing |
| Disposition: | Case dismissed on summary judgement |
| Date: | 2019 |

## Expert Witness Consultant—Case History

### 24. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement / Inter-Partes Review |
| Law Firm: | Goodwin Procter, LLP |
| Case Name: | First Media v Alphonso |
| Services Provided: | Represented Alphonso as expert witness; participated in two PTAB matters; filed expert declarations in defense of two Alphonso patents |
| Disposition: | Deposed 2020, both patents successfully defended, petitions rejected |
| Date: | 2019 |

### 23. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement |
| Court and No.: | C.D. Cal. - No. 17-cv-07534 |
| Law Firm: | Rothwell, Figg, Ernst & Manbeck, P.C. |
| Case Name: | Maxell v. Fandango |
| Services Provided: | Represented Fandango as expert witness |
| Disposition: | Matter settled |
| Date: | 2018 |

### 22. Expert Engagement:

| | |
|---|---|
| Type of Matter: | Patent Infringement / Inter-Partes Review |
| Court and No.: | PTAB – Nos. IPR2016-01469 and IPR2016-01470 |
| Law Firm: | Cooley LLP |
| Case Name: | TQ Delta v. DISH Network |
| Services Provided: | Represented DISH Network as expert witness; Prepared two expert declarations for IPR submission, deposed twice, once for each matter; Supported petitioner defense from appeal |
| Disposition: | Both petitions instituted and survived appeal |
| Date: | 2016-2018 |

## ATTACHMENT C
## MATERIALS CONSIDERED

### Bates Labeled Documents[1]

| | | |
|---|---|---|
| RTS_00000709 | RTS_00000740 | RTS_00263857 |
| RTS_00263863 | RTS_00263886 | RTS_00322579 |
| RTS_00311065 | RTS_00311066 | RTS_00311067 |
| RTS_00311070 | RTS_00311084 | RTS_00311085 |
| RTS_00311090 | RTS_00311095 | RTS_00311105 |
| RTS_00311107 | RTS_00311108 | RTS_00311109 |
| RTS_00311115 | RTS_00311116 | RTS_00311117 |
| RTS_00311118 | RTS_00311119 | RTS_00311120 |
| RTS_00311121 | RTS_00311155 | RTS_00311156 |
| RTS_00000062 | RTS_00000077 | RTS_00000082 |
| RTS_00000083 | RTS_00000118 | RTS_00000126 |
| RTS_00000141 | RTS_00000255 | RTS_00000260 |
| RTS_00000474 | RTS_00000480 | RTS_00000503 |
| RTS_00000522 | RTS_00000581 | RTS_00000587 |
| RTS_00000599 | RTS_00000600 | RTS_00000608 |
| RTS_00000614 | RTS_00000617 | RTS_00000622 |
| RTS_00000624 | RTS_00000637 | RTS_00000638 |
| RTS_00000641 | RTS_00000663 | RTS_00000673 |
| RTS_00000679 | RTS_00000680 | RTS_00000735 |
| RTS_00000738 | RTS_00000756 | RTS_00000760 |
| RTS_00000761 | ROADRUNNER000000119 | ROADRUNNER000003423 |

---

[1] Unless otherwise indicated, documents are identified by the Bates Label appearing on the first page of the document.

| | | |
|---|---|---|
| ROADRUNNER000003580 | ROADRUNNER000017801 | ROADRUNNER000021240 |
| ROADRUNNER000021674 | ROADRUNNER000021690 | ROADRUNNER000021692 |
| ROADRUNNER000021819 | ROADRUNNER000021826 | ROADRUNNER000021672 |
| ROADRUNNER000021855 | ROADRUNNER000021913 | ROADRUNNER000021952 |
| ROADRUNNER000022503 | ROADRUNNER000022687 | ROADRUNNER000022749 |
| ROADRUNNER000022865 | ROADRUNNER000023077 | ROADRUNNER000023126 |
| ROADRUNNER000023128 | ROADRUNNER000023184 | ROADRUNNER000023307 |
| ROADRUNNER000023500 | RTS_00311157 | RTS_00311158 |
| RTS_00311159 | RTS_00311160 | RTS_00060876 |
| RTS_00087795 | RTS_00182278 | RTS_00001003 |
| RTS_00001064 | RTS_00016894 | RTS_00016984 |
| RTS_00017421 | RTS_00017465 | RTS_00108281 |
| RTS_00339710 | RTS_00318118 | RTS_00000790 |
| RTS_00000842 | RTS_00000908 | RTS_00000982 |
| RTS_00000987 | RTS_00259352 | RTS_00176591 |
| RTS_00176594 | RTS_00176597 | RTS_00189279 |
| RTS_00259310 | RTS_00066189 | RTS_00105953 |
| ROADRUNNER000063606 | ROADRUNNER000043285 | ROADRUNNER000028673 |
| ROADRUNNER000043283 | ROADRUNNER000028683 | ROADRUNNER000028688 |
| ROADRUNNER000028691 | ROADRUNNER000074158 | ROADRUNNER000073285 |
| ROADRUNNER000073283 | RTS_SC_0000160 | ROADRUNNER000073224 |
| RTS_00121802227 | RTS_SC_0000026-32 | RTS_SC_0000202 |
| RTS_SC_0000106-109 | RTS_SC_0000230 | RTS_SC_0000098-103 |
| RTS_SC_00000104 | RTS_SC_000097 | RTS_SC_0000229 |
| RTS_SC_0000073 | RTS_SC_0000238 | RTS_SC_0000012 |

