Arameh Zargham O'Boyle (SBN: 239495)
azoboyle@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

James M. Wodarski (Admitted *Pro Hac Vice*)
JWodarski@mintz.com
Michael C. Newman (Admitted *Pro Hac Vice*)
mcnewman@mintz.com
Matthew S. Galica (Admitted *Pro Hac Vice*)
MSGalica@mintz.com
James J. Thomson (Admitted *Pro Hac Vice*)
JJThomson@mintz.com
Sean M. Casey (Admitted *Pro Hac Vice*)
smcasey@mintz.com
Tianyi Tan (Admitted *Pro Hac Vice*)
TTan@mintz.com
Stephen Chen (Admitted *Pro Hac Vice*)
SChen@mintz.com
Amy LoBue (Admitted *Pro Hac Vice*)
ALoBue@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:    (617) 542-6000
Facsimile:    (617) 542-2241

Attorneys for Defendants
RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., <br><br> Plaintiff, <br><br> v. <br><br> RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC., <br><br> Defendants. | Case No. 3:23-cv-04804-WHA <br><br> **DEFENDANTS' RECYCLE TRACK SYSTEMS, INC. and RECYCLESMART SOLUTIONS INC.'S BRIEF** <br><br> *Assigned for All Purposes to:* <br> The Hon. William H. Alsup, Courtroom 12 <br><br> Complaint Filed: August 4, 2023 <br> Trial Date: December 9, 2024 |

## I. INTRODUCTION

Plaintiff argues that the Defendants' use of "Compology-generated labeled and tagged images to train its ML models" breached the parties agreement, which somehow constitutes trade secret misappropriation of the images and metadata. *See, e.g.*, Dkt. No. 146-3 at 23-24. Plaintiff's argument is based on a misreading of the *Khoros* district court decision. Plaintiff's cannot claim a trade secret in images and data that the Defendants undisputedly own.

After addressing plaintiff's argument at last week's hearing, the Court asked the parties to assist its understanding of the relevant contractual terms. Specifically, the Court requested that Defendants submit a five-page brief explaining "how it is that this contract allowed [Defendants] not to reverse engineer, but to engineer [their] own software using pictures." *See* November 14, 2024 Hearing. The simple answer is that the contract placed no restrictions on the Defendants' ability to create and use their own software (with a lowercase "s") machine-learning model using images, which is what the Defendants did. The contract only prevented Defendants from accessing and using Plaintiff's specific Software (with an uppercase "S") as their own. Defendants have never done this.

## II. FACTUAL BACKGROUND

Defendants and Plaintiff have entered into three separate agreements. To start, on June 15, 2017, Compology and RecycleSmart entered into a contract that was subject to Compology's Terms & Conditions (as of April 4, 2017). Dkt. No. 147-4 ("2017 Contract"). Subsequently, on November 2, 2020, Compology and RecycleSmart entered into a renewal contract that was subject to Compology's Terms & Conditions (as of November 2, 2020). Dkt. No. 147-5 ("2020 Contract"). Finally, on June 23, 2021, Compology and RecycleSmart entered into a renewal contract that was subject to Compology's Terms & Conditions (as of November 2, 2020) and Modifications to Compology's Terms & Conditions (as of June 23, 2021). Dkt. No. 156-2 ("2021 Contract").

## III. RELEVANT CONTRACT DEFINITIONS AND OWNERSHIP TERMS

The contract defines certain terms relevant to the Court's question. To start, the contract defines Device and Device Data, which, for purposes of the Court's question, relates to Plaintiff's camera sensor and the images taken with it.

> 1.8. "Device" means the cameras, GPS trackers, Bluetooth beacons, sensors, peripheral electronics and firmware offered by Compology along with any enhancements, replacements, updates, upgrades and new versions that Compology makes available. (Dkt. No. 147-5 at 2).
>
> 1.9 "Device Data" means any data collected by Compology through the operation of a Device, including, but not limited to, data relating to GPS location, container movement, and images. (Dkt. No. 147-5 at 3).

Derivative Data and Software are also defined terms in the contract. Derivative Data is information resulting from the processing of Device Data. And, by definition, it is intrinsically and inseparably linked to Software (with an uppercase "S")—because it is "based upon the operation of the Software."

> 1.7. "Derivative Data" means any information or data resulting from the manipulation, processing or analysis of Device Data based upon the operation of the Software, which processing may involve associated databases, algorithms, external data, calculations and other processes, methods or tools. (Dkt. No. 147-5 at 2).

Software (with an uppercase "S") is the *specific object code* that is made available by Compology (*i.e.,* Plaintiff) to Customer (*i.e.,* Defendants).

> 1.16 "Software" means any software program or applications, script, algorithm, database, application programming Interface (API) or other processor instructions of any type, solely in object code format, made available by Compology to Customer on a software-as-a-service basis, and utilized by Compology for the purpose of (a) generating, accessing and processing Customer Data, Device Data and Derivative Data, (b) making such data available to Customer and (c) interfacing or interacting with the Equipment. Software shall be deemed to include all enhancements, improvements, corrections, updates and upgrade releases made to the foregoing by Compology from time-to-time. (Dkt. No. 147-5 at 3).

Based on Section 5.2 of the 2020 Contract, Customer (*i.e.,* Defendants) "own all rights and title to any Device Data and Derivative Data." And, as Section 5.2 goes on to explain, despite accusing Defendants of using their own Device and Derivative Data to train their own models, it is Compology (*i.e.,* Plaintiff) who has to license Defendants' Device and Derivative Data in order to train its machine learning model Software.

