1   JEFFER MANGELS BUTLER & MITCHELL LLP
    STANLEY M. GIBSON (Bar No. 162329)
2   *sgibson@jmbm.com*
    JAMES NEUDECKER (Bar No. 221657)
3   *jneudecker@jmbm.com*
    2 Embarcadero Center, 5th Floor
4   San Francisco, CA 94111
    Telephone:     (415) 398-8080
5   Facsimile:     (415) 398-5584

6   JOSEPH J. MELLEMA (Bar No. 248118)
    *jmellema@jmbm.com*
7   3 Park Plaza, Suite 1100
    Irvine, California 92614-2592
8   Telephone:     (949) 623-7200
    Facsimile:     (949) 623-7202

9
    LENA STREISAND (Bar No. 339021)
10  *lstreisand@jmbm.com*
    1900 Avenue of the Stars, 7th Floor
11  Los Angeles, CA 90067-4308
    Telephone: (310) 203-8080
12  Facsimile: (310) 203-0567

13  Attorneys for Plaintiff
    ROADRUNNER RECYCLING, INC.
14

15                  **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17

18  ROADRUNNER RECYCLING, INC.,              Case No. 3:23-cv-04804-WHA

19          Plaintiff,                        **RESPONSE TO DEFENDANTS
                                              RECYCLE TRACK SYSTEMS, INC. AND
20          v.                                RECYCLESMART SOLUTIONS, INC.'S
                                              BRIEF [DKT. 182]**
21  RECYCLE TRACK SYSTEMS, INC.,
    RECYCLESMART SOLUTIONS, INC.,
22
            Defendants.
23
                                             Complaint Filed:     August 4, 2023
24                                           Trial Date:          December 9, 2024

25

26

27

28

1  I.        **INTRODUCTION**

2          Plaintiff RoadRunner Recycling, Inc. ("RoadRunner") hereby responds to Defendants

3   Recycle Track Systems, Inc. and RecycleSmart Solutions, Inc.'s ("Defendants") brief attempting

4   to explain "how it is that this contract allowed [Defendants] not to reverse engineer, but to

5   engineer [their] own software using pictures." Nov. 14, 2024 Hr'g. Defendants cannot adequately

6   answer the Court's request, as the contract plainly states Defendants are not permitted to engineer

7   their own system or machine-learning models, to the extent derived from the System or any

8   component of it or its output, in whole or in part, including through use of Device Data or

9   Derivative Data.

10         The 2020 contract prohibits Defendants from (i) creating derivative works of the System,

11  in whole or in part, (ii) reverse engineering, adapting or deriving any component of the System in

12  whole or in part, and (iii) attempting to recreate or reverse-engineer Derivative Data generated by

13  the Software from Device Data. The contract thus precluded Defendants' conduct in three separate

14  ways.

15         First, the contract precluded Defendants from creating derivative works of the System, or

16  any part thereof (including machine-learning models) using Compology-generated labeled and

17  tagged images, which are part of the System. Second, the contract precluded Defendants from

18  reverse engineering, adapting, or deriving any component of the System (i.e., using Compology

19  images and data to derive a component of the System in whole or in part). Third, the contract

20  precluded Defendants from using Compology-generated labeled and tagged images, or Device

21  Data, to reverse engineer Derivative Data by developing their own machine-learning models that

22  would label images with information, e.g., contaminants, fill level, and dirty lens.

23         Defendants entirely ignore the contract restrictions in (i) and (ii) above, only addressing

24  language appended to the end of Section 2.1.5 from the 2021 Amendment. That language only

25  modifies the last sentence of Section 2.1.5 and does not modify the contract restrictions in (i) and

26  (ii) at all. Even then, Defendants attempt to rewrite Section 2.1.5 to only prevent "Defendants

27  from accessing and using Plaintiff's specific Software (with an uppercase "S") as their own" as

28  though that were part of the Terms, which it is not. That tortured reading ignores that the section is

RESPONSE TO DEFENDANTS' BRIEF

1    a prohibition on what Defendants may reverse-engineer "from Device Data," i.e., Section 2.1.5

2    prohibits Defendants from reversing engineering the Derivative Data (i.e., the contamination, fill

3    level and dirty lens detection) that is generated by Compology's Software. This is exactly what

4    Defendants did when they took Device Data and reversed-engineered the Derivative Data using

5    machine-learning models trained on the Device Data.

6    **II.    RELEVANT CONTRACTUAL TERMS AND CONDITIONS**

7    On November 2, 2020, Compology and RecycleSmart entered into a renewal that was

8    subject to the "Compology Terms and Conditions" ("Terms") in which Compology was to

9    provide, among other things, Compology's System and Subscription Services to RecycleSmart.

