# EXHIBIT 3

1  JEFFER MANGELS BUTLER & MITCHELL LLP
   STANLEY M. GIBSON (Bar No. 162329)
2  *sgibson@jmbm.com*
   JAMES NEUDECKER (Bar No. 221657)
3  *JNeudecker@jmbm.com*
   2 Embarcadero Center, 5th Floor
4  San Francisco, CA 94111
   Telephone:     (415) 398-8080
5  Facsimile:     (415) 398-5584

6  JOSEPH J. MELLEMA (Bar No. 248118)
   *jmellema@jmbm.com*
7  3 Park Plaza, Suite 1100
   Irvine, California 92614-2592
8  Telephone:     (949) 623-7200
   Facsimile:     (949) 623-7202
9
   LENA STREISAND (Bar No. 339021)
10 *lstreisand@jmbm.com*
   1900 Avenue of the Stars, 7th Floor
11 Los Angeles, California 90067-4308
   Telephone:     (310) 203-8080
12 Facsimile:     (310) 203-0567

13 Attorneys for Plaintiff ROADRUNNER
   RECYCLING, INC.
14

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., | Case No. 3:23-cv-04804-WHA |
| Plaintiff, | **PLAINTIFF ROADRUNNER RECYCLING, INC.'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO PRECLUDE UNSUPPORTED TESTIMONY AND OPINIONS BY PLAINTIFF'S FACT AND EXPERT WITNESSES** |
| v. | |
| RECYCLE TRACK SYSTEMS, INC., RECYCLESMART SOLUTIONS, INC., | |
| Defendants. | **Final Pretrial Conference** <br> Date:     December 4, 2024 <br> Time:     12:00 p.m. <br> Crtrm.:   San Francisco Courthouse, Courtroom 12 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 <br><br> Complaint Filed:  August 4, 2023 <br> Trial Date:       December 9, 2024 |

72770870v3                                        Case No. 3:23-cv-04804-WHA
         ROADRUNNER'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 3

## I. INTRODUCTION

The Court should deny Defendants' motion *in limine* no. 3. First, contrary to Defendants' arguments, Justin Armstrong and Timothy (Jay) Longson have personal knowledge of the technology and hardware underlying each of RoadRunner's trade secrets. Second, Messrs. Armstrong and Longson have personal knowledge of the efforts RoadRunner took to maintain confidentiality of the information underlying RoadRunner's trade secrets and the treatment of that information by Compology and RoadRunner as confidential, as well as specifically identifying software and hardware components that are not publicly disclosed. Further, RoadRunner's technical expert, Mr. Hoarty, can testify that the trade secrets are not generally known because he provided these opinions in his expert reports and deposition testimony, including identification of software and hardware components that are not publicly disclosed. Finally, the Court should permit Messrs. Armstrong, Longson, Hoarty, and Vickery to testify that RoadRunner's trade secrets have independent economic value based on their testimony and reports, as described further below. Defendants' attempt to redefine independent economic value as *only* monetary value is not the law and is improper to limit RoadRunner's testimony.

## II. BRIEF PROCEDURAL HISTORY

RoadRunner contends that Defendants misappropriated the following categories of RoadRunner's trade secrets: (1) overall waste metering and recycling system; (2) smart camera apparatus; (3) optical assembly and design; (4) Compology-generated labeled and tagged images; (5) Sub-Par Image Detection (SPID); (6) Contamination Detection / Content Identification Service; and (7) Container Fullness Analysis. Dkt. 132-9 (10/8/24 Ltr.). Per this Court's Order (Dkt. No. 94), RoadRunner narrowed down its trade secrets during the course of discovery to these seven categories. RoadRunner's previously-asserted trade secrets were broader but included each of the seven categories RoadRunner intends to pursue at trial. Defendants' motion references an outdated list of trade secrets to suggest that RoadRunner's witnesses are not knowledgeable about the substance of the trade secrets. Defendants also incorrectly assert that "Plaintiff has abandoned its allegation of any software algorithm or machine learning model as trade secrets at issue in this case," citing to arguments Defendants make in Court filings, *see* Mot. at 6 n.3,

1  without addressing the substance of RoadRunner's trade secrets.

