1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7

8                       NORTHERN DISTRICT OF CALIFORNIA

9

10    ROADRUNNER RECYCLING, INC.,

11              Plaintiff,                         No.  C 23-04804 WHA

12         v.

13    RECYCLE TRACK SYSTEMS, INC. and            **FINAL PRETRIAL ORDER**
      RECYCLESMART SOLUTIONS, INC.,
14
                Defendants.
15

16

17         For good cause, and after a final pretrial conference, the following constitutes the final

18    pretrial order, summarizing rulings on the motions in limine and other issues raised:

19         **1.**    *The second amended complaint* brought three claims for relief:  Trade Secret

20    Misappropriation under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 (2d

21    Amd. Compl. ¶¶ 69–80), Trade Secret Misappropriation under the federal Defend Trade

22    Secrets Act, 18 U.S.C. § 1836 (2d Amd. Compl. ¶¶ 81–92), and Breach of Contract (*id.* ¶¶ 93–

23    106).  The Court earlier granted summary judgment in favor of defendants, Recycle Track

24    Systems, Inc. and RecycleSmart Solutions, Inc., as to all trade secret claims (Dkt. No. 210).

25    Thus, only the contract breach claims asserted by plaintiff RoadRunner Recycling, Inc. are

26    headed to trial.

27         **2.**    *The prayer for relief* sought legal remedies in the form of damages from lost

28    profits, and equitable remedies in the form of disgorgement and a permanent injunction (2d

Amd. Compl. at 25–26).  With respect to any and all relief, the district judge does not allow double recoveries for the same harm, nor two separate recoveries for two contradictory theories of harm.  In short, there will be no chance to get a freebie or to pull a fast one, but there will be opportunity to receive all relief to which a party is entitled:

**2(a).**  *Actual damages* in the form of lost profits from contract breach will be determined, if necessary, by the jury at trial.  The Court earlier denied defendants' related motion to strike proposed testimony respecting these damages (*see* Dkt. No. 216).

**2(b).**  *Disgorgement* of defendants' unjust gains from contract breach will be determined by the Court posttrial in the event plaintiff prevails and presents a compelling case that remedy at law is inadequate (*ibid.*).  Evidence relevant to disgorgement but not relevant to actual damages has no relevance to the jury and must be kept out (*ibid.*).

**2(c).**  *Injunctive relief* will be determined by the Court posttrial, again in the event plaintiff prevails and presents a compelling case that remedy at law from contract breach is inadequate, as stated on the record at the posttrial conference.

**3.**  *Jury selection* will take place on **MONDAY, DECEMBER 9, AT 9:00 A.M.**  A jury of eight persons shall be used, chosen with the procedure outlined at the pretrial conference.  A few highlights:

**3(a).**  Several days before jury selection, the Court may propose that some prospective jurors be excused even before they travel to the courthouse.  Counsel shall be alert to respond timely and jointly to any such proposals — and in turn to propose jointly for the Court's review any prospective jurors they wish to excuse the same way.

**3(b).**  Once prospective jurors have been ordered to appear and the order cannot be recalled, *if parties thereafter settle*, the party that requested the jury trial shall pay all jury-related fees and expenses.

**3(c).**  Trial will start as soon as jury selection is completed.  If there is enough time after jury selection on December 9, parties may deliver opening statements.  If still more time remains, we may even get to a witness or two.

United States District Court
Northern District of California

**4.**    *Trial* will otherwise start at **7:30 A.M.** and run until **1:00 P.M.** each day for as many days as needed from **DECEMBER 9 TO DECEMBER 13**, and again from **DECEMBER 16 TO DECEMBER 19**.

**4(a).**    *Daily schedule:*  Counsel will present any issues they have at 7:30 A.M. daily, and then at 8:00 A.M. — even if counsel is mid-sentence — the jury will enter.  We respect the jurors' time.  We will take at least two short breaks daily.  Later, once the jury begins deliberating, the jury can decide to go past 1:00 P.M., in which case counsel will be expected to stay past 1:00 P.M.

**4(b).**    *Time keeping:*  Each side will have seven hours of evidence time, including for direct and cross, redirect and recross.  This does not include the 30 minutes each side will have for its opening statement, or the time for closing statements.  Time for closings will be set later.

**5.**    *As for the presentation of exhibits*:

**5(a).**    The parties shall jointly prepare a large timeline plotting the most important events in this action for display throughout trial.  The timeline must be clearly visible from the jury box, the witness stand, and the bench, when displayed near the wall opposite the jury box.

