# EXHIBIT H-R

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.,<br><br>    Defendants. | Case No. 3:23-cv-04804-WHA<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY** |

# REPLY EXPERT REPORT OF PHILIP GREENSPUN, PH.D.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

## II. BACKGROUND & CREDENTIALS

6. I hereby incorporate by reference my Opening Expert Report dated August 30, 2024, and my Rebuttal Expert Report dated September 13, 2024. Those reports include, among other things, an overview of my qualifications, prior testimony and background.

## III. OPINIONS

### A. RTS Independently Developed the Pello Camera System

7. In my opening report, I explained the evidence that RTS independently developed the Pello system. *See* Greenspun Opening Report at ¶¶87-110. Based on the milestone reports from the SDTC project and the status reports from two IRAP projects, it is my opinion that RTS independently developed the Pello system. My opinion is further bolstered by the differences between the Pello and Compology systems that are explained in my opening report.

#### 1. My opening and rebuttal reports establish that the Compology devices were in the public domain and should not be afforded trade secret protection

8. Mr. Hoarty's contention that I disassembled the Compology and Pello devices on the basis that an R13 device is available on eBay is wrong. *See* Hoarty Opposition Report at ¶16. I performed teardowns of the Pello and Compology devices in order to compare the hardware components and the configuration of those components between the Pello and Compology devices.

9. The fact that anyone can purchase a Compology device on eBay is indisputable as I demonstrated in my opening report. Mr. Hoarty points to Mr. Cason Male's unsubstantiated testimony that RoadRunner contacted eBay to have the listing removed, but it is irrefutable that Compology devices are available for sale in the public domain. It is also indisputable that Ben Chehebar performed a teardown of the R11 device and the video demonstrating all the

2

components inside of the R11 device is in the public domain for anyone to watch. While Mr. Hoarty accuses me of speculating that others have performed teardowns of the Compology devices, he cannot refute the video of Mr. Chehebar's teardown of the R11 device.

10. Mr. Hoarty also ignores the fact that Compology devices were installed on waste containers in readily accessible locations, e.g., parking lots, and that those waste containers may belong to third parties who aren't party to any agreements between Compology and its customers.

11. Anyone wandering by a dumpster set up with the Compology camera could potentially unmount the camera and take it home. I have seen nothing produced by Compology to suggest that its customers were required to keep their dumpsters in a locked and secure environment or even an environment under video surveillance.

12. Mr. Hoarty cites ROADRUNNER000073345. Section 3 of this document lets a customer install a sensor ("Equipment") on a dumpster owned by someone else and doesn't bind the customer to contract with the dumpster owner for confidentiality or an agreement not to disassemble. Let's assume that the dumpster belongs to Dumpco, for example, which isn't a customer of Compology. A customer has the right to install the Equipment on a dumpster owned by Dumpco, at which point an employee of Dumpco could get curious enough to take the sensor off the dumpster and take it apart at home. The Customer defined in ROADRUNNER000073345 hasn't violated its agreement with Compology in this event. Consider the possibility that Dumpco could and likely would sometimes take a dumpster back to its central yard and service it. At this point Dumpco's employees might be curious to see what was mounted on the dumpster and take it apart. This scenario renders false the opinion in paragraph 22 of the Hoarty Rebuttal Report, hi which he states that only Customers and Compology technicians can get access to the cameras.

3

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

13. I disagree with Mr. Hoarty that RoadRunner took the necessary precautions to protect its trade secrets. *See* Hoarty Opposition Report at ¶20. As I demonstrated in my opening report, anyone could disassemble a Compology device to learn the hardware components and the configuration of those components. *See* Greenspun Opening Report at ¶¶111-135. By removing the labels off the physical chips in the device and coating the board in epoxy, RoadRunner could have made it much more difficult to determine what components are used in its systems. *See, e.g.*, Greenspun Opening Report at ¶122.

14. I understand that Mr. Hoarty criticizes me for not analyzing the hardware components of the R11 device that are highlighted on the Verizon Wireless website. *See* Hoarty Opposition Report at ¶21. But in my opinion no further analysis is necessary. For example, RoadRunner claims that part of its trade secret is the use of a Lithium Thionyl Chloride battery, which is revealed on the Verizon Wireless website. *See* RTS_00335958-964. RoadRunner further claims that the use of an accelerometer is part of its trade secret, which is also revealed on the Verizon Wireless. *Id*. The use of GPS/GNSS is also alleged to be part of RoadRunner's trade secret, and this too is revealed on the Verizon Wireless website. The Verizon Wireless website further indicates that the wireless communication module is Cat 4 LTE with GSM/UMTS. *Id*. I understand that RoadRunner claims that the wireless communication module is part of its trade secret. Finally, the Verizon Wireless website indicates that the R11 has a camera and uses stereo vision. *Id*. I continue to be mystified by RoadRunner claiming as trade secrets information that is published by Verizon.

15. Mr. Hoarty includes several statements alleging that I have provided no evidence that anyone has ever disassembled a Compology device. In my opinion Mr. Hoarty is using an incorrect standard for evaluating trade secret status. It is my understanding that it is not a

4

defendant's burden to prove a disassembly was actually performed. (In my rebuttal report I provided the video in which Ben Chehebar performs a teardown of the R11 device and highlights the important components in the device. *See* Greenspun Rebuttal Report at ¶¶78-81.) Mr. Hoarty in his two reports has provided no evidence demonstrating that the Compology devices are not in the public domain.

### 2. The RTS ML models were developed using pre-trained open source models

16. I disagree with Mr. Hoarty's assertion that RTS destroyed evidence of its ML models or any Compology image data. *See* Hoarty Opposition Report at ¶¶24-28. From my discussions with the RTS team, I understand that the image data belonged to RTS. Further, Mr. Laraki did not destroy any evidence, as alleged by Mr. Hoarty. I understand that after RecycleSmart was acquired by RTS, Mr. Laraki's computer was migrated to an RTS machine. Mr. Laraki migrated the working RTS ML models. Laraki Depo. Tr. at 64:7-65:3. I understand that the AutoML model that was developed by a former employee was not migrated to the new machine because it was never used. *Id*. It isn't a fair characterization of obsolete data being left behind during a migration to say that data were deleted. For example, one would not say that a laptop owner deleted specific versions of Microsoft Windows and Microsoft Office when migrating to a new machine and setting up the old hardware for a family member.

17. Mr. Hoarty claims without any support that "Mr. Laraki undoubtedly learned from these ML models and used what he had learned to train the Pello ML models that RTS claims it currently uses or, alternatively, trained the ML models on Compology image data and fine-tuned those ML models on Pello images." Hoarty Opposition Report at ¶28. I disagree, and Mr. Hoarty has provided no evidence to support this speculation. In my rebuttal report I performed an experiment using the same pre-trained models, and the same Pello images, and I

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

obtained similar results as Mr. Laraki.  Mr. Hoarty can perform the same experiment for himself and verify my results and, more importantly, Mr. Laraki's sworn testimony.  My experiment supports the accuracy of Mr. Laraki's testimony that the Pello ML models were independently developed using the pre-trained ConvNext models and the Pello images.  Mr. Hoarty's speculation that something is impossible cannot change the fact that a 50 cent/hour computer from Amazon can do the "impossible" in a matter of hours (or that the Google Teachable Machine can build almost as good a model in a matter of minutes within a web browser).

### 3. The SDTC and IRAP documents are evidence that the Pello system was independently developed

18. Mr. Hoarty mostly dismisses the SDTC and IRAP documents as lacking detail. *See* Hoarty Opposition Report at ¶¶29-40.  I disagree.  These documents provide hundreds of pages of details chronicling RTS's development of the Pello system.  For example, the SDTC proposal is a 106-page document that detailed exactly what RTS was trying to accomplish.



HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

### 4. There are substantial differences between the Compology devices and the Pello device and they are indeed material

21. I disagree with Mr. Hoarty's suggestion that "the supposed differences relate to features that are immaterial to Compology's trade secrets, or the supposed differences are insignificant because the components perform the same or substantially similar functions." *See* Hoarty Opposition Report at ¶41. Mr. Hoarty does not provide any analysis or demonstrate that the differences are immaterial to Compology's trade secrets, as he claims. Further, Mr. Hoarty does not provide any analysis or demonstrate that the components perform substantially the same function. Instead, Mr. Hoarty makes conclusory statements that are not corroborated by any facts.

22. I further disagree that my methodology of identifying differences in individual components is irrelevant to Compology's alleged trade secrets. *See* Hoarty Opposition Report at ¶42. As I highlighted in my opening report, the Pello device is fundamentally different than the Compology devices. The Pello device is comprised of different components and those components are configured in a fundamentally different manner than the Compology devices. *See* Greenspun Opening Report at ¶¶136-147. Mr. Hoarty's conclusory, unsupported statements cannot change that fact.

23. Mr. Hoarty criticizes my comparison of the Pello and Compology. I will reply to each of these.

#### a. Features of the Pello Device Mr. Hoarty believes are irrelevant

24. Mr. Hoarty claims that the Pello's use of ultrasonic sensors, external antennas, and a daughterboard are irrelevant. I disagree. These components and the design decisions to use them make the Pello device fundamentally different than the Compology devices. I address

10

only the ultrasonic sensors and antennas as Mr. Hoarty addresses my arguments regarding those components.

### i. Ultrasonic sensors

25. I disagree with Mr. Hoarty's statement that the ultrasonic sensors are irrelevant. *See* Hoarty Opposition Report at ¶¶43-46. Unfortunately, we cannot ask the nearest bat whether he or she would be happy to hunt without ultrasonic echolocation, but the average person with good eyesight certainly also values having good hearing. A sensor that has the flexibility to evaluate a container's fullness with sound waves is certainly more powerful than one that lacks this capability.

26. I disagree with Mr. Hoarty's statement that my analysis "ignores the combination of components used in the Pello system that were derived from Compology's trade secrets as embodied in its R12 camera system." For example, as I demonstrated in my rebuttal report, Ben Chehebar revealed the combination of components used in the R11 device in a publicly available video, so neither RoadRunner nor Mr. Hoarty can credibly claim it is a trade secret. *See* Greenspun Rebuttal Report at ¶¶78-81.

### ii. External antennas

27. I disagree with Mr. Hoarty's opinion that "the use of external antennas in the Pello device are material is irrelevant because RoadRunner does not claim the use of antennas alone is one of its trade secrets." *See* Hoarty Opposition Report at ¶47. While RoadRunner may not claim the use of antennas alone is one of its trade secrets, RoadRunner does allege it is part of one of its trade secrets. As I discussed in my opening report, the use of external antennas in the Pello device is a fundamental difference from the Compology devices. *See* Greenspun Opening Report at ¶¶145-147. Because the Compology devices include the antennas inside the

11

device, the components and the configuration of those components are materially different between the Pello and Compology devices. *See* Greenspun Opening Report at ¶¶145-147.

28. Further, as I demonstrated in my rebuttal report, Ben Chehebar revealed the combination of components used in the R11 device in a publicly available video, so neither RoadRunner nor Mr. Hoarty can credibly claim it is a trade secret. *See* Greenspun Rebuttal Report at ¶¶78-81.

### 5. Compology's alleged trade secrets are publicly disclosed and generally available.

29. In paragraphs 64-81 of his opposition report, Mr. Hoarty attempts to rebut my opinions that everything Compology is claiming to be a trade secret is already in the public domain. Because of the overwhelming evidence that Compology's alleged trade secrets are in the public domain, I stand by my opening and rebuttal reports. *See* Greenspun Rebuttal Report at ¶¶77-100.

### 6. The Pello machine learning system is fundamentally different than Compology's

30. Mr. Hoarty claims, without any evidence, that "any purported differences between Compology and Pello machine learning systems, architecture, or libraries used are immaterial." *See* Hoarty Opposition Report at ¶¶82-90. To date, Mr. Hoarty has not performed any analysis to demonstrate that any differences between the systems are immaterial. Instead, Mr. Hoarty makes unsubstantiated, conclusory statements throughout his opposition report that are based on his own speculation. I reply to several of Mr. Hoarty's statements in the following paragraphs.

#### a. Training without Compology images

31. In his opposition report at paragraph 28, Mr. Hoarty claims that it is his "opinion that RTS cannot establish that its [redacted] were independently developed without using

12

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As I explained in my opening report RTS does not use the dirty lens detection ▓▓▓ to determine if images should be sent to the contamination and fill level ▓▓▓ In fact, it is my understanding that RTS has not used the dirty lens detection ▓▓▓ in production at all. To my knowledge RoadRunner has not alleged that having a ▓▓▓▓▓▓▓▓▓▓ to detect a dirty camera lens is in and of itself their trade secret.

## IV.  CONCLUSION

43. Based on my review of the evidence, and Mr. Hoarty's Opposition Report, it is my opinion that RoadRunner has failed to identify any alleged trade secret that should be afforded trade secret protection, RTS did not have the requisite access to misappropriate most of the alleged trade secrets, and all the alleged trade secrets are in the public domain. It is further my opinion that the Pello system was independently developed as evidenced by the detailed SDTC and IRAP documents as well as meaningful differences in software, hardware components and the configuration of those components in the Pello and Compology systems.

Dated: September 20, 2024

_Philip Greenspun_
Philip Greenspun, Ph.D.