# EXHIBIT B-R

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**OUTSIDE COUNSEL ONLY**

JEFFER MANGELS BUTLER & MITCHELL LLP
STANLEY M. GIBSON (Bar No. 162329)
*sgibson@jmbm.com*
JAMES NEUDECKER (Bar No. 221657)
*jneudecker@jmbm.com*
2 Embarcadero Center, 5th Floor
San Francisco, CA 94111
Telephone:      (415) 398-8080
Facsimile:      (415) 398-5584

SHAVON HENRY (Bar No. 326855)
*shenry@jmbm.com*
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone:(310) 203-8080
Facsimile: (310) 230-0567

JOSEPH J. MELLEMA (Bar No. 248118)
*jmellema@jmbm.com*
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone:      (949) 623-7200
Facsimile:      (949) 623-7202

Attorneys for Plaintiff ROADRUNNER
RECYCLING, INC.

> **KEY:**
> RoadRunner's initially proposed
> redactions are underlined in red
>
> RoadRunner's narrowed proposed
> redactions are highlighted in yellow

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., | Case No. 3:23-cv-04804-WHA |
| Plaintiff, | *Assigned for All Purposes to:*<br>Hon. William H. Alsup, Courtroom 12 |
| v. | **ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS, INC., | |
| Defendants. | **FILED UNDER SEAL** |
| | Date:      February 29, 2024<br>Time:      8:00 a.m.<br>Judge:      Hon. William Alsup<br>Place:      Courtroom 12 |
| | Complaint Filed:      August 4, 2023<br>Trial Date:      December 8, 2024 |

Case No. 3:23-cv-04804-WHA

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................5

II.   THE TRADE SECRETS ARE PLEADED WITH REASONABLE
      PARTICULARITY AND THE SAC ALLEGES HOW DEFENDANTS
      MISAPPROPRIATED EACH ...............................................................................7

      A.   The Overall Waste Management System is Described with Reasonable
           Particularity and Defendants' Misappropriation is Detailed in the SAC .................7

      B.   The Smart Camera Apparatus is Not Publicly Available and the SAC
           Explains Exactly How Defendants Had Access and Misappropriated It .................9

      C.   The SAC Properly Alleges the Image Preprocessing Techniques Trade
           Secret and Access to and Misappropriation of that Trade Secret ...........................12

      D.   The Training Data Trade Secret Is Derived from the Labeled and Tagged
           Images, An Activity Which Defendants Were Precluded from Doing ...................15

      E.   The Algorithms and Processes Trade Secrets are Alleged with Sufficient
           Specificity and Access and Misappropriation Are Plausibly Pleaded ....................16

III.  AMENDMENT IS NOT FUTILE AND ROADRUNNER CAN PROVIDE
      MORE SPECIFICITY FOR TRADE SECRET IDENTITY AND
      MISAPPROPRIATION .........................................................................................19

IV.   CONCLUSION ...................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alta Devices, Inc. v. LG Electronics, Inc.*,
    2019 WL 176261 (N.D. Cal. Jan. 10, 2019) ............................................................................ 17

*Auris Health, Inc. v. Noah Med. Corp.*,
    2023 WL 7284156 (N.D. Cal. Nov. 3, 2023) ........................................................................... 12

*Bateman v. Mnemonics, Inc.*,
    79 F.3d 1532 (11th Cir. 1996) ................................................................................................. 13

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*,
    2015 WL 5732595 (E.D. Cal. Sept. 28, 2015) ......................................................................... 16

*Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc.*,
    2007 WL 2429653 (N.D. Cal. Aug. 24, 2007) ......................................................................... 14

*Candy Craft Creations, LLC v. Gartner*,
    2015 WL 1541507 (S.D. Ga. Mar. 31, 2015) ........................................................................... 16

*Dodich v. Pfizer Inc.*,
    2018 WL 3584484 (N.D. Cal. July 26, 2018) .......................................................................... 12

*Gen. Elec. Co. v. Sung*,
    843 F. Supp. 776 (D. Mass. 1994) ........................................................................................... 12

*Intellectual Ventures I, LLC v. Canon Inc.*,
    143 F. Supp. 3d 143 (D. Del. 2015) ......................................................................................... 14

*Jobscience, Inc. v. CVPartners, Inc.*,
    2014 WL 1724763 (N.D. Cal., May 1, 2014) ............................................................................ 9

*Kewanee Oil Co. v. Bicron Corp.*
    416 U.S. 470 (1974) ................................................................................................................. 10

*Keywords, LLC v. Internet Shopping Enters., Inc.*,
    2005 WL 8156440 (C.D. Cal. June 29, 2005) ......................................................................... 14

*Masimo Corporation v. True Wearables, Inc.*
    (C.D. Cal., Nov. 7, 2022, No. 818CV02001JVSJDE) 2022 WL 17083396 ........................... 10

*Mednet Solns., Inc. v. Eric Jacobson and Veeva Sys., Inc.*,
    2021 WL 6931589 (D. Minn. Sept. 16, 2021) ......................................................................... 17

*Oracle America, Inc. v. Google, Inc.*,
    2011 WL 1565988 (N.D. Cal. Apr. 27, 2011) ......................................................................... 13

Case No. 3:23-cv-04804-WHA
ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES
### (CONTINUED)

**Page**

*Reingold v. Swiftships, Inc.*,
   126 F.3d 645 (5th Cir. 1997) ................................................................. 16

*T2 Modus, LLC v. Williams-Arowolo*,
   2023 WL 6221429 (E.D. Tex., Sept. 25, 2023) ..................................... 17

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
   147 F. Supp. 3d 1147 (D. Or. 2015)....................................................... 17

*VIA Techs., Inc. v. Asus Computer, Int'l*,
   2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) .......................................... 8

*Winston Research Corp. v. 3M*,
   350 F.2d 134 (1965) ................................................................................. 7

*Yeiser Research & Development LLC v. Teknor Apex Company*,
   281 F.Supp.3d 1021 (S.D. Cal. 2017) ................................................... 14

**California Cases**

*Advanced Modular Sputtering, Inc. v. Sup. Ct.*,
   132 Cal. App. 4th 826 (2005)................................................................... 8

*By-Buk Co. v. Printed Cellophane Tape Co.*,
   163 Cal. App. 2d 157 (1958) ................................................................... 7

*San Jose Construction, Inc. v. S.B.C.C., Inc.*,
   155 Cal. App. 4th 1528 (2007) ................................................................ 7

**California Statutes**

Cal. Code Civ. Proc.
   § 2019.210 ........................................................................................ 17, 18

Cal. Code Civ. Proc.
   § 3246.1(d) .............................................................................................. 7

ROADRUNNER RECYCLING, INC.'S REPLY TO OPPOSITION TO MOTION FOR LEAVE TO AMEND FIRST
AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

RoadRunner and its predecessor, Compology, spent years and thousands upon thousands of hours developing its proprietary waste management system.  The system included not only a proprietary ruggedized camera and millions of training images, but also proprietary algorithms that made the system work to detect, among other things, fill levels in garbage bins as well as inappropriate objects in those bins.  The valuable trade secrets that were created during this lengthy and costly development are detailed in RoadRunner's Identification of Trade Secrets ("ITS") that is filed with this Court under seal.  RoadRunner protected these trade secrets in many ways, requiring its customers to sign agreements that precluded the customers from reverse engineering the trade secrets, including the valuable training images that allowed the implementation of the waste management system.

Defendants Recycle Track Systems, Inc. and RecycleSmart Solutions Inc. ("Defendants") used their relationship as a customer of RoadRunner to gain access to these valuable trade secrets and then misappropriated those trade secrets through a plan to reverse engineer, among other things, the sophisticated camera and the training images.  It took Defendants only a span of months to come up with its own waste management system—in contrast to the years of development that RoadRunner needed—because Defendants reverse engineered RoadRunner's system and used the guidance from RoadRunner to misappropriate the valuable trade secrets.

Defendants' opposition brief mischaracterizes the trade secrets at issue and seeks to litigate the merits of the Second Amended Complaint ("SAC"), which must be taken as true, on a motion for leave to amend.  Neither is appropriate at this stage of the case.  Each of the trade secrets is set forth with reasonable particularly in the ITS and the SAC explains in sufficient detail how Defendants misappropriated each of the trade secrets for their own use and benefit.  Roadrunner's motion for leave to file the SAC should be granted for the following reasons:

1.    <u>The overall waste management system trade secret is alleged with particularity and Roadrunner explains exactly how the Defendants misappropriated it</u>.  Roadrunner's trade secret encompasses the specific implementation of the overall system and does not describe a generic

Jeffer Mangels
Butler & Mitchell LLP

JMBM

1    waste system. To the contrary, the overall waste management trade secret consists of the

2    combination of various elements, as detailed in the ITS, which describes each of the components

3    of the overall system trade secret, how they are connected together and how they function.

4         2.    The smart camera apparatus trade secret is not publicly available and Roadrunner

5    alleges access and misappropriation with sufficient detail. The ebay evidence of the R13 camera

6    is of no moment as these cameras were misappropriated and illicitly sold. They cannot be used to

7    establish public availability as a matter of law. Further, the ebay and FCC disclosures are

8    insufficient to disclose the trade secrets described in the ITS. Finally, Defendants fail to address

9    Roadrunner's optical assembly and design trade secret at all—a glaring admission that shows the

10   motion for leave should be granted.

11        3.    The imaging process techniques trade secret is sufficiently described and the SAC

12   properly alleges access and misappropriation. One cannot simply access this trade secret through

13   the sensor on the R13. Roadrunner explained that the techniques are accessible only through the

14   text of the object code loaded as firmware to which one only has access through the Terms. In

15   addition, Roadrunner specifically alleged that Defendants solicited information from customer

16   service technicians and obtained that information regarding the preprocessing techniques.

17        4.    The training data trade secret was derived from labeled and tagged images.

18   Defendants ownership of the Device Data is explicitly limited by the Terms, which prohibit them

19   from using that data to derive the training data and develop its own machine learning system. This

20   is exactly what Defendants did; they placed cameras in the exact same location as RoadRunner's

21   cameras so that the Device Data could be used in this manner.

22        5.    The algorithms and process trade secrets are sufficiently alleged and access and

23   misappropriation well pleaded. Roadrunner describes the steps of the algorithms and processes,

24   including their inputs and outputs. The SAC also explains how Defendants accessed the trade

25   secrets, including access to its web application and customer service communications that enabled

26   them to understand the algorithms' functions and inputs/outputs needed to create them.

27        Defendants' opposition resorts to attacking the merits of each of the trade secrets and/or

28   whether each was misappropriated. On the one hand, Defendants contend that the trade secrets are

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  not disclosed in enough detail, while on the other hand arguing that the trade secrets are disclosed

2  in detail but the SAC does not explain how the detailed trade secrets could be misappropriated.

3  Neither exercise is appropriate at this stage of the case and the motion for leave should be granted.

4  **II.    THE TRADE SECRETS ARE PLEADED WITH REASONABLE**
   **PARTICULARITY AND THE SAC ALLEGES HOW DEFENDANTS**
5  **MISAPPROPRIATED EACH**

6       **A.    The Overall Waste Management System is Described with Reasonable**
            **Particularity and Defendants' Misappropriation is Detailed in the SAC**
7

8            RoadRunner's ITS lays out the overall waste management system in detail, explaining that

9  the system includes:

10           overall know-how and design of its waste metering system including physical
             hardware components such as the smart camera apparatus, optical assembly and
11           design, firmware such as its image preprocessing techniques implemented in the
             camera apparatus, training data, machine learning models, an AI system
12           implementing the machine learning models, and algorithms and processes to generate
             data, analysis, and recommendations to customers, including fullness, emptiness,
13           contamination, schedules, data ingestion efficiencies, and location analysis of waste
             containers. As more fully described below, Compology developed a convolutional
14           neural network ("CNN") as its AI system to implement the machine learning models
             for accurate machine labeling and tagging of images from Compology's smart
15           cameras. The combination of these hardware, firmware, and software elements as
             implemented in an waste metering system is itself a trade secret.  ITS at 4-5.
16

17           Contrary to Defendants' contention, these features are not general categories but are

18  specific trade secrets that are later described and detailed throughout RoadRunner's ITS.  It is well

19  established that a trade secret can consist of a combination of components and other items even if

20  they are generally known, so long as the overall combination remains a secret.  Tellingly,

21  Defendants fail to address any of the cases or treatises cited by RoadRunner, which explain that

22  courts recognize that a trade secret exist, even when the combinations might include commercial

23  or generally known components.  Civ. Code § 3246.1(d) (including device or compilation); 1

24  Milgrim on Trade Secrets § 1.01 (2020) ("A secret combination of known elements is eligible for

25  trade secret protection."); *see also By-Buk Co. v. Printed Cellophane Tape Co.*, 163 Cal. App. 2d

26  157, 166 (1958) (trade secrets for bundle or combination of parts in system); *San Jose*

27  *Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1537 (2007) (trade secrets for

28  compilation of written materials); *Winston Research Corp. v. 3M*, 350 F.2d 134, 139, 1965 (1965)

1   (combination of specifications showing basic mechanical elements and relationship to each other).

2          As a result, RoadRunner has described its trade secrets with reasonable particularity.

3   RoadRunner's trade secret description is far different than the *VIA Techs., Inc. v. Asus Computer,*

4   *Int'l,* 2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) case cited by Defendants.  Indeed, *VIA*

5   confirmed that a combination of trade secrets can amount to a trade secret—it only found that the

6   plaintiff had not met its burden of showing.  *VIA* cites to *Advanced Modular Sputtering, Inc. v.*

7   *Sup. Ct.*, 132 Cal. App. 4th 826, 835-36 (2005), where the plaintiff designated a combination of 8

8   trade secrets as an overall trade secret just like RoadRunner here.  The court found the designation

9   was adequate because the plaintiff "described how it believes the combination of [the features of

10  its alleged trade secrets] distinguish the alleged trade secrets from the prior art, or matters within

11  the general knowledge of persons in the sputtering industry." *Id.*

12         RoadRunner alleged specific components of its overall trade secret that in no way subsume

13  the entire field of waste management.  RoadRunner's allegations encompass a ***specific***

14  implementation by RoadRunner as described in the totality of the SAC, not a generic system as

15  argued by Defendants (e.g., RoadRunner's system is not "a smart camera sensor system that uses

16  software and hardware to tell a user about goings on in a recycling container.").[1]

17         Defendants' generic case law is inapposite. In *Carl Zeiss* and *Vendavo*, the plaintiffs used

18  broad categorical terms that failed to identify an actual trade secret and instead described only the

19  type of information that would usually be characterized as a protectable trade secret.  *Carl Zeiss*,

20  2019 WL 11499334, at *4 ("CZMI has done little more than set forth the purported trade secrets

21  in 'broad, categorical terms' that are 'more descriptive of the types of information that generally

22  may qualify as protectable trade secrets than as any kind of listing of particular trade secrets' that

23

24  ──────────────

25  [1] Defendants also mischaracterize and wrongly associate the overall system trade secret with an "AI system," when the SAC specifies that the overall system includes many components—a camera, training data, machine-learning models, algorithms, etc., that are detailed in the ITS.

26  Defendants also wrongly claim that when identifying the overall system trade secret RoadRunner does not include any descriptions of those components.  This is also incorrect.  The SAC (and

27  more fully in the ITS) identifies these components and details—for pages—how they are connected and function together.  This is more than sufficient to put Defendants on notice as to the

28  scope of the overall waste management system, its components and how it is not generally known.

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1  form the basis of the misappropriation of trade secrets claim."); *Vendavo, Inc. v. Price f(x) AG*,

2  2018 WL 1456697, at *4 (N.D. Cal., Mar. 23, 2018) ("Vendavo has set out its purported trade

3  secrets in broad, categorical terms, more descriptive of the types of information that generally may

4  qualify as protectable trade secrets than as any kind of listing of particular trade secrets Vendavo

5  has a basis to believe actually were misappropriated here.").  In contrast, RoadRunner has not

6  merely listed protectable trade secret categories but has identified how the overall system

7  comprises components and processes in a unique configuration.  SAC, ¶¶ 18-19.  RoadRunner's

8  SAC identifies the various components of the system and explains, in sufficient detail, how these

9  components function together and comprise the trade secret.

10      Defendants also cite to *Jobscience*, where the plaintiff failed to adequately describe its

11  trade secrets when it provided "barely-legible schematics" and a three-page narrative that failed to

12  provide any details "for how [plaintiff] allegedly achieves the desired design and functionality."

13  *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, at *2 (N.D. Cal., May 1, 2014).  Further,

14  the plaintiff provided no explanation "for the schematics other than to say a "representation of

15  [plaintiff's] proprietary process and efficient solution is reflected in the following schematic

16  diagram and screen shot examples."  *Id*. at *2.  Because the plaintiff's statement was woefully

17  deficient, it was impossible for the Court to "tell where the claim end[ed and the known art

18  [began]."  *Id* at *4.  Here, RoadRunner's trade secret description is distinguishable because

19  RoadRunner has identified in detail how the various components of the overall system function

20  together and how their component parts comprise an entire trade secret.

21      RoadRunner, therefore, has set forth in detail its overall waste management system trade

22  secret, including its various components, and explains exactly how Defendants went about

23  misappropriating individual components so that it could have an identical waste management

24  system with cameras, training data, algorithms, and even the same camera placement.

25      **B.  The Smart Camera Apparatus is Not Publicly Available and the SAC Explains
        Exactly How Defendants Had Access and Misappropriated It**

26

27      The ITS lays out in detail the trade secret encompassed by the smart camera apparatus in

28  detail.  For example, RoadRunner explains that:

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

JMBM | Jeffer Mangels Butler & Mitchell LLP

1

2
Compology's smart camera apparatus trade secret includes a smart camera, including a CCM with wide field-of-view camera lens, battery pack, high-durability injection-molded parts, including a "double shot" rear housing with TPE overmolding, front housing with recessed sensors for debris shielding, and camera and flash PCBA cutouts and mounting, and optical windows with high scratch-resistance, and specialized coatings; printed circuit board assemblies ("PCBAs") containing microcontrollers, external RAM integrated circuit ("IC"), wireless communication systems, accelerometer, GPS, environmental sensors, and a camera flash LED. The smart camera apparatus includes a housing with an ███████ coating that improves hardness and scratch resistance. ITS at 7.

3

4

5

6

7

8    The trade secret also includes the optical assembly and design, the low-power wireless

9    communication module and location sensors and the power subsystem and design. *Id.*

10        Defendants claim that the smart camera apparatus is publicly known based on a handful of

11    pictures submitted to the FCC and misappropriated R13s that are allegedly for sale illicitly on

12    ebay. *See* Opp. at 9-11. First, Defendants' claim that the smart camera apparatus is publicly

13    available is not supported by the evidence it submits—evidence Defendants attempt to use to

14    litigate the merits of the case, which is inappropriate at this stage of the litigation. For example,

15    the R13 cameras are only sold under the strict non-use and non-disclosure provisions of the

16    Terms, so any illegal purchase and sale of the cameras is still derived from a wrongful use and

17    does not reveal the trade secrets in any event. *Kewanee Oil Co. v. Bicron Corp.* 416 U.S. 470, 475

18    (1974) ("This necessary element of secrecy is not lost, however, if the holder of the trade secret

19    reveals the trade secret to another 'in confidence, and under an implied obligation not to use or

20    disclose it.'"); *Masimo Corporation v. True Wearables, Inc.* (C.D. Cal., Nov. 7, 2022, No.

21    818CV02001JVSJDE) 2022 WL 17083396, at *9 ("The [generally known] inquiry is not whether

22    the alleged trade secret has been publicly disclosed at all, but whether it has become 'generally

23    known to the relevant people, i.e., potential competitors or other persons to whom the information

24    would have some economic value[.]").

25        Second, Defendants claim that the ebay pictures disclose "the 'double-shot' rear housing

26    with TPE overmolding," the "front housing with recessed sensors for debris shielding," "optical

27    windows," the "white LED lens flash," and the camera lens." This is not correct. For example, at

28    a minimum, the "double-shot" rear housing with TPE overmolding, the white LED lens flash, and

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1    the specifics of the camera lens cannot be seen in these pictures.  None of the components and

2    features can be integrated into an apparatus simply by viewing pictures (one cannot simply view

3    the apparatus from the outside and obtain the trade secret therein).  Regardless, these are disputed

4    factual questions that are not appropriate to resolve on a motion for leave to amend.

5        Defendants also attempt to segregate parts of the apparatus trade secret and separately

6    argue that those components are not trade secrets.  This is not the test.  The apparatus as a whole

7    was kept a secret and while certain features have been disclosed to the FCC (e.g., wireless

8    communication bands), the combination of the wireless features with other features as alleged in

9    the SAC is a trade secret.[2]  And again, Defendants ignore the well established case law (cited

10   above) that establishes that the secret combination of even known elements is itself a trade secret.

11       Essentially, Defendants try to "dumb down" the integrated components of the smart

12   camera assembly trade secret to argue that just looking at the components and where they are

13   located in the assembly is enough to disclose the entire trade secret to the public.  Yet,

14   RoadRunner's well-pleaded allegations state that no person could recreate or copy this trade secret

15   without wrongful acquisition and disassembly—each of which are precluded activities by any

16   party to the Terms.  Further, Defendants try to wrongly characterize the smart camera assembly as

17   simply publicly available components and nothing more. Not so.  The SAC (and ITS) describes

18   the apparatus as including non-publicly available and custom-made components.  *See, e.g.,* SAC

19   ¶ 23.  These components are not routine and ordinary components and took years of customization

20   and proprietary modification to achieve the right results.  *See id.*  A third party could not purchase

21   the components that make up the smart camera assembly and replicate it without reverse

22   engineering.  Such reverse engineering is ***always*** a breach of the Terms and, through the breach, a

23   misappropriation.  Simply put, the smart camera apparatus is not public domain.

24

25   [2] Defendants seek to strike all allegations that relate to publicly available components of the smart
     camera apparatus.  Opp. at 11.  Defendants use the example of FCC disclosures as identifying
26   wireless communication bands and chips as examples.  *Id.*  As articulated above, the trade secret is
     not simply the components segregated from themselves, but rather, a wholly integrated system
27   involving optoelectronic components, electronic components, sensors, mechanical components,
     housing features, etc., that are not publicly disclosed simply because certain features of certain
28   components are described publicly.

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    Defendants also make much of allegations on "information and belief." But it is

2  permissible to allege access based on information and belief: "A plaintiff may . . . plead facts

3  'alleged upon information and belief where the facts are peculiarly within the possession and

4  control of the defendant or where the belief is based on factual information that makes the

5  inference of culpability plausible.'" *And v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1143 (N.D.

6  Cal. 2017) (*quoting Soo Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017)); *Dodich v.*

7  *Pfizer Inc.,* 2018 WL 3584484, at *5 (N.D. Cal. July 26, 2018) (alleging defendant distributed

8  Dilantin that particular plaintiff ingested based on circumstantial evidence found sufficient); *Auris*

9  *Health, Inc. v. Noah Med. Corp.*, 2023 WL 7284156, at *6 (N.D. Cal. Nov. 3, 2023) (finding

10  allegations on information and belief supported by factual allegations in part because employees

11  hired into similar positions to those they previously held).

12    The allegation that Defendants wrongfully disassembled the smart camera assembly is

13  reasonable because without disassembly one cannot recreate the trade secret as the pictures and

14  FCC submission are simply not enough to do so. RoadRunner's investigation also revealed that

15  Defendants' camera had a high resemblance to RoadRunner's camera and was even placed in the

16  same locations to recreate RoadRunner's training data. This is sufficient evidence of trade secret

17  misappropriation. *See Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 780 (D. Mass. 1994) (finding

18  evidence of misappropriation where the defendant did not have its own process or product prior to

19  the plaintiff's disclosure of the process to the defendant and produced the product in two years

20  what the plaintiff had taken 20 years to develop).

21    Finally, Defendants fail to address RoadRunner's optical assembly and design trade secret

22  at all. This trade secret and misappropriation are detailed in the ITS and SAC. Defendants'

23  failure to address this trade secret is an admission showing that the motion for leave should be

24  granted as to this trade secret for this reason alone.

25    **C.    The SAC Properly Alleges the Image Preprocessing Techniques Trade Secret and Access to and Misappropriation of that Trade Secret**

26

27    In the ITS, RoadRunner explained the implementation of its image processing techniques

28  with ███████████████████████████████████████████████ and the additional

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    use of ██████████████████████████ ITS at 10.  RoadRunner also explained in

2    the SAC that information about the techniques were disclosed through customer service

3    communications and through use of the web application that Defendants repeatedly accessed and

4    used.  SAC, ¶¶ 52-54.  Although the SAC cannot disclose these features without disclosing

5    portions of the trade secret itself, at the pleading stage, that is enough; the ITS discloses the trade

6    secrets but not the misappropriation of those trade secrets, but the SAC makes clear how those

7    trade secrets were misappropriated.  For example, the SAC alleges that the techniques are

8    accessible through the text of the object code loaded as firmware and through firmware updates.

9    *Id.*, ¶ 52.  Defendants had access and misappropriated this code.  *Id.*, ¶¶ 59, 74, 86.

10          Defendants' argument regarding firmware is misplaced and the cases cited inapposite.

11   RoadRunner's SAC alleges plausible facts establishing that certain portions of firmware were

12   accessible in object code format (i.e., readable text).  Those accessible portions in object code

13   were sufficient for Defendants to understand and recreate the trade secret.  Defendants cite

14   *Bateman* for the proposition that it is "virtually impossible to develop a working understanding of

15   a program by examining only its object code"; however, the *Bateman* court noted the following:

16          Generally, the object code is readable only by machines. But, as Professor Nimmer
             notes: The skilled programmer, however, may **reverse engineer the program** by
17          using the techniques of "decompilation" and "disassembly" to work backwards from
             object code and to produce a facsimile of the original source code. Although
18          decompilation techniques generally will not yield a perfect copy of the original
             source code, decompilation can afford an understanding of much of the structure and
19          operation of a program.

20   *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1540 n.18 (11th Cir. 1996).  This is precisely

21   RoadRunner's allegation against Defendants—that they accessed the object code and that accessed

22   portion was sufficient to understand and recreate the trade secret by reverse engineering.  Thus,

23   the *Bateman* case supports RoadRunner's allegations in the SAC.

24          Further, Defendants either intentionally misconstrue or fundamentally misunderstand the

25   holdings of its other cited authorities on this issue.  The cases cited by Defendants do not state that

26   once human-readable source code is compiled into binary format, it is readable only by other

27   machines, not humans.  Rather, the explanations flow exclusively in one direction—that in order

28   for a **computer** to be able to read and execute source code, the code must first be converted into

13

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

JMBM | Jeffer Mangels
Butler & Mitchell LLP

machine code. *See Oracle America, Inc. v. Google, Inc.*, 2011 WL 1565988, at \*1 (N.D. Cal. Apr. 27, 2011) ("[A] program had to be converted from source code into machine code before it could be run, or 'executed' [by a computer]."); *Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc.*, 2007 WL 2429653, at \*8 n.6 (N.D. Cal. Aug. 24, 2007) ("[C]ompilation is a method for processing human readable source code into computer readable binary code."); *Keywords, LLC v. Internet Shopping Enters., Inc.*, 2005 WL 8156440, at \*8 (C.D. Cal. June 29, 2005) ("Source code" consists of human-readable programming instructions. "Object code" is the same set of instructions in binary form, a series of 0s and 1s."); *Intellectual Ventures I, LLC v. Canon Inc.*, 143 F. Supp. 3d 143, 175 n.40 (D. Del. 2015) ("Human-readable source code is compiled into firmware that is shipped with a scanner.").  These authorities do not address whether a human is able to read or understand object code—only what a ***computer*** can read/understand.

As alleged in the SAC, certain portions of firmware in object code format were accessible the Defendants.  It is this code that Defendants' misappropriated; they had access through the firmware and through their solicitations of information from customer service technicians where they were able to learn and discern the preprocessing techniques.  That, along with the circumstantial evidence of having access to text in the firmware's object code and access to firmware updates (which also have similar information) is enough to establish the allegations of misappropriation at this stage of the case. RoadRunner is not required to try its entire case in its pleading and circumstantial evidence is sufficient to show misappropriation.  *See Yeiser Research & Development LLC v. Teknor Apex Company*, 281 F.Supp.3d 1021, 1048 (S.D. Cal. 2017) ("a complaint may similarly rely on circumstantial allegations of a defendant's misappropriation.").

Finally, RoadRunner is not claiming that simply buying an R13 sensor is sufficient to disclose the image preprocessing techniques.  One would have to wrongly access the firmware's object code on the device, and/or in a firmware update communicated wirelessly, and/or obtain information through customer service communications, and/or identify certain of the information by accessing the web application.  SAC, ¶¶ 54, 60-62.  Defendants had access to these methods by agreeing to the Terms and obtaining RoadRunner's system and services.  It is reasonable to conclude that Defendants did, in fact, misappropriate RoadRunner's image preprocessing

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   techniques. The images it used, combined with the similarity in its camera, positioned in the same

2   place as RoadRunner's cameras, with the same service offerings to its customers, and the same

3   advertised features, all of which are virtually identical, make this conclusion reasonable. *See id.*,

4   ¶ 63. These allegations are more than sufficient to allege access and misappropriation, and

5   RoadRunner need not prove up the merits of its case for purposes of this motion. Thus,

6   Defendants' suggestions that RoadRunner's allegations are insufficient is misplaced.

7           **D.    The Training Data Trade Secret Is Derived from the Labeled and Tagged**
                    **Images, An Activity Which Defendants Were Precluded from Doing**
8

9           In its ITS, RoadRunner explains that its training data that is used to teach the machine

10  learning system is a closely guarded trade secret that took many years of painstaking development.

11  ITS at 11-15. Defendants misunderstand the trade secret when they assert that they own the

12  Device Data and therefore could not have misappropriated the trade secret. RoadRunner is not

13  alleging that the labeled and tagged images *are* the training data. Rather, RoadRunner's

14  allegations explain that the training data was reverse engineered because Defendants derived it

15  from the millions of labeled and tagged images that comprise the Device Data. SAC, ¶ 60-62.

16          Although it owned the Device Data, Defendants could not themselves derive anything

17  from the Device Data according to the Terms. SAC, ¶ 45, § 2.1.5 ("Customer covenants and

18  agrees not to, directly or indirectly, manipulate or process Device Data, through interaction with

19  databases, algorithms, external data, calculations and/or other processes, methods or tools, for the

20  purposes of deriving Derivative Data."). Defendants cannot derive anything from information or

21  devices disclosed to Defendants under the Terms, including Device Data, regardless of whether it

22  owned the Device Data. Defendants' ownership and use is expressly limited by the Terms and

23  any use beyond that express grant is a misappropriation of the data. Defendants' argument does

24  not address this point in its Opposition and should be ignored.

25          Only with a large number of labeled and tagged images could Defendants derive a training

26  set of its own from which to train the same machine-learning models that are implemented as

27  Defendants' "AI" techniques. *See* SAC, ¶ 60. Defendants did not buy access to the training data

28  from which to train its own machine learning models. To the contrary, RoadRunner explicitly

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

JMBM | Jeffer Mangels
      Butler & Mitchell LLP

1  limited the use of this data precisely to prevent the type of activity in which Defendants engaged.

2  It is nonsensical to think that RoadRunner was selling access to its training set for Defendants to

3  compete against RoadRunner.  It is reasonable to conclude that Defendants used the images as a

4  training set to derive machine learning models because of the short time it took for Defendants to

5  come up with their competing AI system with the same features and processes as RoadRunner.

6  *See id.*, ¶ 61.  Defendants placed its cameras in the exact same locations as the RoadRunner's

7  cameras so that it could use the data in precisely this manner—to train its own machine-learning

8  system that is now the core of its customer offering.  *See id.*

9       Defendants argue that this conduct is only a breach of contract.  Yet, they ignore the case

10  law cited by RoadRunner that explains that a breach of contract forms the wrongful act that

11  establishes misappropriation—precisely what occurred here.  *See* Mot. at 16 (discussing *Beco*

12  *Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, 2015 WL 5732595, at *9 (E.D. Cal. Sept. 28,

13  2015); *Reingold v. Swiftships, Inc.,* 126 F.3d 645, 650-51 (5th Cir. 1997); *Candy Craft Creations,*

14  *LLC v. Gartner,* 2015 WL 1541507, at *23 (S.D. Ga. Mar. 31, 2015).

15       Accordingly, the motion for leave should be granted for this reason as well.

16       **E.    The Algorithms and Processes Trade Secrets are Alleged with Sufficient
             Specificity and Access and Misappropriation Are Plausibly Pleaded**

17

18       RoadRunner's ITS describes the algorithms and processes with pages of detail as well as

19  pictures.  These include the Subpar Image Detection (SPID), the Container Fullness Analysis, the

20  Contamination Detection/Context Identification, the Empty Event Detection, the Rightsizing

21  Recommendation Generation, the Post Auto-balancing Algorithm and the Location Soft-Locking

22  Techniques.  ITS at 15-21.  Contrary to Defendants' assertions, RoadRunner does describe the

23  actual steps of the algorithms and processes.  Take for example the rightsizing algorithm, which is

24  described in detail on pages 19-20 of the ITS.  The ITS lists six separate steps of the operation that

25  define the algorithm with particularity.  *Id.* at 19-20.

26       The ITS goes into exacting detail regarding step by step algorithms and processes along

27  with inputs and outputs of each.  For example, RoadRunner alleges that the SPID utilizes a

28  machine learning model in a CNN to compare empty and subject images and, with the tool,

JMBM | Jeffer Mangels
Butler & Mitchell LLP

categorize the image in several categories. ITS at 15-16. This is sufficient for disclosure of the algorithm under both the SAC and ITS. The ITS also describes the inputs and outputs of each of the algorithms, not just the features, contrary to Defendants' assertions. For example, the Empty Event Detection Algorithm identifies four separate inputs (e.g., different types of data) and two outputs to provide the user with specified content concerning that particular waste container. *See* ITS at 19. This is sufficient and does more than simply disclose desired outcomes or features.

Defendants' case law is inapposite. First, Defendants cite to cases that weigh the adequacy of discovery disclosures, not pleading standards. *See Alta Devices, Inc. v. LG Electronics, Inc.*, 2019 WL 176261, at *1 (N.D. Cal. Jan. 10, 2019) (motion to compel disclosure of trade secrets under Section 2019.210); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1150 (D. Or. 2015) (motion to compel further interrogatory responses); *Mednet Solns., Inc. v. Eric Jacobson and Veeva Sys., Inc.*, 2021 WL 6931589, at *1 (D. Minn. Sept. 16, 2021) (motion to compel plaintiff to supplement interrogatory responses); *T2 Modus, LLC v. Williams-Arowolo*, 2023 WL 6221429, at *2 (E.D. Tex., Sept. 25, 2023) (motion to compel discovery responses).

Second, the allegations as pleaded are readily distinguishable. In *Alta Devices*, plaintiff's description of alleged trade secret was insufficient because it did not describe what the trade secret was, "but only the category or categories in which the trade secret may be found." 2019 WL 176261, at *4. In *Vesta*, the court ruled that plaintiff "may not claim that a particular method or process is a trade secret . . . without identifying the steps in the process and explaining how those steps make [the] method or process unique . . . ." 147 F. Supp. 3d at 1156 (citations omitted). Contrary to the plaintiff in *Vesta*, RoadRunner describes the steps of the algorithms and processes in detail. SAC, ¶¶ 39-40. These are not mere descriptions of desired outcomes or generic categories, but of the inputs and outputs of the algorithms and processes. *Id.*

In *Mednet*, the court ruled the plaintiff "must describe [the trade secrets] with greater specificity" because the plaintiff's response provided "general descriptions" with no "particulars or specificity." 2021 WL 6931589, at *2. Similarly, in *T2 Modus*, the court found the plaintiff's mere recitation of the statutory definitions of a trade secret insufficient and ordered a supplemental interrogatory response. 2023 WL 6221429, at *4-5. Here, RoadRunner's descriptions of its

JMBM | Jeffer Mangels
Butler & Mitchell LLP

17

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

2    algorithms and processes neither parrot the statutory definition of a trade secret nor describe

3    generic categories of trade secrets.  SAC, ¶40.

4         Further, the publicly available article cited by Defendants does not disclose the algorithm

5    for Empty Event Detection as argued by Defendants.  A comparison between the article and the

6    ITS show that the article does not have sufficient information to disclose the algorithm.  *Compare*

7    Declaration of Daniel B. Weinger, Ex. 8 *with* ITS at 18-19.  Indeed, the ITS discloses additional

8    details and implementation not identified in the article's high-level description.  Defendants admit

9    as much.  *See* Opp. at 21-22.  Moreover, the sufficiency of the description of an algorithm in a

10   Section 2019.210 disclosure is not at issue in this motion for leave to amend.  Even so, such a

11   disclosure document only needs to "identify" the particular trade secret with "reasonable

12   particularity."  Cal. Code Civ. Proc. § 2019.210.  Still further, whether a publicly available article

13   discloses a trade secret is a factual dispute that is not appropriate for determination here.

14        Defendants' access to the algorithms and processes trade secrets is also described with

15   reasonable particularity.  For example, RoadRunner describes the customer communications in

16   which Defendants asked questions about the processes and received that information.  SAC, ¶¶ 52-

17   54.  The relevant time period is alleged—namely, the time period in which the two parties had a

18   business relationship—in which numerous customer service communications occurred.

19   Defendants ***solicited*** customer service communications for the purpose of obtaining technical

20   information about the system and processes that RoadRunner had provided to Defendants.

21   RoadRunner also alleged that Defendants had access to the web application which discloses the

22   features and steps of the processes.  *Id.*  The web application disclosed not only data results, but

23   disclosed steps of the algorithms and processes as well as input data and output data so that the

24   customers could learn and understand the importance of them.  These allegations are sufficient at

25   this stage of the case.

26        Accordingly, the trade secret along with misappropriation is sufficiently pleaded in the

27   SAC and the motion for leave should be granted.

28

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**III.    AMENDMENT IS NOT FUTILE AND ROADRUNNER CAN PROVIDE MORE SPECIFICITY FOR TRADE SECRET IDENTITY AND MISAPPROPRIATION**

RoadRunner's SAC and ITS discloses more than sufficient information to identify each trade secret and specify facts to show access and misappropriation.  To the extent needed, RoadRunner can provide more information under seal, including more specific detail on when and where certain acts took place and what was disclosed.  Amendment is not futile under the circumstances.  *See* Mot. at 21-22.

**IV.    CONCLUSION**

RoadRunner spent years and thousands upon thousands of hours developing its trade secrets, it pleaded those trade secrets with specificity in the SAC (and ITS) and explained how Defendants misappropriated those trade secrets and took them for their own purposes and financial gain.  The motion for leave to amend should be granted.

DATED:  February 6, 2024            JEFFER MANGELS BUTLER & MITCHELL LLP
                                     STANLEY M. GIBSON
                                     JAMES NEUDECKER
                                     SHAVON HENRY
                                     JOSEPH J. MELLEMA

                          By:    _____
                                          STANLEY M. GIBSON
                                 Attorneys for Plaintiff
                                 ROADRUNNER RECYCLING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, I electronically filed the foregoing **ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| Counsel | Email Address |
|---|---|
| Andrew H DeVoogd | AHDeVoogd@mintz.com |
|  | TMMcGrath@mintz.com |
| Arameh Zargham O'Boyle | azoboyle@mintz.com |
|  | docketing@mintz.com |
|  | GJLeon@mintz.com |
| Daniel B. Weinger | dbweinger@mintz.com |
| James M Wodarski | jmwodarski@mintz.com |
| James Mark Neudecker | JNeudecker@jmbm.com |
|  | aw5@jmbm.com |
| Joseph James Mellema | jmellema@jmbm.com |
|  | clopez@jmbm.com |
|  | mastercalendar@jmbm.com |
|  | msommer@jmbm.com |
| Nicholas W Armington | nwarmington@mintz.com |
| Shavon Henry | sh6@jmbm.com |
| Stanley Martin Gibson | sgibson@jmbm.com |
|  | im3@jmbm.com |
|  | lo2@jmbm.com |
|  | mastercalendar@jmbm.com |
| Tianyi Tan | TTan@mintz.com |

I also certify the document and a copy of the Notice of Electronic Filing was served via  on the following non-CM/ECF participants:

_____

Stanley M. Gibson

ROADRUNNER RECYCLING, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES