# EXHIBIT N-R

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024

1 (242 to 245)

---

**242**

```
                UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA

ROADRUNNER RECYCLING, INC.,)
                           )
       Plaintiff,          )
                           )
VS                         ) Civil Action No.
                           ) 3:23-cv-04804-WHA
RECYCLE TRACK SYSTEMS,     )
INC., AND RECYCLESMART     )
SOLUTIONS, INC.,           )
                           )
       Defendants.         )
***********************************************
           REMOTE VIDEOTAPED DEPOSITION OF
                  WILLIAM LEO HOARTY
              Volume 2 - October 7, 2024
        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
***********************************************




Job No. 555646
Pages 242 - 493
Stenographically Reported by:
Susan S. Klinger, RMR-CRR, CSR
```

---

**243**

October 7, 2024

REMOTE VIDEOTAPED DEPOSITION OF WILLIAM LEO HOARTY, produced as a witness at the instance of the Defendants, and duly sworn, was taken in the above-styled and numbered cause on the 7th of October, 2024, from 12:03 to 8:37, before Susan S. Klinger, RMR-CRR, CSR in and for the States of Texas and California, reported by stenographic method pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

---

**244**

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:
  Joseph J. Mellema, Esquire
  JEFFER MANGELS BUTLER AND MITCHELL LLP
  3 Park Plaza, Suite 1100
  Irvine, California  92614
  949.623.7200

ON BEHALF OF THE DEFENDANTS:
  Matthew S. Galica, Esquire
  MINTZ, LEVIN, COHN, FERRIS, GLOVSKY &
  POPEO, P.C.
  One Financial Center
  Boston, Massachusetts  02111
  617.542.6000

Also Present:
  Charlie McGrath, videographer
  Mike Martinez, remote tech

---

**245**

I N D E X

WITNESS                                        PAGE
WILLIAM LEO HOARTY
EXAMINATION BY MR. GALICA                       246

E X H I B I T S

No.         Description
Exhibit 422  Opposition Report                   251
Exhibit 423  Email, RTS_00339710                 320
Exhibit 424  Picture, RTS_00318118               326
Exhibit 425  FCC Filing, RTS_00333850            365
Exhibit 426  Picture, RTS_00318119               436
Exhibit 427  Photograph, RTS_00318120            447
Exhibit 428  R12 User Manual, RTS_00333865       449
Exhibit 429  Photograph, Hoarty Reply Report     466
Exhibit 430  RTS_00318121                        474
Exhibit 431  External Photographs                475

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024

2 (246 to 249)

---

**246**

1        PROCEEDINGS
2        VIDEOGRAPHER: Here begins Day Number 2 in
3   the videotaped deposition of William Leo Hoarty in
4   the matter of RoadRunner Recycling, Incorporated
5   versus Recycle Track Systems, Incorporated, et al
6   in the United States District Court, Northern
7   District of California, Case Number
8   3:23-cv-04804-WHA.
9        Today's date is October 7th, 2024. The
10  time on the video monitor is 12:03 p.m. The
11  remote videographer is Charlie McGrath
12  representing Planet Depos. All parties of this
13  video deposition are attending remotely.
14       Would counsel please voice-identify
15  themselves and state whom they represent?
16       MR. GALICA: Matthew Galica from Mintz on
17  behalf of defendants.
18       MR. MELLEMA: Joe Mellema of Jeffer
19  Mangels Butler & Mitchell on behalf of plaintiff.
20       VIDEOGRAPHER: The court reporter today is
21  Susan Klinger representing Planet Depos.
22       The witness will now be sworn.
23            WILLIAM L. HOARTY,
24  having been first duly sworn testified as follows:
25            EXAMINATION

**247**

1   BY MR. GALICA:
2        Q  Good morning, Mr. Hoarty. How are you?
3        A  I'm fine. Good morning again.
4        Q  It is good to see you again.
5        We have been through this once, but I want
6   to walk through a couple of ground rules before we
7   get going today. Is that all right?
8        A  Of course.
9        Q  Okay. So as you know, your testimony
10  today is under oath as if it were being taken
11  before a judge or jury, who will preside and
12  observe over this proceeding. Do you understand
13  that?
14       A  I do.
15       Q  Okay. And your testimony may, in fact, be
16  presented before a judge or jury as part of this
17  proceeding. Do you understand that?
18       A  I do.
19       Q  And because of that, it is important that
20  you testify truthfully and to the best of your
21  ability. Do you understand that?
22       A  I do.
23       Q  So throughout the day I'll be asking
24  questions. If you do not understand the question,
25  can you please ask me to clarify it?

**248**

1        A  I will do that.
2        Q  Okay. If you do answer the question, I
3   will assume that you understood my question; is
4   that fair?
5        A  Yes, it is.
6        Q  Okay. If you need to take a break at any
7   time, just let me know, but if I have a question
8   pending, I'd ask that we wrap that up before we
9   take the break. Is that okay?
10       A  Yes, it is.
11       Q  Okay. And you are doing a great job so
12  far, but in the world of Zoom depositions, it gets
13  tough when people start talking over each other or
14  don't answer verbally, so I would first ask that
15  all your answers are provided verbally. Is that
16  okay?
17       A  Yes.
18       Q  So no hand gestures or head nods, okay?
19       A  Understood.
20       Q  And then so we avoid talking over each
21  other, I would just ask that you please let me
22  finish my entire question before you begin
23  answering. Is that okay?
24       A  Yes, it is.
25       Q  And then I'll do my best to let you answer

**249**

1   fully before I ask my next question. Is that
2   okay?
3        A  Yes.
4        Q  Okay. Also your attorney may object from
5   time to time today, but you're still obligated to
6   answer the question unless you are specifically
7   instructed by counsel not to answer. Do you
8   understand that?
9        A  Yes, I do.
10       Q  Okay. Is there any reason you can't
11  testify fully and truthfully today?
12       A  No reason.
13       Q  Okay. Did you do anything to prepare for
14  today's deposition?
15       A  Yes, I did. I reviewed my opposition
16  report and my rebuttal -- and my reply report.
17       Q  Okay. Did you read any other documents?
18       A  Not -- no, not for -- not in preparation
19  for this.
20       Q  Okay. How else did you prepare for this
21  beyond reading your opposition and reply reports?
22       A  I had a discussion with counsel just to --
23  in general on what I -- what I am to expect, and
24  it was -- I think we had two calls last week, both
25  fairly brief.

290
1  ribbon cable to connect a camera and a circuit
2  board, right?
3      MR. MELLEMA: Objection, form.
4   A  To a technical person, yes.
5   Q  Okay. How are you defining a technical
6  person?
7   A  An engineer who would design and develop
8  electronic circuit boards, a person who would use
9  camera modules and applications at various
10 industrial applications, et cetera.
11  Q  Okay. So are the employees of Compology
12 the only people that designed and developed
13 electronic circuit boards with camera modules?
14  A  I believe the answer to that it is
15 obvious. Of course not.
16  Q  Okay. So Compology's -- I will withdraw
17 that.
18     You're not saying that using a camera --
19 or a ribbon to connect a camera module and printed
20 circuit board is a trade secret, right?
21     MR. MELLEMA: Objection, form.
22  A  That is correct, that is not a trade
23 secret.
24  Q  You said the battery assembly was uniquely
25 developed by Compology. Do you recall that?

291
1   A  Yes, I do.
2   Q  Okay. How long did that take?
3   A  I don't have the record of their -- of
4  their -- I don't have that much detail on their
5  development cycle.
6   Q  How much did it cost them to develop it?
7   A  I do know that looking up the alternatives
8  to their battery pack, it is about --
9  
10 
11 
12  Q  Okay. What is the alternative cost you
13 are referring to there?
14  A  It is -- an engineer could choose a
15 battery from several companies. There are a few
16 that specialize in this type of battery that
17 contain
18 
19 
20 
21 
22 
23 
24  Q  How did it come about that cost savings?
25     MR. MELLEMA: Objection, form.

292
1   A  Clever engineering. The
2                              also allowed them
3  to apply, for instance, a              in the
4  assembly, which
5                    So they're just good engineering
6  and a little bit of R&D.
7   Q  How much R&D?
8   A  It is not possible to quantify that. I
9  just -- I would have to look at logbooks and
10 interview the engineers and ask them, you know,
11 what they did, and I did -- the only document that
12 would be relevant to answer your question is to
13 look at the specification they sent to the battery
14 manufacturer requesting a specific assembly of
15 components.
16  Q  You have a long history in product
17 development, correct?
18  A  That is correct.
19  Q  Okay. If somebody gave you    battery
20 cells, would you know how to connect them in a
21 package?
22     MR. MELLEMA: Objection, form.
23  A  That would actually depend on which
24 batteries. For instance, the -- it would just
25 depend on which two batteries you are referring

293
1  to.
2   Q  What if somebody gave you    lithium
3  thionyl chloride batteries?
4   A  I would know that I could connect them in
5  parallel and double the current availability.
6   Q  And how would you do that?
7   A  Connect them in parallel.
8   Q  Okay. Is that what Compology does?
9   A  
10  Q  What do they do
11  A  
12 
13 
14 
15 
16 
17 
18 
19  Q  You wouldn't know to have done that?
20  A  I would have after I researched it, but
21 off just -- just staring at the -- just looking at
22 the -- at the problem, without -- without doing
23 research, you can't assume you can
24 
25     It is a common problem in electric

Case 3:23-cv-04804-WHA   Document 230-14   Filed 12/18/24   Page 5 of 5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of William Leo Hoarty, Volume 2
Conducted on October 7, 2024
63 (490 to 493)

490

1  A  I was referring to the ability to operate
2  a camera in a harsh environment, obtain images and
3  identify the images uses artificial intelligence.
4  The overall -- overall system, primary -- primary
5  functions to get images out of dumpsters, identify
6  various aspects of the state of the dumpster and
7  that is the -- a description of the Compology
8  system.
9      Q  Is that a description of the Compology
10 system trade secret?
11         MR. MELLEMA:  Objection, form, beyond the
12 scope.
13     A  I define that well in my initial report
14 what the trade secrets are, and including the --
15 including the artificial intelligence elements.
16 And I don't really have anything further to add to
17 my report without being able to cite specifics in
18 the report.
19     Q  So when you just provided an answer and
20 said the Compology system trade secret, you didn't
21 quite know what you were referring to, correct?
22         MR. MELLEMA:  Objection, form.
23     A  I knew what I was referring to.  I
24 probably did not state it in a proper frame, but I
25 think I described what I meant.

491

1      Q  Okay.
2      A  The ability to acquire images from a
3  hostile environment in difficult circumstances and
4  to identify the images and provide useful
5  information.  How they did all of those steps is
6  certainly part of their collection of trade
7  secrets.
8      Q  Okay.  Is that a proper description of the
9  Compology system trade secret?
10         MR. MELLEMA:  Objection, form, beyond the
11 scope.
12     A  In the -- as I don't have the document in
13 front of me that I wrote, I can't do anything
14 further than just make summaries of my impression
15 of their overall business, but to be succinct I
16 would ask that I could refer to my document.
17     Q  Let me just -- is it true that when you
18 just provided an answer in reference to Compology
19 system trade secret, you can't define what that
20 Compology system trade secret is, correct?
21         MR. MELLEMA:  Objection, form, beyond the
22 scope.
23     A  Sorry, that is not correct.
24     Q  So you can provide or you can define the
25 Compology system trade secret that you referred to

492

1  in your previous answer?
2          MR. MELLEMA:  Objection, form, beyond the
3  scope.
4      A  Beyond my generalization I don't have
5  anything further to add to that.
6          MR. GALICA:  I don't have any further
7  questions right now.
8          MR. MELLEMA:  Nothing further from --
9  nothing, no questions from me.
10         VIDEOGRAPHER:  All right.  This marks the
11 end of the deposition of William Leo Hoarty.  We
12 are going off the record at 8:36.
13         (Recess, 8:36 to 8:37 p.m.)
14         VIDEOGRAPHER:  We are back on the record
15 at 8:37.
16         MR. GALICA:  I'd like to make sure to
17 designate the entirety of the transcript Highly
18 Confidential, Attorneys' Eyes Only.
19         And with that, I have nothing further.
20         VIDEOGRAPHER:  All right.  We are going
21 off the record at 8:37.
22         (Deposition adjourned at 8:37 p.m.)

493

          CERTIFICATE OF SHORTHAND REPORTER

3       I, Susan S. Klinger, the officer before
4  whom the foregoing deposition was taken, do hereby
5  certify that the foregoing transcript is a true
6  and correct record of the testimony given; that
7  said testimony was taken by me stenographically
8  and thereafter reduced to typewriting under my
9  direction; that reading and signing was not
10 discussed; and that I am neither counsel for,
11 related to, nor employed by any of the parties to
12 this case and have no interest, financial or
13 otherwise in its outcome.
14         IN WITNESS WHEREOF, I have hereunto set my
15 hand on the 9th of October, 2024.

                    _____
                    Susan S. Klinger, RMR-CRR, CSR
                    Texas CSR 6531, Exp:  10/23/25
                    California CSR 14487, Exp: 11/30/24