# EXHIBIT AE-R

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., | |
| Plaintiff, | Case No. 3:23-cv-04804-WHA |
| v. | |
| RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC., | **HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY** |
| Defendants. | |

## REBUTTAL EXPERT REPORT OF R. JACOB BAKER, PH.D., P.E.

## Table of Contents

I.      Introduction and Summary of Opinions ................................................................. 1

II.     Background & Credentials ...................................................................................... 1

III.    Legal Concepts ....................................................................................................... 2

IV.     Materials Considered and Investigation Conducted .............................................. 3

V.      Opinions ................................................................................................................. 3

    A.      Analysis of Mr. Hoarty's Identification of Trade Secrets ............................. 3

        1.      Alleged Trade Secret 2: Smart Camera Apparatus for a Smart Waste Container Mounted Device ................................................................................................ 7

            a.      Mr. Hoarty Has Not Demonstrated That the Smart Camera Apparatus For A Smart Waste Container Mounted Device Is a Trade Secret ................................... 8

                i.      The Smart Camera Apparatus' Individual Components ..................................... 10

                    1.      MCU ................................................................................................... 10

                    2.      Ambient Light Sensors ...................................................................... 11

                    3.      Accelerometer .................................................................................... 11

                    4.      Wireless Communication System ...................................................... 11

                    5.      GNSS/GPS And Other Wireless Connectivity Device ...................... 13

                    6.      Battery Technology ............................................................................ 13

                    7.      Surface Mount Technology ("SMT") Antenna ................................. 16

             b.      Mr. Hoarty's Trade Secret Arguments ............................................................. 17

        2.      Alleged Trade Secret 3: Optical Assembly and Design of a Smart Container Mounted Device ................................................................................................ 17

            a.      Mr. Hoarty Has Not Demonstrated the Alleged "Optical Assembly and Design of a Smart Waste Container Mounted Device" Is a Trade Secret ....................................... 18

    B.      RecycleSmart/RTS Did Not Have Access to RoadRunner's Alleged Trade Secrets ..... 19

        1.      RTS Did Not Misappropriate Any Trade Secrets Via Access To a Disassembled Device ................................................................................................................ 20

        2.      RTS Did Not Misappropriate Any Trade Secrets Via Access to the Technical and Engineering Team ............................................................................................ 22

    C.      The Smart Camera Apparatus and the Optical Assembly and Design are in the Public Domain ................................................................................................................ 22

        1.      Compology Shows A Teardown Of Both The Smart Camera Apparatus and The Optical Assembly And Design In A Video On Youtube ................................. 23

        2.      The FCC Website Includes External and Internal Images of the Compology Devices 25

        3.      An R13 Device is Available for Sale on Ebay ........................................ 25

4.    Verizon Wireless R11 Web Page Discloses Its Key Components ............................ 26

D.    I Disagree With Mr. Hoarty's Derivation Arguments.................................... 27

1.    There Is Nothing Special About Compology's R12 Battery Pack ........................ 28

2.    The Pello Device's Housing Is Materially Different Than the Compology R12's Clamshell Design ........................................................................ 32

3.    The Optical Assembly and Design Is Fundamentally Different Between the Compology Devices and the Pello Device.............................................. 33

E.    Opinions Regarding Trade Secret Value ......................................... 41

VI.    Conclusion.......................................................................... 41

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

1.      My name is R. Jacob Baker. I have been retained by counsel for Defendants

Recycle Track Systems, Inc., and RecycleSmart Solutions Inc., ("RTS" or "Defendants") in

connection with this case. This expert report based on my personal knowledge of the facts. The

facts and data recited in this expert report are true and accurate to the best of my knowledge and

belief.  This report is in response to the report submitted by W. Leo Hoarty, an expert retained by

RoadRunner Recycling Inc., ("RoadRunner" or "Plaintiff") on August 30, 2024.

## I.      INTRODUCTION AND SUMMARY OF OPINIONS

2.       I understand that RoadRunner has accused RTS of trade secret misappropriation.

I have reviewed all the evidence relevant to the hardware and software of RTS' Pello system and

the RoadRunner's system.

3.      I understand that the Plaintiff in this case, RoadRunner Recycling Inc.

("RoadRunner"), has accused RTS of trade secret misappropriation. I understand that W. Leo

Hoarty has provided an expert report (the "Hoarty Report") with his opinions regarding the

technology and alleged trade secrets at issue in this case.  Based on my analysis of the trade

secrets and Mr. Hoarty's report, it is my opinion, that the alleged trade secrets in this case should

not be afforded trade secret protection at least because RoadRunner and Mr. Hoarty have not

identified any alleged trade secrets that should be afforded trade secret protection, RTS did not

have access to the alleged trade secrets, and the alleged trade secrets are in the public domain.

## II.     BACKGROUND & CREDENTIALS

4.      I hereby incorporate by reference my Opening Expert Report dated August 30,

2024. That report includes, among other things, an overview of my qualifications, prior

testimony and background.

5.      My qualifications generally are set forth in my Curriculum Vitae, which is attached as **Appendix A**. Appendix A also includes a list of the publications I have authored and a list of the other cases in which I have testified during the last four years.

6.      I am being compensated for my work as an expert at my standard consulting fee of $765 per hour. My compensation is not dependent on the outcome of these proceedings or the content of my opinions.

## III.    LEGAL CONCEPTS

7.      I am not an attorney. However, the law surrounding trade secrets and confidential information has been explained to me, and my understanding is as follows:

8.      For a plaintiff to succeed on a claim for trade secret misappropriation, they must prove (1) the existence of a trade secret, (2) reasonable steps taken to preserve secrecy, and (3) the use of improper means in breach of a confidential relationship used to acquire the secret.

9.      A party asserting misappropriation is required to identify with specificity the trade secret or proprietary information they allege has been misappropriated, and that the trade secret must belong to that party.

10.     The term "trade secret" includes anything tangible, intangible, and/or electronically stored which constitutes, represents, evidences, or records a scientific, technical, merchandising, production, or management information, design, process, procedure, formula, invention, or improvement.

11.     Information that is publicly available or is generally known to people working in the field cannot be a trade secret.

12.     A trade secret must have either independent financial value or provide the owner of the trade secret some business and/or competitive advantage over competitors insofar as the

W. Leo Hoarty Rough Depo. Tr. at 87:23-88:20.

22.    It not surprising that Mr. Hoarty had difficulty describing the alleged trade secrets because RoadRunner's corporate designees, that were designated to testify about RoadRunner's trade secrets could only describe RoadRunner's trade secrets in these lists of broad hardware components and software features without being able to tie the hardware components and software features to any schematics, Gerber files, or source code files to demonstrate any unique configuration amongst these components.  For this reason alone, RoadRunner's alleged trade secrets should be rejected.  I will walk through Mr. Hoarty's "analysis" of RoadRunner's trade secrets and demonstrate why they do not qualify for trade secret protection and instead only point to broad concepts and features.

### 1.    Alleged Trade Secret 2: Smart Camera Apparatus for a Smart Waste Container Mounted Device

23.    Mr. Hoarty claims that the "smart camera apparatus for a smart waste container device" qualifies for trade secret protection.  *See* Hoarty Report at ¶¶36-62.  I disagree for at least three reasons.  First, Mr. Hoarty has not demonstrated that the "smart camera apparatus for a smart waste container device" is a trade secret.  Second, as I will show later in my report RTS did not have access to the alleged "smart camera apparatus for a smart waste container device" trade secret.  *Infra*.  And third, the alleged "smart camera apparatus for a smart waste container device" trade secret was in the public domain.  *Infra*.

24.    Mr. Hoarty's analysis of the "smart camera apparatus for a smart waste container mounted device," suffers from similar infirmities as Alleged Trade Secret 1 in that Mr. Hoarty never offers an opinion of why the smart camera apparatus should be afforded trade secret protection and instead again cites a list of hardware components and software features.  But like

the overall waste metering system, this vague list of hardware components and software features do not constitute a trade secret.

> a. **Mr. Hoarty Has Not Demonstrated That the Smart Camera Apparatus For A Smart Waste Container Mounted Device Is a Trade Secret**

25.     Mr. Hoarty has not demonstrated that the "smart camera apparatus for a smart waste container mounted device" is a trade secret for at least two reasons. *See* Hoarty Report at ¶¶36-62. First, Mr. Hoarty recites a laundry list of high-level hardware components and product features, without citing to any schematics, Gerber files, or source code files, which does not qualify the "smart camera apparatus for a smart waste container mounted device" for trade secret protection. Second, Mr. Hoarty fails to demonstrate that these high-level hardware components and product features are combined in any unique configuration that might qualify it for trade secret protection.

26.     At the outset, I note that Mr. Hoarty never points to any schematics, Gerber files, or any other files, or where in those files RoadRunner's alleged smart camera apparatus resides. *See* Hoarty Report at ¶¶36-62. Although, Mr. Hoarty does show a schematic for a battery pack, without ever explaining anything within the schematic, Mr. Hoarty fails to show any schematic of any other battery pack and fails to show how these schematics ties into the alleged smart camera apparatus.[2]This is particularly troubling because in its Identification of Trade Secrets RoadRunner included several exhibits that seem to include at least schematics in some instances. *See* ROADRUNNER000000002-095. Yet, Mr. Hoarty and RoadRunner have failed to tie any of these exhibits to its alleged overall waste metering system trade secret. Further, Mr. Hoarty

---

[2] I will show later that the battery pack is not a trade secret.

never indicates what configuration or combination of these hardware components and software features he considers makes up the smart camera apparatus trade secret.

27.      Instead of citing to any schematics, Gerber files, or any other file, Mr. Hoarty makes vague statements like "Compology employed **various confidential and proprietary techniques** to achieve an accurate, low-power, smart camera apparatus for use in waste containers that could operate for at least five years on an internal battery." Hoarty Report at ¶45 (emphasis added). While Mr. Hoarty claims RoadRunner/Compology used "various confidential and proprietary techniques," Mr. Hoarty never explains what these confidential and proprietary techniques are. These vague conclusory statements only serve as further proof that Mr. Hoarty and RoadRunner have not pointed to any tangible trade secret material, and for this reason alone RoadRunner's Alleged Trade Secret 2 should be rejected.

28.      After spending nine paragraphs describing the history of the development of its smart camera apparatus and its various iterations, Mr. Hoarty finally reveals what is allegedly included in its smart camera apparatus. *See* Hoarty Report at ¶46. Mr. Hoarty claims that the smart camera apparatus includes:

> a smart camera including a CCM with wide FOV camera lens, battery pack, high-durability injection-molded parts, including a 'double shot' rear housing with TPE overmolding, front housing with recessed sensors for debris shielding, and camera and flash PCBA cutouts and mounting, and optical windows with high scratch-resistance, and specialized coatings; printed circuit board assemblies ('PCBAs') containing microcontrollers, external RAM integrated circuit ('IC'), wireless communication systems, accelerometer, GPS, environmental sensors, and a camera flash LED.

Hoarty Report at ¶46.

29.      Notably, Mr. Hoarty merely lists the hardware components of the RoadRunner/Compology device; there is no analysis of a particular configuration of these components, or why these components qualify as a trade secret. For example, what Mr. Hoarty,

and RoadRunner, are claiming as its smart camera apparatus trade secret is no different than a conventional smartphone. No one would dispute that today's smartphones include a smart camera including a CCM with a wide field-of-view camera lens; a battery pack; high-durability injection-molded parts; a housing with recessed sensors for debris shielding; camera and flash PCBA cutouts and mounting; optical windows with high scratch-resistance and specialized coatings; PCBAs containing microcontrollers; an external RAM IC; wireless communication systems; accelerometer; GPS; environmental sensors; and a camera flash LED. I find it interesting that Mr. Hoarty has not tried to differentiate RoadRunner's alleged camera apparatus trade secret from a conventional smartphone because they are so similar.

### i. The Smart Camera Apparatus' Individual Components

30. Next Mr. Hoarty highlights some of the alleged smart camera apparatus trade secret's individual components but fails to provide any analysis as to why these individual components qualify the smart camera apparatus as a trade secret. They do not. I will walk through each component to demonstrate that they are conventional components one would find in a conventional smartphone.

### 1. MCU

31. Mr. Hoarty spends a long paragraph discussing how the ███████████ ███████████████████ a standard microprocessor found in smartphones and other IoT devices, functions. *See* Hoarty Report at ¶47. Yet, Mr. Hoarty provides no analysis or evidence that demonstrates the MCU, which is found in all of RoadRunner's devices, qualifies the smart camera apparatus as a trade secret. *Id*. Mr. Hoarty's analysis of how the MCU interacts with image sensors and RAM demonstrates how an MCU interacts with image sensors and RAM in a

conventional smartphone. This type of analysis only further strengthens my conclusion that RoadRunner's smart camera apparatus does not qualify for trade secret protection.

### 2. Ambient Light Sensors

32. Mr. Hoarty next highlights the smart camera apparatus' ambient light sensor. *See* Hoarty Report at ¶48. Notably, Mr. Hoarty does not even indicate the make or manufacture of the ambient light sensor, or whether the same sensor is used in the RoadRunner/Compology devices. *Id.* More importantly, Mr. Hoarty is merely identifying an ambient light sensor, a sensor that is found in conventional smartphones to control the brightness of the smartphone's screen. Nevertheless, an ambient light sensor does not qualify the smart camera apparatus as a trade secret.

### 3. Accelerometer

33. Next, Mr. Hoarty highlights the accelerometer in the smart camera apparatus. *See* Hoarty Report at ¶49. Again, Mr. Hoarty fails to mention the make or make or manufacture of the accelerometer, or whether the same model of accelerometer is used in the RoadRunner/Compology devices. Similar to the other hardware components, an accelerometer is a component that is found in conventional smartphones to allow the smartphone to detect the position of the smartphone to ensure the orientation of the display matches the position of the smartphone. Mr. Hoarty also mentions an RGB LED that allows an on-site technician to ascertain what mode or function the camera device is operating. *Id.* Neither an RGB LED nor an accelerometer qualifies the smart camera apparatus for trade secret protection.

### 4. Wireless Communication System

34. For the next individual component, Mr. Hoarty discusses the wireless communication system. *See* Hoarty Report at ¶¶50-51. Interestingly, Mr. Hoarty notes that the

"██████████████████████████████████████████████████████

████████████████████████████████████████████" Hoarty Report at ¶50.  I understand that RTS' experience with the RoadRunner/Compology sensors was that they were often unable to communicate with the sensor.  The fact that ████████████████████████ ████████████████████████████████████████████████████████████████ ████████ explains RTS' difficulty with the sensors.

35.    Wireless communication modules, like the one Mr. Hoarty describes used in the smart camera apparatus, are used in conventional smartphones, and do not qualify the smart camera apparatus for trade secret protection.

36.    Mr. Hoarty focuses his analysis on the RoadRunner/Compology LTE CAT-M1 wireless communication module.  *See* Hoarty Report at ¶51.  While Mr. Hoarty mentions the module is a UBLOX module in the R11 device, Mr. Hoarty never indicates which model is used in the R11 or what make, and model is used in the R12 and R13 devices.

37.    Notably, Mr. Hoarty claims, without any support, the "wireless communication module uses an ███████████████████████████████████████████████████ ████████.." Hoarty Report at ¶51.  Mr. Hoarty never identifies the ██████████████ in any schematics or other hardware files and does not demonstrate why this particular ████████ ████████████████████  If this ████████████ qualifies the smart camera apparatus for trade secret protection, Mr. Hoarty, and RoadRunner, have failed to identify it.

38.    Finally, Mr. Hoarty's claim, without any support, that RoadRunner/Compology was an early adopter of Verizon's LTE CAT-M1 network is irrelevant.  *See* Hoarty Report at ¶51.  Early adoption of Verizon's LTE CAT-M1 network does not qualify the smart camera apparatus for trade secret protection, and CAT-M1 wireless communication modules is prevalent amongst IoT devices, and RoadRunner and Mr. Hoarty have failed to demonstrate otherwise.

### 5.    GNSS/GPS And Other Wireless Connectivity Device

39.    Mr. Hoarty next analyzes the GNSS/GPS module, the Bluetooth low-energy ("BLE") module, and the near-field communications ("NFC") module.  *See* Hoarty Report at ¶52.  Like most of his analysis, Mr. Hoarty fails to identify the make and model of all these modules and fails to demonstrate whether they are the same or different across the RoadRunner/Compology devices.  *See* Hoarty Report at ¶¶52-53.  Mr. Hoarty fails to identify any schematics or other files that show how these components are configured in the smart camera apparatus.  *Id*.  Further, Mr. Hoarty fails to demonstrate that any of these modules, or even the combinations of these modules, qualifies for trade secret protection.  *Id*.  They do not. GNSS/GPS, BLE, and NFC modules are common modules that one would find in any conventional smartphone, and thus do not qualify the smart camera apparatus for trade secret protection.

### 6.    Battery Technology

40.    Mr. Hoarty claims that the RoadRunner/Compology smart camera apparatus includes a "specific and unique battery technology."  *See* Hoarty Report at ¶54.  Mr. Hoarty further claims that RoadRunner chose an exotic battery chemistry, Lithium Thionyl Chloride – LiSoC12.  *Id*.  Further, Mr. Hoarty claims that this exotic battery chemistry ████████████ ██████████  in a custom battery pack.  *Id*.

41.    As an initial matter, Lithium Thionyl Chloride batteries are not an exotic battery chemistry and have been in use since the 1970s.  *See* RTS_00344366-RTS_00344369.  For example, this article, which is from 2005, notes that Lithium Thionyl Chloride batteries in automatic meter-reading systems had now been deployed in over 2 million units.  *See* RTS_00344366-RTS_00344369.  The article further notes that Lithium Thionyl Chloride

batteries that had been deployed for 20 years (meaning since 1985) were still operating with over 75% of their initial capacity. Calling a battery chemistry that has been in use in millions of units (it is probably tens of millions more now) for the past 20-40 years does not make it "unique" or "exotic" as Mr. Hoarty claims. Instead, it makes the battery chemistry an obvious choice for any system that needs a long-lasting battery to power its system. Further, as I will demonstrate below, it was well known that the RoadRunner/Compology devices used Lithium Thionyl Chloride batteries. *Infra*. Therefore, the use of Lithium Thionyl Chloride batteries, a ubiquitous type of battery, does not qualify the smart camera apparatus for trade secret protection.

42.    To the extent that Mr. Hoarty, and RoadRunner, argue that ███████████ ████████████████████████████████████████ qualifies the smart camera apparatus for trade secret protection, it does not. *See* Hoarty Report at ¶55. For example, ████████████ ██████████████████████████████████████████████████████████████ is another obvious design choice for any Lithium Thionyl Chloride battery pack. Tadiran Batteries ("Tadiran"), which authored the article I cited above, developed a hybrid layer capacitor ("HLC") ███████████████████████████████████[3]



> A few years ago, Tadiran developed a hybrid battery called PulsesPlus. It combines a bobbin-type cell with a patented high-rate, low-impedance HLC (hybrid layer capacitor). This hybrid system delivers extremely high currents with a generous safety margin. The HLC can supply a continuous current of up to 2A with maximum pulses of up to 5A.

---

[3] I understand Tardiran holds a patent on its ███████████████████████

*See* RTS_00344366 at RTS_00344368.  Tardiran marketed its Lithium Thionyl Chloride batteries in conjunction with its HLC capacitor as PulsesPlus batteries in 2005:



RTS_00344366 at RTS_00344369.  In 2005, Tardiran marketed its PulsesPlus battery packs ███

████████████████████████████████████████████████████████████████████████████

█████████.

> The combination of an HLC with a bobbin cell enables the PulsesPlus to exhibit qualities of both a battery and a capacitor. Specifically, the capacitor portion of the PulsesPlus cell eliminates the voltage drop that would otherwise take place when loads draw significant pulse current. The battery portion of the cell supplies long-term, relatively low currents. Pulsed loads initially draw current from the capacitor rather than the battery. The capacitor and the battery are electrically in parallel.

RTS_00344366 at RTS_00344369.

43.     Therefore, because ████████████████████████████████ ████████████████ has been in use for more than the past 20 years, neither Mr. Hoarty nor RoadRunner/Compology can argue that its battery pack qualifies for trade secret protection.

44.     Finally, Mr. Hoarty provides a history of the lithium thionyl battery packs used in the RoadRunner/Compology smart camera apparatuses.  *See* Hoarty Report at ¶¶56-58.  The battery packs in the RoadRunner/Compology devices changed over time with the R11 ████████ ████ pack; the R12 ████████████████; and the R13 models utilizing a ████████.  *Id*.  Mr. Hoarty explains that this evolution is a result of Moore's Law as silicon geometries shrank and power efficiency increased.  Hoarty Report at ¶57.

45.     As a final note regarding the battery packs, I note that this is the only place in his report where Mr. Hoarty even cites to a schematic, but merely includes an indecipherable image of a ████████████nd does not even analyze what the schematic represents.  *See* Hoarty Report at ¶58.

### 7.     Surface Mount Technology ("SMT") Antenna

46.     Mr. Hoarty finished his analysis of the hardware components of the smart camera apparatus with a brief paragraph of the SMT antenna.  *See* Hoarty Report at ¶59.  Like most of his analysis, Mr. Hoarty fails to identify the make and model of all these SMT antennas and fails to demonstrate whether they are the same or different across the RoadRunner/Compology devices.  *Id*.  Again, Mr. Hoarty fails to identify any schematics or other files that show how these SMT antennas are configured in the RoadRunner/Compology smart camera apparatus.  SMT antennas are found in any conventional smartphone, and therefore, do not qualify the smart camera apparatus as a trade secret.

### b. Mr. Hoarty's Trade Secret Arguments

47. Mr. Hoarty ends his section on the smart camera apparatus with more generic, boilerplate argument, similar to the argument at the end of the overall waste metering system alleging that the smart camera apparatus was not disclosed to the public, and Mr. Hoarty has never seen anything like RoadRunner/Compology smart camera apparatus. *See* Hoarty Report at ¶¶60-62. As I will demonstrate later, the smart camera apparatus was in the public domain and thus the smart camera apparatus does not qualify for trade secret protection. *Infra*.

### 2. Alleged Trade Secret 3: Optical Assembly and Design of a Smart Container Mounted Device

48. Mr. Hoarty never alleges that the alleged "optical assembly and design of a smart waste container mounted device" should be afforded trade secret protection. *See* Hoarty Report at ¶¶63-75. I agree. Mr. Hoarty discusses the optical assembly and design for thirteen paragraphs, but never once alleges the optical assembly and design is a trade secret, provides an analysis demonstrating it is a trade secret, or shows that RoadRunner/Compology treated it as a trade secret. *Id*. But even if Mr. Hoarty had argued the "optical assembly and design of a smart waste container mounted device" should be afforded trade secret protection, which he has not, it would not qualify for trade secret protection for at least three reasons. First, Mr. Hoarty has not demonstrated that the "optical assembly and design of a smart waste container mounted device" is a trade secret. Second, as I will show later in my report RTS did not have access to the alleged "optical assembly and design of a smart waste container mounted device" trade secret. *Infra*.

And third, the alleged "optical assembly and design of a smart waste container mounted device" trade secret was in the public domain. *Infra*.

> **a.    Mr. Hoarty Has Not Demonstrated the Alleged "Optical Assembly and Design of a Smart Waste Container Mounted Device" Is a Trade Secret**

49.    Mr. Hoarty has not demonstrated that the "optical assembly and design of a smart waste container mounted device" is a trade secret. *See* Hoarty Report at ¶¶63-75. Over the course of thirteen paragraphs Mr. Hoarty fails to show that the alleged "optical assembly and design of a smart waste container mounted device" is a trade secret for at least three reasons. First, as I already noted, Mr. Hoarty fails to even argue that the "optical assembly and design of a smart waste container mounted device" qualifies for trade secret protection. *Id*.

50.    Second, over the course of those thirteen paragraphs, Mr. Hoarty describes a broad history of the development of the "optical assembly and design of a smart waste container mounted device," but does not provide any clear disclosure of what exactly the alleged "optical assembly and design of a smart waste container" is. At best, Mr. Hoarty refers to another high-level list of laundry list of physical hardware components, but never demonstrates that the list qualifies for trade secret protection. It does not.

51.    For example, sifting through those thirteen paragraphs, it appears that Mr. Hoarty may be arguing that the "optical assembly and design of a smart waste container device" includes the following:

> Compology designed the **camera optics and accompanying physical elements, including the components of the CCM such as the CMOS sensor, camera flash PCBA, and camera flash LED**, for use with harsh weather conditions, durability to withstand physical damage from impact of waste and movement of waste dumpsters during filling and emptying, and to facilitate debris shedding to keep the lens unobscured to capture accurate images of the interior of the waste dumpsters.

Hoarty Report at ¶64 (emphasis added). But Mr. Hoarty again fails to point to any hardware schematics, Gerber files, or source code files that may describe these components in more detail. *See* Hoarty Report at ¶¶63-75. Mr. Hoarty fails to even indicate whether this is for the R11, R12, or R13 and its variants. *Id.* Mr. Hoarty does not provide any disclosure related to how Compology allegedly designed these components. *Id.* Mr. Hoarty does not even discuss whether these components were literally designed by Compology or if they are off the shelf components used in a design by Compology. *Id.* Outside the fact that Mr. Hoarty indicates that ███████████████████████ is used in the R12, Mr. Hoarty, and RoadRunner, fail to even identify any other component that is used in the "optical assembly and design of a smart waste container mounted device," which could be readily found in the bill of materials ("BOMs"). *Id.* Providing a history of the development of something and a high-level list of components included in it, does not qualify it for trade secret protection.

52.     Finally, Mr. Hoarty has failed to even allege that these components are configured in a unique configuration that may qualify them for trade secret protection. *Id.* While Mr. Hoarty includes images of the R12 camera module, Mr. Hoarty never describes how the "camera optics and accompanying physical elements, including the components of the CCM such as the CMOS sensor, camera flash PCBA, and camera flash LED" are configured. *Id.* For all these reasons, the alleged "optical assembly and design of a smart waste container mounted device" does not qualify for trade secret protection.

### B.     RecycleSmart/RTS Did Not Have Access to RoadRunner's Alleged Trade Secrets

53.     To demonstrate trade secret misappropriation, as RoadRunner has alleged RTS has done, Mr. Hoarty, and RoadRunner, must show that RTS had access to the alleged trade secrets. Here, Mr. Hoarty, and RoadRunner, has not alleged that RTS had access to any

hardware schematics, Gerber files, or any other file resident on RoadRunner's devices or servers. *See* Hoarty Report at ¶¶22-26. Instead, Mr. Hoarty, and RoadRunner has alleged that RTS has misappropriated RoadRunner's trade secrets via access to a disassembled Compology device and Compology's technical and engineering team. As I will demonstrate below, neither Mr. Hoarty, nor RoadRunner, has shown that RTS used any of these vehicles of access to misappropriate any RoadRunner trade secret.

### 1. RTS Did Not Misappropriate Any Trade Secrets Via Access To a Disassembled Device.

54. Mr. Hoarty has not demonstrated that RTS wrongfully accessed and subsequently misappropriated RoadRunner's trade secrets by "disassembling and inspecting one or more Compology devices." *See* Hoarty Report at ¶24. The basis for Mr. Hoarty's claim appears to be some images of an internal R12 device produced by RTS. *See* Hoarty Report at ¶120. These images show the internal board and packaging of an R12 device. But these images cannot reveal any trade secrets because identical images are part of Compology's public Federal Communications Commission (FCC) submission and are resident on the FCC public website for the anyone with a web browser and Internet connection to see. For example, below, I show a comparison of the images below to demonstrate that the images that Mr. Hoarty claims demonstrate misappropriation are publicly available on the Internet.



FCC Image from Internet RTS_00333850 at RTS_00333851.



FCC Image from Internet RTS_00333850 at RTS_00333852.



FCC Image from Internet RTS_00333850 at RTS_00333850.



FCC Image from Internet RTS_00333858 at RTS_00333862.

55.     As can be seen from these images above, the alleged disassembled images on the left show substantially the same thing from the public FCC website on the right.  Because the images are substantially the same, and the FCC images are publicly available, there can be no misappropriation of trade secrets.

### 2. RTS Did Not Misappropriate Any Trade Secrets Via Access to the Technical and Engineering Team

56.     In my opinion, RTS did not misappropriate any trade secrets via access to the technical team.  Mr. Hoarty claims the following:

> To bypass the time and effort necessary to develop the technology itself it is believed that RecycleSmart wrongly used Compology's training data, accessed through millions of labeled and tagged images taken by Compology's smart cameras, to train its own ML models to compete against Compology using its Pello cameras, and with additional information learned through Compology's web application and **technical and engineering team**, also wrongfully derived Compology's algorithms and processes.

Hoarty Report at ¶26 (emphasis added).  This is the only place that Mr. Hoarty mentions any "technical and engineering team.  Mr. Hoarty has not demonstrated that RTS had access to the technical and engineering team.  Therefore, Mr. Hoarty's baseless and unsupported claim to the contrary should not be considered.

57.     It is my opinion that RTS did not have access to misappropriate RoadRunner's trade secrets.  As I discussed above, RTS did not have access, and neither Mr. Hoarty nor RoadRunner has provided any evidence to the contrary, to any hardware schematics, Gerber files, source code files, or any other files that describe how RoadRunner's system operates. Further, as I demonstrated above, Mr. Hoarty's, and RoadRunner's, suggestion that RTS accessed any of RoadRunner's trade secrets via a disassembled device and the Compology technical and engineering team, is unsupported and should not be considered.

### C. The Smart Camera Apparatus and the Optical Assembly and Design are in the Public Domain

58.     The alleged smart camera apparatus and optical assembly and design trade secrets are not trade secrets because they are already in the public domain.  For example, in the coming paragraphs, I will show that both alleged trade secrets are available in various places on the web.

1.    **Compology Shows A Teardown Of Both The Smart Camera Apparatus and The Optical Assembly And Design In A Video On Youtube**

59.    In a video entitled, "December 2016 Embedded Vision Alliance Member Meeting Presentation: Compology," available on YouTube, Mr. Ben Chehebar, one of Compology's founders passed around an R11 device to the crowd so everyone could examine it and then showed a "tearaway" of the device revealing all the components in RoadRunner's alleged smart camera apparatus and the optical assembly and design trade secrets. *See* RTS_00338926.



*See* RTS_00338926 at 10:56-12:40.  Mr. Chehebar tells the crowd: "So this is that sensor that's being passed around cut open.  I'd asked Jeff should I do a tearaway and the presentation, and he said yes everybody here is gonna love it, so here it is!"  Putting teardown images in the public domain on YouTube means the smart camera apparatus is not a trade secret as alleged and is available for anyone to see.

60.    Like the teardowns I provided in my opening report where I compared the hardware components, I can see all the physical hardware components including the ARM

23

processor, the SIM card, the Ublox wireless communication module, the GPS and LTE antennas, ████████████████████████ the two cameras and the flash module. Another key from this teardown is that I can see how the various physical hardware components are configured and connected to one another.

61.     Mr. Chehebar discusses some of the hardware components. Mr. Chehebar points out the lithium thionyl chloride battery pack. *Id*. Mr. Chehebar further points out that t████████ ████████████████████████████████████████. *Id*. My understanding is that t████████ ███████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ███████████████████████████████ I understand that Mr. Hoarty claims that this information regarding the battery chemistry and █████████ is secret.



W. Leo Hoarty Rough Depo Tr. at 157:2-13.  But with Mr. Chehebar's description, anyone can see ███████████████████████████████████████████████████████.

62.    Mr. Chehebar continues his presentation by pointing out the SIM card, the processor, the GPS antenna, the LTE antenna, the accelerometer, the two cameras, the flash RGB indicator light, and the ambient light sensor.  *Id*.  In my opinion, anyone can use these teardown images to search for the individual components.

### 2.    The FCC Website Includes External and Internal Images of the Compology Devices

63.    As I demonstrated earlier, the FCC website features images that show the chipsets in the Compology devices, as well as test reports that show the how some of the chips operate.  Below is an image of a board from the R13 device.



*See, e.g.*, RTS_00334156.  Just like the teardown images from the R11 video, one can use the FCC website to see internal and external images of any of the RoadRunner devices.  These images also show the configuration of the components.

### 3.    An R13 Device is Available for Sale on Ebay

64.     If you wanted to see for yourself what is in an R13 device, you could purchase one of Ebay for less than one hundred dollars.



*See* RTS_00335970 at RTS_00335972.

### 4.     Verizon Wireless R11 Web Page Discloses Its Key Components

65.     Further, Verizon Wireless includes a page dedicated to the R11 device that details key hardware components including the Lithium Thionyl Chloride battery pack, a Cat 4 LTE modem, GNSS/GPS, a camera, and the frequency bands that the device operates.



*See* RTS_00335958-964.

66.     All of this information is further evidence that RoadRunner should not be afforded trade secret protection because its alleged trade secrets are already in the public domain.

### D.     I Disagree With Mr. Hoarty's Derivation Arguments

67.     I disagree that with Mr. Hoarty's conclusion that the Pello device was derived from a Compology R12 device.  Mr. Hoarty bases this conclusion on his comparison of the two devices.  *See* Hoarty Report at ¶¶124-151.  As I demonstrated in my opening report, the Pello device was independently developed over the course of years, and this is well documented in status reports.  My comparison of the Pello device with the RoadRunner/Compology devices demonstrated that the Pello device is substantially different than any of the RoadRunner/Compology devices.  I incorporate my opinions from my opening expert report

here.  In my opinion, the Pello device and the RoadRunner/Compology devices are so different, that there is no evidence one was derived from the other.  Additionally, I would like to address a couple of points that Mr. Hoarty touched upon in his report.

### 1.     There Is Nothing Special About Compology's R12 Battery Pack

68.     Mr. Hoarty makes a lot of Compology's R12 battery pack stating that "much innovation and design choices went into Compology's design of its battery assembly, and it embodies many custom-designed choices that incorporated design tradeoffs learned through many years of experimentation and testing."  Hoarty Report at ¶126.  Yet Mr. Hoarty never describes any of the "custom-designed choices that incorporated design tradeoffs learned through years of experimentation and testing."  *Id*.  In my opinion that is because these are conventional batteries and are connected in a battery pack in a conventional manner.

69.     As an initial matter, as I explained earlier based on the R11 teardown and Mr. Chehebar's comments, it is public knowledge that Compology ████████████████████████████
████████████████████



*See* RTS_00338926 at 10:56-12:40.  In the video, Mr. Chehebar describes ████████

████████████████████████████████████████████████████ *Id*.

Further, from the image above, ████████████████████████████████████

████████

70.    But as I described earlier, lithium thionyl chloride batteries have been in use since

the 1970s.  *See* RTS_00344366- RTS_00344369.  For example, the Tardiran article, which is

from 2005, notes that Lithium Thionyl Chloride batteries in automatic meter-reading systems

had now been deployed in over 2 million units.  *See Id.*  As I discussed above, the article further

notes that Lithium Thionyl Chloride batteries that had been deployed for 20 years (meaning since

1985) were still operating with over 75% of their initial capacity.

71.    Calling a battery chemistry that has been in use in millions of units (it is probably

tens of millions more now) for the past 20-40 years does not make it "unique" or "exotic" as Mr.

Hoarty claims.  Instead, it makes the battery chemistry an obvious choice for any system that

needs a long-lasting battery to power its system.

72.    ████████████████████████████████████████████



████████████████████████████████████████████

████████████████  Tadiran Batteries ("Tadiran"), which authored the article I cited above,

developed a hybrid layer capacitor ("HLC") ████████████████████████

████████

> A few years ago, Tadiran developed a hybrid battery called PulsesPlus. It combines a bobbin-type cell with a patented high-rate, low-impedance HLC (hybrid layer capacitor). This hybrid system delivers extremely high currents with a generous safety margin. The HLC can supply a continuous current of up to 2A with maximum pulses of up to 5A.

*See* RTS_00344366 at RTS_00344368.  Tardiran marketed its Lithium Thionyl Chloride batteries in conjunction with its HLC capacitor as PulsesPlus batteries in 2005.  Interestingly, in the image below, there is an HLC 1550 capacitor, ██████████████████████████ ████████



*See* RTS_00344366 at RTS_00344369.  In 2005, almost twenty years ago, Tardiran marketed its PulsesPlus battery packs for the very use that Mr. Hoarty, and RoadRunner, seem to claim they independently developed the technology.

> The combination of an HLC with a bobbin cell enables the PulsesPlus to exhibit qualities of both a battery and a capacitor. Specifically, the capacitor portion of the PulsesPlus cell eliminates the voltage drop that would otherwise take place when loads draw significant pulse current. The battery portion of the cell supplies long-term, relatively low currents. Pulsed loads initially draw current from the capacitor rather than the battery. The capacitor and the battery are electrically in parallel.

*See* RTS_00344366 at RTS_00344368.

73.    To the extent that Mr. Hoarty is claiming there is something unique by which Compology connected its batteries.  I disagree.  It is common knowledge that if you want to create a battery pack, and provide one connection outside that battery pack, as can be seen below, then you need to electrically connect the batteries and the capacitor as shown below.



*See* Hoarty Report at ¶126. There is nothing special about the interconnects used to electrically connect the batteries in either battery pack.

74.    In summary, the battery chemistry that Compology was well known, and it was not a secret that Compology used lithium thionyl chloride batteries. ██████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████

### 2.    The Pello Device's Housing Is Materially Different Than the Compology R12's Clamshell Design

75.    Mr. Hoarty concludes that the housing of the Pello device was derived from the R12 device. *See* Hoarty Report at ¶¶145-151. I disagree. Using the images provided in Mr. Hoarty's Report, it is clear that these housings are fundamentally different.



Hoarty Report at ¶146.

sensor within the device. If you have different pixel sizes, that informs how you address the sensor's resolution and sensitivity based on light and dynamic range which may influence how you address the design of the overall sensor architecture. If you have different image areas, that informs how you address the overall size of the sensor and subsequent size of the housing and enclosure.

> **E.    Opinions Regarding Trade Secret Value**

91.    I understand that it is RoadRunner's burden to demonstrate that its alleged trade secrets have independent economic value.  Mr. Hoarty claims that RoadRunner's alleged trade secrets have independent economic value.  *See* Hoarty Report at ¶¶112- 116.  I disagree and Mr. Hoarty indicated that he did not perform that type of analysis.  For example, after indicating that the individual trade secrets had independent economic value in his deposition, Mr. Hoarty was unable to provide any dollar value for any of the alleged trade secrets.  *See* W. Leo Hoarty Rough Depo. Tr. at 231:14-238:20.

## VI.    CONCLUSION

92.    Based on my review of the evidence, and Mr. Hoarty's report, it is my opinion that RoadRunner has failed to identify any alleged trade secret that should be afforded trade secret protection, RTS did not have the requisite access to misappropriate the alleged trade secrets, and the alleged trade secrets are in the public domain.

 Dated: September 13, 2024

_____

R. Jacob Baker, Ph.D.

## CERTIFICATE OF SERVICE

I am a resident of the Commonwealth of Massachusetts, over the age of eighteen years, and not a party to the within action. My business address is One Financial Center, Boston, MA 02111. On September 13, 2024, I served true and correct copies of the following documents:

**REBUTTAL EXPERT REPORT OF R. JACOB BAKER, PH.D., P.E.**

| ☒ | **BY E-MAIL**: By electronic mail transmission on September 13, 2024, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below. The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error. | |
|---|---|---|
| | Stanley M. Gibson<br>James Neudecker<br>**JEFFER MANGELS BUTLER &<br>MITCHELL LLP**<br>2 Embarcadero Center, 5th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 398-8080<br>Facsimile: (415) 398-5584<br>sgibson@jmbm.com<br>jneudecker@jmbm.com<br><br>*Attorneys for Plaintiff*<br>*ROADRUNNER RECYCLING, INC.* | Lena Streisand<br>Shavon Henry<br>**JEFFER MANGELS BUTLER &<br>MITCHELL LLP**<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067-4308<br>Telephone:(310) 203-8080<br>Facsimile: (310) 230-0567<br>lstreisand@jmbm.com<br>shenry@jmbm.com<br><br>*Attorneys for Plaintiff*<br>*ROADRUNNER RECYCLING, INC.* |
| | Joseph J. Mellema<br>**JEFFER MANGELS BUTLER &<br>MITCHELL LLP**<br>3 Park Plaza, Suite 1100<br>Irvine, California 92614-2592<br>Telephone: (949) 623-7200<br>Facsimile: (949) 623-7202<br>jmellema@jmbm.com<br><br>*Attorneys for Plaintiff*<br>*ROADRUNNER RECYCLING, INC.* | |

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2024, at Boston, MA.

*Stephanie Stutzmann*
STEPHANIE STUTZMANN