# EXHIBIT AN-R

FILED PROVISIONALLY UNDER SEAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

# EXHIBIT D

ROADRUNNER RECYCLING, INC.,

Plaintiff,

v.

RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC.,

Defendants.

Case No. 3:23-cv-04804-WHA

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

**REBUTTAL EXPERT REPORT OF R. JACOB BAKER, PH.D., P.E.**

EXHIBIT D

the overall waste metering system, this vague list of hardware components and software features do not constitute a trade secret.

**a. Mr. Hoarty Has Not Demonstrated That the Smart Camera Apparatus For A Smart Waste Container Mounted Device Is a Trade Secret**

25. Mr. Hoarty has not demonstrated that the "smart camera apparatus for a smart waste container mounted device" is a trade secret for at least two reasons. *See* Hoarty Report at ¶¶36-62. First, Mr. Hoarty recites a laundry list of high-level hardware components and product features, without citing to any schematics, Gerber files, or source code files, which does not qualify the "smart camera apparatus for a smart waste container mounted device" for trade secret protection. Second, Mr. Hoarty fails to demonstrate that these high-level hardware components and product features are combined in any unique configuration that might qualify it for trade secret protection.

26. At the outset, I note that Mr. Hoarty never points to any schematics, Gerber files, or any other files, or where in those files RoadRunner's alleged smart camera apparatus resides. *See* Hoarty Report at ¶¶36-62. Although, Mr. Hoarty does show a schematic for a battery pack, without ever explaining anything within the schematic, Mr. Hoarty fails to show any schematic of any other battery pack and fails to show how these schematics ties into the alleged smart camera apparatus.[2]This is particularly troubling because in its Identification of Trade Secrets RoadRunner included several exhibits that seem to include at least schematics in some instances. *See* ROADRUNNER000000002-095. Yet, Mr. Hoarty and RoadRunner have failed to tie any of these exhibits to its alleged overall waste metering system trade secret. Further, Mr. Hoarty

[2] I will show later that the battery pack is not a trade secret.

EXHIBIT D

communication system is able to communicate with the server." Hoarty Report at ¶50. I understand that RTS' experience with the RoadRunner/Compology sensors was that they were often unable to communicate with the sensor. The fact that the smart camera assemblies were designed to function only when the wireless communication system is able to communicate with the server explains RTS' difficulty with the sensors.

35. Wireless communication modules, like the one Mr. Hoarty describes used in the smart camera apparatus, are used in conventional smartphones, and do not qualify the smart camera apparatus for trade secret protection.

36. Mr. Hoarty focuses his analysis on the RoadRunner/Compology LTE CAT-M1 wireless communication module. *See* Hoarty Report at ¶51. While Mr. Hoarty mentions the module is a UBLOX module in the R11 device, Mr. Hoarty never indicates which model is used in the R11 or what make, and model is used in the R12 and R13 devices.

37. Notably, Mr. Hoarty claims, without any support, the "wireless communication module uses an optimal PCB trace pattern for best propagation of data signals using the 4G network..." Hoarty Report at ¶51. Mr. Hoarty never identifies the PCB trace pattern in any schematics or other hardware files and does not demonstrate why this particular PCB trace pattern is "optimal." If this trace pattern qualifies the smart camera apparatus for trade secret protection, Mr. Hoarty, and RoadRunner, have failed to identify it.

38. Finally, Mr. Hoarty's claim, without any support, that RoadRunner/Compology was an early adopter of Verizon's LTE CAT-M1 network is irrelevant. *See* Hoarty Report at ¶51. Early adoption of Verizon's LTE CAT-M1 network does not qualify the smart camera apparatus for trade secret protection, and CAT-M1 wireless communication modules is prevalent amongst IoT devices, and RoadRunner and Mr. Hoarty have failed to demonstrate otherwise.

EXHIBIT D

hardware schematics, Gerber files, or any other file resident on RoadRunner's devices or servers. *See* Hoarty Report at ¶¶22-26. Instead, Mr. Hoarty, and RoadRunner has alleged that RTS has misappropriated RoadRunner's trade secrets via access to a disassembled Compology device and Compology's technical and engineering team. As I will demonstrate below, neither Mr. Hoarty, nor RoadRunner, has shown that RTS used any of these vehicles of access to misappropriate any RoadRunner trade secret.

**1. RTS Did Not Misappropriate Any Trade Secrets Via Access To a Disassembled Device.**

54. Mr. Hoarty has not demonstrated that RTS wrongfully accessed and subsequently misappropriated RoadRunner's trade secrets by "disassembling and inspecting one or more Compology devices." *See* Hoarty Report at ¶24. The basis for Mr. Hoarty's claim appears to be some images of an internal R12 device produced by RTS. *See* Hoarty Report at ¶120. These images show the internal board and packaging of an R12 device. But these images cannot reveal any trade secrets because identical images are part of Compology's public Federal Communications Commission (FCC) submission and are resident on the FCC public website for the anyone with a web browser and Internet connection to see. For example, below, I show a comparison of the images below to demonstrate that the images that Mr. Hoarty claims demonstrate misappropriation are publicly available on the Internet.



**FCC Image from Internet RTS_00333850 at RTS_00333851.**

**FCC Image from Internet RTS_00333850 at RTS_0033385[illegible].**

BIT D



**FCC Image from Internet RTS_00333850 at RTS_00333850.**



**FCC Image from Internet RTS_00333858 at RTS_00333862.**



55. As can be seen from these images above, the alleged disassembled images on the left show substantially the same thing from the public FCC website on the right. Because the images are substantially the same, and the FCC images are publicly available, there can be no misappropriation of trade secrets.

EXHIBIT D

### 1. Compology Shows A Teardown Of Both The Smart Camera Apparatus and The Optical Assembly And Design In A Video On Youtube

59. In a video entitled, "December 2016 Embedded Vision Alliance Member Meeting Presentation: Compology," available on YouTube, Mr. Ben Chehebar, one of Compology's founders passed around an R11 device to the crowd so everyone could examine it and then showed a "tearaway" of the device revealing all the components in RoadRunner's alleged smart camera apparatus and the optical assembly and design trade secrets. *See* RTS_00338926.




*See* RTS_00338926 at 10:56-12:40. Mr. Chehebar tells the crowd: "So this is that sensor that's being passed around cut open. I'd asked Jeff should I do a tearaway and the presentation, and he said yes everybody here is gonna love it, so here it is!" Putting teardown images in the public domain on YouTube means the smart camera apparatus is not a trade secret as alleged and is available for anyone to see.

60. Like the teardowns I provided in my opening report where I compared the hardware components, I can see all the physical hardware components including the ARM

EXHIBIT D

processor, the SIM card, the Ublox wireless communication module, the GPS and LTE antennas, [redacted] the two cameras and the flash module. Another key from this teardown is that I can see how the various physical hardware components are configured and connected to one another.

61. Mr. Chehebar discusses some of the hardware components. Mr. Chehebar points out the lithium thionyl chloride battery pack. *Id.* Mr. Chehebar further points out that they [redacted] *Id.* My understanding is that [redacted] I understand that Mr. Hoarty claims that this information regarding the battery chemistry [redacted] is secret.

> Q. And Compology kept it confidential that they
> used lithium thionyl chloride batteries?
>
> [redacted]

W. Leo Hoarty Rough Depo Tr. at 157:2-13. But with Mr. Chehebar's description, anyone can see the [REDACTED]

EXHIBIT D

62. Mr. Chehebar continues his presentation by pointing out the SIM card, the processor, the GPS antenna, the LTE antenna, the accelerometer, the two cameras, the flash RGB indicator light, and the ambient light sensor. *Id.* In my opinion, anyone can use these teardown images to search for the individual components.

**2. The FCC Website Includes External and Internal Images of the Compology Devices**

63. As I demonstrated earlier, the FCC website features images that show the chipsets in the Compology devices, as well as test reports that show the how some of the chips operate. Below is an image of a board from the R13 device.



*See, e.g.*, RTS_00334156. Just like the teardown images from the R11 video, one can use the FCC website to see internal and external images of any of the RoadRunner devices. These images also show the configuration of the components.

**3. An R13 Device is Available for Sale on Ebay**

EXHIBIT D

64. If you wanted to see for yourself what is in an R13 device, you could purchase one of Ebay for less than one hundred dollars.




*See* RTS_00335970 at RTS_00335972.

### 4. Verizon Wireless R11 Web Page Discloses Its Key Components

65. Further, Verizon Wireless includes a page dedicated to the R11 device that details key hardware components including the Lithium Thionyl Chloride battery pack, a Cat 4 LTE modem, GNSS/GPS, a camera, and the frequency bands that the device operates.




*See* RTS_00335958-964.

66. All of this information is further evidence that RoadRunner should not be afforded trade secret protection because its alleged trade secrets are already in the public domain.

**D. I Disagree With Mr. Hoarty's Derivation Arguments**

67. I disagree that with Mr. Hoarty's conclusion that the Pello device was derived from a Compology R12 device. Mr. Hoarty bases this conclusion on his comparison of the two devices. *See* Hoarty Report at ¶¶124-151. As I demonstrated in my opening report, the Pello device was independently developed over the course of years, and this is well documented in status reports. My comparison of the Pello device with the RoadRunner/Compology devices demonstrated that the Pello device is substantially different than any of the RoadRunner/Compology devices. I incorporate my opinions from my opening expert report

EXHIBIT D

here. In my opinion, the Pello device and the RoadRunner/Compology devices are so different, that there is no evidence one was derived from the other. Additionally, I would like to address a couple of points that Mr. Hoarty touched upon in his report.

**1. There Is Nothing Special About Compology's R12 Battery Pack**

68. Mr. Hoarty makes a lot of Compology's R12 battery pack stating that "much innovation and design choices went into Compology's design of its battery assembly, and it embodies many custom-designed choices that incorporated design tradeoffs learned through many years of experimentation and testing." Hoarty Report at ¶126. Yet Mr. Hoarty never describes any of the "custom-designed choices that incorporated design tradeoffs learned through years of experimentation and testing." *Id.* In my opinion that is because these are conventional batteries and are connected in a battery pack in a conventional manner.

69. As an initial matter, as I explained earlier based on the R11 teardown and Mr. Chehebar's comments, it is public knowledge that Compology used lithium thionyl chloride batteries [redacted]



*See* RTS_00338926 at 10:56-12:40. In the video, Mr. Chehebar describes the batteries [redacted] *Id.*

EXHIBIT D

Further, from the image above, it is easy to see that there is a [redacted] in the battery pack with [redacted]

70. But as I described earlier, lithium thionyl chloride batteries have been in use since the 1970s. *See* RTS_00344366- RTS_00344369. For example, the Tardiran article, which is from 2005, notes that Lithium Thionyl Chloride batteries in automatic meter-reading systems had now been deployed in over 2 million units. *See Id.* As I discussed above, the article further notes that Lithium Thionyl Chloride batteries that had been deployed for 20 years (meaning since 1985) were still operating with over 75% of their initial capacity.

71. Calling a battery chemistry that has been in use in millions of units (it is probably tens of millions more now) for the past 20-40 years does not make it "unique" or "exotic" as Mr. Hoarty claims. Instead, it makes the battery chemistry an obvious choice for any system that needs a long-lasting battery to power its system.

72. [redacted] Lithium Thionyl Chloride battery pack [redacted] is another obvious design choice for any Lithium Thionyl Chloride battery pack. Tadiran Batteries ("Tadiran"), which authored the article I cited above, developed a hybrid layer capacitor ("HLC") [redacted]

EXHIBIT D

sensor within the device. If you have different pixel sizes, that informs how you address the sensor's resolution and sensitivity based on light and dynamic range which may influence how you address the design of the overall sensor architecture. If you have different image areas, that informs how you address the overall size of the sensor and subsequent size of the housing and enclosure.

### E. Opinions Regarding Trade Secret Value

91. I understand that it is RoadRunner's burden to demonstrate that its alleged trade secrets have independent economic value. Mr. Hoarty claims that RoadRunner's alleged trade secrets have independent economic value. *See* Hoarty Report at ¶¶112- 116. I disagree and Mr. Hoarty indicated that he did not perform that type of analysis. For example, after indicating that the individual trade secrets had independent economic value in his deposition, Mr. Hoarty was unable to provide any dollar value for any of the alleged trade secrets. *See* W. Leo Hoarty Rough Depo. Tr. at 231:14-238:20.

## VI. CONCLUSION

92. Based on my review of the evidence, and Mr. Hoarty's report, it is my opinion that RoadRunner has failed to identify any alleged trade secret that should be afforded trade secret protection, RTS did not have the requisite access to misappropriate the alleged trade secrets, and the alleged trade secrets are in the public domain.

Dated: September 13, 2024

R. J. Baker

R. Jacob Baker, Ph.D.