# EXHIBIT AP-R



FILED PROVISIONALLY UNDER SEAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROADRUNNER RECYCLING, INC., Plaintiff, v. RECYCLE TRACK SYSTEMS, INC., and RECYCLESMART SOLUTIONS INC., Defendants. | Case No. 3:23-cv-04804-WHA<br>**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY** |

**REBUTTAL EXPERT REPORT OF PHILIP GREENSPUN, PH.D.**

and recycling technology for a smart waste container mounted device" trade secret is too broad to qualify for trade secret protection.

EXHIBIT G

**c. Mr. Hoarty Fails to Demonstrate that These High-Level Hardware Components and Product Features are Combined in Any Unique Configuration That Might Qualify It for Trade Secret Protection**

40. Mr. Hoarty ends his section on the overall waste metering system with some generic, boilerplate arguments attempting to demonstrate that there is some "unique configuration" that qualifies the "overall waste metering and recycling technology for a smart waste container mounted device" for trade secret protection. It does not.

41. For example, Mr. Hoarty claims the following regarding the "overall waste metering and recycling technology for a smart waste container mounted device":

> As described herein, RoadRunner expended millions of dollars in efforts to design its product in an iterative process over the past decade. Although certain components of RoadRunner's smart camera design employ commercially available parts, **the combination of those parts, with non-commercially available parts, and the unique configuration of the parts in a smart camera assembly, integrates significant know-how and techniques learned during its development and testing process.** Courts recognize that a trade secret exists when such combinations exist, even when the combinations might include commercial or generally known components.

Hoarty Report at ¶32.

42. But neither Mr. Hoarty nor RoadRunner has ever described the "combination of those parts" and has never demonstrated that a "unique configuration of the parts in a smart camera" exists. Further, Mr. Hoarty, and RoadRunner, have never disclosed the "significant know-how and techniques learned during its development and testing process." My understanding of the law is that RoadRunner cannot be afforded trade secret protection if it cannot describe with particularity what its trade secret is.

FILED PROVISIONALLY UNDER SEAL
HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT G

a disassembled Compology device, training data, Compology's web application, and Compology's technical and engineering team. As I will show below, Mr. Hoarty has not shown that RTS used any of these avenues of access to misappropriate any RoadRunner trade secret. (And, in fact, based on my investigation, RTS actually did not use any of these avenues.)

**1. RTS Did Not Misappropriate Any Trade Secrets Via Access to a Disassembled Device.**

67. Mr. Hoarty has not demonstrated that RTS wrongfully accessed and subsequently misappropriated RoadRunner's trade secrets by "disassembling and inspecting one or more Compology devices." *See* Hoarty Report at ¶24. For example, the basis for Mr. Hoarty's conclusion seems to be some images of an internal R12 device produced by RTS. *See* Hoarty Report at ¶120. These images that Mr. Hoarty cites to show the internal board and packaging of an R12 device. But these images cannot reveal any trade secrets because identical images are part of Compology's public Federal Communications Commission (FCC) submission and are resident on the FCC public website for the anyone with a web browser and Internet connection to see. I provide a comparison of the images below to demonstrate that the images that Mr. Hoarty claims demonstrate misappropriation are publicly available on the Internet.

**FCC Image from Internet RTS_00333850 at RTS_00333851.**



**FCC Image from Internet RTS_00333850 at RTS_[illegible]2.**

**FCC Image from Internet RTS_00333850 at RTS_00333850.**

**FCC Image from Internet RTS_00333858 at RTS_00333862.**

68. As can be seen from these images above, the alleged disassembled images on the left show substantially the same thing from the public FCC website on the right. Because the images are substantially the same, and the FCC images are publicly available, there can be no misappropriation of trade secrets.

EXHIBIT G

disclosure and non-use provisions." Hoarty Report at ¶23. Based on my review of the materials available in the public domain, I disagree. In the following sections I will show that RoadRunner did not keep the alleged trade secrets strictly confidential to all third parties, and RoadRunner's alleged trade secrets cannot be trade secrets because they are already in the public domain.

**1. Compology's Co-Founder Performed a Teardown of an R11 Device and Put it on YouTube**

78. During a talk at the "December 2016 Embedded Vision Alliance Member Meeting Presentation: Compology," available on YouTube in the public domain, Mr. Ben Chehebar, one of Compology's founders handed a sensor to be passed around the crowd so others could examine it and then did a "tearaway" of the device revealing the key components in RoadRunner's alleged smart camera apparatus trade secret. *See* RTS_00338926.

*See* RTS_00338926 at 10:56-12:40. Mr. Chehebar tells the crowd: "So this is that sensor that's being passed around cut open. I'd asked Jeff should I do a tearaway and the presentation, and he

FILED PROVISIONALLY UNDER SEAL
HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT G

said yes everybody here is gonna love it, so here it is!" Putting teardown images in the public domain on YouTube means the smart camera apparatus is not a trade secret as alleged.

79. As with my own teardown of an R11 device, by watching the YouTube video I can see all the physical hardware components including the ARM processor, the SIM card, the Ublox wireless communication module, the GPS and LTE antennas, the battery pack, the two cameras and the flash module. More importantly, everyone can see how the physical hardware components are configured and interconnected.

80. While it is clear for anyone to see all the components in the R11 device, Mr. Chehebar chooses to highlight a few for the crowd. Mr. Chehebar points out the lithium thionyl chloride battery pack. *Id*. Mr. Chehebar further points out the SIM card, the processor, the GPS antenna, the LTE antenna, the accelerometer, the two cameras, the flash RGB indicator light, and the ambient light sensor. *Id*.

81. In my opinion, RoadRunner cannot claim that "none of their technology is publicly available and is kept strictly confidential and secret to all third parties" when they are using YouTube to show the interested world what is inside the smart camera apparatus.

**2. An R13 Device is Available for Sale on eBay**

82. To further demonstrate that RoadRunner's alleged trade secrets are in the public domain, one can purchase an R13 device from eBay without any restrictions:



*See* RTS_00335970 at RTS_00335972.

**3. Verizon Wireless R11 Web Page Discloses Its Key Components**

83. Verizon Wireless includes a page dedicated to the R11 device that details key hardware components including the Lithium Thionyl Chloride battery pack, a Cat 4 LTE modem, GNSS/GPS, a camera, and the frequency bands that the device operates.



*See* RTS_00335958-964.

#### 4. The FCC Website Includes External and Internal Images of the Compology Devices

84. As I demonstrated earlier, the FCC website features images that show the chipsets in the Compology devices, as well as test reports that show how some of the chips operate.



EXHIBIT G

*See, e.g.*, RTS_00333850 at RTS_00333851.

85. In my opinion, using all of these publicly available sources, it is easy to see the physical hardware components of the Compology devices and the configuration of those hardware components.

#### 5. Overall Waste Metering and Recycling Technology for a Smart Waste Container Mounted device

86. In addition to the R11 teardown by Ben Chehebar, which clearly shows the smart camera apparatus and all its components, and the other publicly available sources I just introduced, the Compology's patents and patent applications further disclose the overall waste metering and recycling technology for a smart waste container mounted device. *Supra*. It is my opinion that Compology has disclosed its overall waste metering and recycling technology for a smart waste container device in US Patent No. 10,943,356 (the "'356 patent") and it is in the public domain. For example, comparing the '356 patent disclosures with Mr. Hoarty's

FILED PROVISIONALLY UNDER SEAL
HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT G

description of the alleged overall waste metering and recycling technology for a smart waste container mounted device trade secret, it is clear that this alleged trade secret is disclosed in the '356 patent.

87. I will reproduce Mr. Hoarty's description of the trade secret for ease of comparison:

> I find that RoadRunner's trade secrets include the overall know-how and design of its waste metering system including physical hardware components such as the camera system, optical assembly and design, firmware such as its image preprocessing techniques implemented in the camera apparatus, training data, machine learning models, an AI system implementing the machine learning models, and algorithms and processes to generate data, analysis, and recommendations to customers, including fullness, emptiness, contamination, schedules, data ingestion efficiencies, and location analysis of waste containers. As more fully described below, Compology developed a convolutional neural network ("CNN") as its AI system to implement the machine learning models for accurate machine labeling and tagging of images from Compology's smart cameras. The combination of these hardware, firmware, and software elements as implemented in a waste metering system is itself a trade secret.

Hoarty Report at ¶31. The '356 discloses a waste metering system that includes physical hardware components such as the camera system that includes an optical assembly and design.

FIGURE 3C

EXHIBIT G

’356 patent at Fig. 3C. The ’356 patent indicates that the content sensor preferably includes an optical sensor, which is a camera.

> The content sensor preferably includes one or more imaging devices. The imaging device is preferably an optical sensor (e.g., camera), but can additionally or alternatively include an ultrasound imaging device and/or any other suitable imaging devices. Examples of optical sensors include a monocular camera, stereocamera, multi-lens or multi-view camera, color camera (e.g., a RGB camera) such as a charge coupled device (CCD) or a camera including a CMOS sensor, grayscale camera, multispectral camera (narrow band or wide band), hyperspectral camera, ultraspectral camera, spectral camera, spectrometer, time of flight camera, high-, standard-, or low-dynamic range cameras, range imaging system (e.g., LIDAR system), active light system (e.g., wherein a light, such as an IR LED, is pulsed and directed at the subject and the reflectance difference measured by a sensor, such as an IR sensor), thermal sensor, infra-red imaging sensor, projected light system, full spectrum sensor, high dynamic range sensor, or any other suitable imaging system. The optical sensor is preferably configured to capture a 2-dimensional or 3-dimensional image, but can alternatively capture any a measurement having any other suitable dimension. The image is preferably single, multi-pixel, time-averaged or sum total measurement of the intensity of a signal emitted or reflected by objects within a field of view, but can alternatively be a video (e.g., a set of images or frames), or any other suitable measurement. The image preferably has a resolution (e.g., cycles per millimeter, line pairs per millimeter, lines of resolution, contrast vs. cycles/mm, modulus of the OTF, or any other suitable measure) capable of resolving a 1 $cm^3$ object at a sensor distance of at least to feet from the object, but can alternatively have a higher or lower resolution.

’356 Patent at 2:26-57. As can be seen above, the ’356 patent contemplates many different types of optical sensors such as “a camera including a CMOS sensor” which I understand is the optical sensor used by the RoadRunner devices. The disclosure above also indicates that the content sensor includes an active light system, which is a flash module, like the RoadRunner devices.

88. The ’356 patent also indicates that the system includes a communication module which can be cellular, like the RoadRunner devices.

EXHIBIT G

> The content sensors can optionally include one or more communication modules. The communication module preferably functions to communicate data from the content sensor to a second system (e.g., the computing system). The data can be measurements from the content sensor (and/or any other suitable components), processed measurements, instructions, pickup requests, and/or any other suitable data. The second system can be a device, server system, or any other suitable computing system. The second system can be remote or wired to the communication system. Examples of the second system include a mobile device (e.g., smartphone, tablet, computer), server system, or any other suitable computing system. The communication system can be a wireless or wired communication system. The communication system can be a cellular, WiFi, Zigbee, Z-Wave, near-field communication system (e.g., Bluetooth, RF, NFC, etc.), Ethernet, powerline communication, or any other suitable communication system. The communication system is preferably operable in a standby or off mode, wherein the communication system consumes power at a rate less than a threshold rate, and an on or communication mode, wherein the communication system consumes power at a rate required to communicate data. However, the communication system can be operable in any other suitable mode.

’356 Patent at 3:15-39. As can be seen above, the ’356 patent also discloses the use of near-field communications systems, like NFC and Bluetooth, which is used by the RoadRunner devices. The ’356 patent further discloses the use of an accelerometer and a GPS receiver, which are both used in the RoadRunner devices.

> The content sensor can optionally include one or more auxiliary sensors, such as IMU sensors (e.g., accelerometer, gyroscope, magnetometer, etc.), geopositioning elements (e.g., GPS receiver), weight sensors, audio sensors, and/or any other suitable auxiliary sensors. However, the imaging devices can additionally or alternatively include any other suitable elements in any suitable arrangement.

’356 Patent at 3:40-46.

89. In terms of machine learning models and an AI system, like the RoadRunner devices, the ’356 discloses the preferable use of convolutional neural networks (“CNNs”) and training data to train those models.

FILED PROVISIONALLY UNDER SEAL
HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT G

’356 Patent at Fig. 4A. As discussed more fully below, the Compology patents and patent publications disclose various ML models including SPI[illegible], fullness, and contamination. *Infra*.

90. Based on my review of the teardown of the R11 that Ben Chehebar performed, and the ’356 patent, it is my opinion that the overall waste metering and recycling technology for a smart waste container mounted device is in the public domain.

### 6. Smart Camera Apparatus for a Smart Waste Container Mounted Device

91. Based on my review of the publicly available documents and videos, it is my opinion that the smart camera apparatus for a smart waste container mounted device is in the public domain. I will show Mr. Hoarty’s understanding of the smart camera apparatus for a smart waste container mounted device, and then demonstrate how all the components and the configuration are already in the public domain.

92. Mr. Hoarty’s, and RoadRunner’s, description of this alleged trade secret is as follows: the smart camera apparatus includes “a smart camera including a CCM with wide FOV camera lens, battery pack, high-durability injection-molded parts, including a ‘double shot’ rear housing with TPE overmolding, front housing with recessed sensors for debris shielding, and camera and flash PCBA cutouts and mounting, and optical windows with high scratch-resistance, and specialized coatings; printed circuit boards assemblies (‘PCBAs’) containing microcontrollers, external RAM integrated circuit (‘IC’), wireless communication systems, accelerometer, GPS, environmental sensors, and a camera flash LED.” Hoarty Report at ¶46. I will walk through each of these components to show that these are all in the public domain.

93. For example, I understand that “CCM” refers to a custom CMOS camera module. *See* Hoarty Report at ¶45. Examining Mr. Chehebar’s teardown, it is clear to me that this is a CCM.



*See* RTS_00338926 at 10:56-12:40. Further, based on my understanding of the Compology patent and patent applications, it is clear to me that the ’356 patent contemplates a custom CMOS camera module. *See* ’356 Patent at 2:26-57. Based on my review of the training images in the ’356 patent, it is clear that the ’356 is contemplating a wide field of view because the camera captures the entire container/dumpster (every realtor knows that a smartphone camera needs to be set to its widest angle in order to capture as much of a room as possible).

94. In terms of the battery pack, I understand from the Chehebar video that the R11 device uses a Lithium Thionyl Chloride battery pack. *See* RTS_00338926 at 10:56-12:40. A leading manufacturer of batteries with this chemistry has been offering battery packs including [redacted] claimed as a trade secret by RoadRunner, since at least 2022: “Lithium thionyl batteries come with some disadvantages, such as high internal resistance and a possible delay in producing high voltage. However, Tadiran Batteries include [redacted] in the package, working on resolving minor issues.”[6]

[6] https://web.archive.org/web/20221002185636/https://tadiranbatteries.de/lithium-thionyl-chloride/

EXHIBIT G

95. Based on my review of the Ben Chehebar video, and the teardown of the R11 smart camera apparatus for a smart waste container mounted device, which shows all of the components of the device and how those components are configured, and the other publicly available documents I highlighted, as well as the disclosure of the ’356 patent which reiterates all of those components, it is my opinion that the smart camera apparatus for a smart waste container mounted device is in the public domain. *Supra*.

**7. Optical Assembly and Design of a Smart Waste Container Mounted Device**

96. Based on my review of the Ben Chehebar video, and the teardown of the R11 smart camera apparatus for a smart waste container mounted device, which shows all of the components of the device including the optical assembly and design, and the other publicly available documents I highlighted as well as the disclosure of the ’356 patent which also discloses the components of the optical assembly, it is my opinion that the optical assembly and design of a smart waste container mounted device is in the public domain. *Supra*.

**8. Training Data for an AI/ML System**

97. From my review of Compology’s patents and patent applications, it is my opinion that Compology has disclosed its Container Fullness Analysis in US Patent No. 10,943,36 (the “’356 patent”) and US Patent Publication No. 2021/0158308 (the “’308 patent publication”) and it is in the public domain. For example, in exhibit 1, I provide a comparison between Mr. Hoarty’s description of the Container Fullness Analysis with the disclosure of the ’356 patent. *See* Exhibit 1 at 40-49.

**9. Subpar Image Detection (SPID) is disclosed in Compology’s Patents**

FILED PROVISIONALLY UNDER SEAL
HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

## VII. CONCLUSION

EXHIBIT G

117. The Hoarty Report proves that it is impossible to build an image classifier via machine learning if one does not try.

118. The Hoarty Report does not begin to explore the question of whether Compology's image classifier was better or more valuable in some way than an independently developed image classifier (e.g., done on a desktop computer browser in Google's Teachable Machine) or, indeed, simply hiring humans via Amazon or some other method. Thus, Mr. Hoarty has failed to establish that any of Compology's machine learning-based alleged trade secrets are trade secrets because value is one element of being a trade secret.

Dated: September 13, 2024

Philip Greenspun, Ph.D.