| | | |
|---|---|---|
| RTS_SC_0000013 | RTS_SC_0000008-13 | RTS_SC_0000014 |
| RTS_SC_0000014-16 | RTS_SC_0000159-161 | RTS_SC_0000071 |
| RTS_SC_0000072 | RTS_SC_0000075 | RTS_SC_0000073 |
| RTS_SC_0000076 | ROADRUNNER000073345 | RTS_00335965 |
| RTS_00263020-125 | RTS_00318119 | RTS_00339710-16 |
| RTS_00339711 | RTS_00001064 | RTS_00263025 |
| RTS_00060547 | ROADRUNNER000028673 | ROADRUNNER000028683 |
| ROADRUNNER000028688 | ROADRUNNER000028691 | RTS_00001028 |
| RTS_00064266 | RTS_SC_000000254 | RTS_00064266 |
| RTS_00017645 | RTS_00263025 | RTS_00338926 |
| RTS_00318120 | RTS_00318121 | RTS_00333850 |
| RTS_00335958 | RTS_00335970 | RTS_00344191 |
| RTS_00344236 | RTS_00344259 | RTS_00344263 |
| RTS_00344269 | RTS_00344291 | RTS_00344366 |
| ROADRUNNER000042517 | RTS_00179275 | RTS_00252039 |
| RTS_00334156 | RTS_00338926 | |

## **Deposition Transcripts**

- Deposition of Yahya Laraki
- Rule 30(b)(6) Deposition of Carl Anderson, Vol. I
- Rule 30(b)(6) Deposition of Carl Anderson, Vol. II
- Rule 30(b)(6) Deposition of Cason Male
- Deposition of Steven Krebs
- Deposition of Graham Rihn
- Deposition of W. Leo Hoarty (rough draft)

**Pleadings and Other Legal Filings**

- Plaintiff's First Amended Complaint (Dkt. No. 15)

- Plaintiff's Second Amended Complaint (Dkt. No. 45-2)

- Plaintiff's Identification of Trade Secrets and exhibits thereto (Dkt. Nos. 46, 47)

- Order re Motions to Seal (Dkt. No. 93)

**Physical Devices**

- Pello devices

- Pello prototypes/early devices (in person)

- Compology R11, R12, R13, R13S, R13L

**Source Code**

- RTS Source Code (Mintz Levin, Boston, Massachusetts)

- Compology Source Code

**Articles**

- Studer, L., *et al.*, A Comprehensive Study of ImageNet Pre-Training for Historical Document Image Analysis, *available at* https://ar5iv.labs.arxiv.org/html/1905.09113v1 (accessed Aug. 28, 2024)

- Zhang, J, *et al.*, ImageNet Pre-training also Transfers Non-robustness, *available at* https://ar5iv.labs.arxiv.org/html/2106.10989 (accessed Aug. 28, 2024)

- He, K., *et al.*, Rethinking ImageNet Pre-training, *available at* https://ar5iv.labs.arxiv.org/html/1811.08883v1 (accessed Aug. 28, 2024)

- EfficientNet: Rethinking Model Scaling for Convolutional Neural Networks, available at https://arxiv.org/pdf/1905.11946 (accessed Aug. 30, 2024), shows transfer learning between models.

**Patents and Patent Application Publications**

- U.S. Patent No. 10,943,356

- U.S. Patent No. 11,122,388

- U.S. Patent No. 11,172,325

- US Patent No. 10,332,197

- US Patent No. 9,930,429

- U.S. Patent Application Publication No. 2023/0196307

- U.S. Patent Application Publication No. 2014/0278630

- U.S. Patent Application Publication No. 2021/0158308

- U.S. Patent Application Publication No. 2020/0013024

- U.S. Patent Application Publication No. 2021/0158097

## Expert Reports

- Opening Expert Report of Philip Greenspun and materials cited therein

- Rebuttal Expert Report of Philip Greenspun and materials cited therein

- Exhibit 2-2 to Rebuttal Expert Report of Philip Greenspun

- Opening Expert Report of R. Jacob Baker and materials cited therein

- Rebuttal Expert Report of R. Jacob Baker and materials cited therein

- Opening Expert Report of Forrest A. Vickery and materials cited therein

**PROOF OF SERVICE**

***RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc. et al.***
**3:23-cv-04804-WHA**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067-4308.

     On September 20, 2024, I served true copies of the following document(s) described as **REPLY EXPERT REPORT OF W. LEO HOARTY** as follows:

**SEE ATTACHED SERVICE LIST**

     **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address Lstreisand@jmbm.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on September 20, 2024, at Los Angeles, California.

_____
Lena Streisand

## SERVICE LIST

### *RoadRunner Recycling, Inc. v. Recycle Track Systems, Inc. et al.*
### *3:23-cv-04804-WHA*

Arameh Zargham O'Boyle
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Email:  AZOBoyle@mintz.com

*Attorneys for Defendants Recycle Track Systems, Inc. and RecycleSmart Solutions, Inc.*

Amy LoBue
James J. Thomson
James M. Wodarski
Matthew S. Galica
Michael C. Newman
Sean Michael Casey
Stephen Huxton Chen
Tianyi Tan
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Emails: alobue@mintz.com
jjthomson@mintz.com
JWodarski@mintz.com
msgalica@mintz.com
mcnewman@mintz.com
SMCasey@mintz.com
schen@mintz.com
TTan@mintz.com
CC:      rts-mintz@mintz.com