> 5.2 Data. Customer owns all rights and title to any Device Data and Derivative Data. Customer hereby grants to Compology a limited, perpetual, irrevocable, non-exclusive license to copy, collect, process, store, generate, and display the Device Data and Derivative Data to the extent necessary to provide the System and to monitor and improve the performance of the System. Additionally, Customer acknowledges and

agrees that during and after the Term of these Terms: (i) Compology and Compology Affiliates may retain and use Device Data and Derivative Data for purposes of providing the Software and Subscription Services to Customer, and for conducting research, product development and product improvement efforts; (ii) Compology may share Device Data and Derivative Data with any Compology Affiliate or with Third-Party service providers for the foregoing purposes, subject to obligations of confidentiality; (iii) Compology may disclose Device Data and Derivative Data if required under applicable law, regulation or court order; and (iv) Compology may use aggregated and anonymized data to provide analytics, information, forecasts, extrapolations, and projections to Customer, its Affiliated Entities, and its prospective customers. Compology may use, reproduce, sell, publicize, or otherwise exploit such aggregated data in any way, in its sole discretion. (Dkt. No. 147-5 at 10).

## IV. THE CONTRACT DOES NOT RESTRICT DEFENDANTS FROM ENGINEERING THEIR OWN MACHINE LEARNING MODELS

The Court's question asks "how it is that this contract allowed [Defendants] not to reverse engineer, but to engineer [their] own software using pictures." *See* November 14, 2024 Hearing. Initially, Section 2.1.5 of the 2020 Contract described the Parties' "Usage and Access Rights" with respect to Derivative Data, Device Data, and Software. In the 2021 Contract, the Parties mutually and expressly agreed to clarify what the scope and meaning of Section 2.1.5 of the 2020 Contract had always meant by adding "avoidance of doubt" language that directly addressed what the Customer was permitted to do with respect to Derivative Data, Device Data, and the Software:

> For the avoidance of doubt, the foregoing covenant and agreement is intended solely to prevent Customer from attempting to recreate or reverse-engineer Derivative Data generated by the Software from Device Data and shall not otherwise restrict the Customer from manipulating or processing Device Data for any purpose or by any means. (Dkt. No. 156-2 at 6).

Plaintiff believes its Software is proprietary and valuable. Section 2.1.5 addresses only that Software and prevents Defendants from taking and using only that specific Software to "recreate or reverse-engineer Derivative Data" which, as the contract states, is "*generated by the Software* from Device Data." *Id*. The Software is Plaintiff's *exact and specific* machine learning models, *as specifically defined "solely in object code format*." Dkt. No. 147-5 at 3 (citing Section 1.16). Section 2.1.5 was, therefore, intended to prevent the Defendants from taking and using plaintiff's specific Software, *i.e.*, object code, and using it to recreate or reverse-engineer any Derivative Data. No allegation has been made, nor could there be, that the Defendants had access to, let alone took and

used, plaintiff's Software. The Defendants never used Plaintiff's Software on any Device Data to generate any Derivative Data.

Separately, there is nothing in the contract that prevents Defendants from using Derivative or Device Data—which they own—to train or engineer their own software (with a lowercase "s") machine learning models. That is what Defendants did. Further, there is nothing in the contract that prevents Defendants from using their own machine learning models to manipulate or process Device Data. In fact, the amendment to the contract states that it "shall not otherwise restrict the Customer from manipulating or processing Device Data for any purpose or by any means." Dkt. No. 156-2 at 6.

Accordingly, to answer the Court's question, Defendants were permitted to use their own image data—which they contractually own—to train or engineer their own software (with a lowercase "s") machine learning models. Nothing in the contract prevents them from doing so.

| Dated: November 18, 2024 | /s/ Matthew S. Galica |
|---|---|
| | Arameh Zargham O'Boyle (SBN: 239495) |
| | azoboyle@mintz.com |
| | MINTZ, LEVIN, COHN, FERRIS, |
| |   GLOVSKY, AND POPEO, P.C. |
| | 2049 Century Park East, Suite 300 |
| | Los Angeles, CA 90067 |
| | Telephone: 310-586-3200 |
| | Facsimile: 310-586-3202 |
| | |
| | James M. Wodarski (Admitted *Pro Hac Vice*) |
| | JWodarski@mintz.com |
| | Michael C. Newman (Admitted *Pro Hac Vice*) |
| | mcnewman@mintz.com |
| | Matthew S. Galica (Admitted *Pro Hac Vice*) |
| | MSGalica@mintz.com |
| | James J. Thomson (Admitted *Pro Hac Vice*) |
| | JJThomson@mintz.com |
| | Sean M. Casey (Admitted *Pro Hac Vice*) |
| | smcasey@mintz.com |
| | Tianyi Tan (Admitted *Pro Hac Vice*) |
| | TTan@mintz.com |
| | Stephen Chen (Admitted *Pro Hac Vice*) |
| | SChen@mintz.com |
| | Amy LoBue (Admitted *Pro Hac Vice*) |
| | ALoBue@mintz.com |
| | One Financial Center |
| | MINTZ, LEVIN, COHN, FERRIS, |
| |   GLOVSKY, AND POPEO, P.C. |
| | One Financial Center |

Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Attorneys for Defendants
**RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.**