10   *See* Dkt. 147-5 (RTS_00276253-280). Under Section 2.1.5 of the 2020 Terms (*id.* at

11   RTS_00276257), RecycleSmart agreed as follows:

> Customer shall not at any time, and shall not permit others to: (i) copy, adapt, modify, or **create derivative works of the System, in whole or in part** except as otherwise expressly set forth herein . . . **reverse engineer,** disassemble, decompile, decode, **adapt**, make error corrections to **or otherwise attempt to derive or gain access to** the source code or **any other component of the System, in whole or in part** . . . . Customer covenants and agrees not to, directly or indirectly, **manipulate or process Device Data**, through interaction with databases, algorithms, external data, calculations and/or other processes, methods or tools, **for the purposes of deriving Derivative Data**. [Emphasis added]

17   On June 23, 2021, Compology and RecycleSmart entered into the Modifications to

18   Compology Terms & Conditions, explicitly adding a sentence that modified *only* the original last

19   sentence of Section 2.1.5 (i.e., the "foregoing covenant and agreement" referring only to the

20   "Customer covenants and agrees" restriction in the preceding sentence):

> Section 2.1.5 - Amended by adding the following sentence to the end thereof:

> For the avoidance of doubt, the foregoing covenant and agreement is intended solely to prevent Customer from attempting to recreate or reverse-engineer Derivative Data generated by the Software from Device Data and shall not otherwise restrict the Customer from manipulating or processing Device Data for any purpose or by any means. [Dkt. 156-2 at RTS_00348105]

25   The Terms define System as:

> 1.18. "System" means the Devices, the Software and/or the combination thereof on an integrated basis to enable the collection, processing and/or delivery of Device Data and Derivative Data.

28   The Terms define Device Data as:

1    1.9 "Device Data" means any **data collected by Compology through the operation of a Device**, including, but not limited to, **data relating to** GPS location, container movement, and **images**. [Dkt. 147-5 at RTS_00276255 (emphasis added)]

2

3    "Device" means "the cameras, GPS trackers, bluetooth beacons, sensors, peripheral

4    electronics and firmware offered by Compology along with any enhancements, replacements,

5    updates, upgrades and new versions that Compology makes available." *Id.* at RTS_00276254. The

6    Terms define Derivative Data as:

7    1.7 "Derivative Data" means any **information or data resulting from the manipulation, processing or analysis of Device Data based upon the operation of the Software**, which processing may involve associated databases, algorithms, external data, calculations and other processes, methods or tools. [*Id.* (emphasis added)]

8

9

10   "Software" means, *id.* at RTS_00266255,

11   any software program or application, script, algorithm, database, application programming interface (API) or other processor instructions of any type, solely in object code format, made available by Compology to Customer on a software-as-a-service basis, and utilized by Compology for the purpose of (a) generating, accessing and processing Customer Data, Device Data and Derivative Data, (b) making such data available to Customer and (c) interfacing or interacting with the Equipment. Software shall be deemed to include all enhancements, improvements, corrections, updates and upgrade releases made to the foregoing by Compology from time-to-time.

12

13

14

15

16   **III.    THE TERMS PROHIBIT DEFENDANTS FROM CREATING DERIVATIVE WORKS OF THE SYSTEM, REVERSE-ENGINEERING THE SYSTEM, AND REVERSE-ENGINEERING DERIVATIVE DATA FROM DEVICE DATA**

17

18   Section 2.1.5 is a restriction on Defendants' rights to create derivative works of the

19   System. "System" includes Software, such as RoadRunner's machine-learning models. That

20   section precludes Defendants from (i) creating derivative works of the System, including using

21   Compology-generated labeled and tagged images to train machine-learning models to derive

22   labeled and tagged images, and (ii) reverse engineering, adapting, or deriving any component of

23   the System, including, for example, by reverse-engineering machine-learning models to derive

24   labeled and tagged images. Defendants breached Section 2.1.5 when they reverse-engineered

25   Compology's machine-learning models from Compology-generated labeled and tagged images.

26   Section 2.1.5 is also a restriction on Defendants' right to use Device Data. *See* Dkt. 147-5

27   at RTS_00276256 ("2.1 Right to Use"). It prohibits Defendants "from attempting to recreate or

28   reverse-engineer Derivative Data generated by the Software from Device Data." Compology's

Case No. 3:23-cv-04804-WHA
RESPONSE TO DEFENDANTS' BRIEF

1    Software generates Derivative Data *from* Device Data, and Section 2.1.5 precludes Defendants

2    from reverse-engineering the Derivative Data (i.e., information on various fill levels,

3    contaminants, dirty lenses) that is generated by Compology's Software *from* Device Data.

4        Defendants breached Section 2.1.5 when they used Device Data, including Compology-

5    generated labeled and tagged images, to reverse engineer the Derivative Data with the same

6    information generated by Compology's Software. Defendants did exactly what they were

7    prohibited from doing when they developed their own machine-learning models that reversed

8    engineered Derivative Data from Compology's Device Data. Indeed, there is no dispute that

9    Defendants used Compology-generated labeled and tagged images, or Device Data, to develop

10   their own machine-learning models that reverse-engineered the information and data generated by

11   the Compology machine-learning models, including dirty lenses, contaminants, and fill level of

12   waste containers, or Derivative Data. This is a plain violation of Section 2.1.5.

13   **IV.    DEFENDANTS' INTERPRETATION IS CONFUSING AND WRONG**

14       Defendants' interpretation ignores everything but the last sentence of Section 2.1.5, and as

15   to that sentence, is only a re-shuffling of the plain and unambiguous meaning of Section 2.1.5 of

16   the Terms. *First,* Defendants attempt to rewrite Section 2.1.5, as amended, to only prevent

17   "Defendants from accessing and using Plaintiff's specific Software (with an uppercase 'S') as

18   their own." Bf. at 1. That language does not appear in the Terms, and does not stand for the

19   proposition that Section 2.1.5 is only a restriction on reverse-engineering Compology's Software

20   from object code. Indeed, the plain language of the section reveals that it is a prohibition on what

21   Defendants may reverse engineer *from* Device Data. *See* Dkt. 147-5 at RTS_00276257 ("intended

22   solely to prevent Customer from attempting to **recreate or reverse-engineer Derivative Data**

23   generated by the Software **from Device Data** and shall not otherwise restrict the Customer from

24   **manipulating or processing Device Data** for any purpose or by any means") (emphasis added).

25   Defendants' interpretation is also circular because, by definition, the Software cannot recreate or

26   reverse-engineer Derivative Data, but can only create it.

27       *Second,* Defendants suggest that "there is nothing in the contract that prevents Defendants

28   from using their own machine learning models to manipulate or process Device Data." Bf. at 4.

1    Defendants quote the last clause of Section 2.1.5 ("and shall not otherwise restrict the Customer

2    from manipulating or processing Device Data for any purpose or by any means") separately from

3    the clause preceding it ("intended solely to prevent Customer from attempting to recreate or

4    reverse-engineer Derivative Data generated by the Software from Device Data"), which

5    *specifically* prohibits Defendants from reverse-engineering Derivative Data from Device Data. As

6    described above, Defendants' machine-learning models use Device Data (i.e., Compology-

7    generated labeled and tagged images) to reverse-engineer Derivative Data (i.e., the information

8    and data generated by Compology's machine-learning models, including dirty lenses,

9    contaminants, and fill level of waste containers). The *only* result that Defendants could hope to

10    accomplish by training machine-learning models on Compology-generated labeled and tagged

11    images is their output—Derivative Data—in the form of determinations of dirty lenses,

12    contaminant detection, and fill level of waste containers.

13        The Court should adopt RoadRunner's interpretation of Section 2.1.5. To the extent that

14    the Court determines, however, that two interpretations are reasonable (although Defendants' is

15    not), then that section is ambiguous and extrinsic evidence should be presented to the jury for

16    determination of its meaning. *See Morey v. Vannucci*, 64 Cal. App. 4th 904, 913 (Ct. App. 1998)

17    ("[I]t is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted

18    to interpret the language of a contract."); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547

19    F.3d 1213, 1223 (9th Cir. 2008) (quoting *Morey*, 64 Cal. App. 4th at 912) ("the trial court must

20    provisionally receive any proffered extrinsic evidence which is relevant to show whether the

21    contract is reasonably susceptible of a particular meaning."); *Med. Operations Mgmt., Inc. v. Nat'l*

22    *Health Lab'ys, Inc.*, 176 Cal. App. 3d 886, 892 (Ct. App. 1986) ("[A] procedure more in keeping

23    with the rationale of Parsons would be for the trial court to require the jury to make special

24    findings on the disputed issues and then base its interpretation of the contract on those findings.").

25

26

27

28

RESPONSE TO DEFENDANTS' BRIEF

1    DATED:  November 21, 2024      JEFFER MANGELS BUTLER & MITCHELL LLP

2                                           STANLEY M. GIBSON
JAMES NEUDECKER

3                                           JOSEPH J. MELLEMA

4

5                                     By:       */s/ Stanley M. Gibson*

6                                              STANLEY M. GIBSON
Attorneys for Plaintiff

7                                           ROADRUNNER RECYCLING, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:23-cv-04804-WHA

RESPONSE TO DEFENDANTS' BRIEF