2  **III.  THE COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* NO. 3**

3      **A.  *THE COURT SHOULD PERMIT MESSRS. ARMSTRONG AND LONGSON TO TESTIFY TO***
4          ***THE TECHNOLOGY AND HARDWARE UNDERLYING ROADRUNNER'S TRADE SECRETS***

5      RoadRunner does not intend to elicit testimony from Messrs. Armstrong or Longson
6  regarding whether or not RoadRunner's information *qualifies* as a trade secret.  That is an inquiry
7  for the jury.  RoadRunner opposes Defendants' motion to the extent it seeks to preclude Messrs.
8  Armstrong and Longson from testifying to the underlying technology and hardware that comprises
9  RoadRunner's trade secret information, about which they each have personal knowledge.

10      For example, Mr. Armstrong testified extensively regarding Compology's labeled and
11  tagged images and their role in certain machine learning models.  *See, e.g.*, Declaration of L.
12  Streisand ("Streisand Decl."), Ex. 1 (Armstrong Dep.) 36:19–41:19 (discussing Compology's
13  methods and processes for image classification (no. 4)); 49:15–51:5 (discussing effect of image
14  classification on accuracy of container fullness analysis (nos. 4, 7)); 66:5–14 (defining "image
15  handling and classification") (no. 4)); 100:8–101:25 (discussing image classification related to
16  container fullness analysis model (nos. 4, 7)); 106:14–107:24 (discussing image classification
17  related to ▮▮▮▮ (nos. 4, 5)).

18      Mr. Armstrong also testified regarding RoadRunner's ▮▮▮▮ (no.
19  5), contamination/content identification service (no. 6), and container fullness analysis (no. 7).
20  *See, e.g., id.* at 66:23–67:4 (describing image classification for ▮▮▮▮ (no. 5)); 69:6–18
21  (defining "contamination recognition") (no. 6)); 69:19–23 (confirming how contamination/content
22  identification service is performed) (no. 6)); 98:2–100:1 (describing how he trained ▮▮▮▮
23  (no. 5)); 104:24–105:7 (confirming how ▮▮▮▮ is performed) (no. 5)); 106:14–107:24
24  (describing how he developed ▮▮▮▮ (no. 5)); 110:22–111:6 (confirming how ▮▮▮▮
25  functions) (no. 5)); 122:3–9 (confirming how container fullness analysis operates) (no. 7));
26  123:12–124:7 (explaining that he developed container fullness analysis) (no. 7)); 131:20–22
27  (confirming that he developed model for contamination/ content identification service) (no. 6)).
28  Thus, Mr. Armstrong has personal knowledge of the technology that comprises trade secrets 4–7

1  and the Court should permit him to testify to that technology.

2  Further, Mr. Longson testified regarding non-public components of RoadRunner's camera
3  and optical design.  Mr. Longson testified that he built the hardware for Compology's waste
4  metering systems, *see id.*, Ex. 2 (Longson Dep.) at 27:4–9, and led firmware development of
5  Compology's products, *see id.* at 78:5–8.  Mr. Longson also testified to a number of components
6  of that hardware that are not public, including the battery pack, *see id.* at 108:15–24, optical lens
7  design, *see id.* at 122:17–123:25, image sensors, *see id.* at 124:22–126:6, camera focal length and
8  field of view, 127:10–129:6, and unique exposure fusion, *see id.* at 148:5–10.  Mr. Longson
9  further testified about Compology's FCC filings, *see, e.g., id.* at 219:12–220:19, and that they did
10  not disclose the elements of the battery pack, *see id.* at 108:25–109:11, 220:11–14.  Mr. Longson
11  also testified about his participation in tagging and labeling images, *see id.* at 151:1–12.

12  Finally, Defendants misconstrue trade secret category no. 1, RoadRunner's overall waste
13  metering and recycling system, as outside any witnesses' personal knowledge.  *See* Mot. at 3.  As
14  explained above, Messrs. Armstrong and Longson are personally knowledgeable about the
15  components of trade secret no. 1.  Further, Mr. Hoarty personally disassembled and inspected each
16  device, and their bills of materials showing the layout and design of them, and can testify to the
17  components of trade secret category no. 1.

18  **B.** *THE COURT SHOULD PERMIT TESTIMONY REGARDING THE CONFIDENTIALITY OF*
19  *ROADRUNNER'S TRADE SECRETS AND THAT THEY ARE NOT GENERALLY KNOWN*

20  RoadRunner fact witnesses, Messrs. Armstrong and Longson, have personal knowledge to
21  testify about (1) the confidentiality and secrecy of RoadRunner's trade secrets, and (2) that
22  RoadRunner's trade secrets are not generally known or publicly disclosed, as demonstrated in
23  deposition testimony. RoadRunner's technical expert, Mr. Hoarty, can also testify to these same
24  issues, as set forth in his expert reports and demonstrated in deposition testimony.

25  Messrs. Armstrong and Longson testified to the confidential treatment of the software and
26  hardware that embodies RoadRunner's trade secrets, as well as the efforts RoadRunner took to
27  maintain secrecy of their confidential information.  *See, e.g.*, *id.* Ex. 1 (Armstrong Dep.) at
28  130:20–131:5 (describing confidential treatment of container fullness analysis); *see id.* at 17:14-

1   19:13 (images and metadata stored on secured database); *id.*, Ex. 2 (Longson Dep.) at 82:6-83:24

2   (security measures employed to keep trade secrets secure).  Mr. Hoarty also opined that

3   RoadRunner's trade secrets were not generally known because customers "were not permitted to

4   disassemble, or reverse engineer [Compology camera systems]," and "were not permitted to use

5   [Compology-generated labeled and tagged images] to compete against RoadRunner by using them

6   to train their own ML models." *See* Dkt. 146-28 (Hoarty Rpt.), ¶¶ 61, 110.

7        Messrs. Armstrong and Longson testified that a number of software and hardware

8   components contained in RoadRunner's trade secrets are not public, such as rightsizing inputs, *see*

9   *id.*, Ex. 1 (Armstrong Dep.) at 81:6–83:10, container fullness analysis, *see id.* at 130:8–131:5, the

10  complete set of contaminants in the contamination detection service, *see id.* at 136:25–137:3, the

11  battery pack, *see id.*, Ex. 2 (Longson Dep.) at 108:15–24, optical lens design, *see id.* at 122:17–

12  123:25, image sensors, *see id.* at 124:22–126:6, camera focal length and field of view, 127:10–

13  129:6, and unique exposure fusion, *see id.* at 148:5–10.  Mr. Longson testified about Compology's

14  FCC filings, *see, e.g., id.* at 219:12–220:19, and that they did not disclose the elements of the

15  battery pack, *see id.* at 108:25–109:11, 220:11–14.

16        Mr. Hoarty's expert report detailed his opinion that RoadRunner's trade secrets are not

17  public and are not generally available. *See* Dkt. 146-28 (Hoarty Rpt.), ¶ 34 (emphasis added):

18  > Having **many years of experience in integrating hardware and software into devices**, in my opinion a skilled engineer **would have to conduct software development in conjunction with the hardware development**, an iterative process requiring years and years of testing, **to arrive at Compology's camera system and software**. Thus, the trade secrets at issue in this lawsuit, and as embodied in the Compology camera systems and software, **are not generally available to the public** or those who could obtain value from knowing them.

22  Mr. Hoarty further opined in his expert report regarding the camera systems that "even though

23  Compology sold its camera to customers, those **customers were not permitted to disassemble,**

24  **or reverse engineer them**. Thus, the trade secrets at issue in this lawsuit, and as embodied in the

25  Compology camera systems, are **not generally available to the public** or those who could obtain

26  value from knowing them." *Id.*, ¶ 61 (emphasis added). Further, Mr. Hoarty opined:

27  > I am also not aware, **based on my own knowledge and research of the industry, as well as my interviews with RoadRunner engineers, of any camera system that embodies the smart camera systems at issue here**. This demonstrates that there is

an **absence of camera systems that mimic the design** of the Compology camera system, as such devices and software have not been independently developed by others.

*Id.* ¶ 62 (emphasis added). Mr. Hoarty also opined that no public source of labeled and tagged images of waste containers for use in training machine-learning models exists, and based on his own knowledge and research of the industry, as well as his interviews with RoadRunner engineers, no other source of labeled and tagged images, including labels and tags for dirty/blocked images, contamination/content, and container fullness, which supports his opinion that trade secret nos. 4-7 are not generally available or publicly disclosed. *See id.*, ¶¶ 91-92, 97-98, 103-104, 110-111. Mr. Hoarty also testified in his deposition that certain components or information was "not commonly known," *see id.*, Ex. 3 (Hoarty Dep.) at 78:8-17 (components such as diode chosen to perform rare task kept confidential), or "non-obvious," *see id.* at 156:9-158:13 (components chosen for battery pack kept confidential), *see id.* at 158:19-159:5 (iterative process to determine optical design integrated with machine learning). Mr. Hoarty also testified at deposition that he reviewed RoadRunner's patents and presentations to RoadRunner's customers and determined that there was no public disclosure of RoadRunner's system and its components. *See id.* at 92:12-21. Mr. Hoarty also devoted entire sections of his Opposition Report responding to Defendants' experts' contentions, including their reference to early waste container sensors, patents (which Mr. Hoarty had already reviewed and disregarded as being a public disclosure), and specified components and systems. *See* Dkt. 146-29 (Hoarty Opp'n Rpt.), § VII(E).

Defendants' broad-sweeping attempt to limit Messrs. Armstrong, Longson, and Hoarty's testimony is unavailing. First, Defendants' argument that "neither Mr. Armstrong nor Mr. Longson should be permitted to testify on the confidential status of any alleged trade secret" because confidentiality "is a core legal element of trade secrets," Mot. at 4, is wrong. Defendants' own cited authority, *see* Mot. at 5, establishes that "a lay witness with personal experience of the treatment of certain information may testify as to whether that information was considered or treated as confidential." *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2015 WL 12942201, at *2 (N.D. Cal. Oct. 14, 2015). Second, Defendants' argument is based on incorrect and irrelevant statements regarding Messrs. Armstrong and Longson's testimony. For

1  example, contrary to Defendants' assertion that Mr. Longson "was unable to testify what, if
2  anything, of Plaintiff's camera hardware remains non-public in view of Plaintiff's public FCC
3  filings," Mot. at 4, Mr. Longson actually testified that he was aware of images that appear in
4  Compology's FCC filings.  *See* Streisand Decl., Ex. 2 (Longson Dep.) at 98:22–99:5; *see also*
5  *supra* Section III.A (listing items of R12 camera system battery pack not disclosed to public).
6  Further, Defendants support their argument by citing to Messrs. Armstrong and Longson's
7  testimony about things that are not at issue in this case.  *See* Mot. at 4 (citing Armstrong testimony
8  regarding softlocking and Longson testimony regarding R10 camera system).

9      Defendants' arguments regarding Mr. Hoarty are also unavailing.  First, despite
10  Defendants' contentions, *see* Mot. at 4, Mr. Hoarty's opinions are unlike those of the expert in
11  *Atmel Corp. v. Info. Storage Devices, Inc.*, whose opinion that trade secrets were not generally
12  known was based on "his mere inability to recall having heard of them before the end of the
13  relevant time period."  189 F.R.D. 410, 411 (N.D. Cal. 1999).  Second, Defendants' reliance on
14  *GSI Tech.*, is also misplaced.  In *GSI Tech.*, the Court precluded a technical expert from testifying
15  that technology "was not in the public domain" because the expert could not have possibly
16  reviewed the "public domain."  2015 WL 12942201, at *3.  The Court distinguished the expert's
17  "public domain" opinion from an opinion asserting that a trade secret is not generally known, and
18  found that "public domain" opinion "goes a step too far."  *Id.*  Mr. Hoarty opined that
19  RoadRunner's trade secrets are not generally available and specific components are not publicly
20  disclosed, so *GSI Tech.* is inapplicable here.

21      C.    *THE COURT SHOULD PERMIT MESSRS. ARMSTRONG, LONGSON, HOARTY, AND*
22          *VICKERY TO TESTIFY TO THE VALUE OF ROADRUNNER'S TRADE SECRETS*

23      First, the Court should permit Messrs. Armstrong and Longson to testify to their
24  understanding that RoadRunner's trade secrets have value.  Messrs. Armstrong and Longson have
25  personal knowledge of the value of RoadRunner's trade secrets to its competitive standing.  *See*
26  Streisand Decl., Ex. 2 (Longson Dep.) at 94:23–95:19 (describing features of camera system that
27  make it valuable), 129:1–11 (describing value of focal length), 132:21–25 (describing value of
28  coating), 227:17–228:5 (describing value of optical design); *id.*, Ex. 1 (Armstrong Dep.) at

121:11–18 (describing value of data to customers), 129:17–22 (describing value of machine learning models to customers). Defendants improperly seek to preclude Messrs. Armstrong and Longson's testimony on the "value" of RoadRunner's trade secrets based on snippets of Messrs. Armstrong and Longson's depositions wherein counsel asked the deponents to quantify RoadRunner's trade secrets. *See* Mot. at 6. A trade secret has independent economic value if it gives the owner a business advantage. *See* CACI No. 4402. The Court should not permit Defendants to preclude testimony on the independent economic value of RoadRunner's trade secrets based on Defendants' misreading of "value" under the law. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 2021 WL 4895977, at *23 (S.D. Cal. Oct. 20, 2021) (rejecting argument that trade secrets did not have independent economic value because witnesses could not identify exact monetary value of each trade secret).

Second, the Court should permit Mr. Hoarty to testify that RoadRunner's trade secrets have independent economic value as described in his expert reports. *See* Dkt. 146-28 (Hoarty Rpt.), ¶¶ 112-116. In their motion, Defendants misconstrue Mr. Hoarty's testimony. For example, Defendants incorrectly assert that Mr. Hoarty "did not attempt to identify the independent economic value of any trade secret," Mot. at 6, citing to testimony where Mr. Hoarty was asked: "You don't know how the $40 / million in investment capital was spent; correct?" and "Did you look at a financial document from / Compology or RoadRunner to verify that?" Such questions are not appropriate for a technical expert. Defendants' argument is yet another attempt to redefine the legal meaning of "independent economic value" in the context of a trade secret misappropriation claim to mean monetary value.

Finally, the Court should permit Mr. Vickery to testify regarding the amount of time and money Compology spent developing its technology and that RoadRunner paid for this technology. This analysis is covered in extensively in Mr. Vickery's expert reports and is not inconsistent with the Court's ruling regarding Mr. Vickery's testimony (Dkt. No. 174).

**IV.   CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion *in limine* no. 3.

| | | |
|---|---|---|
| 1 | DATED:  November 19, 2024 | JEFFER MANGELS BUTLER & MITCHELL LLP |
| 2 | | STANLEY M. GIBSON |
| | | JAMES NEUDECKER |
| 3 | | JOSEPH J. MELLEMA |
| | | LENA STREISAND |

By:     */s/ Lena Streisand*
            LENA STREISAND
Attorneys for Plaintiff ROADRUNNER RECYCLING, INC.