**5(b).**    The parties shall prepare digital and, in some cases, hard copies of exhibits.  Digital copies shall conform to the standards set by Courtroom Deputy Angella Meuleman in accordance with our court of appeals.  Hard copies of important exhibits (usually the top third) shall be prepared to hand immediately to the courtroom deputy for her to hand to the district judge.  The district judge has limited tolerance for time waste in proceedings among counsel and the Court, but no tolerance for time waste in proceedings involving jurors.

**5(c).**    One free tour of the courtroom's (not so) high-tech features can be arranged, for all counsel and staff at a single time, to avoid technical snafus that would waste the jury's time.

**6.**    *And, as for the examination of witnesses*:

**6(a).**    Parties stipulated that attorneys will not speak to witnesses, including clients, on cross examination or adverse examination when those witnesses are off the stand.  They further agreed that if one side is examining a witness, the other side will not distract the jury by shuffling papers or coughing or doing anything else.  Gamesmanship will backfire.

**6(b).**    Parties agreed to the Court's procedure for fairly and accurately introducing party admissions or prior-statement impeachment evidence by playing a video clip or quoting directly from a deposition transcript, as described in the pretrial conference.

**6(c).**    Parties were reminded that they must subpoena those they wish to testify live.  *If parties have witnesses they wish to appear remotely*:  Parties are also informed that the district judge is extremely reluctant to permit live testimony from a remote location given the unique capability of live cross examination in the immediate presence of the jury to elicit truth — and to cast a clear light on credibility (especially on those still not telling the truth).  For witnesses whose inability to attend trial was at all foreseeable before our pretrial conference, motions for remote testimony should have been offered before our pretrial conference and are likely to be denied as untimely, but still may be offered now.  For those witnesses and others, any such motion must be supported by detailed, sworn declarations, along with all exhibits necessary to prove inability to attend trial, if they are to be considered at all.  Deposition transcripts and recordings (if taken) are the alternative.  Do not assume remote appearances will be granted, even at pain of not being able to offer any testimony from those witnesses at all.

**7.**    *Rulings on the motions in limine* and other issues taken up at the final pretrial conference are summarized below.  Rulings on other evidentiary objections will be taken up in turn as the parties seek to introduce evidence at trial.

**8.**    Plaintiff RoadRunner's *first* motion in limine to exclude evidence respecting events following Compology co-founder Benjamin Chehebar's departure from RoadRunner (which acquired Compology) (Dkt. Nos. 200 & 206-2) was resolved by stipulation.  Should Chehebar testify, parties agreed not to question Chehebar beyond the scope of his deposition. The motion was therefore **DENIED AS MOOT.**

**9.**    RoadRunner's *second* motion in limine to exclude *hardware*-related testimony from defendants' software expert Philip Greenspun as cumulative of testimony from defendants' *hardware* expert Jacob Baker (Dkt. Nos. 201 & 204-3) is **GRANTED IN PART.**  The Court will consider allowing *hardware*-related testimony from Expert Greenspun only in the extraordinary circumstance where defendants show a specific detail he plans to offer is

4

uniquely available through his testimony and all other objections to the testimony are overcome. For avoidance of doubt, this order does not limit Expert Greenspun's testimony on *software*-related issues.

10. RoadRunner's *third* motion in limine to exclude third-party websites listing Compology (RoadRunner) camera apparatuses for sale (Dkt. No. 202) was resolved by stipulation, as referenced on the record, and so is DENIED AS MOOT.

11. Defendants' *first* motion in limine to exclude testimony and thereby exhibits respecting Compology's financials (Dkt. No. 193) is, for reasons stated on the record, DENIED. Plaintiff stated it plans to introduce such testimony through Compology's former CEO and interim CFO, Jason Gates.

12. Defendants' *second* motion in limine to exclude plaintiff's trade secret expert Leo Hoarty from testifying to the bill of materials for the Pello camera apparatus (Dkt. No. 194) is, for reasons stated on the record, DENIED. Parties' experts will be held to testifying within the scope of their expert reports; in this case, defendants failed to meet their burden to show the proposed testimony was not in the report and so failed to sustain their objection.

13. Defendants' *third* motion in limine to exclude various testimony respecting the purported trade secrets (Dkt. No. 195) was WITHDRAWN.

14. Relatedly, defendants' earlier motion to strike expert, not percipient, testimony from plaintiff's senior technical employees Justin Armstrong and Timothy (Jay) Longson was granted (*see* Dkt. No. 176). To the extent their testimony remains relevant to the contract issues (*cf. supra* paragraph 13): "Each may serve [only] as a percipient witness, [although such a witness can say] the reasons they held at the time for doing what they did. And, if defendants were to open the door by asking for their present-day expert opinions, plaintiff may walk through that same door on redirect" (*see* Dkt. No. 176).

**IT IS SO ORDERED.**

Dated: November 27, 2024.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE